UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GEORGIA-PACIFIC CONSUMER PRODUCTS, LP, et al.

    Plaintiff,

v.                                                             Case No. 10-C-1087

NCR CORP. and INTERNATIONAL PAPER CO.,

    Defendants.

**DECISION AND ORDER**

    Two Georgia-Pacific entities brought this action, along with the Fort James Corporation (together referred to as "GP"), against NCR Corporation and International Paper Co. seeking contribution under CERCLA § 113 (as well as other theories) for expenses they have incurred in cleaning up the Kalamazoo River, a Superfund site in Michigan. The site is contaminated with PCBs due to discharges by the paper industry, and the cleanup process has spawned numerous regulatory enforcement efforts by the EPA and the Michigan Department of Natural Resources. It has also given rise to significant private litigation in the Western District of Michigan, and Judge Robert Bell of that district has issued numerous dispositive rulings and conducted some five bench trials on river cleanup issues. For these and other reasons, Defendant NCR moves to transfer this action to the Western District of Michigan, where it believes venue is more appropriate. For the reasons given below, the motion will be granted.

    Under 28 U.S.C. § 1404(a), a district court has discretion to transfer an action even though the action may be properly filed in its district. Section 1404(a) "is intended to place discretion in

the district court to adjudicate motions for transfer according to [a] '. . . case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.,* 626 F.3d 973, 978 (7th Cir. 2010).

In complex CERCLA cases, "convenience" is a term not often uttered, and in fact NCR's motion to transfer focuses primarily on the other § 1404(a) factor, the interests of justice.

> The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system. *See Van Dusen,* 376 U.S. at 626–27, 84 S.Ct. 805. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, *see Chicago, Rock Island & Pacific Railroad Co. v. Igoe,* 220 F.2d 299, 303 (7th Cir. 1955); each court's relative familiarity with the relevant law, *Van Dusen,* 376 U.S. at 645, 84 S.Ct. 805; the respective desirability of resolving controversies in each locale, *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.,* 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002); and the relationship of each community to the controversy, *see Hanley v. Omarc, Inc.,* 6 F. Supp.2d 770, 777 (N.D. Ill. 1998).

*Id.* at 978.

NCR argues that the Western District Court has substantial experience managing litigation involving the Kalamazoo River and is thus familiar with the legal issues that will arise in this action. Because that court is familiar with the applicable law, as well as the issues particular to the Kalamazoo Superfund site, resolution will be speeded if the case is transferred. In addition, the Kalamazoo River community has a strong interest in any litigation arising out of the cleanup efforts, and the community's citizens deserve to have the matter heard there. This consideration is perhaps the most salient when the case involves an environmental matter that affects the local citizens and

their river. "An additional reason for litigating in the forum that encompasses the locus of operative facts is the local interest in having local controversies resolved at home, especially in environmental cases or other substantive matters involving land or matters of local policy." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3854 (3d ed. 2007).

GP acknowledges (as it must) that the Kalamazoo River and the communities it most affects are situated in the Western District of Michigan. It suggests however that because this action involves cost allocation between PRPs rather than enforcement, the local community is not actually affected at all. The cleanup of the Kalamazoo River will take place independent of this action, which is really just about allocating the costs of that cleanup between corporations. In addition, GP downplays the idea that environmental litigation involving the Kalamazoo River has been as extensive or ongoing as NCR suggests. It notes that the Michigan litigation ended with the resolution of an appeal in 2004, and that litigation never dealt with NCR's liability. (NCR observes that the Michigan court entered a consent decree as recently as 2009.) Finally, GP argues that many of the equitable issues will be identical to the ones this Court already addressed in the *Whiting* action, Case No. 08-C-16. Specifically, GP will be arguing that NCR's past conduct in knowingly arranging for the disposal of environmentally toxic material means that it should be forced to assume a large share of the cleanup cost. (This single issue likely encapsulates why GP wants the case here and NCR does not.) Because this Court is already familiar with that issue, judicial economy would be served by keeping the case here.

NCR responds by arguing that GP has cherry-picked a few issues and facts that have a Wisconsin connection while missing the bigger picture. Specifically, GP ignores the fact that this action also involves International Paper as a defendant, and the facts relating to that company have

3

no Wisconsin connection at all. In fact, the case against International Paper involves only Michigan issues. In addition, although three NCR-owned facilities in Wisconsin sold broke to Michigan companies, thirteen of NCR's facilities *outside* Wisconsin did so as well. GP's own complaint alleges that NCR contracted to arrange disposal through the Mead Corporation, in Ohio, which sold broke to numerous paper companies, including paper mills on the Kalamazoo River. (Compl., ¶ 78.)

