**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No: 1:11-cv-00483-RJJ |
| v. | ) ) | Judge Robert J. Jonker |
| NCR CORPORATION and INTERNATIONAL PAPER CO., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR STATUS CONFERENCE**

This is an action under CERCLA.  It arises from the multimillion-dollar cost to investigate and clean up PCB contamination of the Kalamazoo River.  Plaintiffs, Georgia-Pacific Consumer Products LP, Fort James Corporation, and Georgia-Pacific LLC ("Georgia-Pacific") filed the case in the Eastern District of Wisconsin, but it has now been transferred to this Court pursuant to 28 U.S.C. § 1404.  Georgia-Pacific asks that the Court convene a status conference to discuss several preliminary issues.  This conference would provide the guidance that is necessary for the parties to proceed with their discovery planning pursuant to Rule 26, and would expedite disposition of the case.  *See* Fed. R. Civ. P. 16(a).

## I.     PROCEDURAL HISTORY

**A.     Summary of the Lawsuit**

For many years, Georgia-Pacific and other paper companies recycled wastepaper in facilities along the Kalamazoo River.  Unfortunately, that wastepaper included carbonless copy

paper ("CCP") invented and sold by defendant NCR Corporation ("NCR").  Unbeknownst to Georgia-Pacific and the other paper recyclers, NCR's CCP was coated with polychlorinated biphenyls, or PCBs.  Those PCBs were released into the Kalamazoo River during the recycling process, when recyclers "de-inked" the CCP to obtain the paper's fiber.  As a result, Georgia-Pacific has become a Potentially Responsible Party, or PRP, under CERCLA for the investigation and remediation of PCB contamination in what is now known as the Kalamazoo River Superfund Site.  Because other paper companies that previously operated along the Kalamazoo have declared bankruptcy, Georgia-Pacific today stands as the only solvent company funding a material share of investigation and remediation costs.  Having already spent over $80 million for such costs, it seeks in this lawsuit to remedy that injustice.

Georgia-Pacific will show that defendants NCR and International Paper Co. ("IP") are liable under CERCLA for PCB contamination of the Kalamazoo – with NCR liable as an "arranger" under CERCLA, and with IP liable as an owner and operator of the Bryant Mill in Kalamazoo.  Georgia-Pacific will then establish the portion of past and future investigation and cleanup costs that NCR and IP should pay.  Two other cases – one concluded and one pending – help explain the context in which this suit was filed.

**B.     Concluded and Pending Cases**

**The "KRSG" Litigation.**  In a case filed in this Court in 1995, Georgia-Pacific and several other paper companies (the "Kalamazoo River Study Group," or "KRSG") sought to recover from eight corporations that, the KRSG contended, had materially contributed to the PCB contamination of the Kalamazoo.  The focus of this litigation was primarily on activities unrelated to recycling of NCR paper, and on types of PCBs not found in NCR paper.[1]  Over the

---

[1] *See generally Kalamazoo River Study Group v. Rockwell Int'l*, 107 F.Supp.2d 817 (W.D. Mich. 2000) (Bell, J.).

next five years, Judge Bell foreclosed that effort.  He noted that unlike the various types of alleged PCB contamination by the defendants, "the effects of discharges from NCR paper [by KRSG members] are seen clearly everywhere in the river, by clear detections of significant amounts of PCBs…."[2]  Judge Bell granted summary judgment for several defendants, and in 2000, he entered judgment in favor of one defendant (Rockwell) who went to trial in the allocation portion of the case.[3]  In the wake of the KRSG litigation, Georgia-Pacific has continued paying toward the costs of investigating and remediating PCBs in the Kalamazoo River.

Judge Bell had noted in the KRSG litigation that "Georgia Pacific and James River [now a part of Georgia-Pacific], at various times used feedstock consisting entirely or largely of NCR paper."[4] Georgia-Pacific of course had learned this fact by the time of the KRSG litigation.  But it was not until much more recently, in the Fox River Litigation described below, that facts came to light that will establish that NCR is liable in this case as an "arranger" under CERCLA.

**The Fox River Litigation.**  Since 2008, Georgia-Pacific has been involved as a defendant in pending litigation over PCB contamination of the Fox River in Wisconsin.  In that case (the "Fox River Litigation"), NCR – as successor to operations on the Fox that had recycled NCR CCP, and thus contaminated the Fox with PCBs – attempted to obtain contribution from *other* recyclers of NCR CCP on the Fox, including Georgia-Pacific.[5]

---

[2] *Id.*, 107 F.Supp.2d. at 827; *see also Kalamazoo River Study Group v. Rockwell Int'l*, 3 F.Supp.2d 799, 802 (W.D. Mich. 1998) (recycling of NCR carbonless copy paper was "a major source of PCBs" at the Kalamazoo River Superfund Site).

[3] 107 F.Supp.2d at 840.

[4] 3 F.Supp.2d at 802.

[5] *See Appleton Papers Inc. and NCR Corp. v. George A. Whiting Paper Co.*, 2009 WL 5064049 (E.D. Wisc. 2009) (Griesbach, J.) (copy attached as Exhibit A).

