**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GEORGIA-PACIFIC CONSUMER )
PRODUCTS LP, )
FORT JAMES CORPORATION, and )
GEORGIA-PACIFIC LLC, )
                     )
         Plaintiffs, )
         v. )         No. 11-cv-00483
                     )
NCR CORPORATION, )         Judge Robert J. Jonker
INTERNATIONAL PAPER CO., and )
WEYERHAEUSER COMPANY, )
                     )
         Defendants. )

---

**DEFENDANT NCR CORPORATION'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO MODIFY THE JUNE 28, 2011 CASE
MANAGEMENT ORDER AND EXTEND FACT DISCOVERY**

---

**EXPEDITED CONSIDERATION REQUESTED**

---

Defendant NCR Corporation ("NCR") respectfully submits this memorandum in support of its motion to modify the June 28, 2011 Case Management Order to extend the current fact discovery period by 90 days.[1]  NCR further respectfully requests expedited review of this motion.  As fact discovery is currently set to end on March 30, 2012, NCR's need for resolution of this motion is significant.

## PRELIMINARY STATEMENT

Georgia-Pacific ("GP") began this lawsuit with access to a massive reservoir of information, generated during its previous years-long *KRSG* lawsuit and a series of related insurance litigations, concerning PCB contamination of the same Superfund site at issue here.  The information contained in the records of those litigations could only be accumulated through years of intensive discovery.  Rather than engage in that kind of investigation, NCR agreed to a relatively swift schedule for Phase I of this litigation, in reliance on GP's obligation to produce the *KRSG* record.  Notwithstanding NCR's early requests, however, GP did not begin to produce the most critical portions of these records—including hundreds of deposition transcripts—until January 2012.  At the same time, GP vigorously increased its own discovery demands on NCR, by asking for more depositions in the beginning of 2012 than it had in the entire previous year, serving new interrogatories and requests for documents, and moving this Court to reopen its Rule 30(b)(6) deposition of NCR.  At the same time, GP has refused to provide NCR with relevant, discoverable and requested information about potential witnesses with whom it has communicated about this case, and likely has paid.  And, as GP knew, its recent

---

[1] Co-Defendant International Paper Company ("IP") supports NCR's request to extend fact discovery by 90 days.  Co-Defendant Weyerhaeuser Company ("Weyerhaeuser") takes no position on the request.  Georgia-Pacific opposes the request.

discovery activity occurred just when NCR's litigation team was preparing for an imminent trial between these same parties (and others) concerning remediation of another Superfund site, the Lower Fox River in Wisconsin. That trial, *Appleton Papers Inc. v. George A Whiting Paper Company* ("*Whiting*"), 2:08-CV-00016-WCG (E.D. Wis.), begins February 21.

NCR has thus been forced to wait months for documents it needs to understand this case, some of which it still does not have. Yet now, in the time remaining for fact discovery, which is set to close March 30, GP expects NCR to digest all this new information, engage in focused depositions and discovery, provide GP several new depositions and responses to new discovery requests, and prepare for the imminent trial between these same parties in Wisconsin. Additionally, in light of possible new claims by Weyerhaeuser, IP and Mead Corporation ("Mead"), including a new direct claim by Weyerhaeuser against NCR for response costs, NCR must ascertain whether additional discovery is necessary to support claims by, or against, it. Because NCR cannot accomplish these tasks in the time now remaining, it respectfully asks this Court for a 90-day extension of the period to conduct fact discovery.

## BACKGROUND

This action is a far-reaching CERCLA litigation that, though focusing on PCB-related contamination at the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site ("the Site"), calls for a factual inquiry that is staggering in temporal and geographical scope. GP's allegations concern the alleged movement, from 1953 to 1971, of carbonless copy paper ("CCP") broke and trim from multiple alleged facilities across the Midwest to various alleged recycling mills at the Site, through various alleged

recycled paper brokers and shippers.[2]  Dozens of entities allegedly played a role, and discovery conducted without a base of knowledge would require significant time to investigate each of them.  Fortunately, many of these factual issues have already been explored in a litigation from 17 years ago, concerning the same contamination of this same Superfund site, and brought by one of the same parties, GP.  That lawsuit, *Kalamazoo River Study Group v. Rockwell International* ("*KRSG*"), 95-CIV-000838 (RHB) (W.D. Mich.), was an effort by GP and three other paper companies to obtain contribution and response costs from entities alleged to have contributed to the PCB contamination of the Site.  In addition to the *KRSG* litigation, which took eight years to resolve, a series of related insurance litigations generated records covering much of the same ground.  NCR, which does not have any facilities near the Kalamazoo River, was never a party, or even a witness, to these prior litigations.

