**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GEORGIA-PACIFIC CONSUMER** | ) | |
| **PRODUCTS LP,** | ) | |
| **FORT JAMES CORPORATION, and** | ) | |
| **GEORGIA-PACIFIC LLC** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No: 1:11-cv-00483** |
| **v.** | ) | |
| | ) | **Judge Robert J. Jonker** |
| **NCR CORPORATION,** | ) | |
| **INTERNATIONAL PAPER CO.,** | ) | |
| **and WEYERHAEUSER CO.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**GEORGIA-PACIFIC'S OPPOSITION TO NCR'S MOTION**
**TO MODIFY THE JUNE 28, 2011 CASE MANAGEMENT**
**ORDER AND EXTEND FACT DISCOVERY**

**Preliminary Statement**

NCR's first filing in this Court regarding discovery comes shortly before the deadline for completing fact discovery.  NCR asks the Court to grant (on an expedited basis) a 90-day extension of the discovery period.  Yet an extension of that length will almost certainly derail the scheduled trial date, and NCR's arguments in favor of such a drastic change ring hollow.

As a threshold matter, NCR is hardly uninformed regarding the issues to be tried in Phase 1.  The PCB-contaminated Kalamazoo, like the Fox River in Wisconsin, is an "NCR river," and NCR has known about that fact for many years.  *See, e.g., Kalamazoo River Study Group v. Rockwell Intern.*, 107 F. Supp. 2d 817, 827 (W.D. Mich. 2000) ("[T]he effects of discharges from NCR paper are seen clearly everywhere in the river….") ("KRSG Litigation").  Not only did NCR know about the risks of recycling carbonless paper long before Georgia-Pacific, NCR actually acted to *conceal* its responsibility for the PCB problem.  *See Appleton Papers Inc. v.*

*George A. Whiting Paper Co.*, 2009 WL 5064049, *8-*10, *13-*14 (E.D. Wis., Dec. 16, 2009). Most of the key information regarding liability in this case thus resides with NCR. Displaying the inherent informational advantage of the original wrongdoer, NCR has chosen to engage in very little discovery in this case, presumably because NCR already has the majority of the information it needs, and further knows that additional evidence is unlikely to be favorable to its case. There is no other explanation for the fact that NCR has noticed *no* depositions, has served *no* discovery on third-parties, and until very recently (when it served requests upon Weyerhaeuser) had served no requests to admit and no interrogatories.

Accordingly, in addition to being unfounded, NCR's complaints about Georgia-Pacific's discovery disclosures are unconnected to any claims of actual prejudice. In the six months that discovery has been open in this case, NCR has not once identified (and does not now identify) any specific discovery that it has been prevented from conducting as a result of the pace of document production. Tellingly, NCR has yet to file any motion to compel discovery. As will be seen below, NCR's complaints about the long-scheduled trial in the Fox River case, Georgia-Pacific's recent "increased pace" of discovery activity, and Weyerhaeuser's motion to add Mead as a third-party defendant fare no better as justifications for extending discovery.

NCR's actual motive – to delay the trial – is revealed not only by NCR's present motion, but also by NCR's dilatory conduct in *responding* to discovery. For example, NCR's refusal to prepare its 30(b)(6) witness has prompted a pending motion to compel from Georgia-Pacific. NCR also has dragged its feet with respect to scheduling depositions sought by Georgia-Pacific, and has even abandoned any effort to reschedule the deposition of an elderly fact witness represented by NCR's counsel.

Georgia-Pacific will not oppose a brief extension of discovery to accommodate the addition of Mead, *if* that addition actually creates any new Phase 1 issues. But adding Mead may well have no affect on Phase 1 discovery; it is simply too early to tell. What is certain is that there is no reason to delay the trial date set by the Court – a date that was set several months further out than the date proposed by the parties at the Rule 16 conference. Georgia-Pacific asks the Court to deny NCR's motion, and to retain a schedule that preserves (a) a sufficient period for the Court to analyze and decide any dispositive motions, and (b) the existing trial date.

<u>Argument</u>

## I. NCR Has Not Shown Good Cause Justifying an Extension of Time

### A. Georgia-Pacific Has Not Impeded NCR's Ability to Conduct Discovery

NCR claims that it has, "to the best of its ability, diligently pursued an efficient course of discovery in this case." NCR Mem. at 8. But as the attached chart (Exhibit A) reflects, NCR has actually been remarkably inactive, conducting little written discovery, no third-party discovery, and no deposition discovery whatsoever. A comparison with Georgia-Pacific's activity (see chart attached as Exhibit B) provides a useful assessment of the parties' relative discovery efforts.

