# EXHIBIT D



HUNTON & WILLIAMS LLP
RIVERFRONT PLAZA, EAST TOWER
951 EAST BYRD STREET
RICHMOND, VIRGINIA 23219-4074

TEL 804 • 788 • 8200
FAX 804 • 788 • 8218

DIRECT DIAL: 804 • 788 • 8355
EMAIL: DGarrou@Hunton.com

November 4, 2011

FILE NO: 29073.000396

**Via E-Mail**

**To: Defense Counsel**

Re: *Georgia-Pacific, et al. v. NCR, et al.* -- Document Production

Dear Counsel:

In preparing its case, Georgia-Pacific has identified a number of repositories of potentially relevant documents. Some of these repositories pose special challenges for the discovery process, because they contain large concentrations of material that are privileged, and very low concentrations of potentially discoverable material that is not also available from other sources. Accordingly, the burden of producing from these sources is extremely high, and the discovery benefit is extremely low. (It appears, based on NCR's responses and objections to Georgia-Pacific's document requests, that NCR also has encountered many of these same problems.)

To avoid unnecessary motions practice in the future, we would like to reach agreement on a protocol for handling these materials that will fairly address the parties' legitimate discovery needs and their interest in protecting privileged materials. In this letter, we describe the repositories of potentially relevant documents we have identified thus far and any special issues that a given repository presents. We invite each of you to do the same so that all parties can make an informed decision on a protocol that strikes the right balance.

**I. Categories of Documents**

The long history of proceedings in connection with the Kalamazoo River Superfund Site – and litigation of certain issues in connection with the Fox River in Wisconsin – have generated several categories of documents that may, or may not, contain significant numbers of documents that you would consider to be relevant to Phase I of our pending litigation. Those categories are:

November 4, 2011
Page 2

### A. The KRSG Litigation Materials

As you know, Georgia-Pacific and others (collectively the "Kalamazoo River Study Group," or "KRSG") engaged in previous Superfund Litigation related to the Kalamazoo River. *See Kalamazoo River Study Group v. Rockwell Int'l* (Case No. 1:95-CV-838, W.D. Mich.).

#### 1. Production Documents

After considerable effort, and with one exception, Georgia-Pacific has gathered what it believes to be the most comprehensive set available of the documents produced among the parties to the KRSG litigation. With respect to documents produced by plaintiffs, those materials were maintained largely or exclusively by KRSG's counsel (Sonnenschein, now SNR Denton) in paper form. Those plaintiff-produced materials have since been converted to images by NCR. With respect to documents produced by the KRSG defendants, and by Arcadis (consultants to the KRSG plaintiffs), Georgia-Pacific was able to obtain imaged documents associated with a Concordance load file.

The one exception relates to documents produced by Allied. We are not certain that the documents we have produced to date contain all documents produced by Allied in the KRSG litigation. However, we have been in communication with Allied's former counsel, Drinker Biddle, and are working to obtain a complete set of such documents. We believe these documents will contain materials and depositions from other cases, including its insurance coverage litigation.

The KRSG production document images have now been produced to NCR, subject to a "clawback" for privileged materials. Georgia-Pacific also has recently produced them to Weyerhaeuser and International Paper.

#### 2. Other Materials

Other KRSG materials that may be potentially responsive or relevant include discovery pleadings and briefs. Georgia-Pacific is working with SNR Denton, and with counsel formerly associated with Sonnenschein/SNR Denton, to obtain these materials for production.

#### 3. Locations of the KRSG Litigation materials

Today, KRSG Litigation materials (other than the production images described above) exist in several different locations, most of which are the law offices of counsel who represented one (or more) of the parties in the litigation.

The following collections contain, or are likely to contain, KRSG Litigation materials:

- McGuire Woods legal files currently located in Georgia-Pacific offsite storage.
- Georgia-Pacific legal files located in Georgia-Pacific offsite storage.
- Allied materials in the possession of the Varnum firm in Michigan.

November 4, 2011
Page 3

- Allied materials maintained by the Drinker Biddle firm.
- Plainwell materials in the possession of Hunton & Williams in its New York office.
- Sonnenschein (SNR Denton) files associated with that firm's representation of the KRSG Plaintiffs.

To Georgia-Pacific's knowledge, each of these collections includes substantial amounts of attorney-client privileged and work-product materials. The Allied files may also contain certain materials from Allied's *Kelley* and *Lumberman's* litigation.

Georgia-Pacific also is in possession of certain paper documents formerly maintained by Arcadis and related to the KRSG litigation. We are still reviewing these materials, but we believe they came primarily from Georgia-Pacific's Kalamazoo mill, and are largely dated after 1971. Note that Georgia-Pacific has already provided, in imaged form, Arcadis-produced documents from the KRSG Litigation that were obtained from SNR Denton.

Counsel for Georgia-Pacific has obtained from Arcadis electronic versions of reports and other technical documents related to the Site. We believe that many of these documents are duplicative of documents already produced. However, to be safe, we will produce these documents to you with our next production set.

### B. The KRSG Mediation Materials

#### 1. Description

The KRSG plaintiffs also engaged in a lengthy mediation process directed toward apportioning liability among themselves. Most of the documents generated by the participants in connection with the mediation are protected by the mediation privilege (and, in many cases, the attorney-client and/or work-product protections).

Any non-privileged documents in this set are almost certainly duplicative of documents produced in the related KRSG Litigation. But we cannot rule out that the KRSG Mediation Materials contain non-duplicative, non-privileged documents that you would consider to be potentially relevant to Phase I issues.

