# EXHIBIT E

```
 1                      UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3     _____

 4     GEORGIA-PACIFIC CONSUMER PRODUCTS
       LP, FORT JAMES CORPORATION, and
 5     GEORGIA-PACIFIC, LLC,

 6                    Plaintiffs,
                                         DOCKET NO. 1:11-CV-483
 7     vs.

 8
       NCR CORPORATION,
 9     INTERNATIONAL PAPER COMPANY, and
       WEYERHAEUSER COMPANY,
10
                    Defendants.
11     _____/

12

13          TRANSCRIPT OF RULE 16 SCHEDULING CONFERENCE

14            BEFORE THE HONORABLE ROBERT J. JONKER

15               UNITED STATES DISTRICT JUDGE

16               GRAND RAPIDS, MICHIGAN

17                   June 27, 2011

18

19     Court Reporter:          Glenda Trexler
                                Official Court Reporter
20                              United States District Court
                                685 Federal Building
21                              110 Michigan Street, N.W.
                                Grand Rapids, Michigan 49503
22

23     Proceedings reported by stenotype, transcript produced by

24     computer-aided transcription.

25
```

1   is a defense that NCR has raised in its answer.  And secondly,
2   was there adequate intent under the Burlington Northern
3   standard for there to be arranger liability?
4          It is simply not accurate to say that we are
5   proposing scorched-earth millions of dollars of discovery on
6   those issues.  Those issues in fact are teed up right now,
7   discovery is going on right now in the Fox River litigation
8   before Judge Griesbach that's scheduled to go to trial in
9   February.  And the evidence that is developed on that issue
10  will apply directly in this case as well.  It is just not the
11  case that is going to somehow unduly extend or prolong or make
12  more expensive the litigation of this case.
13         In short, Your Honor, we think your first instincts
14  are exactly right and that these cases should be tried in a
15  single phase 1 on liability.
16         THE COURT:  Okay.  Anybody else want to be heard on
17  that before we give Mr. McAtee a chance to respond?
18  Mr. Cermak?
19         MR. CERMAK:  We agreed with Georgia-Pacific on this
20  point, Your Honor.  We feel like the liability issues as
21  defined are narrow enough and we don't need to narrow them
22  further, and we support them on that issue.
23         THE COURT:  Okay.  Go ahead, Mr. McAtee.
24         MR. McATEE:  Thank you, Your Honor.  The first
25  reaction I have is I asked counsel for GP to recite that --

1    emulsion process was used at Mead is part of NCR's problem,"
2    and that's going to immediately take us into this question of
3    intent.
4            So I'm having a very hard time thinking that
5    ultimately we're going to have as clean a division of issues as
6    NCR would urge, and so I do think the better course is simply
7    to proceed with a phase 1 liability-oriented discovery motion
8    and trial phase, let all of the issues come up, understanding
9    that that's going to generate some costs and time for
10   everybody, but at least lead in a reasonable process, a
11   reasonable schedule for this sort of thing into some
12   conclusions in the trial court on liability that can guide the
13   parties moving forward.
14           Another related although subsidiary point, I think,
15   is that when we're dealing with events that go back into at
16   least the sixties, maybe earlier, maybe the fifties, we're
17   going to be dealing with a witness base that's dying quite
18   literally.  We have a truck driver who is in his early
19   seventies based on what Georgia-Pacific knows who may have some
20   discoverable information.  I know that NCR would propose to
21   move through both phases quickly, and maybe that can happen,
22   but every time I've tried to divide things up, it always takes
23   longer.  And so I'm concerned that when we have a limited
24   universe of witnesses, some of whom are entering that age where
25   people get sick and die, it's important to try to get all of

1    the information regarding liability issues from the people who
2    are still around within one phase.  So for those reasons I am
3    going to go with the Georgia-Pacific scheduling intention, and
4    I guess International Paper supports that, and reject the NCR
5    proposal.  We can talk about the specific dates in a minute.
6          The only other issue I had seen on that phase 1 was
7    the limitations issue, and I don't remember exactly what it was
8    or who brought it up.  Did somebody bring up a statute of
9    limitations issue?  Go ahead, Mr. McAtee.
10         MR. McATEE:  Thank you, Your Honor.  I think the only
11   disagreement is whether or not I can get discovery in phase 1
12   on statute of limitations issues that may not knock out an
13   entire count or the entire Complaint but could knock out big
14   chunks of their claim.  And the reason I'd like to do that
15   early is again for the same reason:  I think this case becomes
16   more manageable and easier to settle if, you know, since they
17   waited so long and spent some of this money, you know, a long
18   time ago, if we could knock out some big chunks early, ADR
19   becomes a better possibility.  I think that's the only
20   disagreement between us.
21         THE COURT:  All right.
22         MR. KEARFOTT:  I think that is the disagreement,
23   Your Honor.  And our position on this is pretty simple.  We are
24   more than happy to engage in discovery and presumably motions
25   for summary judgment on limitations issues that would go to