# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC, LLC** | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No: 1:11-cv-00483 |
| v. | ) ) ) | Judge Robert J. Jonker |
| **NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO.,** | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR PROTECTIVE
ORDER AS TO RULE 30(b)(6) DEPOSITIONS NOTICED BY
<u>NCR CORPORATION AND INTERNATIONAL PAPER CO.</u>**

**Table of Exhibits**

Exhibit 1:  Defendant NCR Corporation's Notice of 30(b)(6) Deposition of Georgia-Pacific Consumer Productions LP, Fort James Corporation and Georgia-Pacific LLC and Request for Production of Documents (March 14, 2012)

Exhibit 2:  International Paper's Notice of Rule 30(b)(6) Deposition of Plaintiffs Georgia Pacific Consumer Products, et al. (March 13, 2012)

Exhibit 3:  Chart showing discovery propounded by NCR and IP on GP

Exhibit 4:  International Paper's First Set of Requests for Admission to Plaintiffs/Counterdefendants Georgia Pacific, LLC et al. (December 13, 2011)

Exhibit 5:  International Paper's First Set of Interrogatories to Plaintiffs/Counterdefendants Georgia Pacific, LLC et al. (December 13, 2011)

Exhibit 6:  Georgia Pacific's Responses to Defendant International Paper's First Set of Requests for Admission (January 31, 2012)

Exhibit 7:  Georgia Pacific's Responses to Defendant International Paper's First Set of Interrogatories (January 31, 2012)

Exhibit 8:  International Paper's Second Set of Requests for Admission to Plaintiffs/Counter-Defendants Georgia Pacific LLC, et al. (March 1, 2012)

Exhibit 9:  International Paper's Second Set of Interrogatories to Plaintiffs/Counter-Defendants Georgia Pacific LLC, et al. (March 1, 2012)

Exhibit 10:  Defendant NCR Corporation's First Set of Requests for Admission, First Set of Interrogatories and Second Requests for the Production of Documents to Plaintiffs Georgia-Pacific Consumer Products LP, Fort James Corporation, and Georgia-Pacific LLC (February 29, 2012)

**Preliminary Statement**

Defendants NCR Corporation ("NCR") and International Paper Co. ("IP") served exhaustive Rule 30(b)(6) deposition notices on Plaintiffs (collectively, "GP") on March 14 and 13, 2012 respectively. Exs. 1 and 2. These notices called for GP to produce a fully prepared witness or witnesses to address all topics on March 29 and 30. NCR added a request for documents to be produced "reasonably in advance of the deposition."

These depositions should be quashed in their entirety as untimely. They were served only after the Court on March 5 issued its Notice directing the parties to appear at a conference on March 22 and to outline in advance all depositions that had been taken "and who else they intend to depose." Apparently realizing that the Court might not extend the discovery cut-off by 90 days—and that they had no pending deposition notices—both NCR and IP served notices that could and should have been served months ago. They cover a wide range of topics, and there is not remotely sufficient time to prepare a witness or witnesses properly.

In addition, IP's deposition notice in its entirety, and NCR's in certain key respects, do not seek discovery of facts as to which GP has historic knowledge. They instead seek GP's work product—they ask GP to provide a witness to explain how the evidence already produced in discovery demonstrates that NCR and IP are liable. And they seek this information through testimony even though both parties already have served written discovery seeking the very facts on which GP relies to support its contentions.

The Court should enter a protective order and quash these last-minute deposition notices.

**Background**

Discovery opened in this case in July 2011. For more than six months, NCR and IP did practically nothing insofar as discovery against GP is concerned. *See* Ex. 3. NCR served a set of document requests on GP, but it served no interrogatories and it noticed no depositions. IP was

- 1 -

only slightly more diligent.  It served document requests on GP and a set of written discovery in December seeking the factual basis for GP's key contentions.  Exs. 4 and 5.  GP provided full responses to that discovery on January 31, 2012.  Exs. 6 and 7.  IP followed-up with a second round of written discovery on these topics on March 1.  Exs. 8 and 9.  But like NCR, IP noticed no depositions of GP.

On February 10, 2012, NCR moved for a plenary 90-day extension of the discovery cut-off, blaming alleged delays by GP in producing documents and citing the potential joinder of Mead as a third-party defendant.  IP supported that motion.  While that motion was pending, NCR's and IP's discovery efforts remained dormant.  Both waited nearly three weeks to serve a set of requests to admit and contention interrogatories.  NCR waited a month to notice a deposition and unilaterally refused to schedule depositions sought by GP until Mead was added to the case.

