# Exhibit 10

Defendant NCR Corporation's First Set of Requests for Admission, First Set of Interrogatories and Second Requests for the Production of Documents to Plaintiffs Georgia-Pacific Consumer Products LP, Fort James Corporation, and Georgia-Pacific LLC
(February 29, 2012)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 1:11-cv-00483 |
| v. | ) ) | Judge Robert J. Jonker |
| NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT NCR CORPORATION'S FIRST SET OF REQUESTS FOR ADMISSION, FIRST SET OF INTERROGATORIES AND SECOND REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO PLAINTIFFS GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, AND GEORGIA-PACIFIC LLC**

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, and the Court's Case Management Order dated June 28, 2011 (Dkt. No. 83), Defendant NCR Corporation ("NCR"), by its attorneys, hereby requests that Plaintiffs Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific LLC ("Georgia-Pacific"), within thirty (30) days of service, (1) provide written responses to the following requests for admission separately and fully, in writing and under oath, and serve a copy thereof on counsel for NCR, (2) provide written responses to the following interrogatories separately and fully, in writing and under oath, and serve a copy thereof on counsel for NCR and (3) provide written responses to the following requests for production and produce the documents requested herein for inspection and/or copying by counsel for NCR. Each of the following requests for

admission, interrogatories and document requests is to be read in accordance with the definitions and respective instructions that follow.

A.  **DEFINITIONS**

1. "ACPC" shall mean Appleton Coated Paper Company and/or the paper production facility formerly owned by Appleton Coated Paper Company in Appleton, Wisconsin.

2. "Broke" shall mean any paper scrap or trim generated in the manufacture of any paper or Paper Products other than CCP.

3. "CCP" shall mean carbonless copy paper.

4. "CCP Broke" shall mean any paper scrap or trim generated in the manufacture, printing and/or conversion of CCP.

5. "CPM" shall mean Combined Paper Mills, Inc. and/or the paper production facility formerly owned by Combined Paper Mills, Inc. in Combined Locks, Wisconsin.

6. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), and shall be construed in the broadest sense of this term possible consistent with the Federal Rules of Civil Procedure.

7. "Concern" or "concerning" includes without limitation:  constituting, containing, embodying, identifying, dealing with, reflecting, mentioning, defining, explaining, discussing, commenting upon, monitoring, supporting, evidencing, modifying, contradicting, quoting, criticizing, questioning, describing, creating or maintaining, bearing upon, referring to, having any relationship to, constituting a basis for, deriving or arising from, or in any manner whatsoever pertinent to that subject.

8. "Document" shall be construed in the broadest sense of this term possible consistent with Rule 34 of the Federal Rules of Civil Procedure. A draft, annotated or otherwise non-identical copy is a separate document within the meaning of this term.

9. "Georgia-Pacific", "you" and "your" shall mean Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific LLC, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of Georgia-Pacific. "Georgia-Pacific", "you" and "your" shall also include any predecessor or successor of Georgia-Pacific, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of that predecessor or successor of Georgia-Pacific. "Georgia-Pacific", "you" and "your" shall also include any GP Site Facilities that any of the entities referenced in this paragraph currently or formerly owned and/or operated, as well as the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of those GP Site Facilities.

10. "GP Site Facility" shall mean any Kalamazoo-area facility that you currently or formerly owned and/or operated.

11. "Identify" with respect to persons shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. If you have knowledge that a person identified is deceased, please so state.

12. "Identify" with respect to documents shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

13. "Identify" with respect to communications shall mean to give, to the extent known, the persons involved in the communications, the frequency of such communications, the form of communication and the matters discussed or likely to have been discussed during such communications.

14. "Manufacturing Processes" shall mean those processes used to make, manufacture and/or finish new paper or Paper Products at any GP Site Facility or Other Site Facility, including any Recycling Processes.

15. "Mead" shall mean Mead Corporation, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of Mead Corporation. "Mead" shall also include any predecessor or successor of Mead Corporation, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of that predecessor or successor of Mead Corporation.

16. "NCR" shall mean NCR Corporation.

17. "Other Site Facility" shall mean any Kalamazoo-area facility, other than a GP Site Facility, to which you refer in the First Amended Complaint and/or any other facility at the Site, including the Bryant Mill (a/k/a Allied Paper Mill), Monarch Mill, King Mill, A-Site Landfill, Willow Boulevard Landfill, King Highway Landfill, King Highway Mill (a/k/a Kalamazoo Paper Mill), 12 Street Landfill, Hawthorne Mill and/or Plainwell Mill.

18. "Paper Products" shall mean any paper, paperboard, pulp, tissue or other paper products manufactured at any GP Site Facility or Other Site Facility.

