IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | No. 11-cv-00483 |
| NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER COMPANY, | ) ) ) ) | Judge Robert J. Jonker |
| Defendants. | ) | |

**DEFENDANT NCR CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO PRODUCE NON-PRIVILEGED DOCUMENTS CONCERNING THIRD PARTIES**

Pursuant to Federal Rule of Civil Procedure 37(a)(1), Defendant NCR Corporation ("NCR") respectfully moves for an order compelling Plaintiffs (collectively, "GP") to produce documents reflecting relevant facts GP learned from third parties.

## PRELIMINARY STATEMENT

This action, a CERCLA litigation concerning PCB contamination at the Kalamazoo River Superfund Site, involves factual allegations wide-ranging in geographical and temporal scope.  One key factual dispute between the parties is whether, between 1954 to 1971, carbonless copy paper ("CCP") broke produced at certain facilities moved, through various paper brokers and shippers, to recycling mills on the Kalamazoo River.[1]  GP has obtained, from dozens (if not hundreds) of third parties involved in transactions central to this case, information relevant to the factual allegations it asserts, including GP's claim that some broke from relevant facilities was recycled by paper mills along the Kalamazoo River.  NCR sought discovery of this information by requesting production of documents concerning GP's communications with third parties.  GP, after initially suggesting it would produce these responsive documents, has since refused to do so, asserting that the facts GP learned are "privileged work product".  By failing to produce relevant factual information obtained during its investigation, GP wants to filter this evidence and show the Court only the subset of facts helpful to its claims, while shielding from discovery the rest of the story, including contradictory or inconsistent information.  GP should not be permitted to unilaterally narrow, and thus disregard, its discovery obligations in an effort to tell only the portion of the story favorable to GP.  Accordingly, NCR respectfully requests the Court grant its motion to compel the production of documents in GP's possession containing information obtained from third parties relevant to this case.

---

[1] This purported movement of broke is the only basis for NCR's alleged liability in this litigation.

**BACKGROUND**

On August 23, 2011, NCR served GP with its initial requests for the production of documents, which included the following RFPs:

> REQUEST FOR PRODUCTION 6: All documents concerning potential witnesses in this case including, but not limited to, all potential witnesses you identified in your Initial Disclosures in this action, as well as any current or former employees of the following: any Site Facility; Recovered Fiber Brokers; NCR, ACPC, CPM, Systemedia and/or Wiggins Teape; 3M; Mead; any other facilities or entities that manufactured CCP or other Recovered Fiber and/or generated CCP Broke during the [1954-1971 period]. . . .
>
> REQUEST FOR PRODUCTION 8: All documents concerning any individuals or entities you have contacted, retained and/or compensated for purposes of investigating or otherwise developing or assisting with this case.

(collectively the "Third Party Information Requests") (Ex. A.)[2]

NCR's Third Party Information Requests were based on NCR's knowledge that GP was collecting documents and other information relevant to its allegations from third parties, and in particular was seeking out the personal knowledge of numerous individuals that could be used as evidence against NCR. By way of example only, in June 2010, GP hired Leon Martin, a former employee of the Kalamazoo mill as a "paid witness" (Ex. B at 73:23-25) to provide sworn testimony and to collect information from other individuals with knowledge relevant to GP's factual allegations in this case, including the issue of whether broke that originated at the Appleton Coated Paper Company ("ACPC") plant in Appleton, Wisconsin, made its way to mills on the Kalamazoo River (*id.* at 74:4-25). At the time of his August 30, 2011 deposition, Martin (despite being a fact witness whose lay testimony likely will be offered by GP at trial) had been

---

[2] All exhibit citations are to the Declaration of Darin P. McAtee in Support of Defendant NCR Corporation's Motion to Compel Plaintiffs to Produce Non-Privileged Documents Concerning Third Parties.

