# Exhibit A

Case 1:11-cv-00483-RJJ Doc #187-1 Filed 03/26/12 Page 1 of 14 Page ID#2491

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER COMPANY, <br><br> Defendants. | No. 11-cv-483 <br><br> Judge Robert J. Jonker |

**DEFENDANT NCR CORPORATION'S FIRST REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO PLAINTIFFS GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION AND GEORGIA-PACIFIC LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Court's Case Management Order dated June 28, 2011 (Dkt. # 83), Defendant NCR Corporation ("NCR"), by and through its undersigned counsel, hereby requests that Plaintiffs Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific LLC ("Georgia-Pacific"), within thirty (30) days of service provide written responses to the following requests for production and produce the documents requested herein for inspection and/or copying by counsel for NCR. Each of the following document requests is to be read in accordance with the definitions and respective instructions that follow.

**A.    DEFINITIONS**

1.    "3M" shall mean 3M Company, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of 3M Company. "3M" shall also include any predecessor or successor of 3M Company and the officers, directors, employees, agents,

attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of that predecessor or successor of 3M Company.

2. "ACPC" shall mean Appleton Coated Paper Company and/or the paper production facility owned by Appleton Coated Paper Company in Appleton, Wisconsin.

3. "Broke" shall mean any paper scrap or trim generated in the manufacture of any paper or Paper Products other than CCP.

4. "CCP" shall mean carbonless copy paper.

5. "CCP Broke" shall mean any paper scrap or trim generated in the manufacture, printing and/or conversion of CCP.

6. "CPM" shall mean Combined Paper Mills, Inc. and/or the paper production facility owned by Combined Paper Mills, Inc. in Combined Locks, Wisconsin.

7. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), and shall be construed in the broadest sense of this term possible consistent with the Federal Rules of Civil Procedure.

8. "Concern" or "concerning" includes without limitation: constituting, containing, embodying, identifying, dealing with, reflecting, mentioning, defining, explaining, discussing, commenting upon, monitoring, supporting, evidencing, modifying, contradicting, quoting, criticizing, questioning, describing, creating or maintaining, bearing upon, referring to, having any relationship to, constituting a basis for, deriving or arising from, or in any manner whatsoever pertinent to that subject.

9. "Dispose" or "disposal" shall mean the discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or hazardous waste into or on any land or water so

that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into waters, including ground waters. 42 U.S.C. § 6903(3).

10. "Document" shall be construed in the broadest sense of this term possible consistent with Rule 34 of the Federal Rules of Civil Procedure. A draft, annotated or otherwise non-identical copy is a separate document within the meaning of this term.

11. "Georgia-Pacific", "you" and "your" shall mean Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific LLC, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of Georgia-Pacific. "Georgia-Pacific", "you" and "your" shall also include any predecessor or successor of Georgia-Pacific, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of that predecessor or successor of Georgia-Pacific. "Georgia-Pacific", "you" and "your" shall also include any Site Facilities that any of the entities referenced in this paragraph currently or formerly owned and/or operated, as well as the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of those Site Facilities.

12. "Hazardous waste" shall mean a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical or infectious characteristics may cause, or significantly contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed. 42 U.S.C. § 6903(5).

13. "Identify" with respect to persons shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. If you have knowledge that a person identified is deceased, please so state.

14. "Identify" with respect to documents shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

15. "Identify" with respect to communications shall mean to give, to the extent known, the persons involved in the communications, the frequency of such communications, the form of communication and the matters discussed or likely to have been discussed during such communications.

16. "Kalamazoo River Study Group" shall mean the group of paper companies, including Millennium Holdings, Inc./Allied Paper Company, Georgia-Pacific, Plainwell Paper Inc., and the Fort James Corporation, designated by the EPA as Potentially Responsible Parties at the Site.

17. "KRSG Litigation" shall mean <u>Kalamazoo River Study Group v. Rockwell Int'l, et al.</u>, No. 1:95-cv-838 (RHB) (W.D. Mich.), the lawsuit brought by the Kalamazoo River Study Group in December 1995, as well as all appeals from all decisions in that lawsuit.

