## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC, LLC** | ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No**: **1:11-cv-00483** |
| **v.** | ) | |
| | ) | **Judge Robert J. Jonker** |
| **NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO.,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO
## AMEND CASE MANAGEMENT ORDER

### I.  INTRODUCTION

The parties differ on exactly what will and will not be tried during the Phase I trial of this case, scheduled to begin on February 19. 2013.  Foremost among their disagreements is when statute-of-limitations issues will be tried – a matter that was discussed during the Court's initial conference, but that was not addressed in the Case Management Order (the "CMO").  Defendants have now taken the position that all limitations issues should be resolved in Phase II.  Plaintiffs (collectively "Georgia-Pacific") ask the Court to amend the CMO to make clear that, consistent with the Court's announced views, the statute of limitations defense will be on the table for resolution during Phase I.

All parties, meanwhile, request an extension of the period in which to conduct depositions of experts, in order to accommodate various experts' schedules.  No other deadline will be changed.

## II. BACKGROUND

Georgia-Pacific, NCR, and International Paper were in substantial agreement as to how this case should be tried at the time they submitted the initial Joint Status Report ("JSR") (Dkt. #78). Specifically:

> Georgia-Pacific proposes that the case be heard in three stages, with the first phase deciding the issue of whether NCR, IP and Weyerhaeuser are liable under the standards of section 107(a) of CERCLA. The second phase, if needed, would address issues concerning (1) the divisibility of the liability for the site; and (2) the equitable share of liability that should be allocated to each party adjudged liable. The third stage would address the recoverability of costs claimed by Georgia-Pacific and by any other party that seeks to recover its past costs.

> The parties are in agreement as to these three basic phases. They disagree on NCR's proposal for Phase IA and IB trials and on when discovery directed to limitations issues should proceed.

JSR at 9 - 10.

At the Status Conference on June 27, 2011, the Court rejected NCR's proposal for Phases IA and IB but agreed with its proposal on limitations. The Court said:

> Well, this is one where I think I'm going to go with Mr. McAtee's approach. It does inject some rivulets, I suppose, of potential discovery into cost issues, and that's nice to avoid if we can. On the other hand, certainly if there is a clean way to address large swatches of costs, for example, cost that were done -- I have no idea -- costs that were incurred 15 years ago when GP was cleaning up its own site and it's limited to soils alone or maybe to soils and some groundwater. You know, that seems to me potentially valuable to everybody to find out about, to tee up and potentially carve off.

> And you know, limitations is a liability defense. . . But at least at this point I'm not inclined to put any kind of restriction on any liability-related discovery, even if it turns out to be a liability issue that addresses only a subset of some of the claims.

(Tr., pp. 26 - 27).

The Case Management Order of June 28, 2011 did not address the Court's rulings at the Status Conference, or the fact that the trial on February 19, 2013 would be of liability only. In an effort to ensure that there would be no misunderstanding as to just what would and would not be tried in February, Georgia-Pacific asked the Court in the Supplemental Joint Status Report (March

15, 2012) (Dkt. #173) to amend the CMO to spell out just that. Georgia-Pacific frankly thought that this was simply a housekeeping matter as to which there would be no disagreement. Georgia-Pacific was wrong. Both NCR and IP – today – have a very different understanding than Georgia-Pacific of what will and will not be litigated in the Phase I trial.

### III. THE SCOPE OF PHASE I

**A.    Georgia-Pacific's Position**

**1.    Issues To Be Tried In Phase I**

Georgia-Pacific contends that Phase I should resolve all questions of liability, and should therefore involve trial of the following issues:

- Whether defendant International Paper ("IP") is liable under the standards of section 107(a) of CERCLA as alleged in the First Amended Complaint and cross-claim filed by Weyerhaeuser. This includes:

  - whether IP (via corporate succession) was an owner or operator of one or more facilities, specifically, the Bryant Mill and associated real estate or the Panelyte Facility and associated real estate or both, at the Kalamazoo River Superfund Site at a time when there was a disposal of a hazardous substance; and

  - whether there has been a release or threatened release and disposal of polychlorinated biphenyls (PCBs) from one or more of these facilities to the Kalamazoo River Superfund site.

