UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, | ) ) ) ) | |
| | ) | Case No. 1:11-cv-00483 |
| Plaintiff, | ) ) | Judge:  Hon. Robert J. Jonker |
| | ) | |
| vs. | ) | |
| | ) | |
| NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO., | ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT INTERNATIONAL PAPER COMPANY'S BRIEF IN SUPPORT OF MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORT OF KENNETH D. JENKINS, PH.D.

Defendant International Paper Company ("International Paper"), by its counsel of record, hereby submits its brief in support of the accompanying motion to strike Plaintiffs' supplemental expert witness report of Kenneth D. Jenkins, Ph.D.

## STATEMENT OF FACTS

The Court issued its Case Management Order on June 28, 2011. (Docket No. 83). Pursuant to the Court's Case Management Order, Plaintiffs were to disclose experts and produce expert reports in accordance with Fed. R. Civ. P. Rule 26(a)(2)(A) and (B) on or before April 18, 2012.  Defendants were required to identify experts and produce expert reports thirty (30) days later, by May 18, 2012.  According to the initial Case Management Order, expert discovery was to be completed by June 29, 2012.

Pursuant to the parties' Stipulation on Certain Limited Discovery and Expert Reports, Magistrate Judge Brenneman issued an Order dated March 29, 2012, which modified the

foregoing deadlines. (Docket No. 196).  In accordance with the Order, the date for disclosing

initial experts and their reports was extended from April 18, 2012 to May 9, 2012.  The date for

disclosing defense experts and their reports, previously set for May 18, 2012, was extended to

June 8, 2012.  These deadlines still bind the parties.

      The deadline to complete expert discovery was similarly modified.  On May 31, 2012,

Plaintiffs filed a Motion to Amend the Case Management Order, which sought (among other

things) court approval of a stipulated and limited extension of time to complete expert

depositions. (Docket No. 218).  That portion of the motion was granted in the Court's Order

dated June 5, 2012, and all expert depositions are now to be completed by July 24, 2012. (Docket

No. 220).

      On May 9, 2012, Plaintiffs identified two purported expert witnesses who are relevant to

this motion, namely Thomas L. Host and Kenneth D. Jenkins, Ph.D.  On May 9, Plaintiffs also

produced to Defendants the expert witness reports of Mr. Host (the "Host Report") and

Dr. Jenkins (the "Jenkins Report").  In accordance with the Court-ordered deadlines, Defendant

International Paper's expert designations and their reports, including rebuttal reports to the Host

Report and the Jenkins Report, are due on Friday, June 8, 2012.

      On June 1, 2012, without leave of court and over three weeks after the court-imposed

deadline, International Paper was served with a supplemental expert report of Dr. Jenkins

entitled "Addendum to Expert Report of May 9, 2012" (the "Jenkins Supplemental Report").

Plaintiffs served the Jenkins Supplemental Report on Defendants by email on June 1, 2012.  A

copy of the Jenkins Supplemental Report is attached hereto as Exhibit A.

      The Jenkins Supplemental Report contains new opinions, not contained in the initial

Jenkins Report, including issue-significant opinions relating to releases of PCB-contaminated

sediment, alleged property ownership, and, based on that property ownership information, ultimate responsibility for remediation costs under CERCLA, 42 U.S.C. § 9601 *et seq.* According to Dr. Jenkins, the Jenkins Supplemental Report was prepared "at the request of Georgia-Pacific LLC (Georgia-Pacific) based on new information provided to me following the submission to defendants of my Expert Report …" Dr. Jenkins further offers that "[t]he new information was contained in the *Expert Report of Thomas L. Host*, also submitted by Georgia-Pacific to defendants on May 9, 2012." (Jenkins Supplemental Report, p. 1).

The so-called "new information" relied upon by Dr. Jenkins was not new at all, but rather was supplied by Plaintiffs' other expert in the Host Report. The Jenkins Supplemental Report was late, Plaintiffs have offered no explanation for the 23 day delay and have rejected International Paper's request for a brief extension of the expert discovery disclosure deadline to address it. It therefore should be disallowed, or International Paper should be permitted additional time to address it.

