IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | No. 11-cv-00483 |
| NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER COMPANY, | ) ) ) ) | Judge Robert J. Jonker |
| Defendants. | ) | |

**DEFENDANT NCR CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND CASE MANAGEMENT ORDER**

**PRELIMINARY STATEMENT**

GP's Motion to Amend Case Management Order (Dkt. # 218-19) (the "Motion to Amend") is not "simply a housekeeping matter". (Motion to Amend at 2.) Under the guise of seeking "clarity", GP's request would force Defendants to raise limitations defenses in Phase I of the litigation that Defendants are entitled to raise in Phase II.[1] If GP believed the Case Management Order (Dkt. # 83) ("CMO") was unclear, then it should have filed its motion after the CMO was issued almost a year ago. Instead GP waited until after the opportunity to conduct Phase I fact discovery closed to file its motion. To require NCR to put forth some of its limitations defenses now, when it has not pursued full discovery on them, would be unfair.

While the limitations issue should be addressed now, the Motion to Amend also addresses other issues that are properly addressed in the final pretrial process. Parsing the details of how the substantive issues regarding liability will be litigated in Phase I is a question properly considered in the final pretrial process, after expert discovery has closed and parties have engaged in dispositive motion practice. Attempting to answer these questions now will deny the Parties and the Court full information in making decisions as to the scope of the Phase I trial. NCR therefore respectfully requests the Motion to Amend be denied.[2]

---

[1] The proposed amendment would require Defendants to litigate in Phase I "all Defendants' defense of the statute of limitations, if any, to the extent such defense would (a) bar Plaintiffs' claims in their entirety, (b) bar any count of the First Amended Complaint, or (c) bar Plaintiffs' recovery of any specific categories or types of costs". (Mot. to Amend at 3.)

[2] In response to the Court's questions in its Order dated June 5, 2012 (Dkt. #220), concerning the proposed Stipulation on Phase One CERCLA Liability and Order filed by GP and Weyerhaeuser on April 19, 2012 (Dkt. # 212) (the "Stipulation"), NCR agrees with GP and Weyerhaeuser that their admissions in the Stipulation are not limited to a particular party or a particular phase (*see* Dkt. #223). NCR also agrees that any divisibility issues will be resolved in Phase II, if needed. (*Id.* at 2.)

## BACKGROUND

GP errs in its account of the dispute in the Joint Status Report (Dkt. # 78) ("JSR"). The issue presented was how to efficiently conduct discovery in Phases I and II such that discovery in each of the two phases would not be duplicative. The dispute was not about which issues or defenses would be required to be tried in Phase I. NCR proposed, and the Court agreed, that because limitations issues were likely to come up in the general course of discovery on liability, the Court should not place artificial boundaries on limitations discovery in Phase I. The idea was that NCR and the other Defendants could then raise limitations defenses in whichever Phase—either I or II—made the most sense.

In the JSR, GP proposed to limit discovery in Phase I to "discovery needed to support a motion for summary judgment or other adjudication addressed to the dismissal of the entire case or an entire count of the First Amended Complaint" and argued that "[d]iscovery relating to costs belongs in a later phase of the case". (JSR at 11-12). NCR objected to this approach because it would inappropriately parse issues that could span both Phases. Instead, NCR proposed that "for all parties, discovery as to the issue of whether Georgia-Pacific's claims are timely under CERCLA may proceed *both* in Phase I (subparts A and B) *and in later phases*". (JSR at 13-14 (emphasis added).) NCR reasoned that since discovery regarding the limitations defenses could be related to the substantive issues in both Phases, discovery on such defenses should not be limited at the outset. (*Id.*) To be clear, in the JSR, no party, *including GP*, argued that any limitations defenses had to be litigated in Phase I. The dispute only concerned how to run the discovery process.

