# EXHIBIT B



**To:**
**Cc:**
**Subject:** Fw: Motion to Amend Case Management Order

| | |
|---|---|
| From: | "Kearfott, Joe" <jkearfott@hunton.com> |
| To: | "Omid Nasab" <ONasab@cravath.com> |
| Cc: | "Darin McAtee" <DMcAtee@cravath.com>, "Parker, John" <JParker@bakerlaw.com>, "Schneider, Mark W. (Perkins Coie)" <MWSchneider@perkinscoie.com>, "Inglin, Sonja A." <singlin@bakerlaw.com>, "Owen Roth" <oroth@cravath.com> |
| Date: | 04/11/2012 11:10 AM |
| Subject: | RE: Motion to Amend Case Management Order |

Omid:

I write in response to your email of last Friday.

The amendments that Georgia-Pacific proposes to the Case Management Order are not intended to change anything.  We have been proceeding since the June 27, 2011 status conference on the assumption that the Phase I trial will address the issues detailed in the original Joint Status Report, as modified at the status conference.  Unfortunately, Judge Jonker's CMO did not mention those issues - including that the case would be tried in phases.  Recent discussions we have had with counsel for Weyerhaeuser suggested to both us and them that it would be useful to spell out in an amended order exactly what issues will be tried in February.

The answers to your 3 questions are:

   1.  Nothing has changed, other than the desire to have clarity on the issues to be litigated.  Obviously, if NCR or IP thinks our proposal is in any way inaccurate, we would appreciate your telling us.  However, I have not heard anything to date to suggest that any of the defendants thinks what we are proposing is substantively inconsistent with the JSR and the June 27 status conference.

   2.  The only thing to be gained by our proposal is what I described above - clarity.  I would hope one thing that all the parties can agree on is that when we walk into court next February, we all know what is and what is not going to be litigated in Phase I.

   3.  As to affirmative defenses, GP's position as articulated in the JSR was:
       The Court should litigate in a single first phase all factual and legal disputes necessary to resolve whether the defendants are liable under the standards of Section 107(a) of CERCLA for PCB contamination of the Site. (p. 10)

NCR and IP agreed with this statement, and Judge Jonker accepted it.  If there are any affirmative defenses under CERCLA that relieve NCR, IP or Weyerhaeuser of liability, thus ending the case or the entirety of any count as to them, they are a part of Phase I. If there are affirmative defenses that arise only in connection with the equitable

allocation of costs or as to specific elements of damages, they are to be litigated later.

You will recall that the statute of limitations presented a special issue. GP's position was that, as to issues of whether claims are timely under CERCLA, discovery may proceed both in Phase I and in later phases, subject to the proviso that "[d]iscovery in Phase I on this issue, if any, shall be limited to discovery needed to support a motion for summary judgment or other adjudication addressed to the dismissal of the entire case or an entire count of the First Amended Complaint." (p. 12)

NCR took issue with our position. It asked for the right to conduct unlimited discovery on statute of limitations issues so that, in Darin's words, NCR would have the opportunity to "knock out big chunks of their claim." (Tr., p. 25)

Judge Jonker agreed with NCR. Although not reflected in the CMO, he accepted Darin's position and refused to limit discovery as GP had requested. Instead, he said that it "seems to me potentially valuable to everybody to find out about [large swatches of cost], to tee up and potentially carve off. And, you know, limitations is a liability defense. . ." (Tr, p. 27)

We have been proceeding on the assumption that defendants' statute of limitations defense is in Phase I to the extent that any limitations defenses would end the case, defeat a count in the Amended Claim, or defeat a category of costs. As to the latter, if defendants succeed and the parties cannot reach agreement on what specific costs items fall within a category, that presumably would be subject to resolution in a later phase. Our proposed motion does not make this last point specifically, but we would be happy to revise it to do so.

I hope this answers your questions. If it would be helpful to schedule a call among all parties to discuss the issues, we would be happy to do so.

Joe

---

**From:** Omid Nasab [mailto:ONasab@cravath.com]
**Sent:** Friday, April 06, 2012 1:05 PM
**To:** Kearfott, Joe
**Cc:** Darin McAtee; Parker, John; Schneider, Mark W. (Perkins Coie); Inglin, Sonja A.; Owen Roth
**Subject:** Re: Motion to Amend Case Management Order

Joe:

I write to you on behalf of NCR and IP in response to your email from March 28. Your email stated that GP wishes to amend the Case Management Order "to clarify just what will and will not be litigated in the Phase 1 trial next February". Before we can decide whether and to what extent we can join this motion, we must ask for clarification on a few issues.

First, why does GP feel that this amendment to the Case Management Order is necessary? The parties have been conducting discovery under the existing CMO for over eight months now, and

we do not know what has changed between last June and now that calls for a clarification of the CMO now that discovery has closed.

Second, is it GP's position that if NCR or IP prevail in the liability phase, GP would retain the right to bring a subsequent lawsuit against NCR or IP for costs associated with the Kalamazoo River Site?   If, as you have indicated, GP's proposed amendments "do not attempt either to expand or to limit the scope and trial of the issues raised by the pleadings in this case", then what would be gained by the proposed amendment?

Finally, is it GP's position that affirmative defenses, including the applicable statutes of limitations, either must be litigated in Phase I or must be deferred to Phase II?  If so, which ones does GP believe must be brought in Phase I, and which does it believe must be deferred to Phase II?  We understand that Weyerhaeuser shares our concern about the timing of the statutes of limitations defenses.

Once we receive your answers, we will be better able to evaluate whether to join in your motion.

Thanks,

Omid H. Nasab
Cravath, Swaine & Moore
(212) 474 - 1972
onasab@cravath.com


From:       "Kearfott, Joe" <jkearfott@hunton.com>
To:         "Darin McAtee" <DMcAtee@cravath.com>, <ONasab@cravath.com>, "Parker, John" <JParker@bakerlaw.com>, "Inglin, Sonja A." <singlin@bakerlaw.com>, "Schneider, Mark W.  (Perkins Coie)" <MWSchneider@perkinscoie.com>
Date:       03/28/2012 02:52 PM
Subject:    Motion to Amend Case Management Order


Colleagues:

GP intends to file next week a motion to amend the Case Management Order to clarify just what will and will not be litigated in the Phase 1 trial next February.  Attached is a draft order that we propose to submit.  It has been copied directly from the Supplemental Joint Status Report.

Please let me know by early next week the position of your clients on this motion.  If you favor clarifying the CMO but think the language is inaccurate or needs additions, we would be happy to consider comments.

I look forward to hearing from you.

Joe

<<PLDG - Amendment to Case Management Order_(39582582)_(1).DOC>>

```
This e-mail is confidential and may be privileged. Use or
disclosure of it by anyone other than a designated addressee is
unauthorized. If you are not an intended recipient, please delete
this e-mail from the computer on which you received it.
```