For deliveries during the first quarterly period, such contract price shall be announced by us and notice thereof furnished you not later than fifteen (15) days prior to the date when the first shipment of pulp is scheduled to be made hereunder.

With respect to subsequent calendar quarterly periods, written notice of our announced contract price shall be furnished you not later than fifteen (15) days prior to the first day of each subsequent calendar quarterly period.

Within five (5) days after the receipt by you of written notice of each such announced contract price, you may give us notice in writing that you desire to be relieved of your obligation hereunder to purchase either the total quantity or any part of the total quantity which, except for such notice from you, would be delivered to you during such quarterly period. In the absence of any such notice of election by you, you shall be obligated to purchase, accept and pay for the quantity or quantities to be delivered in each calendar quarterly period of the term of this contract.

In the event you give such notice to us, then, at our election, we may give you written notice within ten (10) days after the receipt of your notice either: (1) that this contract shall be cancelled in its entirety and thereupon all further rights and obligations of the parties hereunder shall come to an end; or (2) that the lesser quantity which you have advised you will purchase and accept during a particular quarterly period will be and become the quantity which we shall sell and deliver to you in each of the remaining quarterly periods during the balance of the term of this contract, and thereupon this contract shall be deemed to be amended to provide for the sale by us and the purchase by you of such lesser quantity in lieu of the quantity originally specified herein.

7. TERMS OF PAYMENT: All payments for pulp shipped to you shall be due within thirty (30) days from the date of the invoice. Interest at the rate of six percent (6%) per annum will be charged on amounts not paid when due.

8. SEPARATE SALES: Each delivery of pulp under this agreement shall constitute a separate and distinct sale, and any default on your part in accepting or paying for any delivery shall not affect our rights to require full performance by you of the provisions of this agreement for the term hereof.

FURTHER PROVISIONS AND CONDITIONS

This agreement is made subject to the provisions and conditions on the back hereof, all of which are hereby made a part of this agreement.

If the foregoing is in accordance with your understanding, please so indicate by signing the acceptance on the duplicate copy enclosed herewith and return such signed copy to us, whereupon this offer and your signed acceptance thereof shall constitute a binding agreement between us.

ST. REGIS PAPER COMPANY

By..............................................
Vice President

Accepted this day of
, 19 .

..............................................

By..............................................

## ADDITIONAL PROVISIONS AND CONDITIONS

1. WEIGHT AND MOISTURE: Unless otherwise stated, the word "ton", as used in this agreement, shall mean a ton of two thousand (2,000) pounds avoirdupois. The quantity or quantities delivered shall be subject to variation not exceeding five percent (5%), more or less, above or below quantities specified in any separate order. All pulp delivered shall be billed on air-dry weight and the term "air-dry" shall mean ninety percent (90%) absolutely dry pulp and ten percent (10%) of atmospheric moisture.

2. DISPUTES REGARDING AIR-DRY CONTENT: Should any dispute arise regarding the air-dry content of pulp shipped hereunder, the shipment shall be held by the Buyer and Seller shall be notified immediately of any claimed difference in moisture. All claims by the Buyer founded upon air-dry content shall be supported by a certificate that the pulp has been tested in accordance with the methods approved by the American Paper & Pulp Association or the Technical Association of the Pulp & Paper Industry. No claim shall be allowed for a difference of one percent (1%) or less. If the difference exceeds one percent (1%), a retest shall be made by a chemist agreed upon by the Buyer and the Seller chosen from the list of chemists approved by one or the other of the two associations mentioned above, or, in case of inability to agree, as appointed by the Secretary of the American Paper & Pulp Association from such list. The result of the retest by such chemist shall be binding upon the Buyer and Seller. All retests shall be made in accordance with the official rules for testing then in effect and as adopted by either of the said Associations mentioned above. Not less than one-half (½) of the total shipment shall be available for retest. All expenses incidental to a retest shall be paid by the party found to be in error. In any event, the Buyer shall pay the invoice for the shipment when due, subject to a refund, if any, that may be found to be due on a retest.

3. CURRENCY FOR PAYMENTS: The purchase price of all sales and deliveries shall be paid in United States currency, New York funds.

