# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, | ) | |
| FORT JAMES CORPORATION, and | ) | |
| GEORGIA-PACIFIC LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:11-CV-00483 |
| v. | ) | |
| | ) | Judge Robert J. Jonker |
| NCR CORPORATION, | ) | |
| INTERNATIONAL PAPER CO., and | ) | |
| WEYERHAEUSER CO., | ) | |
| | ) | |
| Defendants. | ) | |

_____

## NCR CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO FILE IMPROPER SURREPLY

_____

GP's request to file an improper surreply brief should be denied.  In its opposition brief, GP injected new information into the summary judgment record, producing a new declaration from its own previously deposed witness that contradicted his prior deposition testimony.  NCR re-deposed this witness (Gene Edgerton, a GP truck driver) on the content of this new declaration and confirmed that, despite being GP's only identified source of evidence allegedly linking CCP broke from Washington Court House to Kalamazoo, he remains incapable of establishing such a link.  NCR highlighted this in a single paragraph of its reply brief, to which GP now responds by seeking to rehabilitate and supplement the declaration with five pages of new arguments and citations to new, long-ago produced documents.  That is not the proper purpose of a surreply.

A.    **Surreplies Are Disfavored and Not Permitted Under These Circumstances.**

The governing law on this issue is settled:  surreply briefing is heavily disfavored and rarely granted.  *Aslani v. Sparrow Health Sys.*, No. 1:08-cv-298, 2009 WL 3711602, at *22-23 (W.D. Mich. Nov. 3, 2009) ("[B]oth this court and other federal courts rarely grant leave to file a surreply"); *Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) ("Surreplies are heavily disfavored by courts . . . [and require a showing of] exceptional or extraordinary circumstances, that happen perhaps only a few times in a lawyer's career").  Surreplies are permitted only when a movant raises new issues in a reply brief.  *Aslani*, 2009 WL 3711602, at *22-23; *see Weems*, 2011 WL 2731263, at *1.  They are particularly inappropriate when the nonmovant, with due diligence, could have raised the surreply arguments or evidence in its initial opposition brief, but chose not to.  *See England v. Cox*, No. 11-2362-JTM, 2012 WL 3765109, at *1 (D. Kan. Aug. 30, 2012).

Under this standard, GP's surreply is impermissible.  As set forth in the memorandum supporting its motion, GP hopes to use its surreply to bolster its allegation that

1

CCP broke moved from Washington Court House to Kalamazoo, an allegation that relies only on Edgerton's uncorroborated, forty-year-old memory.  (Dkt. No. 320-1, Ex. A.)  GP, whose counsel have represented Edgerton since at least fall 2011, has had every opportunity to see if Edgerton could establish this link long before now, for Edgerton has made himself available to GP for multiple interviews, declarations and depositions.

But at his first deposition, Edgerton testified that his recollection of hauling to and from Ohio was "not very good" because he "didn't get down there much in the beginning".  Indeed, Edgerton could only say his trips to Ohio would have been before 1974 or 1975.  (Dkt. No. 293-4 at 4, 7.)[1]  Further, Edgerton could never recall picking up CCP paper from *any* facility in *all* of Ohio.  (*Id.* at 7.)  As noted in NCR's opening summary judgment brief, that testimony is clearly incapable of linking any CCP broke generated during the Production Period (1954 to April 1971) at Washington Court House to Kalamazoo.  (Dkt. No. 265 at 32-33.)

GP responded to NCR's summary judgment brief by going back to Edgerton for new information in an effort to avoid summary judgment.  After GP provided Edgerton with pictures of generic-looking truck bays from NCR's Washington Court House facility, Edgerton executed a declaration stating that he could suddenly recall picking up scrap paper from Washington Court House between 1969 and 1971, a sworn statement he would soon recant.  (Dkt. No. 300-5 at 29.)  GP attached this declaration to its opposition brief, arguing that the photographs allowed Edgerton to "positively identify" pickups at Washington Court House "between 1969 and 1971".  (Dkt. No. 299 at 31.)

At Edgerton's re-opened deposition (which was limited to the content of his new declaration), NCR confirmed that Edgerton could still not demonstrate the needed link between

---

[1] For citations to docketed documents, NCR's pincites (for briefs and exhibits) are to the ECF-stamp page numbers.

Washington Court House and Kalamazoo.  Edgerton admitted that despite the words he had recently sworn to, he could not recall visiting the facility during the Production Period.  (Dkt. No. 320-1 at 12.)  Indeed, the best Edgerton could say was that he visited Washington Court House before Nixon resigned (which happened in August 1974) or the Vietnam War ended (which could be as late as the fall of Saigon in April 1975).  (*Id.* at 13.)

