IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-00483 |
| v. | ) ) | Judge Robert J. Jonker |
| NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO., | ) ) ) ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF NCR CORPORATION'S
MOTION *IN LIMINE* TO EXCLUDE TRIAL EXHIBITS 1239 AND 1240**
_____

Defendant NCR Corporation ("NCR") respectfully submits this memorandum in support of NCR's motion to exclude Trial Exhibits 1239 and 1240,[1] two versions of the same one-page letter that was purportedly written by Fred Heinritz, a former employee of Appleton Coated Paper Company ("ACPC"), to an employee at Wiggins Teape Research & Development Ltd. ("Wiggins Teape") in May 1965 (the "WT Letter" or the "Letter").  For the reasons explained below, the WT Letter is inadmissible on the grounds that it is not (and cannot be) authenticated and contains hearsay.  NCR therefore respectfully moves for an order precluding Georgia-Pacific ("GP") (or any other party) from introducing any version of the WT Letter in evidence at the upcoming trial in this matter, which is scheduled to begin on February 19, 2013.

## PRELIMINARY STATEMENT

NCR and GP's dispute about the WT Letter has been ongoing for several years.  In 2009, the Letter was produced in *Whiting* from microfiche files found at a research facility known as "Butler's Court" located in Beaconsfield, England.  Butler's Court was owned by Wiggins Teape, which NCR licensed to manufacture carbonless copy paper ("CCP") for sale in the United Kingdom.  But NCR never had possession of or control over the microfiche found at Butler's Court.  The WT Letter has been the subject of several depositions and motions, largely in connection with the Fox River matters.

GP's primary interest in this Letter, however, relates to the Kalamazoo matter now before this Court.  GP wants to introduce it in evidence to establish that ACPC shipped "limited quantities" of "CB broke" to a mill located near the Kalamazoo River.  (McAtee Decl.

---

[1] GP listed the WT Letter on the Exhibit List as Exhibits 1239 and 1240.  The two distinct versions of the WT Letter are attached to the McAtee Declaration as Exhibit 1.  At the time of this filing, the parties are still in the process of removing duplicates from the Exhibit List.  At least nine versions of the WT Letter have previously been produced.  The Bates numbers for these versions are:  BCFOX00007067; BCFOX00058122; KZ00000029; KZ00000031; KZ00000032; KZ00000046; KZ00023020; KZ00023021; and KZ00155172.  This motion to exclude is directed to all versions of the WT Letter.

Ex. 1 (WT Letter).)  Notably, this is the only document that GP has cited to support its claim that ACPC shipped PCB-containing broke to any Kalamazoo mill.  No court (including the *Whiting* court) has previously considered whether the WT Letter is admissible for this purpose.

Notwithstanding GP's extensive efforts to establish the reliability of the WT Letter, it has been unable to do so.  Indeed, GP has already conceded that Mr. Heinritz did not write the version of the WT Letter that GP is seeking to introduce in evidence.  (*See Whiting*, No. 08-cv-16, Dkt. No. 1393 at 8.)  Rather, GP's position is that the WT Letter is a copy of the original (that has never been found), which was retyped by a Wiggins Teape secretary (who has never been identified).  (*Id.* at 8.)  GP does not have sufficient evidence to support this position.  Even if Mr. Heinritz sent *a* letter to "Mr. A.E. Burroughs" of Wiggins Teape (the stated recipient of the WT Letter) on May 19, 1965—which Mr. Heinritz has repeatedly denied—there is no basis for knowing whether the WT Letter is an *accurate* copy of that letter.  On the contrary, there are numerous indications that the WT Letter is not reliable.  The WT Letter therefore should be excluded from evidence at the upcoming trial.

## RELEVANT FACTS

### A.      Mr. Heinritz's Sworn Testimony Concerning the Letter.

Mr. Heinritz worked for 40 years at ACPC.  (*See* McAtee Decl. Ex. 2 (Heinritz Aff.), at 1.)  In 2009, he was deposed in *Whiting* about ACPC's sale of CCP broke, among other topics.  Following the production of the Butler's Court documents (which occurred after Mr. Heinritz's 2009 deposition), he was asked about the so-called WT Letter.  In response, in March 2010, Mr. Heinritz executed an affidavit disclaiming knowledge of the Letter, stating, "I do not recall writing this letter".  (*Id.*)  In addition, he stated that he did not recall learning that CCP broke was shipped to the Allied Paper mill during the relevant time period.  (*Id.*)

