# Exhibit 6

## DECLARATION OF STACEY E. TAYLOR

I, STACEY E. TAYLOR, declare:

1. My name is Stacey E. Taylor. My permanent address is 30 Grenville Avenue, Wendover, Buckinghamshire, HP22 6AJ. I am over the age 18 and, if called to testify, I could and would testify to the facts stated below based upon my personal knowledge.

## BACKGROUND

2. I was employed by Arjo Wiggins Appleton ("AWA") at its Butler's Court facility approximately from January 1992 until February 2009. I started as a member of the Library staff and, in 1994, I became the Information Manager of Butler's Court. As the Information Manager, I managed the Library and information resources at Butler's Court, including the copies of various documents which were stored on microfiche.

## THE BUTLER'S COURT LIBRARY

3. During this time, Butler's Court was the main research center in the United Kingdom for AWA, and the Library served as a central repository for technical documents and research reports generated by AWA's facilities in the United Kingdom. As Butler's Court and other AWA facilities located in the United Kingdom (for example, its paper mills) generated these types of documents, it was the practice for copies to be sent to the Library for storage. Although this may not have always been the case, it appeared to me that this practice of sending technical documents and research reports to the Library for storage was generally followed by the research staff at Butler's Court and at the other AWA facilities in the United Kingdom. Although the main types of documents sent to the Library for storage were technical documents and research reports, we also received other types of documents, such as summaries of visits to suppliers.

1

## THE BUTLER'S COURT MICROFICHE DOCUMENTS

4. When I first joined the Library staff at Butler's Court, microfiche was the primary method for the long-term storage of the documents we received. Specifically, the paper copies of the reports and other documents we received were sent to a third-party company which then converted them to microfiche. I do not recall how often the paper documents were sent to be converted to microfiche, but I believe that this was done on a relatively regular basis because the microfiche that the Library maintained was a robust set of documents that, to my recollection, was relatively up-to-date when I joined AWA. Additionally, to the best of my recollection, when I searched for a document that pre-dated 1993, I searched for it on the microfiche.

5. I do not know when the Library first began using microfiche to store its technical documents. But, it is my understanding that historical documents dating back to approximately 1957 were converted to microfiche prior to my employment with AWA. I believe that the Library had chosen microfiche as the primary storage method because it did not have enough space to retain hard copies of all the documents it received and because microfiche provided a more secure means of storing the documents. At around the end of 1993, however, the Library staff was greatly reduced and the number of documents being sent to the Library had also decreased. Therefore, beginning in approximately 1994, there was no immediate need to convert the documents received into microfiche and, to the best of my recollection, I do not believe that any more microfiche were created after this time.

6. It is my understanding that the microfiche documents maintained by the Library served as AWA's "technical memory" for historical research information generated by its facilities in the United Kingdom from approximately 1957 until 1992. When they were created by a third-party company, two duplicate copies were made. One was the working set and later

2

became known as the Post Room Set. The second set was intended as a back-up to the working set and later became known as the Library Set. Over the years, it is possible that pages of microfiche from the Post Room Set were misplaced or damaged through the normal use of the microfiche.

## ACCESS TO AND USE OF THE MICROFICHE

7. The microfiche were primarily used by the research staff at Butler's Court and, occasionally, staff at other AWA facilities in the UK. Sometimes, the researchers were searching for a specific report with which they were familiar and other times they would be searching for all available reports on a specific topic. It was my understanding that, prior to my employment at AWA, the relevant documents could be identified and located on the microfiche by using an index system maintained by the Library. Later, a database was created and maintained by the Library to allow for the searching and retrieval of the microfiche. The database recorded the key bibliographic details of the microfiche documents, such as the author, title and keywords. This allowed the Library staff (and later other Butler's Court employees) to search for technical work of interest dating back to approximately 1957.

8. Access to both the Library Set and the Post Room Set was controlled by the Library staff as both sets were stored in locked cabinets. Thus, once the relevant sheets of microfiche had been identified through the database, the Library staff would locate the relevant sheets from the Post Room Set and bring them to the microfiche reader to be reviewed and/or printed.

9. The microfiche documents were the primary means of accessing historical information about AWA's technical work in the United Kingdom. To the best of my recollection,

I estimate that the Library received requests to review the microfiche documents approximately once or twice a week.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 2, 2011

_____
Stacey E. Taylor

## CLARIFICATION TO THE DECLARATION OF STACEY E. TAYLOR

I, STACEY E. TAYLOR, declare:

1. My name is Stacey E. Taylor. My permanent address is 30 Grenville Avenue, Wendover, Buckinghamshire, HP22 6AJ. I am over the age 18 and, if called to testify, I could and would testify to the facts stated below based upon my personal knowledge.

2. On November 2, 2011, I executed a declaration regarding my former employment at a paper research facility referred to as Butler's Court. In paragraph 2 of that declaration, I identified Arjo Wiggins Appleton as my employer. It has since been brought to my attention that, at the beginning of my career at Butler's Court, my employer was actually Arjo Wiggins Research & Development Limited. It has further been brought to my attention that, in 1994, pursuant to a corporate reorganization, the activities of Arjo Wiggins Research & Development Limited were transferred to Arjo Wiggins Limited, which became my employer at that time. Finally, it has also been brought to my attention that in 1999, pursuant to a reorganization, the Butler's Court facility was transferred from Arjo Wiggins Limited to Arjo Wiggins Fine Papers Limited, which became my employer at that time.

3. My November 2, 2011 declaration should have reflected the above corporations as my employer rather than Arjo Wiggins Appleton. Additionally, references to AWA in the declaration should be replaced with references to my relevant employer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ~~November~~ December 7th, 2011

_____
Stacey E. Taylor