UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, | Case No.  1:11-cv-00483 |
| Plaintiff, | Hon. Robert J. Jonker |
| vs. | |
| NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO., | |
| Defendants. | |

**<u>INTERNATIONAL PAPER'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO EXCLUDE THE TESTIMONY OF STEPHEN A. BROMBERG</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 1

    A.     Procedural and legal background ............................................................. 1

    B.     GP's proffered expert Stephen Bromberg is an experienced real-estate
        lawyer who seeks to opine on a legal issue............................................... 3

III.    STANDARD ......................................................................................................... 4

IV.     ARGUMENT ........................................................................................................ 5

    A.     Bromberg's testimony, because it is nothing more than a legal opinion,
        does not satisfy Rule 702's requirement that the testimony  be helpful to the
        Court ......................................................................................................... 5

    B.     Bromberg is not qualified to opine on the question at hand .................... 8

V.      CONCLUSION ..................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Aguilar v. International Longshoremen's Union Local #10,*
966 F.2d 443 (9th Cir. 1992) ...............................................................................6, 7

*Berry v. City of Detroit,*
25 F.3d 1342 (6th Cir. 1994) .......................................................................4, 5, 7, 8

*Casper v. SMG,*
389 F. Supp. 2d 618 (D.N.J. 2005) ..................................................................7

*CFM Commc'ns, LLC v. Mitts Telecasting Co.,*
424 F. Supp. 2d 1229 (E.D. Cal. 2005)........................................................7

*Cicero v. Borg-Warner Auto., Inc.,*
163 F. Supp. 2d 743 (E.D. Mich. 2001).......................................................8

*Hayes v. MTD Products, Inc.,*
518 F. Supp. 2d 898 (W.D. Ky. 2007) ..........................................................6

*Hygh v. Jacobs,*
961 F.3d 359 (2d Cir. 1992)..............................................................................7

*In re Initial Public Offering Sec. Litig.,*
174 F. Supp. 2d 61 (S.D.N.Y. 2001)...............................................................6

*Martin v. Ind. Mich. Power Co.,*
292 F. Supp. 2d 947 (W.D. Mich. 2002) ......................................................7

*Marx v. Diners Club, Inc.,*
550 F.2d 505 (2d Cir. 1977)..............................................................................7

*N. River Ins. Co. v. Employers Reinsurance Corp.,*
197 F. Supp. 2d 972 (S.D. Ohio 2002) .........................................................4

*Sigler v. Am. Honda Motor Co.,*
532 F.3d 469 (6th Cir. 2008) ............................................................................5

*United States v. Capital Tax Corp.,*
545 F.3d 525 (7th Cir. 2008) ............................................................................8

*United States v. Cunningham,*
679 F.3d 355 (6th Cir. 2012) ............................................................................5

**STATUTES**

42 U.S.C. § 9601(20)(A)..............................................................................................................2

42 U.S.C. § 9601(20)(E)(i) .........................................................................................................2

42 U.S.C. § 9601(20)(G)(vi)........................................................................................................2

**RULES**

Fed. R. Evid. 702 ..................................................................................................................4, 5, 8

Fed. R. Evid. 704 Adv. Cmte. Note ............................................................................................5

I. <u>**INTRODUCTION**</u>

The Court should exclude Stephen A. Bromberg's proffered testimony on behalf of Plaintiffs Georgia-Pacific Consumer Products, LP; Fort James Corporation, and Georgia-Pacific LLC (collectively, "GP") for two primary reasons.

First, Bromberg's testimony is not designed to help the Court determine a fact at issue or better understand the evidence that has been presented. Rather, he has given his legal conclusions with respect to a legal document. Bromberg is a lawyer. He thinks like a lawyer, bills time like a lawyer, writes like a lawyer, and cites legal authorities like a lawyer. GP proffers his opinion on a question of law: whether a June 1956 real-estate transaction between two companies was a "true lease" or a disguised security interest. The Court is perfectly capable of drawing its own conclusions on matters of law, so any expert opinion or testimony that Bromberg might offer is improper as well as unnecessary.

Second, although Bromberg is an accomplished attorney, he is not qualified to testify about the issue at hand. Bromberg's experience with real-estate transactions involving industrial properties—like the transaction here at issue—is, in his words, "limited." Moreover, he has virtually no experience with CERCLA and none concerning the security-interest exemption.

For these reasons, the Court should exclude Bromberg's testimony.