In addition, NCR notes, it has raised a statute of limitations defense that will involve analysis of the effect of the prior rulings from the Michigan district court and whether any of these decisions triggered the applicable limitations period. More importantly, this action involves a discrete set of claims between GP, NCR and International Paper. Even if GP can show that NCR was an arranger, the question of equitable apportionment is not as simple as simply rehashing what this Court already decided in the *Whiting* action. There are other parties involved, and GP's own conduct in Michigan may be at issue. Thus, although this Court has substantial experience with NCR's own conduct in creating carbonless copy paper, that is just one part of the larger puzzle.

I am satisfied that, although this action undoubtedly involves issues with Wisconsin connections, the interests of justice are better served by transferring the case to Michigan. First, I reject GP's suggestion that because this case is really only about money, rather than the cleanup itself, it has little impact on the Kalamazoo River community. My own experience has demonstrated that the local community has been more interested in this Court's Fox River contribution action than any other action in this Court's history, and local newspapers and television stations covered the numerous rulings and hearings intensely. This was true even though that case merely involved the apportionment of responsibility for the *costs* of cleanup rather than the fact or

nature of the cleanup. Citizens and the media were interested in who was responsible for polluting their local river, not just how (or whether) the river would be cleaned up. I thus entertain a strong presumption that environmental actions involving specific sites should take place as near to the site as possible.

My conclusion that Michigan is a better forum is not just a matter of physical proximity to the Site, however. Despite GP's claim to the contrary, CERCLA actions usually are not neatly separable into discrete boxes, where different parts of the litigation can readily be handled by courts in multiple locations. Instead, it is likely that a district court with significant institutional experience with a given cleanup action will have a broad-based picture of the relationships of the different parties and the site itself, and the judge might well have developed an informed view of how liability should ultimately be resolved. At a minimum, a judge in that situation will have formed a general view of the Site and an approach to handling its litigation, and such matters are better handled in a comprehensive, rather than piecemeal, fashion. In such circumstances, an out-of-state judge with no prior relationship to the dispute should be wary about upsetting the balance or wading into the dispute without the context the other court has acquired and helped develop.

Second, although this Court has obtained knowledge and experience with NCR and carbonless copy paper, that knowledge was obtained simply by referring to a limited number of documents provided by the parties, most of which were from the 1960's. Much of the documentation that presumably existed had been destroyed. To the extent such material arises in this case, acquiring an understanding of the history of carbonless copy paper is simply a matter of preparation in the fashion any judge is used to. Because of the relative dearth of records, the effort to familiarize oneself with the issues is not extensive, and a transfer of this action will not result in

an undue replication of judicial efforts. In sum, I believe the interests of justice are best served if this case is heard in the Western District of Michigan.

GP also argues that this forum is more convenient for the parties. It alleges that NCR arranged for the disposal of hazardous waste (PCB-containing "broke" from recycled carbonless copy paper), and this arrangement took place not in Michigan but in Wisconsin. Specifically, NCR entities in this state sold "broke" (paper waste) containing PCBs to brokers here and elsewhere. These brokers then shipped the product to paper companies, including some along the Kalamazoo River.

GP asserts that dozens of former employees are potential witnesses, and many of these individuals reside in Wisconsin. Depositions and other discovery relating to these witnesses would be far more convenient if the forum were located in this district. NCR counters that the importance of such witnesses is overblown, as it is doubtful that any of the individuals in question have much experience with sales of broke to Kalamazoo facilities. Even though some of the witnesses do reside here, however, the small convenience resulting from a trial in this district does not outweigh the other factors cited herein. Moreover, in this action, the attorneys who have appeared hail from Minnesota, Chicago, Milwaukee, Virginia, New York, Seattle, Madison and Los Angeles. Not one of them are based within the bounds of either the Green Bay Division of this district or the Western District of Michigan. Thus, either way, there will be significant travel and other expenses incurred during discovery. It is true that if this case eventually requires a trial, some witnesses could not be compelled to testify. But in my view, speculation about that possibility is not a sound basis to keep the action here.

GP also emphasizes how much evidence will be produced from Wisconsin, but it is unclear how that fact (even if true) would make this a more convenient *court* to hear the dispute. As noted above, the attorneys are from all over the country, and none are from Green Bay or the Fox Valley area. GP has not explained how having the case in this venue will have any impact on the evidence-gathering process.

In sum, the interests of justice strongly favor a venue in the Western District of Michigan. The convenience of the parties might slightly tilt towards a venue in this District, but that is not enough to overcome the other factors cited above. Accordingly, the motion to transfer is **GRANTED**.

Dated this   10th   day of May, 2011.

    s/ William C. Griesbach
William C. Griesbach
United States District Judge