Discovery in that case showed that contrary to NCR's claims, by the late 1960s NCR had access to data suggesting an appreciable risk of "serious and long-lasting environmental damage resulting from the production and recycling of NCR paper."[6] Paper recyclers such as Georgia-Pacific, on the other hand, were kept in the dark.[7] For that and other reasons, Judge Griesbach entered summary judgment against NCR on its contribution claims, finding that the equities "overwhelmingly" favored Georgia-Pacific and the other defendants.[8]

Recent discovery in the Fox River Litigation also showed – again, contrary to NCR's claims – that pre-consumer waste NCR CCP had gone to recyclers on the Kalamazoo River and had done so under circumstances rendering NCR liable as an "arranger" under CERCLA. Judge Griesbach is currently addressing a similar "arranger" question in connection with NCR's waste-handling practices in the Fox River region. He has described a legal standard for determining whether NCR is liable as an arranger in that case,[9] has scheduled a trial on the issue for February 2012, and has already noted that it does not require a "stretch" to conclude that NCR, a sophisticated company, had the requisite knowledge to be liable under CERCLA as an "arranger."[10]

---

[6] 2009 WL 5064049 at *14. As Judge Griesbach noted, NCR's "approach in the 1960s was to worry about publicity and wait for the 'second shoe' to drop." *Id.*

[7] *Id.* at *14-15 (no evidence that Defendants even knew NCR paper contained PCBs during the production period, much less that they were aware of the risks to the environment; "…I will wholly reject [NCR's] unsupported claims that any of the Defendants possessed meaningful knowledge of the risks of recycling PCBs during the production period.")

[8] *Id.* at *16, 25.

[9] *Appleton Papers Inc. and NCR Corp. v. George A. Whiting Paper Co.*, 2011 WL 806411 at *5 (E.D. Wisc. 2011) (Griesbach, J.) (copy attached as Exhibit B).

[10] *See* 2009 WL 5064049 at *5 n.15.

In the wake of these discoveries, Georgia-Pacific filed this lawsuit in the Eastern District of Wisconsin – where the Fox River Litigation, with its closely related issues, was pending. Judge Griesbach determined that the case was better suited to the Western District of Michigan and transferred the matter here.

Georgia-Pacific was not the only one to take notice of the newly discovered evidence regarding NCR. On November 24, 2010, decades after investigation of the Kalamazoo PCB contamination began, the EPA gave notice to NCR that NCR may be liable for that contamination. The EPA also gave a similar notice to IP, in light of recently discovered evidence that IP had owned and operated the Bryant Mill in Kalamazoo, a known source of PCB contamination. Both notices are attached to the Complaint filed in this case.

Proceedings to date in this matter have included (a) NCR's motion to transfer venue, (b) discovery directed to third parties, and (c) IP's still-pending motion to dismiss one of Georgia-Pacific's claims, brought under Section 107 of CERCLA.

## II.     GROUNDS FOR CONVENING STATUS CONFERENCE

In light of the procedural context and subject matter of this case, a status conference would materially advance the efficient litigation of the dispute. The Court should take that opportunity to address:

- The extent to which discovery and litigation regarding NCR's status as an "arranger" under CERCLA should be coordinated with proceedings in the Fox River Litigation, where that same issue is currently a subject of discovery, with a pending trial date.

- A schedule for re-briefing of IP's pending motion to dismiss Georgia-Pacific's Section 107 claim. IP's motion was briefed in light of rulings made within the Seventh Circuit. The Sixth Circuit, however, has established standards that were not discussed in IP's motion papers, and that differ materially from those discussed in the pending motion papers.

- Whether litigation and discovery in this case should, as in most CERCLA cases, be conducted in multiple parts – (1) a liability phase, to determine whether NCR and IP are liable under CERCLA; (2) an "allocation" phase to determine the share of costs

that NCR and IP should pay toward past and future costs at the Site; and (3) a cost-recovery stage (which also could be conducted during the "allocation" phase) in which the court determines which of the past costs claimed by Georgia-Pacific are recoverable under CERCLA.

- Establishing deadlines for amending the Complaint to add additional defendants and for filing third-party complaints, if any.

- Any other issues identified by counsel for the Defendants that are appropriate for discussion at this stage.

Accordingly, Georgia-Pacific respectfully requests that the Court convene a status conference to be attended by counsel for all parties.  Georgia-Pacific will confer with defense counsel in advance to identify agenda items and matters on which the parties can agree.

GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC

BY:

s/ Peter A. Smit
_____
Peter A. Smit (P27886)
Varnum LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6000

*Admission to be Requested:*

Joseph C. Kearfott
Douglas M. Garrou
George P. Sibley, III
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219-4074
(804) 788-8200

Jeffrey N. Martin
Djordje Petkoski
Hunton & Williams LLP

1900 K Street, N.W.
Washington, D.C.  20006
(202) 955-1500

Kathy Robb
Hunton & Williams LLP
200 Park Avenue, 52nd Floor
New York, New York  10166-0005
(212) 309-1000

Jan M. Conlin
Tara D. Falsani
Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
(612) 349-8500

29073.000396 EMF_US 35631839v3

**<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that on May 20, 2011, I electronically filed a true and correct copy of the foregoing using the Court's ECF System, which will send notification of such filing by operation of the Court's electronic systems to all parties. I further certify that I caused a courtesy copy of the foregoing to be sent to defense counsel via e-mail.

           <u>s/Peter A. Smit</u>_____

29073.000396 EMF_US 35630613v14