The *KRSG* record alone contains hundreds of thousands of documents that NCR believes will form a valuable base of knowledge for this lawsuit, for the liability phase of the *KRSG* litigation focused on establishing the source of PCBs found at the Site.  That issue may, in turn, have required a factual investigation of entities that possessed materials containing PCBs; how those materials were shipped and handled; who shipped and handled them; how they were processed; and how PCBs resulting from such processing found their way into the Site.  The record also contains hundreds of depositions, including depositions of employees of Site facilities where GP alleges that CCP broke was recycled, and thousands of pages of pleadings, requests for admissions

---

[2] As explained in NCR's answer to GP's first amended complaint, CCP "broke" and "trim" are valuable products generated in the production of CCP products (such as business forms), capable of being sold for value.  (Dkt. No. 90 at 2.)

and responses, interrogatories, and even briefs.  These materials are critical for NCR to understand the mass of evidential documents produced and to conduct more targeted discovery, and are likely critical to the resolution of various factual disputes in the instant action.

At the time of this Court's Rule 16 conference last June, both GP and NCR were aware of the importance of the *KRSG* litigation and related litigation records. As a party to the *KRSG* litigation, GP had access to that record for years.  Further (as NCR would learn during one of the depositions in this case), GP investigated this matter for months before filing its initial complaint:  GP hired a former employee, Leon Martin, to gather evidence from former employees for six months prior to the filing of the complaint; and GP obtained affidavits from individuals who gave depositions in the *KRSG* litigation and insurance litigations that it used to underpin the allegations in the complaint.  As a party to the *KRSG* litigation, and having spent significant time and effort assembling information to build this case, GP knew the importance of the *KRSG* and related litigation records, was in a position to gather them together prior to filing its complaint, and should have been prepared to produce them quickly.

Based on this anticipated information, NCR agreed to a discovery deadline of March 30, 2012, which created a relatively swift discovery period, in light of the factual issues in Phase I of this case.  (Dkt. No. 78.)  That deadline was adopted by this Court in its Case Management Order.  (Dkt. No. 83.)  NCR then discharged its obligation to make a timely request for these documents by asking GP for them in August 2011. Declaration of Darin P. McAtee in Support of NCR's Motion to Modify the June 28, 2011 Case Management Order and Extend Fact Discovery ("McAtee Decl."), Ex. 1.  In

September 2011, GP agreed to produce these documents, McAtee Decl., Ex. 2, and made an initial production of some 83,000 pages of documents in October and November 2011. GP did not, however, produce (i) deposition transcripts, (ii) pleadings and other discovery documents, (iii) briefing, (iv) other evidential documents produced during the *KRSG* litigation, or (v) documents from the attendant insurance litigations that bore upon the issues relevant here.

Several months then passed, during which time GP failed to produce documents responsive to these same categories.[3] Thus, on December 12, 2011, NCR wrote to GP and reiterated its request for a complete production of documents from the *KRSG* litigation. McAtee Decl., Ex. 4. Despite this request, substantial amounts of requested documents still had not been produced when the parties held a meet-and-confer telephone call on January 18, 2012.

NCR's repeated requests notwithstanding, GP did not begin to produce critical portions of the *KRSG* and related records until January, which corresponded to expert discovery and final trial preparation in *Whiting*. On January 10, GP produced 30,000 pages of pleadings from the *KRSG* litigation (and two boxes' worth of documents responsive to a request for business records). On January 26—two weeks ago—GP produced 200 deposition transcripts from these litigations. (GP claimed that many of the transcripts in this second production were duplicative. NCR's own review, however, shows that most of these depositions had not previously been produced.) On February 2,

---

[3] GP did produce a substantial volume of documents responding to some of NCR's requests—by its own count, some 500,000 pages of documents. McAtee Decl., Ex. 3. Critically, however, GP produced none of the pleadings and none of the deposition transcripts from the *KRSG* litigation, and still has not produced any communications with any potential witnesses. NCR needs these documents to identify whom it needs to depose and what topics must explored in depositions.

GP produced 43 bankers' boxes of documents, containing an uncertain number of documents from the *KRSG* litigation. And with mere weeks left in the current fact discovery period, GP, by its own acknowledgment, still has not completed production of these important records. *See* McAtee Decl., Exs. 3, 4, 5.

In addition to these late productions, GP has refused to comply with NCR's requests for documents concerning potential witnesses. NCR requested, and GP agreed to provide, documents such as non-privileged communications with third parties whom GP could potentially use as witnesses. McAtee Decl., Ex. 2. In December, GP noticed depositions of two such individuals, but claimed to have no obligation to produce communications with them when asked to do so by NCR. At the parties' subsequent meet-and-confer telephone call of January 18, GP did not deny its obligation to disclose such documents, but nevertheless has taken the position that it will produce responsive documents only after NCR has noticed depositions of given individuals. McAtee Decl., Ex. 5.