NCR tries to blame its lack of discovery on Georgia Pacific – arguing that Georgia-Pacific has not produced documents in a timely manner, and has failed to disclose potential witnesses. Both arguments are meritless.

With respect to documents, between August 9 and December 20, 2011, Georgia-Pacific produced over 500,000 pages of documents, including over 400,000 pages of documents from the KRSG Litigation, over 65,000 pages of documents from Arcadis (the KRSG environmental consultant) relevant to the site, and nearly 30,000 pages of other documents collected from

sources identified in Georgia-Pacific's initial disclosures.  Exhibit C (Letter, Kearfott to McAtee) (Feb. 2, 2012).

NCR ignores Georgia-Pacific's 2011 productions, and focuses solely on the 2012 supplementations – without providing any context.  As Georgia-Pacific explained to NCR months ago, in November 2011, KRSG Litigation materials were spread across multiple repositories, mostly archived files of the law firms that represented parties in the KRSG Litigation.  Those files contain high concentrations of privileged material and none of them are well-organized.  Additionally, each of these repositories contains records that are largely duplicative of records in other repositories.  Exhibit D (Letter, Garrou to Defense Counsel) (Nov. 4, 2011).

Georgia-Pacific then worked diligently to make available from these repositories a complete set of pleadings, deposition transcripts, and produced documents.  The process has been laborious, but as Georgia-Pacific has located documents over the past six months, it has produced them.  In spite of these challenges, Georgia Pacific has produced a complete set of pleadings, deposition transcripts, and production documents from the KRSG Litigation, and has accomplished that task nearly two full months before the close of fact discovery.[1]

With respect to witnesses, NCR apparently demands (without any motion to compel) that Georgia-Pacific "open its briefcase" and identify anyone that counsel for Georgia-Pacific has

---

[1] Even for the most recent supplemental production, NCR has thus received essentially the discovery period that it originally asked for with respect to *all* KRSG Litigation materials.  In June 2011, anticipating an initial disclosure of all KRSG Litigation materials, NCR proposed that all discovery regarding what it called "Phase 1A" issues should be completed in just over two months.  Joint Status Report ("JSR") at 17 (June 22, 2011) (Dkt. Entry No. 78).  To the extent KRSG Litigation materials are relevant at all (many are not), they would be relevant to what NCR defined as Phase 1A, *i.e.*, "(1) whether NCR sold, directly or through brokers, any CCP broke prior to 1972 to any mill located at the Site; and (2) whether NCR controlled (or is otherwise responsible for) the broke sales prior to 1972 by Mead."  *Id.* at 12.

contacted during the course of its factual investigation in this case, producing all communications with those individuals.[2] NCR claims that it needs this information "to identify whom it needs to depose and what topics must be explored in depositions." NCR Resp. at 5 n.3. Yet NCR plainly has no interest in such disclosures. Georgia-Pacific produced exhaustive and substantive initial disclosures that identified 17 key individuals likely to have discoverable information, and thus far NCR has sought to depose exactly zero of those individuals.[3]

Nor has NCR identified any discovery that has been impeded by Georgia-Pacific's pace of production. This silence speaks volumes. There can be little doubt that NCR, simultaneously represented by two of the largest law firms in the country, would promptly have moved to compel production, prior to now, if it felt prejudiced in the *slightest* by the course of Georgia-Pacific's disclosures. It has not done so.

Finally, NCR fails to note that many of the most relevant documents relating to the Kalamazoo River site are available from publicly available sources, including U.S. EPA and the Michigan Department of Natural Resources. NCR has apparently requested those materials, and has produced numerous documents it apparently received in response to those requests. The information in those materials has not prompted NCR to take a single deposition.

**B.      The Fox River Trial Was on the Docket When This Court Entered Its Case Management Order**

NCR's complaints about the impact of the Fox River trial on discovery in this case are particularly ill-founded. First, recall that Georgia-Pacific originally filed this case in the Eastern

---

[2] Georgia-Pacific has objected to such requests as seeking privileged attorney work product, and the parties are attempting to achieve a resolution to that dispute. If that dispute cannot be resolved, Georgia-Pacific will address at an appropriate time the substance of NCR's position.

[3] Georgia-Pacific, for its own part, noticed and took the depositions of five of these individuals to perpetuate their testimony.