#### 2. Locations of the KRSG Mediation Materials

KRSG Mediation Materials exist, or are likely to exist, at the following locations:

- McGuire Woods legal files currently located in Georgia-Pacific offsite storage.
- Allied materials in the possession of the Varnum firm in Michigan.
- Allied materials maintained by the Drinker Biddle firm.
- Mediation "repository" materials now in the possession of Hunton & Williams in Richmond (and formerly residing in offsite storage in Atlanta).
- Plainwell materials in the possession of Hunton & Williams in its New York office.

November 4, 2011
Page 4

Note that Sonnenschein (SNR Denton) represented the KRSG as a group in the KRSG Litigation, and thus did not play a role in the KRSG Mediation.

### C. The *Aetna* Materials

Beginning in 1992, Georgia-Pacific, represented by Kilpatrick Stockton among others, engaged in insurance coverage litigation related to the Kalamazoo Site, as well as a number of other sites. Certain legal files related to that case, which include privileged and work-product materials, are still in existence, and are now in Georgia-Pacific's possession (located in the same offsite storage facility that houses the McGuire Woods files described above). Georgia-Pacific is currently investigating whether additional files related to this matter are in the hands of other outside firms.

### D. Georgia-Pacific In-House Materials

As you are aware, Georgia-Pacific has been engaged in cleanup-related activities at the Kalamazoo Site for some time. In connection with those efforts, Georgia-Pacific maintains "live" files of legal and technical personnel, primarily at its headquarters in Atlanta, Georgia.

### E. The Wiggins Teape Documents

As you know, documents obtained from Wiggins Teape in England have been a focus of the parties to the Fox River litigation with respect to various issues. Georgia-Pacific has obtained and produced images of the "Library Set" of microfiche and images of Wiggins Teape microfilm. Our understanding is that NCR has already received these materials in connection with the Fox litigation. We also will produce the "Indexing Database" as a single bates-numbered CD, which will be included in our upcoming production.

As you will recall from my notification e-mail, Appleton Coated LLC also has made available in Arlington, Virginia, certain additional microfiche (the "Post Room Set"). You are free to review those documents during the time remaining to Georgia-Pacific, or to make other arrangements with Appleton Coated. Appleton Coated has recently added two drawers of microfiche to the original collection.

### F. Other Public/Third-Party Materials

As you are aware from items already produced by Georgia-Pacific, Georgia-Pacific has been investigating, and continues to investigate, the availability of documents from public sources that may be relevant to Phase I.

Assuming that other parties agree to do the same with respect to documents they obtain, Georgia-Pacific intends to produce these materials, rather than simply direct opposing parties to the locations in which they can be found.

November 4, 2011
Page 5

### G. NCR Legal Files

Judge Griesbach has determined that, from the late 1960s onward, NCR was aware of certain hazards associated with PCBs in carbonless copy paper. Our expectation would be that, beginning no later than that same time, NCR was advised by its in-house attorneys regarding its liability exposure associated with PCBs. We assume that NCR has also utilized a variety of outside law firms since the 1950s to provide legal advice and guidance regarding PCBs and possible toxicity and environmental issues associated with PCB use in carbonless copy paper or otherwise.

Presumably, like the KRSG Mediation Materials, the NCR Legal Files contain large numbers of privileged and/or work-product documents, yet also may contain unique non-privileged documents relevant to Phase I.

In addition, we expect that NCR has maintained extensive legal files of in-house and/or outside counsel related to its acquisitions of Combined Paper Mills, Inc., and Appleton Coated Paper Company (including NCR's communications with the DOJ regarding Appleton Coated), as well as its divestiture of the carbonless copy paper business to British-American Tobacco Company ("BAT") in 1978, its subsequent litigation and arbitration against Appleton Papers, Inc. and BAT, and its recent litigation against various insurance carriers related to coverage for the Fox River matter. Such files would necessarily contain non-privileged materials.

### H. NCR Dayton History Materials

NCR recently has produced, in the Fox River litigation, a number of materials responsive to Fox River Phase I discovery requests dating back to before Judge Griesbach's summary judgment opinion. Our understanding is that these materials were located by NCR during its review of documents stored in the "Dayton History" NCR archive. Specific materials in that archive also were a focus of Georgia-Pacific's recent document-production requests.

Georgia-Pacific believes that the Dayton History archive is a publicly available document source, and that Georgia-Pacific is entitled to full access to that collection. Our understanding is that NCR declines to provide Georgia-Pacific such access.

### I. Weyerhaeuser In-House Materials

We surmise that Weyerhaeuser, like Georgia-Pacific, has "live" in-house files (and possibly files of outside counsel) related to Weyerhaeuser's cleanup activities at the Kalamazoo Site.

### J. Fox Litigation Materials

Both Georgia-Pacific and NCR, and their outside counsel, are in possession of a large volume of documents that have been produced by various entities in connection with the Fox

November 4, 2011
Page 6

Litigation. To our knowledge, Weyerhaeuser and IP have not yet had complete access to these records, some of which may bear on Phase I issues in our case.

## II. Proposal

To move forward with respect to document discovery, we suggest that each party submit a letter similar to this one, identifying any document collections either in its possession, custody, control, or of which it is aware that pose particular problems for discovery (e.g., high concentrations of privileged or work-product materials).

With that information in hand, we can then convene a conference to identify a protocol for review and access to the various collections and categories.

I look forward to your response.

Sincerely,

Douglas M. Garrou

29073.000396 EMF_US 37663047v9