Then, on March 13 and 14, 2012, after the Court signaled skepticism about adding Mead to the case at the last minute and extending discovery, IP and NCR each noticed exhaustive Rule 30(b)(6) depositions of GP to take place just over two weeks later, on March 29 and March 30.  Exs. 1 and 2.  The topics in these notices, by and large, do not ask GP to testify as to historic facts within the company's knowledge.  They instead are "contention topics" that ask GP to marshal the company's proof on a range of key issues in the case and assign a designee the task of digesting that information and prepare to be examined on it in less than two weeks.

GP, by contrast, first served a Rule 30(b)(6) Notice on NCR on October 20, 2011.  The deposition notice was limited to NCR's own operations, its knowledge of a contractor's operations (Mead), and responses it had made to state and federal regulators relating to its own operations.  GP noticed the deposition for November 10 as a placeholder date and stated that it would adjust the date and location.  NCR objected to the notice, there was a meet-and-confer, and GP, on November 18, served an amended notice to address at least some of NCR's concerns.  That notice

was for a deposition on January 10, 2012, which GP subsequently pushed back to January 25 at NCR's request. NCR thus had over three months to prepare for the deposition.

### A.     IP's Notice

IP's notice does not ask GP for any information that is within GP's historic knowledge. It instead asks GP to produce a witness to explain the proof GP's counsel have developed showing that paper containing PCBs was recycled at IP's Bryant Mill, and that PCB-containing effluent was discharged from the Bryant Mill into the Kalamazoo River.[1]  Ex. 2 at 4-5. But GP never owned or operated the Bryant Mill. So apart from the proof GP has compiled in this case, it has no corporate knowledge about the Bryant Mill's operations.

### B.     NCR's Notice

NCR's notice presents the same problem. The first nine topics demand that a GP designee explain GP's proof regarding the disposition of NCR carbonless copy paper (CCP) waste (called "broke" or "trim") at all Kalamazoo Mills—including mills that GP never owned or operated—during the relevant period.[2]  Ex. 1 at 3-11. Topic 10 asks for a rundown of all the individuals GP interviewed in putting together its case (a request that improperly invades GP's attorney work product), and Topics 11 and 12 asks for the factual basis for various statements by GP in the Com-

---

[1] Topics 1 and 2 focus on the recycling of CCP broke, topics 3 and 4 on the recycling of other recovered fiber containing PCBs, and topics 5 and 6 on CCP post-consumer waste. Topics 7 and 8 relate generally to the discharge of PCBs in the Bryant Mill waste stream. And topics 9 and 10 are catch-all topics, asking GP to describe its proof as to other IP facilities and any other basis that GP thinks IP should be liable.

[2] Topics 1 through 6 ask for GP's proof regarding volumes of broke generated by NCR coaters Appleton Coated Paper Company, Inc. (Topic 1), Combined Paper Mills, Inc. (Topic 2), and Mead (Topic 3) and by NCR's own facilities at Dayton, OH (Topic 4), Washington Court House, OH (Topic 5), and Viroqua, WI (Topic 6) that were "acquired by any GP Site Facility or any Other Site Facility." The term "Other Site Facility" derives from other discovery propounded by NCR and "shall mean any other Kalamazoo-area facility, other than a GP Site Facility." In other words, mills not owned or operated by GP. . Topics 7 through 9 cover the same ground, asking GP to testify about its proof as that NCR arranged for the disposal of CCP waste from the six identified facilities and GP's knowledge of regarding how NCR's customers dealt with CCP

- 3 -

plaint and in a 2003 letter to EPA. *Id.* at 12-17. So apart from the aspects of Topics 1 through 9 that relate to GP facilities, NCR's notice does not ask for historic business knowledge. It instead asks GP to marshal proof compiled by its attorneys.

### B. Meet-and-Confer

On March 19, 2012, GP requested that NCR and IP withdraw their notices because the timing is unreasonable and because many of the topics noticed are properly covered by contention interrogatories. On March 20, 2012, the parties communicated, and both NCR and IP refused to withdraw the notices. NCR offered to reschedule the deposition for some date after the discovery cutoff and to further discuss the scope of the depositions. GP declined the first offer in light of the the Court's Order of March 19. As to scope, that is not an issue if the depositions are quashed in their entirety.[3]

### Argument

### I. NCR and IP Failed to Provide Reasonable Notice of the Rule 30(b)(6) Depositions.

NCR's and IP's Rule 30(b)(6) deposition notices should be quashed. Far from providing

---

waste.