19. "PCBs" refer to polychlorinated biphenyls including Aroclor 1242 and trichlorobiphenyl.

20. "Person" shall mean any natural person or any business, legal, or governmental entity or association.

21. "Recovered Fiber" shall mean (1) paper, paperboard and fibrous materials from retail stores, office buildings and/or homes after they have passed through their end-usage as a consumer item, including used corrugated boxes, old newspapers, old magazines, mixed waste paper, tabulating cards and used cordage; (2) all paper, paperboard and fibrous materials that enter and are collected from municipal solid waste; (3) residual dry paper and paperboard generated after completion of the papermaking process, including (a) envelope cuttings, bindery trimmings and other residual paper and paperboard resulting from printing, cutting, forming and other converting operations; (b) bag, box and carton manufacturing wastes; and (c) butt rolls, mill wrappers and rejected unused stock; (4) repulped finished paper and paperboard from obsolete inventories of paper and paperboard manufacturers, merchants, wholesalers, dealers, printers, converters or others; and (5) any paper scrap or trim generated in a paper mill prior to completion of the papermaking process. *See* Paper Products Recovered Materials Advisory Notice, 61 Fed. Reg. 26986, 26993 (1996).

22. "Recovered Fiber Broker" shall mean any Person engaged in the purchase and/or collection of Recovered Fiber for the purpose of re-selling Recovered Fiber.

23. "Recycling Process(es)" shall mean the process(es) used to repulp, deink, bleach, clean and/or wash any Recovered Fiber as part of using that Recovered Fiber to make new paper or Paper Products.

24. "Relevant Period" shall mean January 1, 1953, through May 1, 1971.

25. "Shipper" shall mean any entity that provided railroad or trucking transportation services for the transportation of Paper Products and Recovered Fiber, including CCP Broke, during the Relevant Period.

26. "Site" shall mean the Allied Paper/Portage Creek/Kalamazoo River Superfund Site.

27. "Wastewater" shall mean any liquid waste stream resulting from the recycling, pulping, deinking, bleaching and/or papermaking operations or processes that is not reused in the papermaking operation or process.

28. "Wastewater Treatment Processes" shall mean any effort, process or system used to separate, modify, remove or destroy solids, chemicals or any other substance from a wastewater stream before being discharged to the Kalamazoo River or any other body of water.

**B.     INSTRUCTIONS**

General Instructions

      1.     The past tense shall be construed to include the present tense, and vice versa, as is necessary to make the discovery request inclusive rather than exclusive.

      2.     The singular shall be construed to include the plural, and vice versa, as is necessary to make the discovery request inclusive rather than exclusive.

      3.     "Any" shall be construed to include "all", and vice versa, and "all" shall be construed to include "each", and vice versa, as is necessary to make the discovery request inclusive rather than exclusive.

      4.     The words "and", "and/or" and "or" shall be construed conjunctively or disjunctively, as is necessary to make the discovery request inclusive rather than exclusive.

      5.     "Including" shall be construed to mean "including, but not limited to".

Instructions for Requests for Admission

      1.     Each request for admission shall be construed independently and not with reference to any other request for admission for the purpose of limitation or exclusion.

      2.     These requests for admission require you to answer with either "Admit" or "Deny".

      3.     If you cannot admit or deny all or any part of any request for admission, you shall (a) specifically identify such request or part thereof, and set forth in detail the reasons why you cannot truthfully admit or deny the request or part thereof, and (b) admit or deny any remaining part of such request.

      4.     If you claim lack of knowledge as a reason for failure to admit or deny any request for admission or any part thereof, you shall detail the extent of the inquiry made and

affirm that the information known or readily attainable to it is insufficient to allow it to admit or deny the request or part thereof.

     5.     These requests for admission extend to any information in your possession, custody or control, including any of your respective employees, agents, attorneys, or other persons acting or purporting to act on your behalf.

     6.     If you assert a claim of privilege, work product, immunity, or other discovery protection with respect to any part of these requests for admission, state the nature and basis of the privilege or other ground asserted as justification for withholding such information.

Instructions for Interrogatories

     1.     Each interrogatory shall be construed independently and not with reference to any other interrogatory for the purpose of limitation or exclusion.

     2.     Separate and complete responses or objections are required for each interrogatory or subpart thereof.

     3.     If you object to any interrogatory, please state with specificity the grounds for each such objection.

     4.     If any interrogatory cannot be answered in full, answer to the extent possible, specifying the reason why the remainder cannot be answered and the efforts made to supply a complete answer.

     5.     These interrogatories extend to any information in your possession, custody or control, including any of your respective employees, agents, attorneys, or other persons acting or purporting to act on your behalf.