2

paid between fifty and sixty thousand dollars, plus reimbursements, by GP for collecting relevant facts and documents from dozens of individuals who might serve as witnesses for GP.[3] (*Id.* at 75:1-4, 75:15-20, 75:25-76:24, 79:6-82:8.) GP also contacted former employees to obtain affidavits from them prior to taking their depositions.[4] (*See, e.g.*, Exs. F, G, H.) And counsel for GP has arranged for its experts to speak with former employees it has located. (Ex. I at 63:6-10, 64:23-65:2, 66:1-2.)

In its response to NCR's document requests seeking relevant factual information that is now in GP's possession, custody and control through this investigation, GP objected to the Third Party Information Requests to the extent that, *inter alia*, they impinged on any work-product or attorney-client privilege, but otherwise agreed that "non-privileged responsive documents will be made available or produced in a manner to be agreed to by the parties". (Ex. J. at 20-21.) NCR relied on this representation, and expected GP to timely produce responsive documents.

Given GP's heavy reliance on third parties with knowledge relevant to its claims, NCR's request for relevant facts obtained from these individuals is critical to obtaining the full story of this case, and NCR had no reason to think GP was not producing these documents. Yet,

---

[3] Martin interviewed dozens of individuals; treated potential witnesses to dinner and wine (and sent at least one potential witness a case of wine); recruited (and paid) another fact witness to investigate other individuals who might have relevant personal knowledge; obtained relevant documents from many witnesses; spent hours debriefing counsel on his efforts; worked with counsel on several drafts of his affidavit; and spent four compensated days preparing for his deposition. (Ex. B at 75:1-4, 75:15-20, 75:25-76:24, 77:5-23, 79:6-82:8; *see also* Ex. C at 27:24-28:10, 33:17-25.)

[4] GP noticed depositions of Messrs. Martin and Lacey in August 2011, before NCR was able to serve its document requests, and self-selected documents it deemed relevant to those depositions to produce to NCR. GP refused to delay the depositions until NCR had served its document requests, and further refused to produce any documents NCR identified as relevant to the depositions. (Exs. D, E.)

on December 20, 2011, GP noticed depositions of two third-party witnesses for whom it had not produced any communications.  On December 28, NCR asked GP to produce any documents concerning these two individuals, or to confirm that GP had already produced any such documents.  (Ex. K.)  GP responded that it was "technically not under an obligation to produce [its] communications with [these witnesses but had] no particular objection to doing so".  (*Id.*)

NCR sought to clarify GP's position on communications with third parties in a January 18, 2012 meet-and-confer telephone call.  During that call, NCR was made to understand that GP had produced all documents responsive to the Third Party Information Requests, subject only to periodic updating.  In follow-up correspondence on January 30, NCR asked GP to confirm "that GP has produced all non-privileged communications with potential witnesses", (Ex. L), but GP rejected that understanding, stating instead that "Georgia-Pacific has considered [NCR's] request and will agree to produce non-privileged communications with third-party witnesses that are scheduled for deposition reasonably in advance of deposition, provided that NCR does the same".  (Ex. M.)

In subsequent correspondence dated February 9, NCR explained that GP's handling of these requests had misled NCR as to whether responsive documents would be produced and deprived NCR of requested documents without any justification.  (*Id.*)  GP's only response was to reiterate its refusal to comply with the Third Party Information Requests "on the ground that [they] invaded privileged attorney work product", but that GP would "produce reasonably in advance of depositions of third party witnesses all non-privileged communications between counsel for Georgia-Pacific and the witness to be deposed".  (Ex. N.)  This position is untenable, given that GP has withheld from NCR the identities of the third-party individuals from whom it has obtained relevant factual information but for whom it has not noticed a

4

deposition.[5] There is no basis for conditioning the production of highly relevant, responsive documents on NCR's actions and, by doing so, GP frustrates the very purpose of discovery by preventing NCR from learning key facts related to this case. On March 5, the parties held another unsuccessful meet-and-confer telephone call, in which NCR attempted to negotiate a good-faith agreement with GP on the production of documents responsive to the Third Party Information Requests. NCR now moves for the production of these documents.