18. "Manufacturing Processes" shall mean those processes used to make, manufacture and/or finish new paper or Paper Products at any Site Facility, including any Recycling Processes.

19. "Mead" shall mean Mead Corporation, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators

4

and any other person acting, or purporting to act, on behalf of Mead Corporation. "Mead" shall also include any predecessor or successor of Mead Corporation, and the officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors, advisors, representatives, investigators and any other person acting, or purporting to act, on behalf of that predecessor or successor of Mead Corporation.

20. "NCR" shall mean NCR Corporation.

21. "Paper Products" shall mean any paper, paperboard, tissue or other paper products manufactured at any Site Facility.

22. "PCBs" refer to polychlorinated biphenyls including, but not limited to, Aroclor 1242 and trichlorobiphenyl.

23. "Person" shall mean any natural person or any business, legal, or governmental entity or association.

24. "Recovered Fiber" shall mean (1) paper, paperboard and fibrous materials from retail stores, office buildings and/or homes after they have passed through their end-usage as a consumer item, including used corrugated boxes, old newspapers, old magazines, mixed waste paper, tabulating cards and used cordage; (2) all paper, paperboard and fibrous materials that enter and are collected from municipal solid waste; (3) residual dry paper and paperboard generated after completion of the papermaking process, including (a) envelope cuttings, bindery trimmings and other residual paper and paperboard resulting from printing, cutting, forming and other converting operations; (b) bag, box and carton manufacturing wastes; and (c) butt rolls, mill wrappers and rejected unused stock; (4) repulped finished paper and paperboard from obsolete inventories of paper and paperboard manufacturers, merchants, wholesalers, dealers, printers, converters or others; and (5) any paper scrap or trim generated in a paper mill prior to

completion of the papermaking process. See Paper Products Recovered Materials Advisory Notice, 61 Fed. Reg. 26986, 26993 (1996).

25. "Recovered Fiber Broker" shall mean any Person engaged in the purchase and/or collection of Recovered Fiber for the purpose of re-selling Recovered Fiber.

26. "Recycling Process(es)" shall mean the process(es) used to repulp, deink, bleach, clean and/or wash any Recovered Fiber as part of using that Recovered Fiber to make new paper or Paper Products.

27. "Relevant Period" shall mean January 1, 1954, through December 31, 1979.

28. "Site" shall mean the Allied Paper/Portage Creek/Kalamazoo River Superfund Site.

29. "Site Facility" shall mean any Kalamazoo-area facility that you currently or formerly owned and/or operated and/or to which you refer in the First Amended Complaint, and/or any other facility at the Site, including, but not limited to, the Bryant Mill (a/k/a Allied Paper Mill), Monarch Mill, King Mill, A-Site Landfill, Willow Boulevard Landfill, King Highway Landfill, King Highway Mill (a/k/a Kalamazoo Paper Mill), 12 Street Landfill, Hawthorne Mill and/or Plainwell Mill.

30. "Systemedia" shall mean NCR's current or former plants that converted CCP into business forms and other Paper Products, which were at certain times part of NCR's "Supply Manufacturing Division" and/or "Business Forms and Supply Division" and/or "Systemedia".

31. "Wastewater" shall mean any liquid waste stream resulting from the recycling, pulping, deinking, bleaching and/or papermaking operations or processes that is not reused in the papermaking operation or process.

32. "Wastewater Treatment Processes" shall mean any effort, process or system used to separate, modify, remove or destroy solids, chemicals or any other substance from a wastewater stream before being discharged to the Kalamazoo River or any other body of water.

33. "Wiggins Teape" shall mean Wiggins Teape Group Ltd., Wiggins Teape Research & Development Ltd., Wiggins Teape (Belgium) S.A. and Wiggins Teape Ltd.

**B.  INSTRUCTIONS**

General Instructions

1.  The past tense shall be construed to include the present tense, and vice versa, as is necessary to make the discovery request inclusive rather than exclusive.