- Whether defendant NCR is liable under the standards of section 107(a) of CERCLA as alleged in the First Amended Complaint and cross-claims filed by IP and Weyerhaeuser. This includes:

  - whether NCR (via corporate succession or otherwise) is a person that by contract, agreement or otherwise arranged for disposal or treatment or arranged with a transporter for transport for disposal or treatment of PCBs that were contained in CCP wastepaper (in the form of either pre-consumer broke, trim, or rejects from coating facilities or NCR-owned converting facilities, or post-consumer CCP owned by NCR) to a facility owned or operated by another party or entity; and

  - whether there has been a release or threatened release of PCBs from any such facility to the Kalamazoo River Superfund Site.

- Defenses to liability. These are:

  o all Defendants' defense of the statute of limitations, if any, to the extent such defense would (a) bar Plaintiffs' claims in their entirety, (b) bar any count of the First Amended Complaint, or (c) bar Plaintiffs' recovery of any specific categories or types of costs.

  o NCR's defense that NCR sold a "useful product" rather than disposed of waste, and thus cannot be held liable as an arranger under CERCLA.[1]

  o IP's defense that it was not an owner or operator of the Bryant Mill during the period July 1, 1956 through August 5, 1966 because, pursuant to Section 101(20)(E) of CERCLA, it was a lender that, without participating in management of the facility, held indicia of ownership primarily to protect a security interest in the facility.

**2.      Liability Issues Not Triable In Phase I**

Georgia-Pacific contends that the following liability issues have already been resolved, and thus need *not* be litigated in Phase I:

- Whether plaintiffs Georgia-Pacific, et al. are liable under the standards of section 107(a) of CERCLA, plaintiffs having previously admitted and stipulated to these Phase I issues for purposes of this litigation. *See* Joint Status Report, ¶ 8(B)(iv).

- Whether defendant Weyerhaeuser is liable under the standards of section 107(a) of CERCLA as a current or former owner or operator of the Plainwell Mill and the 12th Street Landfill, Weyerhaeuser having previously stipulated to this Phase I issue for purposes of this litigation.

**3.      Issues Reserved for Later Phases**

The following issues, which will be reached only after a determination of liability, should therefore be reserved for Phase II:

- The extent to which liability for injuries, damages and costs in connection with the Site is divisible.

- Apportionment and equitable allocation of response costs or other relief sought in this case.

---

[1] NCR contends that the "useful product" defense is not an affirmative defense on which NCR has the burden of proof. NCR does apparently intend to try that issue in Phase I, however, and will soon be submitting one or more expert reports on the matter. This dispute is, therefore, not relevant to the instant Motion, and can be resolved at a later time.

- Whether a release or threatened release of PCBs caused the incurrence of response costs.

- The amount, if any, of any necessary costs of response that are consistent with the National Contingency Plan.

- All affirmative defenses, if any, other than defenses to liability.

**B.      Defendants' Positions**

**1.      Areas of Agreement with Georgia-Pacific**

Georgia-Pacific's understanding is that Defendants have never argued with the phasing of the trial, with the plan to try liability in Phase I, or with the reservation of divisibility, equitable allocation, and specific cost-recoverability issues until subsequent phases.  *See, e.g.,* JSR p. 9-10.

**2.      Areas of Disagreement with Georgia-Pacific**

The parties disagree regarding the proper time for trying Defendants' affirmative defense of the statute of limitations (if any).  Defendants currently contend that *all* statute-of-limitations issues – whether dispositive of some claims, all claims, or only certain types or categories of costs – may wait for Phase II.  Specifically, it apparently is Defendants' view that such defenses can be litigated *either* in Phase I or Phase II.  It is not clear to Georgia-Pacific whether one or all of the Defendants intend to wait until Phase II to address the statute of limitations.  IP goes further, and apparently believes that *no* affirmative defense, other than the security interest exemption, should necessarily be litigated in Phase I.

The scope of the limitations defenses that Defendants hope to be allowed to argue in Phase II is not entirely clear.  NCR apparently intends to assert statute-of-limitations issues that go to entire counts, or perhaps even the entire case.  IP has not yet responded to GP's request that IP state whether it has statute-of-limitations defenses capable of dismissing some or all of Georgia-Pacific's counts.

**C.      Procedural History Relevant to Statute-of-Limitations Issues**

Before addressing the merits of the Defendants' positions, it is worth noting that, in resisting litigation of limitations issues in Phase I, each Defendant has contradicted either its prior statements on the management of the case, and/or its choice of discovery topics during Phase I.