## ARGUMENT

To control dockets and prevent abuses, district courts are empowered to adopt scheduling orders mandating that discovery be prepared and completed at certain times. *See Fed. R. Civ. P. 16(b).* Rule 16(c) provides that the Court has the power to consider and take appropriate action on numerous items, including issuing orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37. *Fed.R.Civ.P. 16(c)(2)(F).* Rule 16 recognizes that Court's scheduling orders and their enforcement are regarded as the essential mechanism for cases being trial ready, in an efficient, just and certain manner. *See Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 507, 510 (S.D. Iowa 1992). The control of these schedules is deliberately reposed in the court, and not in counsel, so that this end may be achieved. *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775,

790 (1st Cir. 1988), *cert. denied,* 488 U.S. 1030, 109 S. Ct. 838, 102 L.Ed.2d 970 (1989)*;*

*Compagnie Nationale Air France v. Port of New York Authority,* 427 F.2d 951 (2nd Cir. 1970);

*Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C. 1987).  Accordingly, these orders are strictly

enforced.  A magistrate or judge's scheduling order is not a frivolous piece of paper, idly entered

which can be cavalierly disregarded by counsel without peril.  *Gestetner Corp. v. Case*

*Equipment Co.,* 108 F.R.D. 138, 141 (D.Me. 1985).  Indeed, deadlines must be respected;

without such respect, courts are unable to regulate their dockets.  *Taylor v. Collins,* 574 F.Supp.

1554, 1556 (E.D. Mich. 1983).  According to Rule 16(b)(4), once entered, "[a] schedule may be

modified only for good cause and with the judge's consent." *Id*.

Under Fed. R. Civ. P. 26(a)(2), "a party must disclose to the other parties the identity of

any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or

705."  In addition, "this disclosure must be accompanied by a written report… if the witness is

one retained or specially employed to provide expert testimony in the case…"  Fed. R. Civ. P.

26(a)(2)(B).  This report must contain the witnesses' opinions, the data used to form those

opinions, exhibits that will be used to summarize those opinions, the witness' qualifications, a

list of cases where the witness testified in the past four years, and disclosure of any

compensation paid to the expert.  Fed. R. Civ. P. 265(a)(2)(B)(i)-(vi).  Furthermore, with respect

to witnesses who are to be utilized at trial (as opposed to mere trial preparation experts), the

opposing party has the right to depose that expert.  Fed. R. Civ. P. 26(b)(4)(A).

Fed. R. Civ. P. Rule 37(c) mandates sanctions for failing to disclose or supplement an

earlier disclosure.  Rule 37(c)(1) provides: that if "a party fails to provide information or identify

a witness as required by Rule 26(a). . . the party is not allowed to use that information or witness

to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."

The party potentially subject to sanctions has the burden to prove either harmlessness or justification.  *Roberts v. Galen of Va., Inc.,* 325 F.3d 776, 782 (6th Cir. 2003) (citation omitted).

Once a violation of Rule 26 is found, sanctions under Rule 37(c) are mandatory.  Rule 37(c) "requires ***absolute compliance*** with Rule 26(a), that is, it ***mandates that a trial court punish a party for discovery violations in connection with Rule 26*** unless the violation was harmless or is substantially justified."  *Roberts*, 325 F.3d at 782 (emphasis added); *see also Matilla v. S. Ky. Rural Elec. Coop. Corp.*, 240 Fed. Appx. 35, 43 (6th Cir. 2007) (noting the mandatory nature of sanctions under Rule 37 for violations of Rule 26 with respect to expert disclosures); *Smith v. Botsford Gen. Hosp.,* 419 F.3d 513, 517 (6th Cir. 2005) (noting Rule 26 requires parties to disclose their expert's opinions and that "Rule 37 authorizes -- indeed, directs -- exclusion of the witness as a sanction for a Rule 26 violation").

These pre-trial rules exist because "[t]rial by ambush has been replaced by an orderly discovery process in which the opposing sides reveal their experts and their anticipated opinions well in advance of trial, so that the trial can proceed in an efficient manner."  *Easterwood v. Racetrac Petroleum, Inc.*, No. 93-6032, 1994 U.S. App. LEXIS 36792, at *17-18 (6th Cir. Dec. 28, 1994) (excluding untimely disclosed expert testimony); *Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000) (upholding the exclusion of untimely expert-witness reports and affidavits).