At the Rule 16 Scheduling Conference, the Court agreed with NCR that the discovery process should be flexible. The Court noted that "it just leads to more trouble and litigation and attempts to line draw if we try to carve out issues. That's my gut . . . also on the

limitations issues". (Tr. of R. 16 Sched. Conf., June 27, 2011, (Dkt. # 85) ("Tr.") at 11:1-6.) While GP argues that the Court indicated an "expectation that any limitations defenses that went to the whole case or an entire claim or to specific types or categories of costs would be resolved in Phase I", (Mot. to Amend at 6), the Court voiced no such expectation. The Court noted that certain limitations issues could potentially arise during discovery on liability, that these issues might also concern material related to Phase II, and that "it seems to me without knowing exactly how the chips will fall on that, it's at least best to start down that road, not try to arbitrarily cut it off". (Tr. at 26:24-27:20.) The Court, therefore, concluded that "at least at this point I'm not inclined to put any kind of restriction on any liability-related discovery, even if it turns out to be a liability issue that addresses only a subset of some of the claims". (Tr. at 26:24-27:20.)

The Case Management Order reflected this flexible approach to liability discovery and neither restricted the discovery into any limitations defenses nor established that any of those defenses must be raised in Phase I rather than in Phase II. Although GP attempted to add language governing the issues to be tried in Phase I in the Supplemental Joint Status Report filed March 15, 2012 (Dkt. # 173) ("SJSR"), the Court declined to adopt the proposed language.

Notably, even after the Court ruled that discovery should not be restricted, GP refused to provide discovery relevant to limitations issues. GP cites as an "example of the depth of the" discovery "directed to all aspects of any statute-of-limitations defenses" NCR's Interrogatory 2 from its Second Set of Interrogatories (Mot. to Amend at 6). That interrogatory addressed limitations issues, requesting information regarding descriptions and dates of costs incurred at each OU and the Site Facility. Although GP suggests it was required to "respond at considerable length" to this request, (*id.*), GP in fact objected to Interrogatory 2 "as being outside the scope of discovery permissible in Phase 1 of this action". (Georgia-Pacific's Answers and

3

Objections to Def. NCR Corp.'s Second Set of Interrogatories at 10, Mar. 29, 2012, Ex. A.)[3] Presumably relying on this objection, GP refused to provide any materials in response to the interrogatory on the grounds that material otherwise produced was "sufficient to establish that costs have been incurred in connection with releases at the Site". *Id.* Thus, GP refused to provide materials that would describe those costs and the dates on which they were incurred— the very information that would be relevant to limitations defenses.[4] To the extent GP did provide discovery relevant to this interrogatory in response to other requests, it included the relevant materials in its voluminous production, ignored NCR's interrogatories and told NCR to search the record for any relevant information.

Phase I fact discovery closed on March 30, 2012 (with a few limited exceptions) and expert discovery is now scheduled to close next month on July 24, 2012. Although the CMO was issued almost a year prior, GP first informed Defendants of its intention to file the present motion amending the CMO on March 28, 2012. And GP did not file the motion until May 31, two months after fact discovery closed.

## ARGUMENT

 A. The Court Should Not Require Defendants to Raise Limitations Defenses in Phase I

As the procedural history of the CMO shows, Defendants are entitled to raise limitations defenses in either Phase I or Phase II. To change the rules now, and to force Defendants to raise certain limitations defenses without the benefit of complete discovery, would be unfair.

---

[3] All exhibit citations are of exhibits to the Declaration of Darin P. McAtee in Support of Defendant NCR Corporation's Memorandum of Law in its Opposition to Plaintiffs' Motion to Amend Case Management Order.

[4] NCR takes issue with the quality of GP's responses in their entirety, but put off the fight until Phase II in part to avoid GP's objections regarding timing.

4

As a preliminary matter, GP represented to Defendants that its proposed amendments "are not intended to change anything", but merely driven by "the desire to have clarity on the issues to be litigated". (Email from J. Kearfott to O. Nasab, Apr. 11, 2012, 11:10 a.m., Ex. B.). But the proposed amendments *would* change things. The amendments would force Defendants to raise defenses in Phase I they currently are entitled to raise in Phase II. To the extent GP only desires clarity regarding which issues will be litigated in Phase I, Defendants are willing to agree to not raise any limitations Defenses until Phase II. While Defendants would prefer to have the flexibility to raise any limitations defense in Phase I, they have proposed this compromise to address GP's concern.[5]