4. TAXES: There shall be added to the prices payable hereunder the amount of any federal, state or municipal sales or excise tax imposed or payable or accruing under or by reason of the making of this agreement, or any separate sale, delivery or shipment hereunder.

5. CARLOAD SHIPMENTS: All deliveries by rail shall be in not less than carload lots and all shipments shall be routed by the Seller.

6. TRANSFER OF TITLE: Title to all pulp purchased hereunder shall pass to Buyer when the pulp is delivered on board carriers at the mill.

7. CLAIMS: No claims shall be allowed Buyer for defects in quality after the pulp shipped hereunder is processed by the Buyer in any manner, and the Buyer shall not be entitled to deduct from the price invoiced the amount of any claim asserted by Buyer unless such claim shall have been allowed by Seller. The Buyer's failure to comply with this provision of this agreement shall constitute a material breach of this agreement on the part of the Buyer and entitle Seller to refuse to make further deliveries hereunder. The Seller shall not be liable for consequential damages of any kind or character.

8. DEFAULT: If the buyer defaults in any payment on this or any other contract between the parties hereto, or becomes insolvent, or makes a general assignment for the benefit of creditors, or if a petition in bankruptcy shall be filed by or against the Buyer, or the Buyer becomes otherwise subject to the Bankruptcy Laws, whether for purposes of reorganization or otherwise, or a receiver is appointed, Seller may, at its option, suspend or cancel all or part of the remaining deliveries, but the Buyer shall remain liable to the Seller for all loss and damage sustained by reason of such default. If the Buyer is in default, Seller may refuse to make further shipments hereunder or, at its option, declare the obligation of the Buyer for all pulp provided hereunder, due forthwith, notwithstanding the terms hereof, but the Buyer shall remain liable to the Seller for all loss and damage sustained by reason of such default. If the credit of the Buyer shall at any time in the judgment of the Seller become impaired, the Seller shall have the right, in addition to other rights, to delay, suspend or cancel further shipments and to require payment in advance, and refusal to pay shall constitute a default by the Buyer. If shipments are withheld at any time pending overdue payments or until Buyer's credit shall have been restored, Seller may, at its option, make deliveries of shipments so suspended after default is removed or credit restored, during or after the life of this contract, and the Buyer's refusal to accept such shipments shall constitute a default by the Buyer.

9. EFFECT OF WAIVER: The failure of either party to insist in any one or more instances upon strict performance of any of the provisions of this contract or to take advantage of any of its rights hereunder shall not be construed as a waiver of any such provisions or a relinquishment of any such rights, but the same shall continue and remain in full force and effect.

10. CONTINGENCIES: In the event that by reason of fires, floods, strikes, accidents, transportation contingencies, embargoes, inadequate supply of labor or material, war, acts of God or of the public enemy, the voluntary foregoing of the right to acquire or use any materials in order to accommodate or comply with the orders, requests, regulations, recommendations, or instructions of any governmental authority (whether in furtherance of national defense or war activities or to meet any other emergency), or the compliance with any law, order, ruling, regulation, instruction or requirement of any governmental authority, or for any other cause (whether of the same or of a different character than herein specified) beyond the reasonable control of the party affected thereby, the Seller shall be unable to sell and deliver or the Buyer shall be unable to receive and accept the goods, or any part thereof, to be sold and delivered hereunder, then during the period of any such disability the party affected thereby shall be excused, either in whole or in part, from the performance of the provisions of this agreement, as the contingency

may require or make necessary, and the quantity of pulp which, except for such contingency, would be sold and delivered hereunder shall be eliminated from this agreement.

11. NOTICES: Any notice to be given either party hereunder shall be sufficiently given for all purposes if in writing and delivered personally, or sent by United States mail, postage prepaid, or by telegram (confirmed immediately by letter) addressed to the party at its place of business specified at the beginning of this agreement.

12. ENTIRE AGREEMENT: This instrument constitutes the entire agreement between the parties for the purchase and sale of the quantity of pulp to be purchased and sold hereunder, and no statements, representations, writings, understandings or agreements by one party, or any representative of one party, which are not expressed herein, shall be binding. No statement, whether made orally or in writing by either party, or a representative of either party, relating to any separate order or sale hereunder, or any conduct of the parties in respect of a particular order or sale hereunder or any so-called "trade custom" or practice regarding this agreement or a particular order hereunder shall have any effect to change, modify or amend this agreement or such order in any respect. All changes in, additions to or modifications or amendments of this agreement, or any of the terms, provisions and conditions hereof, or any separate order hereunder, shall be binding only when in writing and signed by the authorized officer, agent or representative of each of the parties hereto.