NCR thus highlighted in its reply brief that Edgerton's declaration should not be credited because it directly contradicted his prior sworn testimony[2] and was, in any event, still incapable of showing the necessary connection *during the Production Period*.  (Dkt. No. 311 at 17-18.)  NCR's reply brief thus did not raise new points or new arguments but merely responded to claims in GP's opposition brief.   Accordingly, nothing in NCR's reply brief justifies GP's surreply.  The five pages of additional GP-colored briefing and the newly cited documents that GP now asks to submit should have all been proffered in Edgerton's declaration and GP's opposition brief.  They were not.

## B.    <u>GP's New Arguments Do Not Cure Its Failure to Carry Its Burden of Proof.</u>

The Court should also reject the surreply because it is of no consequence. Nothing in GP's new arguments or newly cited evidence cures Edgerton's inability to recall visiting Washington Court House at a time when the facility's CCP (which was produced long after the Production Period with a PCB-free emulsion) may have contained PCBs.  Even if Edgerton's new testimony is credited, he could have visited Washington Court House in the many months after the facility stopped producing CCP broke with a PCB-containing emulsion

---

[2] *See, e.g.*, *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier testimony.").

(in April 1971) but before NCR stopped operating the facility (in late December 1971), or even in the years after NCR vacated the facility.[3]  (*See* Dkt. No. 265 at 32-33.)

GP's efforts to paper over this critical gap in Mr. Edgerton's testimony fail.  GP argues that "NCR presents no evidence that the [Washington Court House] facility was even *in operation* after April 1971", implying that Edgerton must have picked up scrap paper there during the Production Period.  (Dkt. No. 320-1 at 5.)  But GP is incorrect:  NCR established in its opening brief (based on the testimony of a former Systemedia executive) that NCR operated the Washington Court House facility until December 1971.  (*See* Dkt. No. 265 at 32-33.)

GP also asserts that even if Edgerton picked up CCP broke from Washington Court House after the Production Period, he may have picked up PCB-containing CCP broke because such CCP may have stayed in Washington Court House's inventories "long after April 1971".  (Dkt. No. 320-1 at 5.)  Despite deposing multiple Washington Court House employees, GP cites only clips from two new documents for this supposition, neither of which even refers to Washington Court House.  (*Id.*, Exs. B, C.)  The weakness of these documents aside, GP badly misrepresents their content.  The first document discusses the possibility that *finished* CCP office forms could be stored and later used by *offices*, it says nothing about *converters* storing *bulk* CCP or broke bales.  (*Id.* at 61 (Ex. B).)  The second document states that some jobbers and converters "in the field" may have stored NCR paper, but that it was "almost impossible" for NCR to "determine the quantity and location of such stock".  (*Id.* at 71 (Ex. C).)  The content of these statements demonstrates that they do not refer to NCR's own Systemedia facilities but rather third-party facilities, a point that is confirmed when the document later states that Systemedia was no longer using PCB-containing products.  (*Id.* at 73.)

---

[3] GP (the plaintiff here) has offered no evidence that suggests the next owner of this paper converting facility would not have generated scrap paper.

4

*       *       *

GP, desperate to avoid summary judgment, has not followed the procedural rules and seeks to obtain an unfair "last word" advantage.  Accordingly, GP's motion to file a surreply brief should be denied.

Dated:  September 26, 2012                    Respectfully submitted,


NCR CORPORATION

/s/ Darin P. McAtee_____
*Counsel for NCR Corporation*

DICKINSON WRIGHT PLLC
Geoffrey A. Fields
200 Ottawa Avenue, N.W., Suite 1000
Grand Rapids, Michigan 49503-2427
Phone:  (616) 336-1017
Fax:  (616) 458-6753

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Darin P. McAtee
Yonatan Even
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone:  (212) 474-1000
Fax:  (212) 474-3700
echesler@cravath.com

SIDLEY AUSTIN LLP
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone:  (312) 853-7000
Fax:  (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone:  (206) 292-2600
Fax:  (206) 292-2601

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2012, I electronically filed Defendant NCR Corporation's Opposition to Plaintiffs' Motion for Leave to File Improper Surreply using the ECF system, which will send notification of such filing by operation of the Court's electronic systems.  Parties may access this filing via the Court's electronic system.

FURTHERMORE, I hereby certify that on September 26, 2012, I served by electronic mail a copy of the aforementioned document upon counsel listed below:

> Dean P. Laing
> O'Neil Cannon Hollman DeJong & Laing SC
> 111 E Wisconsin Ave., Suite 1400
> Milwaukee, WI 53202
> Dean.Laing@wilaw.com

/s/ Darin P. McAtee
*Counsel for NCR Corporation*

7