Shortly thereafter, GP sought to depose Mr. Heinritz to "refresh his recollection" about the WT Letter. (*In re Petition of GP & United States*, No. 10-mc-22, Dkt. No. 1 ¶ 31.) During that deposition, which was conducted in June 2010, Mr. Heinritz unequivocally confirmed the statements in his affidavit, testifying that he had "a lot of reservations" about the authenticity of the Letter due to its unusual characteristics, including the lack of ACPC letterhead, the signature (which differed from his usual signature) and the British spelling of one word. (*See* McAtee Decl. Ex. 3 (Heinritz Dep. 2010), at 76:7-77:13.) As he succinctly put it: "[The WT Letter is] not a letter I wrote." (*Id.* at 76:17.)

**B. Indicia of Unreliability in the WT Letter.**

The WT Letter is a one-page document, dated May 19, 1965, addressed to "Mr. A.E. Burroughs" of Wiggins Teape. There are numerous issues (in both versions that have been produced) that call into question the authenticity and accuracy of the Letter—including those noted in Mr. Heinritz's affidavit and deposition. There are at least ten examples:

1. As noted above, Mr. Heinritz has repeatedly denied under oath that he wrote the Letter.

2. The Letter is not on ACPC letterhead (unlike numerous other ACPC letters found on the Butler's Court microfiche). Instead, "Appleton Coated Paper Company" is typed, along with the company's address. "COPY" is also typed in the header. Indeed, the Letter is the *only* ACPC letter from the Butler's Court microfiche that does not appear to be a microfiche copy of the original or a photocopy or the original.

3. The two versions of the Letter have different stamps and handwritten markings.

4. The Letter contains a British spelling of a word—"favourably" (instead of "favorably")—which Mr. Heinritz testified he would not have used. (McAtee Decl. Ex. 3 (Heinritz Dep. 2010), at 76:22-77:13.)

5. The Letter references a prior letter from Mr. Burroughs dated May 13, 1965, but no such letter was found in the Wiggins Teape files.

6. The Letter uses a symbol that looks like a backward number three with a "/" through it ("₤", similar to the British pound symbol, £), instead of a dollar sign, as follows: "Confidentially, we can tell you that we receive ₤ 75.00 per ton . . . ."

7. The Letter may use the word "not" incorrectly in one of the sentences, as follows: "We actually know very little about the processes used in reclaiming the CB broke, however, we do *not* know it is done by a conventional de-inking process" (emphasis added).

8. After the closing, the following typed signature appears: "(signed) Bud". Mr. Heinritz stated under oath that he did not usually sign his letters this way. (McAtee Decl. Ex. 2 (Heinritz Aff.), at 1.)

9. The name "Heinritz" appears only in the lower corner of the letter (where copied recipients would normally be identified).

10. The statement in the Letter that Allied Paper Company in Kalamazoo, Michigan purchased "limited quantities" of ACPC's CB broke is not supported by sales records or any other direct evidence.

As discussed below, these issues—taken together—render the Letter fundamentally unreliable.

**C.    GP's Efforts to Authenticate the WT Letter.**

Faced with Mr. Heinritz's testimony that he did not write the Letter, GP has undertaken extensive (and unsuccessful) efforts to authenticate it through other means.

GP has relied on the 2011 declaration and deposition of John Gough, a paid GP consultant who worked at Butler's Court from 1958 to 1987.[2] Mr. Gough claimed that the WT Letter was maintained in the Butler's Court facility but admitted that the WT Letter is neither the original document purportedly sent by Mr. Heinritz, nor an exact copy of that document (supposedly because Wiggins Teape did not have a photocopier in the mid-1960s).[3] Thus,

---

[2] Although GP has paid Mr. Gough approximately $70,000 to help GP develop evidence for GP's case against NCR (*see* Dkt. No. 350 at 4), Mr. Gough is offered as a factual witness for authentication.

[3] As discussed below, Mr. Gough's testimony on this point is belied by the other documents that were produced from the same Butler's Court microfiche—many of which appear to be microfiche versions of original or photocopied letters from ACPC before and after May 19, 1965 (the date of the WT Letter). (*See* McAtee Decl. ¶ 10 (citing examples of such documents).) Moreover, Xerox photocopiers were readily available in 1965. (*See id.* ¶ 11 (citing historical references to Xerox photocopiers).)