II. <u>**FACTUAL BACKGROUND**</u>

    A. <u>**Procedural and legal background.**</u>

In this case, GP asserts CERCLA claims against International Paper Company ("International Paper"), as the successor to St. Regis Paper Company ("St. Regis"). St. Regis manufactured paper at the Bryant Mill until June 30, 1956. St. Regis entered into a transaction, effective the following day, to sell its assets and assign rights associated with those operations to

Thor Corporation (which later became Allied Paper Co.).  That transaction effectively conveyed the Bryant Mill's business to Thor.  Thor inherited contracts with St. Regis's former customers, as well as various intellectual property associated with the Bryant Mill.  Additionally, the Mill's personnel—with precious few exceptions—became Allied employees immediately after the transaction.

One of the agreements to consummate the transaction was a "lease" of real property and equipment ("Lease").  From July 1, 1956 forward, Thor/Allied manufactured paper at the Bryant Mill.  St. Regis continued to hold indicia of ownership of the Mill until August 5, 1966, when Allied exercised its purchase option in the Lease.

CERCLA provides for the imposition of liability on former "owners" and "operators" of a "facility."  It is undisputed that after June 30, 1956, St. Regis did not manufacture paper at the Bryant Mill, so GP can establish liability for the post-June-1956-period only if St. Regis was an "owner" under CERCLA.

But CERCLA contains a security-interest exemption.  Under it, an entity is not an "owner" if it "without participating in the management of a . . . facility, holds indicia of ownership primarily to protect his security interest in the . . . facility."  42 U.S.C. § 9601(20)(A); *see also id.* § 9601(20)(E)(i).   Under this exemption, a lease can qualify as a security interest.  *Id.* § 9601(20)(G)(vi).

The key issues as to IP's liability are whether the June 1956 "Lease" gave rise to a security interest in the Bryant Mill on St. Regis's behalf, such that St. Regis remained the Bryant Mill's nominal owner primarily to protect that security interest.  If so, St. Regis was not an "owner" of the Bryant Mill after the transaction's effective date.

**B.**     **GP's proffered expert Stephen Bromberg is an experienced real-estate lawyer who seeks to opine on a legal issue.**

GP seeks to introduce expert testimony from Stephen Bromberg to support its position. Bromberg is an experienced Michigan real-estate attorney.  He joined the bar in 1954.  (Ex. 1 (Bromberg Rpt.) at 13.)  He has practiced in several private firms, and served as the President of Butzel Long.  (*Id.*)  He is listed in various honorary publications, such as *Best Lawyers of America* and *Who's Who Legal Real Estate*, although he does not know how he became listed.  (*Id.* at 14; Ex. 2 (Bromberg Dep. Tr.)) at 23:5-24.)

Bromberg identifies his field of expertise as "real estate law."  (*Id.* at 9:23-25.)  He acknowledges that he is not an expert in economics (*id.* at 44:18-20), and testified that his practice in the field of real-estate law was the experience that he relied upon in drafting his expert report (*id.* at 45:11-14.  Bromberg is unsure whether he has had any CERCLA-related responsibilities during his decades of practice, and had "probably no[]" experience with CERCLA's security-interest exemption before this case.  (*Id.* at 21:14-18, 22:1-6.)  He is unaware of whether a lease can qualify as a form of security interest under CERCLA.  (*Id.* at 52:20-25.)  Although Bromberg published a few articles in the 1970s and 1980s, he cannot identify any that are germane to the issues in this case.  (*Id.* at 23:25–24:16.)

GP asked Bromberg to opine on whether the 1956 transaction "is a true lease."  (*Id.* at 10:4-10.)  Although his report states that he does not intend to state legal opinions (Ex. 1 (Bromberg Rpt.) at 1), he understands that whether a lease is a "true lease" or a security interest presents a question of law (Ex. 2 (Bromberg Dep. Tr.) at 91:16-17.)

When Bromberg accepted his engagement to work on this case, he opened a client/matter number at his firm, just as he would for a deal or dispute for which a client needed legal advice. (*Id.* at 38:12-17.)  He enlisted the help of an associate, and both billed their time at their regular

rates, just as they would for any other legal matter in which the firm represented a client. (*Id.* at 28:20–29:10, 38:12-17.) In drafting his expert report, he employed the methodology of "contract interpretation"—the same methodology that any lawyer would use in practice. (*Id.* at 49:13–50:3.) Bromberg and his associate performed legal research. (*Id.* at 30:4–31:3.) His expert report cites case law and legal treatises, which formed bases for his opinion. (*Id.* at 48:18–49:12, 102:4-13.)

## III.    **STANDARD**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, helpfulness is a touchstone to admissibility. Expert testimony is not admissible unless it "will assist the trier of fact to *understand the evidence* or to *determine a fact* in issue." Fed. R. Evid. 702(a) (emphasis added). "Expert opinions which express a legal conclusion are not admissible," because they neither aid the factfinder in understanding evidence nor in determining a fact. *See N. River Ins. Co. v. Employers Reinsurance Corp.*, 197 F. Supp. 2d 972, 981 (S.D. Ohio 2002) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)).