Simultaneously with its late production of these critical records, GP has significantly increased its own efforts to obtain discovery from NCR. In the year after filing its initial complaint in December 2010, GP took six depositions, none of which were of NCR employees (and several of whom, as NCR later learned, had been deposed in the prior litigations). By contrast, in 2012, GP has taken or sought depositions of nine individuals, including seven former NCR employees. GP has also recently served NCR with second and third requests for documents, and just days ago moved this Court to compel NCR to reopen its Rule 30(b)(6) deposition, which was taken in January. (Dkt. No. 129.) These recent efforts have come just a few weeks before GP and NCR

commence trial in *Whiting*, in which GP will seek to establish its right to contribution and response costs from NCR for remediation of OU1 of the Lower Fox River Superfund site. As GP is aware, the same counsel from Cravath and Sidley Austin represent NCR in both actions. In light of a conflict of interest, GP has separate counsel for the two actions.

Beyond the issues with GP, and as the Court is aware, Weyerhaeuser has recently sought to add a new party, Mead Corporation ("Mead"), to this lawsuit. Weyerhaeuser intends to assert new claims, cross-claims, and counterclaims against Mead and the existing parties, including a direct claim against NCR "to recover the costs that Weyerhaeuser has incurred and will incur remediating the Site". (Dkt. No. 124.) IP also intends claims to assert against Mead. (Dkt. No. 134.) If added, Mead will be the second new party to this litigation since the Rule 16 conference (the other being Weyerhaeuser), and its addition will increase the amount of claims between the parties. Additional time to conduct fact discovery is necessary to allow NCR to ascertain any new claims and defenses it must contemplate, and to take appropriate discovery for them. Further, given due process concerns, no further depositions should be taken in this case until Mead is added and can be represented at them.

In light of these circumstances, NCR respectfully requests that this Court modify the current Case Management Order and extend the current fact discovery period by 90 days. Doing so will enable NCR to review the discovery it has recently received and the production by GP that is forthcoming, and conduct its needed discovery.

## ARGUMENT

Federal Rule of Civil Procedure 16(b)(4) provides this Court with discretion to modify its scheduling order "for good cause shown". When considering a

motion to modify the scheduling order, this Court considers whether the moving party cannot meet existing deadlines despite diligent efforts to do so, and whether the opposing party "will suffer prejudice by virtue of the amendment". *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). Amendment is appropriate when "the modification is necessitated by the acts of the opposing party or the opponent's failure to act". 6A Wright & Miller, Federal Practice & Procedure § 1522.2 (3d ed. 2011). Under the circumstances presented here, we respectfully submit that NCR's request should be granted.

NCR has, to the best of its ability, diligently pursued an efficient course of discovery in this case. Rather than engage in years of protracted investigation and discovery, NCR agreed to a short discovery period in reliance on the existence of the records from the *KRSG* and related litigations and GP's access to them. Timely production of these records would have given NCR needed background of the facts of this case and critical insight into its own discovery needs. NCR thus requested these documents from GP within weeks of this Court's case management conference and order and fully expected GP to produce them promptly. GP, however, was unable or unwilling to produce critical portions of these records for six months, including more than 250 depositions and 30,000 pages of pleadings.[4] As a party to the *KRSG* litigation, and having investigated the matter for months prior to filing suit, GP knew these documents would be requested and could well have made a more timely production. Its failure to do

---

[4] In its recent letter regarding this extension request, GP complained that NCR has not yet noticed any depositions in this case, *see* McAtee Decl., Ex. 3, but NCR is entitled to receive critical documents like prior deposition transcripts before it commences taking depositions. GP has certainly relied on these materials in its own depositions, a number of which have been of individuals deposed in the prior litigations.

so has frustrated NCR's effort to conduct its own investigation and defend itself in the agreed-upon time period.

For its own part, GP will suffer no prejudice from a 90-day extension of fact discovery. GP first sought contribution and response costs for remediation of the Site in 1995, when it joined in the *KRSG* litigation, then waited 15 years, until December 2010, to seek the same relief from NCR.[5] Having waited a decade and a half to bring this case, GP cannot now seriously complain of a three-month extension of discovery. Indeed, in his letter opposing NCR's initial overture for a compromise on an extension, counsel for GP did not suggest that extending fact discovery would prejudice GP. *See* McAtee Decl., Ex 3.