District of Wisconsin so that it could be coordinated with the Fox River case, which presents many similar issues.  NCR moved to have that case transferred here.  NCR's current desire to coordinate these two proceedings is, therefore, entitled to little weight.  Second, the Fox River trial date was acknowledged in the JSR, JSR at 26, and was known to all concerned when the Court issued its case management order.  Exhibit E (Tr. of 6/27/2011 Hearing at 1, 19).

Georgia-Pacific, also a party in the Fox River case, has been able to plan around that trial.  There is no reason NCR cannot do so as well.  With proper planning, NCR was more than capable of completing discovery in this case while planning for and conducting the trial in the Fox River case.

### C.  Any Increase in the Pace of Discovery Is the Result of NCR's Own Dilatory Tactics

NCR also complains that Georgia-Pacific has "significantly increased its own efforts to obtain discovery from NCR."  NCR Mem. at 6.  Holding to one side whether a party's legitimate discovery efforts could ever be grounds for extending a discovery deadline, any "increase" in Georgia-Pacific's efforts at this stage is solely a function of NCR's own intransigence in *responding* to discovery.

As Georgia-Pacific has explained in a recent motion, NCR chose to thwart the 30(b)(6) process by producing an unprepared in-house attorney as its designee, and even refused to produce the documents used by that witness to refresh the corporation's recollection on the noticed topics.  *See* Dkt. Entry No. 129.  NCR's failure to prepare its 30(b)(6) designee was not the result of any delayed discovery from Georgia-Pacific.

Meanwhile, rather than moving for a stay of discovery, and awaiting a ruling on that request, NCR has unilaterally imposed one.  Specifically, NCR has suspended its efforts (if any) to obtain, at Georgia-Pacific's request, deposition dates for a number of witnesses whom NCR's

lawyers claim to represent.  NCR has even refused to *reschedule* the deposition of Daniel

McIntosh, an elderly witness represented by NCR's attorneys.  Georgia-Pacific has been seeking

a deposition date for Mr. McIntosh since January 17, 2012; his February 3 deposition was called

off *at NCR's request,* and now NCR refuses to reschedule it.  Simply put, NCR unapologetically

refuses to conduct further depositions in this case, of Mr. McIntosh or anyone else.  Exhibit F (E-

mail, Roth to Garrou) (February 15, 2012) (NCR is "not going to schedule any further

depositions until after Mead's status has been clarified"); NCR Mem. at 7.

> **D.     It Is Premature to Assess Whether the Addition of Mead Will Impact Discovery in Phase 1**

NCR also purports to justify its extension based on Weyerhaeuser's motion to amend its

answer to assert a third-party claim against Mead Corporation and additional CERCLA cost

recovery claims against existing parties.  NCR argues that these developments will require

"[a]dditional time to conduct fact discovery . . . to allow NCR to ascertain any new claims and

defenses it must contemplate, and to take appropriate discovery for them."  NCR Mem. at 7.

NCR exaggerates the impact of Weyerhaeuser's proposed amendments.  Weyerhaeuser will be

adding CERCLA cost recovery claims that are indistinguishable, as they relate to Phase 1

liability issues, from the claims already in the case.  NCR needs no additional discovery or time

to "ascertain new claims and defenses" in response to these claims.

It is likewise unclear whether Mead's addition to the case will have any impact

whatsoever on Phase 1 issues.  For example, as an owner-operator of a paper mill on the

Kalamazoo, Mead, like Georgia-Pacific, may recognize its basic liability under CERCLA and

not contest Phase 1 issues.  Until Mead has been joined, deciding whether the fact discovery

cutoff should be extended to accommodate Mead is premature.

## II.    Georgia-Pacific and the Court Will Be Prejudiced by NCR's Proposed Extension

NCR's requested three-month extension will prejudice both Georgia-Pacific and the Court. As a preliminary matter, NCR does not explain how its proposed extension will impact the other deadlines in the case. NCR apparently expects that all deadlines through the filing of dispositive motions will be extended by 90 days.

Such an approach would, however, accommodate NCR's requested extension at the expense of the pre-trial time the Court has presumably set aside to consider dispositive motions.[4] Because the filing of substantive dispositive motions is a near certainty, NCR's motion thus effectively proposes a continuation of the current trial date, which would prejudice Georgia-Pacific. As was acknowledged at the June 27, 2011 conference, many of the Phase 1 issues will hinge on testimony of witnesses who are very advanced in years. Exhibit E, 6/27/2011 Tr. at 24-25. Any delay of the trial date increases the risk that these witnesses will be unable to offer live testimony.