[3] As explained in the March 15 Joint Status Report, GP and NCR agreed that, if the Court denied NCR's motion for a 90-day extension of the discovery cut-off, the two parties would submit an agreed stipulation that would allow GP until April 20, 2012, to take depositions of individuals identified by NCR in its initial disclosures as witnesses that NCR may use to support its claims and defenses. NCR and GP further agreed to a corresponding extension of the deadlines for expert reports, with no other modification of any deadlines. That stipulation will be filed separately.

This stipulation is necessary because NCR refused to make these individuals available for deposition. GP first requested dates for the depositions of these individuals (each of whom, according to NCR, is represented by NCR's counsel) on January 20, 2012. GP reiterated that request on January 26 and February 2. NCR refused to provide dates for these witnesses and stated that it would not make these individuals available until the Court ruled on NCR's motion for an extension and Weyerhaeuser's motion to assert third-party claims against Mead.

These depositions and the stipulation to accommodate them are necessary from GP's perspective only because NCR intends to rely on testimony from these witnesses at trial. If NCR confirms that these witnesses will not testify at trial, GP does not need to depose them and no ex-

- 4 -

the reasonable notice required by Rule 30, NCR and IP waited until the last possible moment to notice these depositions, leaving GP with insufficient time to prepare. There is no good reason for this delay—these depositions could have been noticed months ago.

Rule 30 requires litigants to give "reasonable notice" of deposition to all other parties. The "reasonableness" of a notice is case-specific and fact-intensive. *See Hart v. United States,* 772 F.2d 285, 287 (6th Cir. 1985). It depends on the complexity of the case, the timing of the deposition in conjunction with the discovery period, and the schedules of the witnesses and attorneys. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 327 (N.D. Ill. 2005). "What would be reasonable even in a late stage of a relatively simple case with few lawyers may take on a very different cast where, as here, the case is exceedingly complex, [and] the depositions are to occur virtually hours before the discovery cut-off." *Id*.

If an untimely deposition notice is attributable to a party's dilatory pursuit of discovery, the notice should be considered unreasonable. *See Ross v. Black & Decker, Inc*., 977 F.2d 1178, 1186 (7th Cir. 1992) (affirming the district court's decision to quash a discovery deposition where the attorney created the problem through lack of diligence, the witness was well known, and the failure to obtain the deposition in a timely manner should not be rewarded).

### A. Adequate Advance Notice Is Critical for a Rule 30(b)(6) Deposition.

Importantly, the reasonableness of a Rule 30(b)(6) deposition notice must be evaluated in light of the special obligations imposed upon a corporate deponent. A corporation has an affirmative duty to identify and prepare as many persons as necessary to give "complete, knowledgeable, and binding answers" on the corporation's behalf. *Reilly v. NatWest Mkt. Group Inc*., 181 F.3d 253, 268 (2d Cir. 1999); *United States v. Taylor*, 166 F.R.D. 356, 361, 367 (M.D.N.C. 1996). Unlike a typical fact witness, a corporate deposition goes beyond the witness's personal knowl-

---

tension of the period for expert reports will be needed.

edge—the witness must be able to speak about matters to which the corporation has reasonable access. *State Farm Mut. Auto. Ins. Co. v. New Horizon*, 250 F.R.D. 203, 216 (E.D. Pa. 2008). This is no small task. Depending on the circumstances of the case and scope of the topics, preparation can require multiple witness interviews and the review of thousands of pages of documents. If the timing of the notice does not allow a corporation sufficient time to meet its Rule 30(b)(6) obligations, then the notice must be considered unreasonable.

      B.      <u>**GP Has Not Been Given Sufficient Notice**</u>.

NCR's and IP's deposition notices should be quashed as unreasonable because they were served just days before the discovery cutoff in a long-pending and complex case. *See In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 327. Each notice gave GP just 11 business days to prepare. For a complex case involving events occurring decades ago, this time period is plainly unreasonable. It is particularly unreasonable in light of the demands on GP in responding to other discovery during the last week of March, including: First and Second Sets of Interrogatories, Requests for Admission and Requests for the Production of Documents served by NCR on February 29, 2012; Second Sets of Requests for Admission and Interrogatories served by IP on March 1, 2012; and deposition notices for 4 percipient witnesses.