  6. If you assert a claim of privilege, work product, immunity, or other discovery protection concerning any part of these interrogatories, state the nature and basis of the privilege or other ground asserted as justification for withholding such information.

Instructions for Requests for Production of Documents

  1. Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation or exclusion.

  2. You should produce all of the requested documents that are in your possession, custody or control including documents in the possession, custody or control of your officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on your behalf.

  3. If you object to a discovery request and withhold any information or document requested herein pursuant to a claim of privilege, work product or other discovery protection, state with respect to each such document: (a) the privilege upon which you are relying; (b) the type of document (e.g., letter, memorandum); (c) the date of the document; (d) the name and title of the author; (e) the name and title of the addressee; (f) the names and titles of all recipients; and (g) a general description of the subject matter of the document, including all information necessary to determine the basis for assertion of the privilege or protection.

  4. If any requested document or portion thereof is withheld based upon an objection, state the basis for the objection and produce each document or portion thereof to which the objection does not apply.

* * *

  In issuing these requests for admission, interrogatories and document requests, NCR acknowledges that Georgia-Pacific has responded to interrogatories and/or produced documents as part of the limited discovery permitted during Phase I of this litigation and as part

9

of the discovery permitted during *Appleton Papers Inc., et al. v. George A. Whiting Paper Co., et al.*, 08-cv-16 (WCG) (E.D. Wis.). These requests for admission, interrogatories and document requests are not intended to require any duplication of prior requests for admission, interrogatories or document requests. Rather, NCR seeks only the discovery of documents, information and other evidence not previously produced by Georgia-Pacific during the *Whiting* action. To the extent Georgia-Pacific intends to rely on documents, information and/or other evidence obtained or produced by Georgia-Pacific in the *Whiting* action, Georgia-Pacific should specify the documents, information and other evidence in response to these requests.

These Discovery Requests shall be deemed continuing so as to require prompt supplemental responses if you learn additional information responsive to these interrogatories and document requests between the time of the initial response to these interrogatories and document requests and the time of final judgment in this action. To the extent Georgia-Pacific's investigation in this matter is ongoing, you should respond to these requests based on the information presently known and update your responses as new information becomes available to you.

These Discovery Requests are provided without prejudice to, or waiver of, NCR's right to conduct further discovery at a later date, to the extent permitted by the Court's June 28, 2011 Case Management Order (Dkt. No. 83), any modification thereof approved by the Court and/or any future order of the Court.

C.     **REQUESTS FOR ADMISSION**

Admit the following:

REQUEST FOR ADMISSION 1:     You are not aware of any GP Site Facility or Other Site Facility that purchased, obtained, used and/or recycled CCP Broke during the Relevant Period.

REQUEST FOR ADMISSION 2:     You are not aware of any documents, testimony or communications concerning any GP Site Facility or Other Site Facility with respect to purchasing, obtaining, using and/or recycling CCP Broke during the Relevant Period.

REQUEST FOR ADMISSION 3:     You are not aware of any Recovered Fiber Brokers who purchased CCP Broke and sold it to any GP Site Facility or Other Site Facility during the Relevant Period.

REQUEST FOR ADMISSION 4:     You are not aware of any documents, testimony or communications concerning any Recovered Fiber Broker with respect to purchasing CCP Broke and selling it to any GP Site Facility or Other Site Facility during the Relevant Period.

REQUEST FOR ADMISSION 5:     You are not aware of any Shippers who transported CCP Broke to any GP Site Facility or Other Site Facility during the Relevant Period.

REQUEST FOR ADMISSION 6:  You are not aware of any documents, testimony or communications concerning the shipment of CCP Broke to any GP Site Facility or Other Site Facility during the Relevant Period.

REQUEST FOR ADMISSION 7:  You have not identified, contacted, compensated or obtained affidavits from any Persons with knowledge concerning the allegations in your First Amended Complaint.

11

**D.     INTERROGATORIES**

  <u>INTERROGATORY 1</u>: For each response to the above Requests for Admission which is not an unqualified admission, please state all reasons for the denial or qualification; identify all documents or information that form the basis for the denial or qualification; and identify all Persons with knowledge relating to the basis for the denial or qualification.

  <u>INTERROGATORY 2</u>: Please identify all Persons who worked at any GP Site Facility or Other Site Facility who may have knowledge of the purchase of Recovered Fiber, including CCP Broke, during the Relevant Period.

  <u>INTERROGATORY 3</u>: Please identify all documents, testimony and communications that concern the purchase of CCP Broke by any GP Site Facility or Other Site Facility during the Relevant Period.

  <u>INTERROGATORY 4</u>: Please identify all Persons who possess knowledge of the receipt and use of CCP Broke at any GP Site Facility or Other Site Facility during the Relevant Period.