## ARGUMENT

NCR is entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense", Fed. R. Civ. P. 26(b)(1), in accordance with the fundamental policy underlying the Federal Rules to "encourage the exchange of information through broad discovery", *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004). The objecting party bears the burden of showing why discovery of relevant material should be denied. *See EEOC v. Klockner H & K Machs., Inc.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996). Because GP cannot meet its burden, production of documents concerning third-party information relevant to this case should be compelled.

The relevance of communications between GP and third parties cannot be doubted. Indeed, GP sought and obtained this information from third parties for the very purpose of supporting its factual allegations against NCR in this case. As the Court knows, this lawsuit concerns alleged transactions that involve a multitude of players and took place decades ago. Given the passage of time, it is not surprising that contemporaneous documents concerning this extensive factual scenario will be insufficient to tell the complete story underlying the

---

[5] GP's position is also untenable because it would permit NCR to see only the pre-deposition documents for each witness. Someone like Mr. Martin could, after being deposed, continue his paid work for GP and NCR would not be permitted to see any of his post-deposition communications about this work.

5

factual allegations in this case.  Thus, the recollections of individuals with relevant personal knowledge are critical to the resolution of this litigation, particularly because these recollections likely will provide the basis for each party's expert testimony at trial.  NCR, and the Court, are entitled to know which third parties have relevant information and what these individuals have communicated to GP about the truth of GP's allegations against NCR.

For example, GP contends that its mill in Kalamazoo purchased CCP broke originating at ACPC in Wisconsin through the recovered fiber dealer Golper Supply.  NCR knows that GP's paid witness, Mr. Martin, has interviewed an employee of Golper Supply, Fran Brown.  Ms. Brown told Mr. Martin that none of ACPC's broke was sent to any Kalamazoo mill, and that all of ACPC's broke was sold to mills along the Fox River in Wisconsin.  (Ex. B at 83:18-23.)  This facially relevant and highly probative fact was communicated to GP and is precisely the type of information requested by the Third Party Information Requests.  It was produced by GP only because Mr. Martin was incidentally noticed for deposition.  If he had not been, this information—which *squarely* contradicts the position that GP will likely take before the Court at trial—would have been hidden by GP.  Shielding such facts from discovery obstructs NCR's ability to defend itself in this suit and is not permitted by the Federal Rules.

Obtaining GP's communications with third parties may be the only way that NCR can discover many of the relevant facts in this case.  GP has paid not only Mr. Martin but at least three fact witnesses tens of thousands of dollars in compensation (*id.* at 73:23-25; Ex. C at 27:24-28:10, 33:10-25; Ex. O at 138:16-22), and NCR believes that GP may have paid (or otherwise compensated) other witnesses as well.  This may have induced them not to cooperate with NCR or to withhold relevant information.  Such was the effect of GP's payments to one fact witness that NCR does know about—John Gough.  Mr. Gough, who has been paid seventy thousand

6

dollars by GP, has declined to meet with non-GP lawyers because he was "already working with one side [and] felt it would be a conflict of interest" to meet or talk with lawyers representing other parties. (Ex. O at 145:2-7, 158:4-25.) GP cannot be permitted to both control NCR's access to information in this way and simultaneously deny NCR discoverable communications about that control.