2.  The singular shall be construed to include the plural, and vice versa, as is necessary to make the discovery request inclusive rather than exclusive.

3.  "Any" shall be construed to include "all", and vice versa, and "all" shall be construed to include "each", and vice versa, as is necessary to make the discovery request inclusive rather than exclusive.

4.  The words "and", "and/or" and "or" shall be construed conjunctively or disjunctively, as is necessary to make the discovery request inclusive rather than exclusive.

5.  "Including" shall be construed to mean "including, but not limited to".

Instructions for Requests for Production of Documents

1.  Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation or exclusion.

2.  You should produce all of the requested documents that are in your possession, custody or control including, but not limited to, documents in the possession, custody or control of your officers, directors, employees, agents, attorneys, consultants, contractors, subcontractors,

advisors, representatives, investigators and any other person acting, or purporting to act, on your behalf.

    3.    If you object to a discovery request and withhold any information or document requested herein pursuant to a claim of privilege, work product or other discovery protection, state with respect to each such document: (a) the privilege upon which you are relying; (b) the type of document (*e.g.*, letter, memorandum); (c) the date of the document; (d) the name and title of the author; (e) the name and title of the addressee; (f) the names and titles of all recipients; and (g) a general description of the subject matter of the document, including all information necessary to determine the basis for assertion of the privilege or protection.

    4.    If any requested document or portion thereof is withheld based upon an objection, state the basis for the objection and produce each document or portion thereof to which the objection does not apply.

* * *

    In issuing these requests, NCR acknowledges that Georgia-Pacific has produced documents as part of the discovery permitted during <u>Appleton Papers Inc., et al. v. George A. Whiting Paper Co., et al.</u>, 08-cv-16 (WCG) (E.D. Wis.). These requests are not intended to require any duplication of previously produced documents. Rather, NCR seeks only the discovery of documents, information and other evidence not previously produced by Georgia-Pacific during the <u>Whiting</u> action. To the extent Georgia-Pacific intends to rely on documents, information and/or other evidence obtained or produced by Georgia-Pacific in the <u>Whiting</u> action, Georgia-Pacific should specify the documents, information and other evidence in response to these requests.

These document requests shall be deemed continuing so as to require prompt supplemental responses if you learn additional information responsive to these document requests between the time of the initial response to these document requests and the time of final judgment in this action.

These document requests are provided without prejudice to, or waiver of, NCR's right to conduct further discovery at a later date, to the extent permitted by the Court's June 28, 2011 Case Management Order (Dkt. #83), any modification thereof approved by the Court and/or any future order of the Court.

C.  **REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

REQUEST FOR PRODUCTION 1: All documents included within or otherwise concerning the categories of documents that you disclosed in your August 5, 2011 Initial Disclosures in this action, as well as any other documents that you may use to support the allegations and claims set forth in your First Amended Complaint in this action, including, but not limited to, documents concerning any Site Facility; Recovered Fiber Brokers; NCR, ACPC, CPM, Systemedia and/or Wiggins Teape; 3M; Mead; any other facilities or entities that manufactured CCP or other Recovered Fiber and/or generated CCP Broke during the Relevant Period.

REQUEST FOR PRODUCTION 2: All documents concerning CCP and/or CCP Broke, including, but not limited to, NCR Paper brand CCP and CCP Broke, during the Relevant Period.

REQUEST FOR PRODUCTION 3: All documents concerning Recovered Fiber, including, but not limited to, Recovered Fiber that was obtained by, or that otherwise relates to, any Site Facility during the Relevant Period.

REQUEST FOR PRODUCTION 4: All documents concerning the sources of Recovered Fiber, CCP and/or CCP Broke at the Site.

9

REQUEST FOR PRODUCTION 5: All documents concerning the presence of PCBs at the Site.