**NCR.**  NCR and GP initially *agreed* that statute-of-limitations issues going to all claims, or dispositive of entire causes of action, should be subjects of discovery and trial in Phase I.  *See* Joint Status Report ("JSR") at 11-12 (Dkt. 78) (Georgia-Pacific argues discovery in Phase I should include discovery of limitations issues supporting dismissal of "the entire case or an entire count"); *id.* at 13-14 (second portion of NCR's proposed Phase I would address "any … issues related to NCR's potential liability," other than certain threshold questions of broke sales and control in first portion of Phase I; discovery regarding "whether Georgia-Pacific's claims are timely" may proceed in both Phase I and later phases, as it would be "highly inefficient to wait until the final phase of the case to determine whether some or all of Georgia-Pacific's claims are time-barred.").

Indeed, at the time of the JSR, NCR took the position that Phase I should include even limitations defenses that went to specific categories and types of costs, rather than only those limitations defenses dispositive of the entire case or entire causes of action.  JSR at 12-14; Transcript of Status Conference ("Transcript") at 25 (June 27, 2011) (copy attached as Exhibit A) (counsel for NCR sought discovery in Phase I on "statute of limitations issues that may not knock out an entire count or the entire Complaint but could knock out big chunks of their claim.").  At the time, Georgia-Pacific sought to limit Phase I to limitation defenses going to the entire case or to entire claims, because Georgia-Pacific hoped to avoid exhaustive discovery on issues that would not be dispositive.  JSR at 12; Transcript at 25-26 (counsel for Georgia-Pacific argued that including such issues "could result in substantially increased discovery that's unnecessary at this stage of the

game.")

The Court agreed with NCR. Transcript at 26-27. Accordingly, all limitations issues were open for discovery in Phase I, with the expectation that any limitations defenses that went to the whole case or an entire count or to specific types or categories of costs would be resolved in Phase I. NCR did in fact pursue exhaustive written discovery directed to all aspects of any statute-of-limitations defenses. Specifically, at the close of the fact discovery period, Georgia-Pacific was required to conduct considerable review and investigation, and respond at considerable length, to limitations-related requests for admission, interrogatories, and document-production requests from NCR. *See* Defendant NCR Corporation's Second Set of Requests for Admission, Second Set of Interrogatories, and Third Set of Requests for the Production of Documents to Plaintiffs Georgia-Pacific Consumer Products LP, Fort James Corporation, and Georgia-Pacific LLC (February 29, 2012) (copy attached as Exhibit B). As just one example of the depth of these requests, NCR asked Georgia-Pacific:

> For the costs and/or payments identified in Paragraphs 141, 142, 143(b), 153, 154, and 157(b) of your First Amended Complaint, state in detail the amount of each of the costs and/or payments you are seeking with this lawsuit, a description of each of the costs and/or payments that you have incurred at each OU and/or Site Facility, the date you incurred each of these costs and/or payments, and a description of each of these costs and/or payments. Include in your answer any costs and/or payments you are seeking with this lawsuit that do not correspond to any OU and/or Site Facility, as well as any costs and/or payments to government agencies for oversight activities.

*Id.* at 10 (Interrogatory No. 2).

**Weyerhaeuser.** Weyerhaeuser was not a party at the time of the JSR or the subsequent hearing. But Weyerhaeuser's current desire to reserve statute-of-limitations issues for Phase II is flatly inconsistent with Weyerhaeuser's conduct to this point. Once Weyerhaeuser was added to the case, Weyerhaeuser, like NCR, chose to conduct written discovery on statute-of-limitations issues. In fact, Weyerhaeuser's *only* interrogatories and requests for production to Georgia-Pacific

during the Phase I fact discovery period went to statute-of-limitations issues. *See* Defendant And Cross-Defendant Weyerhaeuser Company's First Interrogatories And Requests For Production Of Documents To Plaintiffs Georgia-Pacific Consumer Products, LP, Fort James Corporation, And Georgia-Pacific, LLC (February 7, 2012) (copy attached as Exhibit C). Weyerhaeuser, for example, made the following document request of Georgia-Pacific:

> For funds that G-P has paid to reimburse any person or any local, state or federal agency for that person or agency's costs incurred to implement any removal or remedial action at the Allied Paper/Bryant Mill Pond Operable Unit (OU1) of the Kalamazoo River Site, provide Documents sufficient to show: (1) the total amount G-P has paid to the person or agency and agreed to pay in the future; (2) the date each removal or remedial action began; and (3) the date each removal or remedial action ended or whether the action is ongoing.

*Id.* at 10 (Request for Production No. 4). Again, Georgia-Pacific was required to investigate the inquired-about matters, and Georgia-Pacific responded at length.