### A.    The Jenkins Supplemental Report Was Untimely And, If Allowed, Will Unfairly Prejudice Defendants

The court-ordered deadline to disclose initial experts and serve those experts' reports was May 9, 2012. (Docket No. 196).  Thirty days, until June 8, 2012, were given to identify rebuttal experts and produce their reports.  Plaintiffs produced the Jenkins Supplemental Report on June 1, 2012, a total of 23 days after their deadline.  Plaintiffs' service of the Jenkins

Supplemental Report was done without seeking leave to amend the original Jenkins Report, and

without moving to amend the Court's Scheduling Order, as amended by Mag. Judge

Brenneman's March 29, 2012 Order (Docket No. 196, p. 7).  Moreover, when International

Paper's counsel, as part of the concurrence requirement under W.D. Mich. LCivR 7.1(d),

requested that Plaintiffs give Defendants two weeks beyond the expert designation date to

consider and respond to the Jenkins Supplemental Report in lieu of moving to strike it, the

request was denied.[1]

Defendants will be unfairly prejudiced if the Court does not strike the Jenkins

Supplemental Report, in that it contains new opinions from Dr. Jenkins not contained in his

initial May 9, 2012 report.  Moreover, since International Paper's expert designations, and the

accompanying reports, are due on June 8, 2012 (a mere seven days after the Jenkins

Supplemental Report was served on Defendants), International Paper does not have adequate

time to respond.  In effect, with respect to Dr. Jenkins and the opinions contained in the Jenkins

Supplemental Report, Plaintiffs' tactics have resulted in reducing Defendants' time to respond to

the Supplemental Report from 30 days to seven days, if Defendants wish to rebut his opinions

with their own experts.

### B.    The Jenkins Supplemental Report Was Not Issued To Correct A Material Error Or To Add Newly-Discovered Evidence

Rule 26(e) provides that a party who has made disclosures pursuant Rule 26(a) must

"must supplement or correct its disclosure or response: (A) in a timely manner if the party learns

that in some material respect the disclosure or response is incomplete or incorrect, and if the

additional or corrective information has not otherwise been made known to the other parties

---

[1]    An offer was made to shorten that time period if Plaintiffs' counsel thought the length of the extension would interfere with the ultimate completion of expert discovery by July 24, 2012. That request was rejected as well.

during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).  Subpart (2) provides that for "an expert whose report must be disclosed under Rule 26(a)(2)(B)," the party has a duty to supplement the information included in the report or given during the expert's deposition. Fed. R. Civ. P. 26(e)(2).

The duty to "supplement" and correct "incomplete" and "incorrect" information, however, does not serve as a loophole to otherwise avoid meeting a court-ordered deadline for disclosing expert witnesses and for the production of their reports.  Dr. Jenkins' new opinions are based on information contained in the Host Report.  The fact that this information may have been "new" to Dr. Jenkins is not relevant:  the information was not "new" to Plaintiffs, since it was contained in Plaintiffs' other expert report, the Host Report.  As such, the information was available to Plaintiffs, and therefore to all of Plaintiffs' experts, as of May 9, 2012 if not before.  Despite this undeniable fact, the Jenkins Supplemental Report was not issued or served until June 1, 2012, some 23 days after the court-ordered deadline of May 9, 2012.

A party who "fails to provide information or identify a witness as required by Rule 26(a) or (e)" is "not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The Jenkins Supplemental Report is neither substantially justified or harmless, and should be stricken.

**<u>CONCLUSION</u>**

Defendant International Paper Company respectfully requests this Court enter an order striking the Supplemental Jenkins Report, prohibiting Dr. Jenkins from testifying regarding any

issues not disclosed in his May 9, 2012 initial Jenkins Report, and granting such other and further relief as justice and fairness require.