The Court should reject GP's proposed amendment as inequitable to Defendants who relied on the existing flexibility of the CMO throughout the discovery process. Contrary to GP's contention, Defendants did not "choose to pursue all limitations discovery in Phase I" (Mot. to Amend at 8.) As set forth fully above, the dispute between GP and NCR in the JSR concerned how to structure discovery in order to minimize duplication between that conducted in Phase I and Phase II. After considering the Parties' positions articulated in the JSR, the Court agreed with NCR that confining limitations discovery to certain issues could lead to unnecessary duplication and determined there was no need to restrict discovery. Since it was unclear before Phase I where limitations discovery would naturally arise, the Court concluded that "it seems to me without knowing exactly how the chips will fall on that, it's at least best to start down that road, not try to arbitrarily cut it off". (Tr. at 26:24-27:20.) The Court, therefore, did not impose any restrictions.

---

[5] Defendants suggested this compromise before GP filed its motion, (*see* Email from J. Parker to J. Kearfott et al., May 10, 2012 at 11:39 a.m, Ex. C.), but GP declined the offer. (*See* Email from J. Kearfott to O. Nasab et al., May 22, 2012, 8:14 a.m., Ex. C.)

The problem with GP's position in the JSR was (and is) that excluding from Phase I discovery inquiries into anything other than discovery needed for "the dismissal of the entire case" would require difficult line drawing.  CERCLA statute of limitations defenses necessarily implicate and depend upon issues in both the liability and costs phases.  The Court recognized precisely this point.  (Tr. 26:24-27:20.)  For instance under section 9613(g)(2), "[a]n initial action for recovery of the costs referred to in section 9607 of this title must be commenced, . . . (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action".[6]  Any limitations defense under this section will, therefore, turn on whether and when GP actually "incurred" costs associated with a "remedial action", and the relevant dates of "initiation of physical on site construction" of that remedial action—an assessment that cannot be made without investigating the nature of GP's actual costs.  This analysis is the same regardless whether a limitations defense would bar the entirety of a lawsuit's claims or only a claim for costs at specific parts of a site.  CERCLA does not parse statute of limitations issues in the way GP wants to parse them here.

These same issues would have counseled the Court to reject GP's current request had it raised it in the original CMO.  Requiring Defendants to raise certain limitations defenses in Phase I would have presented the Court with the exact problem it faced with GP's original discovery proposal.  If Defendants were forced to litigate limitations defenses in Phase I, they would have been forced to conduct *all* discovery relevant to those claims in Phase I, even if such

---

[6] In addition, various legal questions at the costs phase may also tie to limitations questions.  For example, courts have held that the National Contingency Plan may provide guidance on whether a particular response action qualifies as "remedial" or "removal"—a key point in a statute of limitations analysis.  *See Cytec Indus., Inc. v. B.F. Goodrich Co.*, 232 F. Supp. 2d 821, 834 (S.D. Ohio 2002); 42 U.S.C. § 9613(g)(2): "An initial action for recovery of the costs referred to in section 9607 of this title must be commenced – (A) for a removal action, within 3 years after completion of the removal action, . . . ; and (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, . . . .").  Because the review of Plaintiffs' "consistency" with the NCP is routinely conducted in latter phases of CERCLA cases, it may be more efficient and reasonable to address both questions concurrently in Phase II.

discovery most naturally fit in Phase II. As the court said regarding discovery into cost issues: "that's nice to avoid if we can". (Tr. at 26:25-27:2.) Given the potential for their limitations defenses to be bolstered by Phase II discovery, Defendants were faced with a choice: attempt to conduct all limitations discovery in Phase I, including significant discovery that would otherwise arise in Phase II, or conduct limited exploratory discovery in Phase I to see if certain issues could be easily dispensed, while conducting the bulk of the discovery in Phase II. NCR made the choice, based on its ability to raise its defenses in either phase, to pursue vigorous discovery on limitations in Phase II, believing its limitations defenses could be strengthened by the cost discovery in Phase II.