13. GOVERNING LAW: The validity of this agreement and the obligations of the parties hereunder shall be governed and construed according to the law of the State of New York.

14. BINDING EFFECT: This agreement shall bind and benefit the parties hereto and their respective successors and assigns, provided that neither party shall have the right to assign this agreement without obtaining the prior written consent of the other party thereto.

IPC-001-0001137



# ST. REGIS PAPER COMPANY

## KRAFT DIVISION

150 East 42nd Street • New York 17, N.Y.

July 1st, 1956

Allied Paper Mills Division

Thor Corporation

Kalamazoo, Michigan

Contract No. 2

We hereby confirm our agreement to sell and deliver to you and your agreement to purchase and accept from us, during the term hereinafter stated, the quantities of pulp, of the respective types and grades, at the respective prices, and upon the terms and subject to the conditions hereinafter stated.

1. TERM OF AGREEMENT: This agreement shall be in effect for the term beginning January 1st, 1957 and ending December 31st, 1961

2. TYPES AND GRADES:

   ALBERTA HI-BRITE BLEACHED KRAFT

3. QUANTITIES:

   SIXTY THOUSAND (60,000) air dry tons from the mill at the rate of ONE THOUSAND (1,000) tons per month.

4. DELIVERIES: Deliveries shall be made f.o.b. carrier at Hinton Alberta, Canada or - - mill.

5. DESTINATION OF SHIPMENTS:

   Kalamazoo, Michigan

6. PRICE: Quarterly adjustable

Except as herein otherwise expressly provided, the prices payable for all pulp delivered hereunder shall be the respective contract prices for pulp of the types and grades to be delivered hereunder, as announced by us from time to time during the term hereof.

For deliveries during the first quarterly period, such contract price shall be announced by us and notice thereof furnished you not later than fifteen (15) days prior to the date when the first shipment of pulp is scheduled to be made hereunder.

With respect to subsequent calendar quarterly periods, written notice of our announced contract price shall be furnished you not later than fifteen (15) days prior to the first day of each subsequent calendar quarterly period.

Within five (5) days after the receipt by you of written notice of each such announced contract price, you may give us notice in writing that you desire to be relieved of your obligation hereunder to purchase either the total quantity or any part of the total quantity which, except for such notice from you, would be delivered to you during such quarterly period. In the absence of any such notice of election by you, you shall be obligated to purchase, accept and pay for the quantity or quantities to be delivered in each calendar quarterly period of the term of this contract.

In the event you give such notice to us, then, at our election, we may give you written notice within ten (10) days after the receipt of your notice either: (1) that this contract shall be cancelled in its entirety and thereupon all further rights and obligations of the parties hereunder shall come to an end; or (2) that the lesser quantity which you have advised you will purchase and accept during a particular quarterly period will be and become the quantity which we shall sell and deliver to you in each of the remaining quarterly periods during the balance of the term of this contract, and thereupon this contract shall be deemed to be amended to provide for the sale by us and the purchase by you of such lesser quantity in lieu of the quantity originally specified herein.

7. TERMS OF PAYMENT: All payments for pulp shipped to you shall be due within thirty (30) days from the date of the invoice. Interest at the rate of six percent (6%) per annum will be charged on amounts not paid when due.

8. SEPARATE SALES: Each delivery of pulp under this agreement shall constitute a separate and distinct sale, and any default on your part in accepting or paying for any delivery shall not affect our rights to require full performance by you of the provisions of this agreement for the term hereof.

FURTHER PROVISIONS AND CONDITIONS

This agreement is made subject to the provisions and conditions on the back hereof, all of which are hereby made a part of this agreement.

If the foregoing is in accordance with your understanding, please so indicate by signing the acceptance on the duplicate copy enclosed herewith and return such signed copy to us, whereupon this offer and your signed acceptance thereof shall constitute a binding agreement between us.