4

according to Mr. Gough, the Letter was manually retyped at Wiggins Teape and then filed—notwithstanding that this is the *only* purportedly manually retyped letter from ACPC dated after 1961 that was produced from Butler's Court. (*See* McAtee Decl. Ex. 4 (Gough Decl.) ¶ 16.)

Mr. Gough lacked personal knowledge of many of the alleged facts to which he attested. He could not confirm whether the WT Letter was in fact retyped by a Wiggins Teape secretary. (*See* McAtee Decl. Ex. 5 (Gough Dep. 2011) at 117:23-118:23.) Indeed, in 1965, Mr. Gough did not have a role in the creation, maintenance or storage of documents in the Butler's Court filing system. (*Id.* at 87:11-88:21, 118:24-119:5.) Moreover, Mr. Gough did not have first-hand knowledge of the significance of many of the markings on the WT Letter. (*See id.* at 87:22-88:10; 98:7-18.) GP sought a declaration from Judith Smith, one of the former Butler's Court librarians (who was responsible for filing), but she refused to sign one. Notwithstanding Ms. Smith's refusal, Mr. Gough then signed it, after "confirm[ing]" his claimed knowledge with Ms. Smith. (*See id.* at 97:12-98:18.)

GP has also relied on the declaration of Stacey Taylor, another former Butler's Court employee. Ms. Taylor refused to sign a declaration prepared by GP (*id.* at 98:25-99:6), but later prepared one at the request of Appleton Coated LLC (a company tangentially involved in the Fox River matters). (McAtee Decl. Ex. 6 (Taylor Decl.).) Although Ms. Taylor's declaration includes descriptions of the historical filing system at Butler's Court, it is not based on her personal knowledge, as she did not begin working there until 1992—nearly three decades after the WT Letter was allegedly received. (See *id.* ¶ 2.) Neither Mr. Gough nor Ms. Taylor has any personal knowledge of the origination or maintenance of the WT Letter in particular.

Finally, GP has cited circumstantial evidence in an attempt to bolster the reliability of the WT Letter. For example, during a deposition of a former Allied Paper mill

5

employee, Richard Bennett, GP asked Mr. Bennett to assume that the Letter—which Mr. Bennett had never seen—was authentic. (McAtee Decl. Ex. 7 (Bennett Dep.) at 30:21-31:16; 75:20-766:13.) Only after reviewing the Letter (and being instructed to assume it is authentic) did Mr. Bennett say that ACPC was "a source of CB broke that was received by Allied", without giving any further details. (*Id.* at 31:21-32:16.) The other evidence on which GP has relied to connect broke from ACPC to any Kalamazoo mill is equally speculative and unfounded.

## ARGUMENT

### I. The WT Letter Is Inadmissible Because It Is Unauthenticated.

It is well-established that the requirement of authentication is a condition precedent to admissibility. *See* Fed. R. Evid. 901(a). To authenticate a document, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is". *Id*. GP claims that the WT Letter is an accurate duplicate of a letter sent by Mr. Heinritz to Mr. Burroughs in 1965. GP cannot meet its burden of proving this claim.

#### A. The WT Letter Is Not a Duplicate.

Under the Federal Rules of Evidence, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate". Fed. R. Evid. 1003. A "duplicate" is defined as "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original". Fed. R. Evid. 1001(e). The WT Letter does not meet this test for several reasons.

Most notably, the WT Letter does not qualify as a "duplicate". As the Advisory Committee Notes on Rule 1001 make clear, copies of documents "produced manually, whether handwritten or typed, are not within the definition [of 'duplicate']". Fed. R. Evid. 1001 advisory committee's note. The exclusion of such documents from Section 1003's definition of

6

"duplicate" is logical. Whereas automated methods of copying largely, if not entirely, eliminate the risk of alterations due to human error, mistakes are far more likely when manually creating a document. *See* Kenneth S. Broun, McCormick on Evidence § 236 at 99 (6th ed. 2010) ("McCormick") ("Errors [in manually transcribing a document] were routinely to be expected.").

In addition, even if the WT Letter were considered a duplicate, it is inadmissible because NCR has raised "genuine question[s] . . . about the original's authenticity". Fed. R. Evid. 1003. The alleged original has never been seen. Moreover, a court cannot assume a document was written by the author whose name is on the document without additional evidence (especially where, as here, the purported author has denied writing the document). *See* McCormick § 221 ("The purported signature or recital of authorship on the face of a writing will *not* be accepted, without more, as sufficient proof of authenticity to secure the admission of the writing in evidence."); *Mayer* v. *Angelica*, 790 F.2d 1315, 1323, 1339 (7th Cir. 1986) (rejecting, on authenticity grounds, letters signed "Frank" and purporting to be from Frank Kimball).