Qualification is another touchstone. A particular expert cannot testify unless he or she is qualified as an expert. That inquiry does not address "the qualifications of a witness in the

abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry*, 25 F.3d at 1351.

The proponent of an expert's testimony bears the burden of demonstrating that Rule 702's requirements are satisfied. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008). When the proponent fails to carry that burden, the Court has discretion to exclude or limit a witness's testimony. *United States v. Cunningham*, 679 F.3d 355, 379–82 (6th Cir. 2012).

## IV.    ARGUMENT

The Court should exclude Bromberg's testimony for two primary reasons. First, because he seeks to opine on an issue of law, his testimony is not appropriate or necessary, and will not help the Court to resolve any factual issue or to understand the evidence. Second, although Bromberg has had an impressive legal career, GP cannot show that he has sufficient expertise on the issue at hand to qualify him to testify as an expert.

### A.    Bromberg's testimony, because it is nothing more than a legal opinion, does not satisfy Rule 702's requirement that the testimony be helpful to the Court.

GP cannot meet its burden of establishing that Bromberg's testimony will help the Court either to understand the evidence or to determine any fact at issue. Rule 702 makes plain that expert testimony is admissible only if it will help the trier of fact—here, the Court. Fed. R. Evid. 704 Adv. Cmte. Note ("Under Rules 701 and 702, opinions must be helpful to the trier of fact.") Bromberg's testimony will not help the Court because he proposes to offer a legal opinion. But only one legal opinion matters in this case—the Court's.

Bromberg's proffered testimony embraces a legal conclusion. Bromberg's methodology confirms as much. Indeed, he treated this project like any other legal project—opening a client/matter number, recording and billing his time at his usual rate, and seeking research assistance from an associate at his law firm.

Bromberg's expert report bolsters this conclusion.  His report cites legal authorities and answers a question that even Bromberg recognizes is a question of law.  No wonder, then, his report reads like a legal brief.

Opinions on matters of law are generally inadmissible.  "The rule prohibiting experts from providing their legal opinions or conclusions is so well established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.  In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law."  *In re Initial Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (internal quotations and citations omitted).

Various courts have held as much.  For instance, *Hayes v. MTD Products, Inc.*, 518 F. Supp. 2d 898 (W.D. Ky. 2007), was a products-liability case regarding a model of lawnmower. The plaintiff sought to introduce expert testimony from an attorney who had worked at the Consumer Products Safety Commission.  His opinion was that it was unreasonable for the defendant to market the lawnmower without roller protection.  *Id.* at 899.  The court struck his testimony because it amounted to "a legal, not factual, conclusion."  *Id.* at 900.  Similarly, in *Aguilar v. International Longshoremen's Union Local #10*, 966 F.2d 443 (9th Cir. 1992), the court addressed whether the plaintiffs had relied on statements in an employment application.  The plaintiffs proffered an expert to testify that anyone who read the application would have understood that a promise had been made.  The court rejected this testimony, reasoning that "the reasonableness and foreseeability of the casual workers' reliance were matters of law for the court's determination.  As such, they were inappropriate subjects for expert testimony."  *Id.* at 447 (citing *Marx v. Diners Club, Inc.*, 550 F.2d 505, 509 (2d Cir. 1977)).

*Casper v. SMG*, 389 F. Supp. 2d 618 (D.N.J. 2005), is particularly instructive. There, the plaintiffs proffered opinion testimony from a law professor who also held a Ph.D. in economics. *Id.* at 620. The court noted that the expert's report—like Bromberg's—"relies on case law and statutes, applying them to the 'contemporaneous documentary record' . . . in this case, to answer legal questions." *Id.* at 621. Accordingly, the court held that the expert's "legal analysis of the facts of this case, and his conclusions, are inadmissible." *Id.* at 622. *See also Berry v. City of Detroit*, 25 F. 3d 1342, 1354 (6th Cir. 1994) (noting that courts "requir[e] exclusion of expert testimony that expresses a legal conclusion" (quoting *Hygh v. Jacobs*, 961 F.3d 359, 363 (2d Cir. 1992))).

True enough, some cases suggest that the rule against admitting testimony on a legal opinion is relaxed when the case will be tried to the Court, rather than to a jury. *E.g., CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005) (citing *Martin v. Ind. Mich. Power Co.*, 292 F. Supp. 2d 947, 959 (W.D. Mich. 2002)). But this principle does not absolve GP of establishing that Bromberg's testimony will aid the Court in its role as factfinder.