The lack of prejudice to GP is further evidenced by the fact that much of this delay has been of its own making. As explained, GP waited more than six months to produce documents critical for NCR to understand the same material, that GP has had access to for years. GP also has declined to produce requested documents concerning communications with potential witnesses—in all likelihood, individuals GP has identified from the prior litigations—whom NCR would well want to depose. Simultaneously, GP has requested a rash of new depositions, which must now await the joinder of Mead; served new requests for documents; and sought to reopen a Rule 30(b)(6) deposition of NCR that lasted a full day, on the baseless ground that NCR did not produce its attorney work-product prior to the deposition. And as GP is well aware, its productions and requests have come right when NCR's counsel has been in final preparations for the

---

[5] As the Court is aware, this lawsuit was first filed on December 3, 2010, in the United States District Court for the Eastern District of Wisconsin. *See Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 1:10-CV-1087-WCG (W.D. Wis.). On May 10, 2011, that Court granted NCR's motion to transfer the case here. (*Id.*, Dkt. No. 45.)

*Whiting* trial, in which GP also has alleged remediation claims against NCR. In light of these circumstances, NCR cannot accomplish its discovery goals in the time now remaining for fact discovery.

With the benefit of an additional 90 days, however, NCR should be able to accomplish the tasks necessary to preparing itself for trial in Phase I of this lawsuit. Review of the pleadings will make clear which issues were central to the prior litigations, which will in turn show NCR what aspects of those litigations overlap with the factual issues here. Review of the prior discovery documents will demonstrate which facts were admitted by prior parties, including GP, and what categories of documents exist in the records NCR requested. Review of the nearly 300 deposition transcripts produced thus far will identify individuals with personal knowledge of a wide range of issues, several of whom NCR may want to depose (particularly those individuals with whom GP has communicated about this litigation). And in light of Weyerhaeuser's new claim against NCR, the prospect of a new party, Mead, and a new layer of claims, counterclaims, and cross-claims, NCR can use this requested time to address any new discovery needs. In short, the requested 90-day extension will enable NCR to prepare itself effectively for trial, and protect its due process rights.

## CONCLUSION

For the foregoing reasons, NCR respectfully requests that this Court grant its motion to amend the Case Management Order, to extend the period for fact discovery by 90 days.

Dated: February 10, 2012                    Respectfully submitted,


                                            NCR CORPORATION

                                            /s/ Darin P. McAtee_____
                                            *Counsel for NCR Corporation*

                                            CRAVATH, SWAINE & MOORE LLP
                                            Evan R. Chesler
                                            Dave R. Marriott
                                            Darin P. McAtee
                                            Worldwide Plaza, 825 Eighth Avenue
                                            New York, New York 10019
                                            Phone: (212) 474-1000
                                            Fax: (212) 474-3700
                                            dmcatee@cravath.com

                                            SIDLEY AUSTIN LLP
                                            Evan B. Westerfield
                                            One South Dearborn Street
                                            Chicago, Illinois 60603
                                            Phone: (312) 853-7000
                                            Fax: (312) 853-7036

                                            MARTEN LAW PLLC
                                            Linda R. Larson
                                            Bradley M. Marten
                                            1191 Second Avenue, Suite 2200
                                            Seattle, Washington 98101
                                            Phone: (206) 292-2600
                                            Fax: (206) 292-2601

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2012, I electronically filed Defendant NCR

Corporation's Memorandum of Law in Support of its Motion to Modify the June 28, 2011 Case

Management Order and Extend Fact Discovery using the ECF system, which will send

notification of such filing by operation of the Court's electronic systems. Parties may access this

filing via the Court's electronic system.

FURTHERMORE, I hereby certify that on February 10, 2012, I served by

electronic mail a copy of the aforementioned document upon counsel listed below:

Dean P. Laing
O'Neil Cannon Hollman DeJong & Laing SC
111 E Wisconsin Ave - Ste 1400
Milwaukee, WI 53202
Dean.Laing@wilaw.com

R Raymond Rothman
Bingham McCutchen LLP
355 S Grand Ave - 44th Fl
Los Angeles, CA 90071
rick.rothman@bingham.com

Dated: February 10, 2012              NCR CORPORATION

                                      /s/ Darin P. McAtee_____
                                      *Counsel for NCR Corporation*

                                      CRAVATH, SWAINE & MOORE LLP
                                      Evan R. Chesler
                                      Dave R. Marriott
                                      Darin P. McAtee
                                      Worldwide Plaza, 825 Eighth Avenue
                                      New York, New York 10019
                                      Phone: (212) 474-1000
                                      Fax: (212) 474-3700
                                      dmcatee@cravath.com

SIDLEY AUSTIN LLP
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601