### Conclusion

NCR's motion is based on the inaccurate claim that Georgia-Pacific has somehow prevented NCR from taking discovery. Tellingly, NCR has identified no discovery that it wishes to take that has been foreclosed as a result of Georgia-Pacific's alleged delay. NCR has in fact had ample opportunity to take discovery and has simply chosen not to do so. Meanwhile, NCR has combined its own failure to take discovery with a wholly unjustified refusal to conduct deposition discovery sought by Georgia-Pacific. Neither the trial in the Fox River case, any

---

[4] As the Court will recall, in their Joint Status Report, the parties suggested a close of fact discovery on March 30, a dispositive motion deadline of July 27, 2012, and a trial date approximately three months later, in November 2012. JSR at 12, 17, 22. The Court kept the fact discovery and dispositive motion deadlines, but added approximately three months into the schedule after the dispositive motion deadline, setting a trial date of February 19, 2013. Case Management Order at 1 (June 28, 2011) (Dkt. Entry No. 83).

purported uptick in Georgia-Pacific's discovery activity, or Weyerhaeuser's pending motion should have any effect on the scheduling of Phase 1 discovery. NCR's motion should be denied.

Dated: February 17, 2012

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

BY:        /s/ Douglas M. Garrou

Peter A. Smit, Bar No. P 27886
Varnum LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6000

Joseph C. Kearfott
Douglas M. Garrou
George P. Sibley, III
Hunton & Williams LLP
951 East Byrd St.
Richmond, VA 23219
(804) 788-8200

Jeffrey N. Martin
Djordje Petkoski
Hunton & Williams LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 955-1500

Kathy Robb
Hunton & Williams LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0005
(212) 309-1000

Jan M. Conlin
Tara D. Falsani
Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
(612) 349-8500

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2012, I caused to be served by electronic mail a

copy of Plaintiffs' Motion to Compel Production of Documents Used to Prepare Corporate

Designee and Resumption of Deposition of Defendant NCR Corporation upon counsel for each

Defendant, at the following e-mail addresses:

| | |
|---|---|
| Baird, J. Christopher | JCBaird@perkinscoie.com |
| Cermak, John F. | jcermak@bakerlaw.com |
| Chesler, Evan R. | echesler@cravath.com |
| Dozeman, Douglas A. | ddozeman@wnj.com |
| Dunning, Michael | MDunning@perkinscoie.com |
| Fields, Geoffrey A. | gfields@dickinsonwright.com |
| Goldstein, Sandra C. | sgoldstein@cravath.com |
| Ha, Eric W. | eha@sidley.com |
| Inglin, Sonja A. | singlin@bakerlaw.com |
| Laing, Dean P. | Dean.Laing@wilaw.com |
| Larson, Linda R | llarson@martenlaw.com |
| Lavely, Vanessa A. | vlavely@cravath.com |
| MacCurdy, Meline Grace | mmaccurdy@martenlaw.com |
| Marten, Bradley M | bmarten@martenlaw.com |
| McAtee, Darin P. | dmcatee@cravath.com |
| McGaffey, Karen M. | KMcGaffey@perkinscoie.com |
| Meuti, Michael Dominic | mmeuti@bakerlaw.com |
| Nasab, Omid H. | onasab@cravath.com |
| Parker, John Daniel | jparker@bakerlaw.com |
| Schneider, Mark W. | MWSchneider@perkinscoie.com |
| Sobota, Margaret R. | msobota@sidley.com |
| Watson, Scott Michael | swatson@wnj.com |
| Westerfield, Evan B. | evanwesterfield@sidley.com |

**GEORGIA-PACIFIC CONSUMER
PRODUCTS, LP., FORT JAMES
CORPORATION, and GEORGIA-PACIFIC
LLC**

BY:        /s/ Douglas M. Garrou

Peter A. Smit, Bar No. P 27886
Varnum LLP
Bridgewater Place, P.O. Box 352

Grand Rapids, MI 49501
(616) 336-6000

Joseph C. Kearfott
Douglas M. Garrou
George P. Sibley, III
Hunton & Williams LLP
951 East Byrd St.
Richmond, VA 23219
(804) 788-8200

Jeffrey N. Martin
Djordje Petkoski
Hunton & Williams LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 955-1500

Kathy Robb
Hunton & Williams LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0005
(212) 309-1000

Jan M. Conlin
Tara D. Falsani
Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
(612) 349-8500

29073.000396 EMF_US 38988555v11