NCR's own experience confirms this point. GP noticed a Rule 30(b)(6) deposition of NCR as to NCR's knowledge regarding sales of CCP waste from NCR's own facilities and those of its coaters. NCR had over three months notice to prepare its corporate witness to testify in this case on these topics. During this time, NCR's counsel collected documents and its corporate designee prepared for over 50 hours—the equivalent of seven full business days. *See* NCR's Opp'n to GP's Mot. to Compel at 1 (Docket No. 147). And even that was insufficient. *See* Docket No. 176. NCR and IP each would thus have GP's designee and its counsel drop everything over the next two weeks and spend at least that much time to prepare. Assuming GP spends 50 hours preparing

for each deposition, GP must devote over eight hours each day between now and the close of discovery to prepare for each one.

Yet there is no reason why IP and NCR could not have served these notices months ago. None of the issues identified are contingent on late-developed facts or contentions. They instead relate to core allegations that have been a part of the case from its inception. In fact, it seems clear to GP that these depositions were noticed only to provide justification for the 90-day extension of discovery after it became clear that the Court might hold the parties to the original schedule. The Court should not reward this tactic.

**II.     Topics Noticed Are Not Proper for a Rule 30(b)(6) Deposition.**

Both deposition notices—IP's in its entirety and NCR's in large part—are actually sets of contention interrogatories. They ask GP to prepare a corporate witness to provide an orally binding synthesis of GP's order of proof at trial. This is not a proper use of the Rule 30(b)(6) discovery device.[4] As NCR itself has argued, a "30(b)(6) deposition is not a shortcut around all other discovery, and a party noticed under Rule 30(b)(6) is not required to prepare a witness to 'marshal all its factual proof related to a claim or position.'" NCR's Opp'n to GP's Mot. to Compel, 1 (Docket No. 147) (quoting *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996)).

**A.     The Deposition Notices Are Overly Broad and Unduly Burdensome.**

A protective order is appropriate when a corporation is asked to respond to overly broad or unfocused Rule 30(b)(6) notices, especially when the topics amount to contention interrogatories. *See In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. at 654. Although facts supporting a claim

---

[4] "It is inconceivable that the Advisory Committee intended Rule 30(b)(6) to be the means by which discovery of a party's contentions was to be secured." Kent Sinclair, Roger P. Fendrich, "Discovering Corporate Knowledge and Contentions: Rethinking Rule 30(b)(6) and Alternative Mechanisms," 50 Ala. L. Rev. 651, 717 (1999).

or defense are discoverable, discovery of such facts through a Rule 30(b)(6) deposition can be "overbroad, inefficient, and unreasonable." *Id*. "Some inquiries are better answered through contention interrogatories wherein the client can have the assistance of the attorney in answering complicated questions involving legal issues." *Taylor*, 166 F.R.D. at 363; *see also, e.g., McCormick-Morgan, Inc. v. Teledyne Indus., Inc*., 134 F.R.D. 275, 286-87 (N.D. Cal. 1991) (barring a Rule 30(b)(6) deposition and permitting contention interrogatories to discover "the bases for the contentions made and for the positions taken").

In the *Independent Services Organizations* case, one of the plaintiffs served a Rule 30(b)(6) deposition notice on defendant Xerox Corporation, requesting that Xerox produce a corporate witness "to testify about facts supporting numerous paragraphs of Xerox's denials and affirmative defenses in its Answer and Counterclaims." 168 F.R.D. at 654. The Court held that while this plaintiff had "a right to discover the facts upon which Xerox will rely for its defense and counterclaims," its attempt to do so through a Rule 30(b)(6) deposition was impermissible and "a highly inefficient method through which to obtain otherwise discoverable information." *Id.* Accordingly, the Court quashed the notice and directed the plaintiff to seek the information through contention interrogatories. This Court should do the same here.

      **B.**      **The Depositions Seek Discovery of Privileged Information.**

A deposition topic structured as a contention interrogatory "also implicates serious privilege concerns . . . ." *Id*. Here, the notices from NCR and IP implicate that concern by asking GP to identify its knowledge about the amounts and disposition of NCR waste, including whether and in what amounts it was purchased by <u>non</u>-GP facilities on the Kalamazoo River. But these are not facts within GP's historic corporate knowledge. To the extent GP has knowledge of those facts now, it is the yield of its counsel's work product. Any Rule 30(b)(6) testimony on the topics notice therefore would be based exclusively on work product developed for this litigation.

- 8 -

NCR and IP cannot force GP to "marshal the facts, documents, and testimony in its possession" by a 30(b)(6) deposition. *SEC v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996, at *9 (S.D.N.Y. Sept. 12, 1997) ("This Rule 30(b)(6) discovery is obviously aimed at finding the nature of the [plaintiff's] attorney work product, and is denied for that reason."). Hence, a Rule 30(b)(6) depositions that seeks the "the practical equivalent" of the deposition of opposing counsel should be quashed. *See SEC v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003). This is what NCR and IP seek by requesting information about which GP has no historic knowledge.