  <u>INTERROGATORY 5</u>: Please identify all documents, testimony and communications that concern the receipt and use of Recovered Fiber, including CCP Broke, at any GP Site Facility or Other Site Facility during the Relevant Period.

  <u>INTERROGATORY 6</u>: Please identify all Persons that bought or sold Recovered Fiber, including CCP Broke, from Mead during the Relevant Period.

  <u>INTERROGATORY 7</u>: Please identify all Persons responsible for gathering and otherwise handling Recovered Fiber, including CCP Broke, on behalf of Mead during the Relevant Period.

INTERROGATORY 8: Please identify all documents, testimony and communications concerning the gathering, handling and sale of Recovered Fiber, including CCP Broke, generated by Mead during the Relevant Period.

INTERROGATORY 9: Please identify all Recovered Fiber Brokers who sold or otherwise conveyed CCP Broke to any GP Site Facility or Other Site Facility during the Relevant Period.

INTERROGATORY 10: Please identify all documents, testimony and communications concerning the purchase and sale of CCP Broke by any Recovered Fiber Broker during the Relevant Period.

INTERROGATORY 11: Please identify all Shippers who transported CCP Broke to any GP Site Facility or Other Site Facility during the Relevant Period.

INTERROGATORY 12: Please identify all Persons responsible for managing the Wastewater Treatment Process at any GP Site Facility or Other Site Facility during the Relevant Period.

INTERROGATORY 13: Please identify all Persons whom you have contacted, identified, retained and/or compensated to assist you in gathering evidence to support the allegations in your First Amended Complaint.

INTERROGATORY 14: Please identify all Persons with knowledge of the business relationship between NCR and Mead.

E.	DOCUMENT REQUESTS

Produce the following:

REQUEST FOR PRODUCTION 1:  All documents or other physical evidence identified in any of your responses to NCR's Interrogatories.

REQUEST FOR PRODUCTION 2:  All documents concerning the sale of paper and/or pulp by GP to any facility in the Fox River Valley during the Relevant Period.

REQUEST FOR PRODUCTION 3:  All documents concerning the generation and sale of Recovered Fiber, including CCP Broke, by William Moore Business Forms, Deluxe Checking Company, Zellerback Paper Company, Nationwide Paper Company, Chatfield Paper Company, Beeckman Paper Company, Standard Register Company, Carter, Rice, Storrs & Bement Incorporated, Uarco Incorporated, Reynolds & Reynolds Company, Control Data Corporation, or RR Donnelley during the Relevant Period.

REQUEST FOR PRODUCTION 4:  All documents concerning the shipment of paper and/or pulp from any GP Site Facility or any Other Site Facility to any facility in the Fox River Valley during the Relevant Period.

REQUEST FOR PRODUCTION 5:  All documents concerning any Shipper who transported Recovered Fiber, including CCP broke, to any GP Site Facility and Other Site Facility, including, but not limited to, Graff Trucking, Davis Trucking, Schneider Transportation, or JB Hunt.

REQUEST FOR PRODUCTION 6:  All documents concerning the purchase of Recovered Fiber, including CCP Broke, by any GP Site Facility or Other Site Facility during the Relevant Period.

14

REQUEST FOR PRODUCTION 7: All documents concerning communications between any GP Site Facility or Other Site Facility and ACPC, NCR (including Systemedia) or CPM or Mead.

Dated: February 29, 2012                    Respectfully submitted,

                                            NCR CORPORATION

                                            */s/ Omid H. Nasab*
                                            Omid H. Nasab
                                            *Counsel for NCR Corporation*

                                            DICKINSON WRIGHT PLLC
                                            Geoffrey A. Fields
                                            200 Ottawa Avenue, N.W., Suite 1000
                                            Grand Rapids, MI 49503
                                            Phone: (616) 336-1017
                                            Fax: (616) 458-6753

                                            CRAVATH, SWAINE & MOORE LLP
                                            Evan R. Chesler
                                            David R. Marriott
                                            Darin P. McAtee
                                            Omid H. Nasab
                                            Worldwide Plaza, 825 Eighth Avenue
                                            New York, New York 10019
                                            Phone: (212) 474-1000
                                            Fax: (212) 474-3700
                                            onasab@cravath.com

                                            SIDLEY AUSTIN LLP
                                            Evan B. Westerfield
                                            One South Dearborn Street
                                            Chicago, Illinois 60603
                                            Phone: (312) 853-7000
                                            Fax: (312) 853-7036

                                            MARTEN LAW PLLC
                                            Linda R. Larson
                                            Bradley M. Marten
                                            1191 Second Avenue, Suite 2200
                                            Seattle, Washington 98101
                                            Phone: (206) 292-2600
                                            Fax: (206) 292-2601