GP's only remaining objection to production of documents responsive to the Third Party Information Requests is that they are protected by the work-product doctrine. But communications with persons with information relevant to the case are not protected and are the type of material routinely produced in litigation. *See Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2008 WL 659647, at \*4 (E.D. Mich. Mar. 7, 2008) (explaining that "[i]t is beyond dispute" that defendant was entitled to seek information about persons with knowledge relevant to the case and rejecting plaintiffs' "appeal to the work product doctrine as an impermissible attempt to sweep ordinary, clearly discoverable facts under the protective cloak of counsel's mental impressions and strategies"); *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 347 (N.D. Ill. 2005); *Laxalt v. McClatchy*, 116 F.R.D. 438, 443 (D. Nev. 1987). NCR is entitled to discover the information relevant to this case that GP has learned from third parties and the production of responsive and relevant documents "offer[s] no 'significant insights' into [GP's] legal strategy". *See Francisco v. U.S. Seafood*, No. CV06-885RSL, 2007 WL 2713031, at \*2 (W.D. Wash. Sept. 14, 2007) (quotation omitted). Relevant facts, especially facts communicated by third parties to GP, are not protected by the work product doctrine. NCR's request does not seek information about GP's litigation tactics and thus does not implicate work product concerns. *See, e.g., Bd. of Educ. of Evanston Twp. High School Dist. No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984); *Besly-Welles Corp. v. Balax, Inc.*, 43 F.R.D.

7

368, 371 (E.D. Wis. 1968) ("[I]t is permissible to inquire into the identity and location of persons having knowledge of relevant facts.").

Based on NCR's conversations with GP about these documents and the cases that GP has cited to NCR, NCR expects that GP will argue that its communications with third parties are protected because producing them would identify the persons that GP chose to contact as part of its investigation. This argument is not on point, however, because NCR seeks not all information pursued by GP's counsel, but only facts that are now in GP's possession, custody or control that are relevant to GP's allegations. This is not a boundary drawn by GP's counsel, rather it is the boundary drawn by the Federal Rules. Accordingly, disclosure of relevant information will not reveal GP's attorneys' tactical decisions about which witnesses to interview or their opinions about what information is or is not important. The caselaw on the work product doctrine, including all three of the cases GP has cited to NCR, explicitly recognizes this exact distinction. *See Tracy v. NVR, Inc.,* 250 F.R.D. 130, 132 (W.D.N.Y. 2008) (explaining the "distinction between discovery requests that seek the identification of persons with knowledge about the claims or defense (or other relevant issues)—requests that are plainly permissible—and those that seek the identification of persons who have been contacted or interviewed by counsel concerning the case"); *Seven Hanover Assocs., LLC v. Jones Lang Lasalle Americas, Inc.*, No. 04 Civ. 4143, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005) ("Defendant is free to ask for names of persons with knowledge of the facts") (emphasis added); *United States v. Dist. Council of New York City & Vicinity of the United Brotherhood of Carpenters & Joiners*, No. 90 CIV. 5722, 1992 WL 208284, at *10 (S.D.N.Y. Aug. 18, 1992) ("[A] party must identify people it knows to have relevant knowledge of allegations . . . but need not indicate with whom or when it conducted interviews or whether a record of the interviews was made") (citation omitted); *see*

8

*also Cason-Merenda*, 2008 WL 659647, at *4. To the extent GP communicated with persons with no relevant knowledge, NCR does not seek these communications.

Furthermore, even if these documents are work product (and they are not), they "may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship". *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). NCR has substantial need for this information, which, as explained above, is central to NCR's defense. Moreover, these documents likely cannot be obtained any other way, and certainly not without material hardship. In fact, "[a]voidance of the time and effort involved in compiling a similar list from other sources" alone can show substantial need. *See United States v. Amerada Hess Corp.*, 619 F.2d 980, 988 (3d Cir. 1980); *see also Serrano v. Cintas Corp.*, No. 04-40132, 2010 WL 746430, at *8 (E.D. Mich. Mar. 2, 2010); *American Floral Svcs., Inc. v. Florists Transworld Delivery Ass'n*, 107 F.R.D. 258, 260-61 (N.D. Ill. 1985) (holding that "the identity of witnesses having knowledge of relevant facts is discoverable information" even though the party seeking discovery could conduct its own investigation and interview such persons, because such a process would be "time-consuming, wasteful and expensive . . . [and] the 'fox-hunt' theory of litigation [is] no longer acceptable".) In addition, NCR seeks GP's communications with potential witnesses in part because of the credibility issues raised by GP's practice of paying fact witnesses to elicit their assistance, and these documents may not be reasonably obtained from any other source.