REQUEST FOR PRODUCTION 6: All documents concerning potential witnesses in this case including, but not limited to, all potential witness you identified in your Initial Disclosures in this action, as well as any current or former employees of the following: any Site Facility; Recovered Fiber Brokers; NCR, ACPC, CPM, Systemedia and/or Wiggins Teape; 3M; Mead; any other facilities or entities that manufactured CCP or other Recovered Fiber and/or generated CCP Broke during the Relevant Period. This Request seeks, without limitation draft and final affidavits prepared by or for any potential witness concerning this action; compensation agreements and any other compensation-related documents concerning any potential witness in this action; any correspondence between you or others and any potential witnesses in this action; transcripts, summaries or notes of any interviews conducted by you or others of any potential witnesses in this action.

REQUEST FOR PRODUCTION 7: All documents concerning current or former employees of any Site Facilities, including, but not limited to, any organization charts, personnel files and other business records.

REQUEST FOR PRODUCTION 8: All documents concerning any individuals or entities you have contacted, retained and/or compensated for purposes of investigating or otherwise developing or assisting with this case.

REQUEST FOR PRODUCTION 9: All documents concerning the receipt of CCP Broke by each Site Facility during the Relevant Period and, if applicable, all documents concerning the purpose for which each Site Facility obtained CCP Broke during the Relevant Period.

REQUEST FOR PRODUCTION 10: All documents concerning the receipt of Recovered Fiber by each Site Facility during the Relevant Period and, if applicable, all documents concerning the purpose for which each Site Facility obtained Recovered Fiber during the Relevant Period.

REQUEST FOR PRODUCTION 11: All documents concerning the testing, sampling and/or other analyses each Site Facility performed on Recovered Fiber, CCP and/or CCP Broke during the Relevant Period including, but not limited to, any testing, sampling and/or other analyses concerning PCBs, the physical and/or chemical characteristics of CCP or CCP Broke, the breakdown of CCP or CCP Broke during the Recycling Process, pricing and sourcing of CCP or CCP Broke, alternatives to CCP or CCP Broke, and whether CCP or CCP Broke could be used as a raw material in the manufacturing process at each Site Facility.

REQUEST FOR PRODUCTION 12: All documents concerning Broke generated during the manufacturing process at each Site Facility during the Relevant Period including, but not limited to, all documents concerning the handling, collection, reuse, sale, disposal and/or recycling of such Broke.

REQUEST FOR PRODUCTION 13: All documents concerning the Recycling Processes at each Site Facility during the Relevant Period.

REQUEST FOR PRODUCTION 14: All documents concerning the presence of PCBs in the Wastewater at each Site Facility during the Relevant Period.

REQUEST FOR PRODUCTION 15: All documents concerning the Wastewater Treatment Processes at each Site Facility during the Relevant Period including, but not limited to, all documents concerning the collection, treatment and/or discharge of Wastewater.

11

12

**REQUEST FOR PRODUCTION 16:** All documents produced by Georgia-Pacific to any defendant in the KRSG Litigation, and all documents that were received by Georgia-Pacific as part of productions made by other members of the Kalamazoo River Study Group, or by any defendant in the KRSG Litigation.

**REQUEST FOR PRODUCTION 17:** All documents concerning the Site prepared by or for the Kalamazoo River Study Group or any member thereof, including, but not limited to, all studies, reports, analyses, charts, contracts, settlement agreements, decrees, business records, accounting records and/or any posting or to or image on any website currently or formerly maintained by or for the Kalamazoo River Study Group or any member thereof related to the Site.

**REQUEST FOR PRODUCTION 18:** All documents submitted to or received from any governmental individual or entity, court or arbitrator concerning the Site.

**REQUEST FOR PRODUCTION 19:** All documents concerning any litigation, arbitration or mediation related to the Site.

Dated: August 23, 2011  Respectfully submitted,

NCR CORPORATION

_____
*Counsel for NCR Corporation*

DICKINSON WRIGHT PLLC
Geoffrey A. Fields
200 Ottawa Avenue, N.W., Suite 1000
Grand Rapids, MI 49503
Phone: (616) 336-1017
Fax: (616) 458-6753

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Sandra C. Goldstein
Darin P. McAtee
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmcatee@cravath.com

SIDLEY AUSTIN LLP
Kathleen L. Roach
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601