**IP.** IP took no position in the JSR regarding the timing of discovery and trial with respect to limitations defenses. JSR at 15. At the hearing, however, IP agreed with Georgia-Pacific, *i.e.*, IP took the position that case- or claim-dispositive limitations defenses should be tried in Phase I, with other limitations defenses being reserved. Transcript at 26. As noted above, both IP and Georgia-Pacific were overruled with respect to limitations defenses that were not case- or claim-dispositive, and *all* limitations issues were put on the table. Thus, during Phase I discovery, IP was free to conduct discovery on all limitations issues, as NCR and Weyerhaeuser did. For reasons of its own, IP chose not to do so.

**D.     Argument:  Phase I Should Resolve All Limitations Defenses**

The rationale for trying *all* statute-of-limitations defenses in Phase I is simple, and is based on considerations of both procedural efficiency and fairness.

As a matter of efficiency, Phase I should resolve all questions of liability. Doing so would ensure that lengthy and expensive litigation over other complex issues (equitable allocation, the

amount of damages, etc.) will take place only if necessary. Such efficiencies have always been the purpose of Phase I, the parties have always agreed on that purpose, and indeed, resolution of threshold liability concerns is one of the most basic reasons for bifurcating trials generally. *See* Fed. R. Civ. P. 42(b); Manual for Complex Litig. § 21.632 (3d ed. 1995) ("severance [of certain issues for separate trial] can reduce the length of trial, particularly if the severed issue is dispositive of the case…."). Plainly, liability is an issue dispositive of the case – and as the Court has observed, "limitations is a liability defense…." Transcript at 27.

The equities are at least as compelling as efficiency considerations. As noted above, last summer Georgia-Pacific tried, with IP's agreement, to limit Phase I discovery to case-dispositive or claim-dispositive limitations defenses. That effort failed, and unfettered limitations discovery commenced. NCR and Weyerhaeuser conducted that discovery with vigor. Having now endured copious Phase I written discovery on *all* limitations issues, from both NCR and Weyerhaeuser, and having devoted time to preparing its case on the issues, Georgia-Pacific should be entitled to a resolution of all such issues now. Correlatively, Defendants, having chosen to pursue all limitations discovery in Phase I, should be prepared to litigate the matter during the Phase I trial.

It is not clear why Defendants now oppose litigation of limitations issues, and instead wish to engage in what NCR once called the "highly inefficient" practice of reserving liability defenses for later. JSR at 14. It may be that, having reviewed the voluminous evidence that Georgia-Pacific was required to marshal, Defendants have concluded they have no viable limitations defense, and merely hope to postpone an inevitable ruling to that effect. Or it may be that Defendants hope to conduct still more discovery on limitations issues during Phase II, in the hope of uncovering some argument that thus far has eluded them. Neither scenario, however, justifies Defendants' plan to postpone limitations issues to Phase II. Finally, IP's newfound desire to avoid litigation of *all* affirmative defenses in Phase I, but for the security interest exemption, suggests

that IP has reached the same conclusions with respect to all other affirmative defenses, including the statute of limitations.

### IV.  EXTENSION OF THE EXPERT DISCOVERY PERIOD

All parties agree that the time period for deposing expert witnesses should be extended until July 24, 2012, and they respectfully ask the Court to amend the CMO to impose that deadline. This short extension will not affect any other case deadline (including the July 27 dispositive motion deadline), and is necessary to accommodate the schedules of the parties' various experts.

### V.  CONCLUSION

For the foregoing reasons, Georgia-Pacific asks the Court to amend the CMO to provide that Phase I triable issues will consist only of those identified in Sec. II.A.1, *supra*.  All parties ask the Court to extend the deadline for taking expert depositions until July 24, 2012.

Dated: May 31, 2012

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By:_____/s/ Douglas M. Garrou_____

Peter A. Smit, Bar No. P 27886
Varnum LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6000

Joseph C. Kearfott
Douglas M. Garrou
George P. Sibley, III
Hunton & Williams LLP
951 East Byrd St.
Richmond, VA 23219
(804) 788-8200

Jeffrey N. Martin
Hunton & Williams LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
(202) 955-1500

Kathy Robb
Hunton & Williams LLP
200 Park Avenue, 52nd Floor
New York, New York  10166-0005
(212) 309-1000

Jan M. Conlin
Tara D. Falsani
Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
(612) 349-8500

## CERTIFICATE OF SERVICE

       I hereby certify that on May 31, 2012, I electronically filed  the foregoing using the ECF system, which will send notification of such filing by operation of the Court's electronic systems. Parties may access this filing via the Court's electronic system.

 

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By        /s/ Douglas M. Garrou