Dated: June 8, 2012

                                                     _____/s/ Sonja A. Inglin_____
                                                    John F. Cermak
                                                    Sonja A. Inglin

John F. Cermak
Sonja A. Inglin
BAKER & HOSTETLER LLP
12100 Wilshire Boulevard, 15th Fl.
Los Angeles, CA 90025
(310) 820-8800
One of the Attorneys for International Paper Co.
singlin@bakerlaw.com

John D. Parker
Michael Dominic Meuti
BAKER & HOSTETLER LLP
PNC Center
1900 E. 19th Street, Suite 3200
Cleveland, OH 44114
(216) 621-0200
One of the Attorneys for International Paper Co.
jparker@bakerlaw.com
mmeuti@bakerlaw.com

And by:

David W. Centner
CLARK HILL PLC
200 Ottawa Ave. NW, Ste. 500
Grand Rapids, MI 49503
(616) 608-1106
One of the Attorneys for International Paper Co.
dcentner@clarkhill.com

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

GEORGIA-PACIFIC CONSUMER )
PRODUCTS LP,  et al., )
)
Plaintiffs, )
) Case No. 1:11-cv-00483
v. )
) Judge Robert J. Jonker
NCR CORPORATION, et al., )
)
Defendants. )
)

Addendum to
Expert Report of May 9, 2012
Submitted on Behalf of Plaintiffs of

Kenneth D. Jenkins, Ph.D.

_____
Kenneth D. Jenkins, Ph.D.
Cardno ENTRIX
2300 Clayton Road
Suite 200
Concord, CA  94520

June 1, 2012

**Addendum to the Expert Report of Kenneth D. Jenkins, Ph.D.**

I have prepared this Addendum at the request of Georgia-Pacific LLC (Georgia-Pacific) based on new information provided to me following the submission to defendants of my Expert Report entitled *Expert Report of Kenneth D. Jenkins, Ph.D.*, dated May 9, 2012, which I incorporate here by reference. The new information was contained in the *Expert Report of Thomas L. Host*, also submitted by Georgia-Pacific to defendants on May 9, 2012.  The Host (2012) expert report provided me with new information relevant to my previously stated opinions regarding ownership by the St. Regis Paper Company (St. Regis) of property that included portions of the polychlorinated biphenyl (PCB)-contaminated Bryant Mill Pond between approximately 1953 and August 5, 1966.  International Paper is the successor to St. Regis.

My experience in evaluating factors controlling the fate, transport, bioavailability and toxicity of PCBs, including the sources, fate and transport, and effects of PCBs in the Kalamazoo River watershed and other streams, rivers, and estuaries throughout the United States and in Canada is described in my Expert Report dated May 9, 2012.  With the exception of the Host (2012) Expert Report recently provided to me, the information pertaining to my experience, compensation, documents considered, and previous testimonies as described in my May 9, 2012 Expert Report has not changed and applies to this Addendum.  The references for materials I have cited in this Addendum are provided in Attachment 1.

Host (2012) reviewed historical real estate instruments, tax rolls, and other documents to establish the boundaries of St. Regis's Panelyte Division's property which are presented in Exhibit 2C from Host (2012) which I have attached to this Addendum as Attachment 2.  As shown in Host (2012) Exhibit 2C (Attachment 1), the Panelyte Division's property includes a portion of Bryant Mill Pond.  According to Host (2012), the initial acquisition of the Panelyte Division property by St. Regis occurred via multiple transactions on December 17, 1946, August 12, 1949, and August 18, 1949.  St. Regis subsequently sold a portion of the property to Reliance Universal, Inc. on March 3, 1965 and the remaining portion of the property to Reliance Panelyte, Inc. on August 31, 1965 (Host 2012).  Thus, St. Regis owned all of or a portion of the Panelyte Division property at various times between December 17, 1946 and August 31, 1965.

As I indicated above, a portion of the Panelyte Division property, which I estimate to comprise approximately 3.1 acres, extended into the 29-acre Bryant Mill Pond.  As I described in my Expert Report of May 9, 2012 (at page 2), the Bryant Mill Pond was an impoundment of Portage Creek located south of Alcott Street that was used by the Bryant Mill to receive waste water from the mill.  As such, it was an integral part of the operation of the Bryant Mill.  It also is a part of the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site.  Based on the Host Report and contrary to my earlier understanding, this 3.1 acre portion of the Bryant Mill was not leased to Allied Paper (previously known as Thor Corporation), but instead remained the property of St. Regis until it was conveyed in 1965.