In part, NCR made this choice because GP objected to various discovery requests relevant to statute of limitations arguments and argued that the requests must be deferred to Phase II. Indeed, GP refused to provide material responsive to the very request GP argues demonstrates Defendants' ability to conduct extensive limitations discovery. (Georgia-Pacific's Answers and Objections to Def. NCR Corp.'s Second Set of Interrogatories at 10, Mar. 29, 2012, Ex. A.) GP cannot argue, after maintaining that NCR's discovery requests had to wait for Phase II, that Defendants must now raise their defenses without the benefit of that discovery. Given GP's stated desire that limitations discovery be conducted in Phase II, Defendants should be entitled to conduct that discovery then and litigate the limitations defenses in that phase.

That said, if Defendants are now forced to raise certain limitations defenses in Phase I, equitable considerations counsel that they should have additional opportunities for discovery into those issues. The CMO did not mandate that specific limitations defenses be litigated in Phase I of the trial. Had it done so, Defendants would have aggressively conducted discovery on these issues, even if the requests would otherwise go to Phase II issues. Defendants

7

refrained in recognizing that Phase II discovery would be relevant to their defenses. If the CMO is to be amended, Defendants should be permitted additional discovery. And regardless, because the requirement to litigate certain of its limitations defenses in Phase I will affect NCR's decisions during dispositive motion practice, NCR respectfully requests the Court resolve this question now so that if necessary it may fully brief the relevant issues for the Court before the Phase I trial.

    B.    **The Remaining Questions Regarding Phase I Scheduling Raised in the Motion to Amend Should Be Addressed in the Final Pretrial Conference Following Dispositive Motion Practice**

The Motion to Amend presents other questions governing the scope of the issues to be tried in February as well. As the Court noted in its recent June 5 Order (Dkt. # 220), the Court "normally makes final decisions on issues to be tried as a part of the final pretrial process, which naturally follows dispositive motion practice—something that has not yet occurred". (June 5 Order at 1-2.) Given that discovery is ongoing and dispositive motion practice has not yet begun, GP's request is premature.

Timing matters. Any decision regarding issues to be tried in Phase I will be informed by the evidence obtained during expert discovery and the clarifications provided by the process of dispositive motion practice. The limitations issue is only one of the issues addressed by GP's proposed amendment. For instance, the proposed Motion to Amend also includes various subsidiary questions to "[w]hether defendant NCR is liable under the standards of section 107(a) of CERCLA . . . ." (Mot. to Amend at 2.) The details of how such questions should be addressed should wait until the pretrial process.

## **CONCLUSION**

For the foregoing reasons, NCR respectfully requests that the Court deny GP's Motion to Amend.

Dated: June 11, 2012                    Respectfully submitted,

                                                NCR CORPORATION

                                                /s/ Darin P. McAtee
                                                *Counsel for NCR Corporation*

                                                CRAVATH, SWAINE & MOORE LLP
                                                Evan R. Chesler
                                                Darin P. McAtee
                                                Worldwide Plaza, 825 Eighth Avenue
                                                New York, New York 10019
                                                Phone: (212) 474-1000
                                                Fax: (212) 474-3700
                                                dmcatee@cravath.com

                                                SIDLEY AUSTIN LLP
                                                Evan B. Westerfield
                                                One South Dearborn Street
                                                Chicago, Illinois 60603
                                                Phone: (312) 853-7000
                                                Fax: (312) 853-7036

                                                MARTEN LAW PLLC
                                                Bradley M. Marten
                                                Linda R. Larson
                                                1191 Second Avenue, Suite 2200
                                                Seattle, Washington 98101
                                                Phone: (206) 292-2600
                                                Fax: (206) 292-2601

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 11, 2012, I electronically filed Defendant NCR Corporation's Memorandum of Law in Support of its Opposition to Plaintiffs' Motion to Amend Case Management Order using the ECF system, which will send notification of such filing by operation of the Court's electronic systems.  Parties may access this filing via the Court's electronic system.

    FURTHERMORE, I hereby certify that on June 11, 2012, I served by electronic mail a copy of the aforementioned document upon counsel listed below:

    Dean P. Laing
    O'Neil Cannon Hollman DeJong & Laing SC
    111 E Wisconsin Ave - Ste 1400
    Milwaukee, WI 53202
    Dean.Laing@wilaw.com


Dated:  June 11, 2012    NCR CORPORATION

            /s/ Darin P. McAtee
            Darin P. McAtee