ST. REGIS PAPER COMPANY

By ..............................
Vice President

Accepted this day of

, 19 .

..............................

By..............................

ADDITIONAL PROVISIONS AND CONDITIONS

1. WEIGHT AND MOISTURE: Unless otherwise stated, the word "ton", as used in this agreement, shall mean a ton of two thousand (2,000) pounds avoirdupois. The quantity or quantities delivered shall be subject to variation not exceeding five percent (5%), more or less, above or below quantities specified in any separate order. All pulp delivered shall be billed on air-dry weight and the term "air-dry" shall mean ninety percent (90%) absolutely dry pulp and ten percent (10%) of atmospheric moisture.

2. DISPUTES REGARDING AIR-DRY CONTENT: Should any dispute arise regarding the air-dry content of pulp shipped hereunder, the shipment shall be held by the Buyer and Seller shall be notified immediately of any claimed difference in moisture. All claims by the Buyer founded upon air-dry content shall be supported by a certificate that the pulp has been tested in accordance with the methods approved by the American Paper & Pulp Association or the Technical Association of the Pulp & Paper Industry. No claim shall be allowed for a difference of one percent (1%) or less. If the difference exceeds one percent (1%), a retest shall be made by a chemist agreed upon by the Buyer and the Seller chosen from the list of chemists approved by one or the other of the two associations mentioned above, or, in case of inability to agree, as appointed by the Secretary of the American Paper & Pulp Association from such list. The result of the retest by such chemist shall be binding upon the Buyer and Seller. All retests shall be made in accordance with the official rules for testing then in effect and as adopted by either of the said Associations mentioned above. Not less than one-half (½) of the total shipment shall be available for retest. All expenses incidental to a retest shall be paid by the party found to be in error. In any event, the Buyer shall pay the invoice for the shipment when due, subject to a refund, if any, that may be found to be due on a retest.

3. CURRENCY FOR PAYMENTS: The purchase price of all sales and deliveries shall be paid in United States currency, New York funds.

4. TAXES: There shall be added to the prices payable hereunder the amount of any federal, state or municipal sales or excise tax imposed or payable or accruing under or by reason of the making of this agreement, or any separate sale, delivery or shipment hereunder.

5. CARLOAD SHIPMENTS: All deliveries by rail shall be in not less than carload lots and all shipments shall be routed by the Seller.

6. TRANSFER OF TITLE: Title to all pulp purchased hereunder shall pass to Buyer when the pulp is delivered on board carriers at the mill.

7. CLAIMS: No claims shall be allowed Buyer for defects in quality after the pulp shipped hereunder is processed by the Buyer in any manner, and the Buyer shall not be entitled to deduct from the price invoiced the amount of any claim asserted by Buyer unless such claim shall have been allowed by Seller. The Buyer's failure to comply with this provision of this agreement shall constitute a material breach of this agreement on the part of the Buyer and entitle Seller to refuse to make further deliveries hereunder. The Seller shall not be liable for consequential damages of any kind or character.

8. DEFAULT: If the buyer defaults in any payment on this or any other contract between the parties hereto, or becomes insolvent, or makes a general assignment for the benefit of creditors, or if a petition in bankruptcy shall be filed by or against the Buyer, or the Buyer becomes otherwise subject to the Bankruptcy Laws, whether for purposes of reorganization or otherwise, or a receiver is appointed, Seller may, at its option, suspend or cancel all or part of the remaining deliveries, but the Buyer shall remain liable to the Seller for all loss and damage sustained by reason of such default. If the Buyer is in default, Seller may refuse to make further shipments hereunder or, at its option, declare the obligation of the Buyer for all pulp provided hereunder, due forthwith, notwithstanding the terms hereof, but the Buyer shall remain liable to the Seller for all loss and damage sustained by reason of such default. If the credit of the Buyer shall at any time in the judgment of the Seller become impaired, the Seller shall have the right, in addition to other rights, to delay, suspend or cancel further shipments and to require payment in advance, and refusal to pay shall constitute a default by the Buyer. If shipments are withheld at any time pending overdue payments or until Buyer's credit shall have been restored, Seller may, at its option, make deliveries of shipments so suspended after default is removed or credit restored, during or after the life of this contract, and the Buyer's refusal to accept such shipments shall constitute a default by the Buyer.