As outlined above, there are several other indicia that the WT Letter is not a reliable duplicate. The typographic errors, such as the use of British spelling and possible inadvertent inclusion of words ("we do *not* know it is done . . ."), are particularly concerning here. Indeed, the change of a single letter could drastically change the Letter's meaning and relevance (or lack thereof) in this case. For example, assuming a Butler's Court secretary prepared the WT Letter, she could have inadvertently typed "CB Broke", rather than "CF Broke" (especially since the "B" and "F" keys nearly touch on a standard typewriter). It is undisputed that CF broke, as opposed to CB broke, did not contain PCBs. Thus, a minor error could have made the WT Letter non-probative in GP's case against NCR. But GP has offered no evidence to confirm the accuracy of the WT Letter.

7

### B. There Are No Applicable Means of Authenticating the WT Letter.

GP cannot authenticate the WT Letter through any of the avenues provided in the Federal Rules. The arguments that GP has previously raised all fail.

*First*, the WT Letter is not admissible as an "ancient document". Fed. R. Evid. 901(b)(8). Although the Letter is dated 1965, GP cannot plausibly argue that it is "in a condition that creates no suspicion regarding its authenticity". *Id.* 901(b)(8)(A); *see Kalamazoo River Study Grp.* v. *Menasha Corp.* ("*KRSG*"), 228 F.3d 648, 661-62 (6th Cir. 2000) (rejecting GP's argument that a report supposedly prepared by EPA and found in the Michigan Department of Natural Resources' files was admissible under the "ancient document" exception).

*Second*, the WT Letter does not possess "distinctive characteristics" that support a finding of authenticity. Fed. R. Evid. 901(b)(4). On the contrary, the "appearance, contents, substance . . . [and] other distinctive characteristics" of the Letter render it inherently unreliable. As explained above, GP has not produced any witness with first-hand knowledge of the creation or particular characteristics of the WT Letter. Indeed, Mr. Gough—on whose testimony GP has heavily relied—had to "confirm" the statements in his declaration concerning the WT Letter (and the Wiggins Teape filing system generally) with Ms. Smith, who refused to sign a declaration for GP. Such testimony is wholly insufficient to authenticate the WT Letter. *See United States* v. *Riley*, 236 F.3d 982, 985 (8th Cir. 2001) (finding that testimony cannot provide authentication when "the personal knowledge lacking . . . concerned the foundational facts themselves"). In addition, the WT Letter is distinct from the other documents about which Mr. Gough testified. Notably, of the 12 letters sent from ACPC to Wiggins Teape (which Mr. Gough attached to his Declaration in the order in which they appeared on the microfiche), *only one*—the WT Letter— was allegedly retyped. All of the other letters are on ACPC letterhead and include a real (as opposed to typed) signature. (*See* McAtee Decl. ¶ 10, Ex. 4.)

8

*Finally*, the Letter is not self-authenticating as a "foreign record", which requires a "certification of the custodian or another qualified person" demonstrating that the document satisfies the business record exception to hearsay. *See* Fed R. Evid. 902(12). Neither the Gough nor Taylor declarations meet this standard. And as discussed in more detail below, the WT Letter does not qualify as a business record in the Sixth Circuit.

## II. The WT Letter Is Inadmissible Because It Contains Hearsay.

GP is seeking to introduce the WT Letter to demonstrate the truth of at least one of the statements therein: that the Allied Paper mill in Michigan used limited quantities of CB broke from ACPC. But this statement (among others) constitutes hearsay for which no exception applies. *See* Fed. R. Evid. 801, 805. Both the alleged original version and the copy of the WT Letter must fit specific hearsay exceptions for the statements in the copy to be admissible. *Cf. United States v. Hajda*¸ 135 F. 3d 439, 444 (7th Cir. 1998). But even if the original WT Letter existed and was considered an admission, the copy itself cannot fit into any hearsay exception.