GP cannot do so, for at least two reasons. First, the Court has a rich substantive background in CERCLA, and (as shown below) Bromberg does not. Second, this case does not present a complex regulatory scheme that would justify testimony on a technical legal issue. Courts have recognized that "[w]hile expert testimony may be permissible to describe a complicated agency process, such testimony should not prescribe legal standards to apply to the facts of the case." *CFM*, 424 F. Supp. 2d at 1233. Here, there is no complicated regulatory-agency process at issue. Instead, the task at hand is a straightforward application of CERCLA's security-interest exemption—an exemption that is required to be given a broad functional

definition, *see e.g.*, *United States v. Capital Tax Corp.,* 545 F.3d 525, 531 (7th Cir. 2008); EPA, "Lender Liability under CERCLA," 57 Fed. Reg. 18344, 18351, 1992 WL 84957 (Apr. 29, 1992)—to the facts of the case.  For each of these reasons, Bromberg's testimony will not be helpful to the Court and should be excluded pursuant to Rule 702.

### B.      Bromberg is not qualified to opine on the question at hand.

The Court should exclude Bromberg's testimony for the separate reason that he is not qualified to offer an opinion on the question at issue in this litigation—whether the June 1956 transaction satisfies CERCLA's security-interest exemption.

In the Sixth Circuit, showing some degree of expertise is not sufficient to qualify an expert to testify.  "The issue with expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry*, 25 F.3d at 1351.

There is no dispute that Bromberg has had an impressive legal career spanning nearly 60 years, but that does not qualify him as an expert.  A long tenure does not necessarily spawn expertise.  *Cicero v. Borg-Warner Auto., Inc.*, 163 F. Supp. 2d 743, 749 (E.D. Mich. 2001).  Nor can GP establish Bromberg's expertise upon his being listed in honorary publications.  The plaintiff in *Cicero* similarly proffered an expert who, like Bromberg, was listed in *Best Lawyers in America.  Id.* at 749.  The court held that this honor did not qualify the recipient as an expert because "there is no evidence demonstrating who the publication's decision-makers are, their qualifications, or what criteria are used."  *Id.*  So it is here; Bromberg testified that he does not know how he came to be listed in any of the honorary publications listed on his CV.

Bromberg's experience does not qualify him to answer the specific question posed in this case—whether CERCLA's security-interest exemption applies.  Bromberg has testified that he has little, if any, CERCLA experience, and that whatever experience he might have did not concern the

security-interest exemption.  Nor has Bromberg published articles on the subject.  Although he authored a few publications in the 1970s and 1980s, he cannot identify any that are germane to the issue in this case.  Moreover, Bromberg has little experience with transactions like the one at issue here.  By his own admission, his experience involving industrial properties like the Bryant Mill is "limited," as only "[a] very small percentage" of his practice addressed industrial properties.  (Ex. 2 (Bromberg Dep. Tr.) at 14:5-13.)  He similarly admits that he lacks familiarity with loan agreements in the paper industry.  (*Id.* at 99:19–100:21.)

For these reasons, despite his impressive career as an attorney, Bromberg is not qualified to testify regarding CERCLA's security-interest exemption, or how that legal issue applies to the facts of this case.

## V.     <u>CONCLUSION</u>

For the reasons explained above, the Court should exclude testimony from GP's proffered expert Stephen A. Bromberg.


Dated:  January 30, 2013

/s/ John D. Parker
John D. Parker
Lora M. Reece
Michael Dominic Meuti
BAKER & HOSTETLER LLP
PNC Center
1900 E. 19th Street, Suite 3200
Cleveland, OH 44114
(216) 621-0200
Attorneys for International Paper Co.
jparker@bakerlaw.com
lreece@bakerlaw.com
mmeuti@bakerlaw.com


John F. Cermak
Sonja A. Inglin

Charles E. Shelton, II
BAKER & HOSTETLER LLP
12100 Wilshire Boulevard, 15th Fl.
Los Angeles, CA 90025
(310) 820-8800
Attorneys for International Paper Co.
jcermak@bakerlaw.com
singlin@bakerlaw.com
cshelton@bakerlaw.com


And by:

David W. Centner
CLARK HILL PLC
200 Ottawa Ave. NW, Ste. 500
Grand Rapids, MI 49503
(616) 608-1106
Attorneys for International Paper Co.
dcentner@clarkhill.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2013, I electronically filed the foregoing using the ECF system, which will send notification of such filing by operation of the Court's electronic systems. Parties may access this filing via the Court's electronic system.

/s/John D. Parker