### C. The Notices Are Duplicative of Other Discovery.

The Court should also quash NCR's notice pursuant to Rule 26(b)(2)(C)(i). Under Rule 26(b)(2)(C)(i), the Court "must limit" discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *See also Banks v. Office of the Senate Sargeant of Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004) (limiting scope of 30(b)(6) deposition to avoid duplication of other discovery). As explained above, the proper and more convenient method to obtain this information is through a set of written contention interrogatories. *See supra* at 7-8. And in fact, both IP and NCR have served written discovery that seek much of this information. *See* Exs. 4, 6 and 10.

In NCR's RFAs 1 through 6, NCR asks GP to admit that it is "not aware" of evidence showing that Kalamazoo mills purchased and recycled NCR CCP broke and trim during the relevant time period. Ex. 10 at 11. In Interrogatory 1, NCR asks to provide evidence supporting any denial of these RFAs. *Id.* at 12. And in Interrogatories 3 and 5, NCR asks for GP's evidence showing that Kalamazoo mills purchased and recycled NCR's CCP Broke. Topics 1 through 9 of NCR's notice asks for this same information. So not only is NCR's deposition notice late, it is also unnecessary.

IP also has requested (and obtained) much of the information it seeks through written dis-

covery. On December 13, 2011, IP asked GP to admit that no NCR broke was delivered to IP's Bryant Mill during the relevant period, and accompanied those RFAs with an interrogatory asking for the substantiation of any denial. Ex. 4. GP responded in full on January 31, 2012, detailing the evidence that GP believes will establish that IP's predecessors recycled NCR broke at the Bryant Mill. Ex. 5. And IP has served yet another round of RFAs and contention interrogatories seeking more detail on these issues. Ex. 6.

In short, the information NCR and IP seek can be obtained more conveniently and at substantially less burden through contention interrogatories. Indeed, both IP and NCR have propounded written discovery that seeks most (if not all) of this information, so their deposition notices are almost completely duplicative of discovery already taken. The Court "must limit" this unreasonably duplicative and burdensome discovery. Fed. R. Civ. P. 26(b)(2)(C)(i).

### III. NCR's Rule 30(b)(5) Document Request Are Unreasonable.

Finally, NCR also requests GP to produce documents at the deposition. This portion of the request plainly violates Rules 30(b)(5) and 34, because it was served less than 30 days before the date of the deposition. "It is well settled that [Rule] 30(b)(5) provides that any deposition notice which is served on a 'party deponent' and which requests documents to be produced at the deposition must comply with thirty-day notice requirement set forth in [Rule] 34." *Epling v. UCB Films, Inc.*, 2000 WL 1466216, at *8 (D. Kan. Aug, 7, 2000).

### Conclusion

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 26(c), GP requests the Court enter a protective order quashing NCR's and IP's notices of deposition to GP.

Dated: March 21, 2012

**GP CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GP LLC**

By:     /s/ George P. Sibley, III

Peter A. Smit, Bar No. P 27886
Varnum LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6000

Joseph C. Kearfott
Douglas M. Garrou
George P. Sibley, III
Hunton & Williams LLP
951 East Byrd St.
Richmond, VA 23219
(804) 788-8200

Jeffrey N. Martin
Djordje Petkoski
Hunton & Williams LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 955-1500

Kathy Robb
Hunton & Williams LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0005
(212) 309-1000

Jan M. Conlin
Tara D. Falsani
Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
(612) 349-8500

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 21, 2012, I  hereby certify that on March 21, 2012, I electronically filed  PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AS TO RULE 30(b)(6) DEPOSITIONS NOTICED BY NCR CORPORATION AND INTERNATIONAL PAPER CO. using the ECF system, which will send notification of such filing by operation of the Court's electronic systems. Parties may access this filing via the Court's electronic system.

    FURTHERMORE, I hereby certify that on March 21, 2012, I served by electronic mail a copy of the aforementioned document upon counsel listed below:

    Dean P. Laing
    O'Neil Cannon Hollman DeJong & Laing SC
    111 E Wisconsin Ave - Ste 1400
    Milwaukee, WI 53202
    Dean.Laing@wilaw.com

    R Raymond Rothman
    Bingham McCutchen LLP
    355 S Grand Ave - 44th Fl
    Los Angeles, CA 90071
    rick.rothman@bingham.com

        **GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

        By      /s/ George P. Sibley, III