Moreover, GP's position that—as a "courtesy"— it will produce documents and communications only for testifying third parties is untenable as applied to its own scope of discovery in this case and the rules of discovery in general. GP's view of its discovery obligations, which place the burden on NCR to identify by name the specific sources of

9

documents before GP will produce relevant and responsive information obtained from that source, is entirely inconsistent with the rules of discovery, which obligate the producing party to identify all such sources. If, hypothetically, NCR had spoken with a third party who reported that there were monthly shipments of broke from ACPC to Kalamazoo (which has not occurred), surely it could not be GP's position that NCR would need only disclose these communications if NCR intended to depose this hypothetical individual. In fact, this is not GP's position with regard to the discovery it seeks from NCR. For example, GP listed as a topic for NCR's Rule 30(b)(6) deposition "[t]he substance of the information provided to NCR by each person [providing information to NCR as part of NCR's efforts to identify brokers that may have purchased CCP broke from ACPC]". (Ex. P.) In its own requests and the information obtained as a result of those requests, GP does not limit itself to information exclusively from testifying third parties, and GP should not here be permitted to impose such limits on NCR.

Finally, although the law is clear that GP's invocation of work-product protection is "an impermissible attempt to sweep ordinary, clearly discoverable facts under the protective cloak of counsel's mental impressions and strategies", *Cason-Merenda*, 2008 WL 659647, at *4, at the least the Court should test GP's work product claims by reviewing the relevant documents *in camera*.

## CONCLUSION

For the foregoing reasons, NCR respectfully requests that the Court grant its motion to compel GP to produce documents responsive to the Third Party Information Requests as to persons with relevant information. In the alternative, NCR respectfully requests that the Court review the relevant communications *in camera* to determine whether they truly reveal protected mental impressions and strategies of counsel.

Dated:  March 26, 2012          Respectfully submitted,

                                         NCR CORPORATION

                                         /s/ Darin P. McAtee
                                         *Counsel for NCR Corporation*

                                         CRAVATH, SWAINE & MOORE LLP
                                         Evan R. Chesler
                                         Dave R. Marriott
                                         Darin P. McAtee
                                         Worldwide Plaza, 825 Eighth Avenue
                                         New York, New York 10019
                                         Phone: (212) 474-1000
                                         Fax: (212) 474-3700
                                         dmcatee@cravath.com

                                         SIDLEY AUSTIN LLP
                                         Evan B. Westerfield
                                         One South Dearborn Street
                                         Chicago, Illinois 60603
                                         Phone: (312) 853-7000
                                         Fax: (312) 853-7036

                                         MARTEN LAW PLLC
                                         Linda R. Larson
                                         Bradley M. Marten
                                         1191 Second Avenue, Suite 2200
                                         Seattle, Washington 98101
                                         Phone: (206) 292-2600
                                         Fax: (206) 292-2601

**CERTIFICATE OF SERVICE**

        I hereby certify that on March 26, 2012, I electronically filed Defendant NCR Corporation's Memorandum of Law in Support of Its Motion to Compel Plaintiffs to Produce Non-Privileged Documents Concerning Third Parties using the ECF system, which will send notification of such filing by operation of the Court's electronic systems.  Parties may access this filing via the Court's electronic system.

        FURTHERMORE, I hereby certify that on March 26, 2012, I served by electronic mail a copy of the aforementioned document upon counsel listed below:

>Dean P. Laing
>O'Neil Cannon Hollman DeJong & Laing SC
>111 E Wisconsin Ave - Ste 1400
>Milwaukee, WI 53202
>Dean.Laing@wilaw.com

Dated:  March 26, 2012

NCR CORPORATION

/s/ Darin P. McAtee
*Counsel for NCR Corporation*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Darin P. McAtee
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmcatee@cravath.com

SIDLEY AUSTIN LLP
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601