As I further discussed in my report (at page 16), the Bryant Mill Pond was contaminated with more than 21,000 pounds of PCBs at the time that the U.S. Environmental Protection Agency (USEPA) conducted a time-critical removal action in 1998 and 1999. The primary source of PCBs released to Portage Creek and Bryant Mill Pond was the Bryant Mill, a paper deinking and recycling facility that was owned and operated or leased by St. Regis from before 1953 to August 5, 1966 (Jenkins 2012). As shown on Attachment 3, sediments in the area of Bryant Mill Pond that was owned by the Panelyte Division of St.

1

Regis Paper Company were contaminated with PCBs. Within this area of Bryant Mill Pond, PCB concentrations ranged as high as 210 mg/kg (BBL 1992; and see Attachment 2). For the reasons stated in my report, PCBs contained in this portion of the Bryant Mill Pond, like the remainder of Bryant Mill Pond, came from paper residues released from 1954 or before until after August 6, 1966, which includes the time period that St. Regis continued to own the Panelyte Division property.

As I discussed in my Expert Report of May 9, 2012, a portion of the PCBs in Bryant Mill Pond, were transported further downstream in Portage Creek and into the Kalamazoo River during the period of time that PCBs were present in paper products and St. Regis owned the Bryant Mill (from approximately 1953 to August 5, 1966). Given that St. Regis owned the Panelyte Division (from before 1953 to approximately August 31, 1965), and that the Panelyte Company property included a portion of Bryant Mill Pond that contained PCB-contaminated sediment, it is my opinion that PCBs associated with these sediments contributed in significant volumes to downstream releases of PCBs as well. Similarly, the response costs incurred by Georgia-Pacific and described at pages 4 - 5 of my Expert Report of May 19 resulted in part from these releases.

Finally, I have been give a copy of the Expert Report of Timothy J. Riddiough dated May 9, 2012. Dr. Riddiough states in his report that "As part of the Transaction, St. Regis retained certain rights or made certain agreements related to its separate "Panelyte" operations located in Kalamazoo. The Panelyte operations were located on a property adjoining the real property covered by the lease and on which the Bryant Mill buildings were located." (Footnote 4, Page 5). For the reasons described above, the real estate comprising the Panelyte property was not "separate" from the Bryant Mill. To the contrary, 3.1 acres of that property was in the Bryant Mill Pond and therefore was a part of operation of the Bryant Mill, even though not leased to Allied Paper.

2

**Attachment 1**

**Materials Referenced in the Addendum to
the Expert Report of Kenneth D. Jenkins, Ph.D.**

BBL. 1992. Description of the Current Situation, Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site. Volume 3 of 7. Prepared by Blasland, Bouck & Lee, Inc. for the Kalamazoo River Study Group.  May.  NCRKZOO0025092 - NCRKZOO0025134.

Host, T.L. 2012. Expert Report of Thomas L. Host.  Prepared for Georgia-Pacific Consumer Products LP, Fort James Corporation, and Georgia-Pacific LLC.  May 9.

Jenkins, K.D. 2012.  Expert Report of Kenneth D. Jenkins, Ph.D.  Prepared for Georgia-Pacific LLC.  May 9.

Riddiough, T.J. 2012.  Expert Report of Timothy J. Riddiough, Ph.D. Prepared for International Paper Company.  May 9



**Attachment 2: Panelyte Property**





Panelyte Deeded Site
Section Boundary
Quarter Section Line
Portage Creek Centerline
Quarter Section Posts

Coordinate System: NAD 1983 StatePlane Michigan South FIPS 2113 Feet Intl
Projection: Lambert Conformal Conic Datum: North American 1983
Central Meridian: -84.3667
Standard Parallel 1: 42.1000Standard Parallel 2: 43.6667

Data Sources:
USGS Aerial Photo 1955 Kalamazoo County, Michigan
Legal Descriptions provided by Transnation Title
Michigan Geographic Data Library

The information presented in this map document is advisory and intended for reference purposes only.