9. EFFECT OF WAIVER: The failure of either party to insist in any one or more instances upon strict performance of any of the provisions of this contract or to take advantage of any of its rights hereunder shall not be construed as a waiver of any such provisions or a relinquishment of any such rights, but the same shall continue and remain in full force and effect.

10. CONTINGENCIES: In the event that by reason of fires, floods, strikes, accidents, transportation contingencies, embargoes, inadequate supply of labor or material, war, acts of God or of the public enemy, the voluntary foregoing of the right to acquire or use any materials in order to accommodate or comply with the orders, requests, regulations, recommendations, or instructions of any governmental authority (whether in furtherance of national defense or war activities or to meet any other emergency), or the compliance with any law, order, ruling, regulation, instruction or requirement of any governmental authority, or for any other cause (whether of the same or of a different character than herein specified) beyond the reasonable control of the party affected thereby, the Seller shall be unable to sell and deliver or the Buyer shall be unable to receive and accept the goods, or any part thereof, to be sold and delivered hereunder, then during the period of any such disability the party affected thereby shall be excused, either in whole or in part, from the performance of the provisions of this agreement, as the contingency

may require or make necessary, and the quantity of pulp which, except for such contingency, would be sold and delivered hereunder shall be eliminated from this agreement.

11. NOTICES: Any notice to be given either party hereunder shall be sufficiently given for all purposes if in writing and delivered personally, or sent by United States mail, postage prepaid, or by telegram (confirmed immemediately by letter) addressed to the party at its place of business specified at the beginning of this agreement.

12. ENTIRE AGREEMENT: This instrument constitutes the entire agreement between the parties for the purchase and sale of the quantity of pulp to be purchased and sold hereunder, and no statements, representations, writings, understandings or agreements by one party, or any representative of one party, which are not expressed herein, shall be binding. No statement, whether made orally or in writing by either party, or a representative of either party, relating to any separate order or sale hereunder, or any conduct of the parties in respect of a particular order or sale hereunder or any so-called "trade custom" or practice regarding this agreement or a particular order hereunder shall have any effect to change, modify or amend this agreement or such order in any respect. All changes in, additions to or modifications or amendments of this agreement, or any of the terms, provisions and conditions hereof, or any separate order hereunder, shall be binding only when in writing and signed by the authorized officer, agent or representative of each of the parties hereto.

13. GOVERNING LAW: The validity of this agreement and the obligations of the parties hereunder shall be governed and construed according to the law of the State of New York.

14. BINDING EFFECT: This agreement shall bind and benefit the parties hereto and their respective successors and assigns, provided that neither party shall have the right to assign this agreement without obtaining the prior written consent of the other party thereto.

**EXHIBIT D**

IPC-001-0001142

## EXHIBIT E

**AGREEMENT** made this 29th day of June, 1956, by and between St. Regis Paper Company, a New York corporation (hereinafter called "St. Regis"), party of the first part, and Thor Corporation, an Illinois corporation (hereinafter called "Thor"), party of the second part,

Witnesseth:

Whereas, simultaneously with the execution of this agreement, St. Regis has demised and leased and Thor has taken and hired the paper mill of St. Regis at Kalamazoo, Michigan;

Whereas, St. Regis has entered into separate contracts, in the form of printed contracts, letter agreements, or in some other form, with customers for the manufacture, sale and delivery by St. Regis, for the purchase and acceptance by the customers of paper of the specifications, tonnages, terms, and prices and on the provisions and conditions as stated in the separate agreements, the names and addresses of which customers with the respective dates and of agreements, specifications of paper, tonnages, terms of agreement, and prices are listed and described on Schedule A hereto annexed and made a part hereof; and

Whereas, St. Regis has entered into or is obligated under certain other contracts, leases, licenses and agreements affecting the paper mill of St. Regis at Kalamazoo, Michigan listed on said Schedule A; and

Whereas, Thor has examined each of such agreements and is familiar with the terms thereof;

Now, Therefore, in consideration of the premises and the covenants, agreements and conditions hereinafter set forth, the parties have agreed and do hereby agree as follows:

**Proof of June 22, 1956——8781**
**Appeal Printing Company, Inc.——WOrth 4-3033**