For example, the Rule 803(6) hearsay exception for business records is inapplicable here. The theory behind this exception is that business records have "special indicia of reliability". *NLRB v. First Termite Control Co.*, 646 F.2d 424, 427 (9th Cir. 1981). The WT Letter is lacking such indicia for several reasons. The alleged original WT Letter would only have been received, and not drafted, by anyone at Wiggins Teape. The Rule 803(6) exception does not apply to documents merely received by a business where no one in the business had the knowledge necessary to create the document. *See United* v. *Selby*, Nos. 93-1424, 93-1451, 93-1455, 1994 WL 416262, at *10 (6th Cir. Aug. 8, 1994) (per curiam). Moreover, GP has not offered the required testimony from a "custodian or another qualified witness" to establish that the WT Letter constitutes a Wiggins Teape business record. *See* Fed. R. Evid. 803(6)(D). GP has cited the testimony of Mr. Gough for this purpose, but he *admitted* that he was not the

custodian of Butler's Court records before 1976.  (McAtee Decl. Ex. 5 (Gough Dep. 2011) at 88:7-12.)  GP has offered no other evidence that any mechanisms were in place to ensure the accuracy of manually retyped letters placed into the Wiggins Teape files.

Nor does the WT Letter qualify as an ancient document under the hearsay exception codified at Rule 803(16).  This exception requires that the statements be in a document that is "at least 20 years old and whose authenticity is established".  Fed. R. Evid. 803(16).  As demonstrated above, GP has failed to establish the authenticity of the WT Letter; thus, this exception does not apply.  *See KRSG*, 228 F.3d at 661 (noting that an ancient document that cannot be authenticated cannot qualify for the hearsay exception).

**III.     The *Whiting* Court's Admission of the WT Letter Has No Bearing Here.**

GP may argue that the WT Letter should be admitted on the basis of the recent *Whiting* ruling.  That argument is misplaced.  The *Whiting* court qualified its admission of the WT Letter in several important ways.  The Court (1) noted that NCR had raised "legitimate objections" to the Letter; (2) admitted the Letter only because it was "harmless" and largely irrelevant to the disputed issues before the Court; and (3) did not admit the Letter for the truth of any statements, including the one concerning where ACPC's broke may have been shipped.  (*Whiting*, No. 08-cv-16, Dkt. No. 1405 at 29-30 (Aug. 3, 2012).)  Moreover, because the *Whiting* Court gave the WT Letter "little weight in reaching [its] conclusion"—a conclusion that was adverse to GP—the evidentiary ruling would have no preclusive effect here in any event.  *See Shields v. Reader's Digest Ass'n*, 173 F. Supp. 2d 701, 706 (E.D. Mich. 2001).

## CONCLUSION

For the foregoing reasons, the WT Letter is inadmissible because it is not (and cannot be) authenticated and contains hearsay.  NCR therefore respectfully requests that the Court exclude the WT Letter from evidence in the upcoming trial in this matter.

Dated: January 28, 2013          Respectfully submitted,

        NCR CORPORATION

        /s/ Darin P. McAtee
        *Counsel for NCR Corporation*

        DICKINSON WRIGHT PLLC
        Geoffrey A. Fields
        200 Ottawa Avenue, N.W., Suite 1000
        Grand Rapids, Michigan 49503-2427
        Phone: (616) 336-1017
        Fax: (616) 458-6753

        CRAVATH, SWAINE & MOORE LLP
        Evan R. Chesler
        David R. Marriott
        Darin P. McAtee
        Worldwide Plaza, 825 Eighth Avenue
        New York, New York 10019
        Phone: (212) 474-1000
        Fax: (212) 474-3700
        dmcatee@cravath.com

        SIDLEY AUSTIN LLP
        Evan B. Westerfield
        One South Dearborn Street
        Chicago, Illinois 60603
        Phone: (312) 853-7000
        Fax: (312) 853-7036

        MARTEN LAW PLLC
        Linda R. Larson
        Bradley M. Marten
        1191 Second Avenue, Suite 2200
        Seattle, Washington 98101
        Phone: (206) 292-2600
        Fax: (206) 292-2601

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2013, I electronically filed the Memorandum of Law in Support of NCR Corporation's Motion *in Limine* to Exclude Trial Exhibits 1239 and 1240 using the ECF system, which will send notification of such filing by operation of the Court's electronic systems. Parties may access this filing via the Court's electronic system.

FURTHERMORE, I hereby certify that on January 28, 2013, I served by electronic mail a copy of the aforementioned document upon counsel listed below:

> Dean P. Laing
> O'Neil Cannon Hollman DeJong & Laing SC
> 111 E. Wisconsin Ave., Suite 1400
> Milwaukee, WI 53202
> Dean.Laing@wilaw.com

/s/ Darin P. McAtee
*Counsel for NCR Corporation*