0   200   400   800
Feet

N

May 2012     Job No. 33447001.00     Path: R:\Projects\CE_GP_KzRiv\Ltigation_33447001.00_LMB\GIS\20120531_Attach2_Panelyte.mxd     Date Saved: 5/31/2012 9:28:14 AM

**Soil Boring: Sed5**
Depth 0-0.2 ft = ND

**Soil Boring: Sed4**
Depth 0-0.7 ft = 7

**Soil Boring: 13**
Depth 0-1 ft = 1.8
Depth 1-2 ft = 2.8
Depth 2-3 ft = 7.5

**Soil Boring: 14**
Depth 0-1 ft = 150
Depth 1-2 ft = 5.5
Depth 2-3 ft = 3.7

**Soil Boring: 18**
Depth 0-1 ft = 19
Depth 1-2 ft = 1.1
Depth 2-3 ft = 1.4

**Soil Boring: 17**
Depth 0-1 ft = 1.9
Depth 1-2 ft = 140
Depth 2-3 ft = 5.1

**Soil Boring: 19A**
Depth 0-0.2 ft = ND

**Soil Boring: 20**
Depth 0-1 ft = ND
Depth 1-2 ft = ND

**Soil Boring: 22**
Depth 0-1 ft = 61
Depth 1-2 ft = 110
Depth 2-3 ft = 90
Depth 3-4 ft = 210
Depth 4-5 = 27
Depth 5-6 = ND

**Soil Boring: 25**
Depth 0-1 ft = 41
Depth 1-2 ft = 60
Depth 2-3 ft = 150
Depth 3-4 ft = 42
Depth 4-5 = ND
Depth 5-6 ft = ND
Depth 7-8 ft = ND

**Soil Boring: 26**
Depth 0-1 ft = 220
Depth 1-2 ft = 140
Depth 2-3 ft = 94
Depth 3-4 ft = 120
Depth 4-5 = ND
Depth 5-6 = ND

**Soil Boring: 28**
Depth 0-1 ft = 50
Depth 1-2 ft = 10
Depth 2-3 ft = ND
Depth 3-4 = 2.6

**Soil Boring: 4B7**
Depth 0-0.2 ft = ND

**Soil Boring: 4B5**
Depth 0-0.2 ft = ND

**Soil Boring: 31**
Depth 0-1 ft = 11
Depth 1-2 ft = 6
Depth 2-3 ft = 13
Depth 3-4 ft = ND

**Soil Boring: 29**
Depth 0-1 ft = 69
Depth 1-2 ft = 340
Depth 2-3 ft = 68
Depth 3-4 ft = ND

**Soil Boring: 33**
Depth 0-1 ft = 59
Depth 1-2 ft = 130
Depth 2-3 ft = 130
Depth 3-4 ft = 65

Bryant Mill Pond

Bryant Mill Pond

Sect. 27
T02S R11W

Dolson Dr

Homecrest Ave

S Cracker St

**Notes:**
PCBs = polychlorinated biphenyls.
All concentrations are in units of mg/kg.

**Attachment 3: Panelyte Property - PCB Concentrations in Portage Creek Sediments**

Cardno ENTRIX

The information presented in this map document is advisory and intended for reference purposes only.

- Soil Borings 07/11/1985
- Panelyte Deeded Site
- Section Boundary
- Quarter Section Line
- Portage Creek Centerline
- Quarter Section Posts

Coordinate System: NAD 1983 StatePlane Michigan South FIPS 2113 Feet Intl
Projection: Lambert Conformal Conic Datum: North American 1983
Central Meridian: -84.3667
Standard Parallel 1: 42.1000 Standard Parallel 2: 43.6667

**Data Sources:**
Soil boring information originally supplied 07/11/1985 by Limno-Tech, Inc.
and Blasland & Bouck Engineers, P.C.
USGS Aerial Photo 1955 Kalamazoo County, Michigan
Legal Descriptions provided by Transnation Title
Michigan Geographic Data Library

May 2012    Job No. 33447001.00

Path: R:\Projects\CE_GP_KzRivLitigation_33447001.00_LMBIGIS\20120531_Attach3_PanelytePCB.mxd

0   62.5   125   250
Feet

N

Date Saved: 5/31/2012 9:39:05 AM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2012, I electronically filed the foregoing using the ECF

system, which will sent notification of such filing by operation of the Court's electronic systems.

Parties may access this filing via the Court's electronic system.

By: _____/s/ Sonja A. Inglin_____
                           Sonja A. Inglin

601349019