**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GEORGIA-PACIFIC CONSUMER** | ) | |
| **PRODUCTS LP,** | ) | |
| **FORT JAMES CORPORATION, and** | ) | |
| **GEORGIA-PACIFIC LLC** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No**: **1:11-cv-00483** |
| **v.** | ) | |
| | ) | **Judge Robert J. Jonker** |
| **NCR CORPORATION,** | ) | |
| **INTERNATIONAL PAPER CO.,** | ) | |
| **and WEYERHAEUSER CO.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**GEORGIA-PACIFIC'S MEMORANDUM IN OPPOSITION TO**
**INTERNATIONAL PAPER'S MOTION *IN LIMINE* TO EXCLUDE**
**THE TESTIMONY OF STEPHEN A. BROMBERG**

## I. INTRODUCTION

International Paper ("IP") argues that Georgia-Pacific's expert witness, Stephen A.

Bromberg, a Michigan real estate expert, should be excluded from testifying at trial. It says that

Mr. Bromberg offers only a legal opinion on IP's eligibility for the secured creditor exemption

under CERCLA and that he is unqualified to do so. IP fundamentally mischaracterizes Mr.

Bromberg's testimony, which is relevant, helpful and entirely appropriate.

A copy of Mr. Bromberg's report is attached as Exhibit 1. As the Court will see, based

on a number of factors, Mr. Bromberg will opine that the Lease between St. Regis and Thor is

consistent with a true lease, and is inconsistent with a lease intended as security or financing

device, as those transactions were structured in the 1950s in Michigan. Mr. Bromberg bases his

opinion on the 1956 Lease and other documents and, importantly, on his knowledge of typical

lease provisions in the 1950s and the types of security devices that were and were not normally

used in the 1950s.  He specifically states that he does "not intend to state legal opinions in this report, although my opinions are informed by my knowledge of the law."  Ex. 1, at p. 1.  Mr. Bromberg also will address IP's expert on this transaction, Dr. Timothy Riddiough, and describe how his opinions are flawed because he conducted a selective analysis of tax law and accounting rules and misunderstands Michigan lease agreements.

Georgia-Pacific is not offering a legal opinion through Mr. Bromberg.  It instead is offering his testimony to show how lease transactions and financing transactions were typically structured in Michigan in the 1950s and how the structure of the 1956 transactions and related documents in this case reflect on the likely intent of the parties.  He also will help shed light on the numerous errors in Dr. Riddiough's opinion.  Mr. Bromberg's expected testimony is well within the scope of appropriate expert testimony and will be helpful to the Court.  He is remarkably well-qualified to render it.  IP's motion should be denied.

## II.  ARGUMENT

### A.    Standard of Review

"Rule 702 of the Federal Rules of Evidence controls the admissibility of all types of expert testimony."  *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 176 (6th Cir. 2009).  Under this Rule, "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note.  There are three components to Rule 702:  (1) the witness must be qualified by "knowledge, skill, experience, training, or education" (2) the witness's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue", and (3) the witness's testimony must be reliable.

Although Rule 702 imposes a "gatekeeping role" on a court, this function does not apply when the judge is the fact-finder.  "The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."  *Deal v. Hamilton County Bd. of Educ.,* 392

F.3d 840, 852 (6th Cir. 2004); *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").  For a bench trial, "the court can hear the evidence and make its [admissibility] determination <u>during</u>, rather than in advance of, trial."  *In re Salem,* 465 F.3d 767, 777 (7th Cir. 2006) (emphasis added).  Thus, a judge sitting as the fact-finder has wide latitude to consider expert testimony.  *Can-AmEng'g Co. v. Henderson Glass, Inc.*, 814 F.2d 253, 255 (6th Cir. 1987) (stating that the issue of whether a witness is qualified to testify as an expert is "left to the sound discretion of the trial judge and particularly so in a bench trial").

　　The touchstone of admissibility is the helpfulness of the testimony to the fact-finder. Rule 702's  requirement that the proffered testimony "assist the trier of fact" requires the testimony to be relevant. *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 591 (1993).  As long as the testimony relates to an issue the fact-finder must determine, it is relevant. *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 Fed. App'x 643, 652 (6th Cir. 2009).  Expert witnesses may properly reference laws and statutes in their testimony, and the fact an expert's testimony touches on such areas does not make it an inadmissible legal opinion.  *See Huddleston v. Herman & MacLean,* 640 F.2d 534, 544 (5th Cir.1981).

　　Although expert testimony regarding pure questions of law is generally inadmissible because it is unhelpful, *Woods v. Lecureus*, 110 F.3d 1215, 1219 (6th Cir. 1997), an "expert's submission of legally conclusive opinions does not by itself provide grounds to strike the designation of an expert . . . ." *Cook v. Riley*, 2012 U.S. Dist. LEXIS 83736, at *6  (M.D.N.C. June 18, 2012).  For example, such "testimony may be helpful if the case involves a specialized industry" or "the testimony may be  helpful if it involves a specialized area of law." Weinstein's Federal Evidence, § 704.04[2][a] (2d. ed. 2012).  This testimony is particularly useful if it assists the fact-finder in evaluating a party's intent, motives, or conduct.

In such cases, the court must distinguish between <u>helpful</u> opinion testimony that goes to a factual issue and <u>unhelpful</u> opinion testimony that merely states a legal conclusion. *United States v. Perkins,* 470 F.3d 150, 158 (4th Cir. 2006). The former is admissible, while the latter is not. In making that determination, a court should consider whether the question to an expert tracks the language of the legal principle or statute at issue, and then consider whether any terms employed have a specialized legal meaning. *See id*. at 158; *United States v. Sheffey,* 57 F.3d 1419, 1426 (6th Cir.1995) (testimony that the defendant had driven "recklessly, in extreme disregard for human life," did not state a legal conclusion because the terms "recklessly" and "extreme disregard for human life" do not have a legal meaning distinct from everyday usage).

If a witness's expert qualifications are challenged, the court examines whether the witness is qualified to testify on the subject matter at issue. *Berry v. City of Detroit*. 25 F.3d 1342, 1351 (6th Cir. 1994). A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education. A witness's practical experience in a relevant industry can qualify that witness as an expert. *See, e.g.*, *First Tennessee Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (admitting financial expert whose testimony was based on practical experience in relevant industry); *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862–63 (8th Cir. 2005) (holding that an attorney with over 36 years of experience practicing in the area of mergers and acquisitions was qualified to provide expert testimony on the issue of legal malpractice in that field).

### B. Bromberg is Not Offering an Impermissible Legal Opinion

Expert testimony is generally admissible if it is helpful to the trier of fact. Under this standard, IP's motion fails because Mr. Bromberg's testimony addresses factual issues that IP has raised as a defense to CERCLA liability.

4

The Court recognized in its January 24 opinion denying summary judgment motions (Doc. # 345) that determining the reasons why St. Regis kept title to the Bryant Mill during the period July 1, 1956 to August 5, 1966 "is an inherently fact-laden process." (Doc. # 365, at 11). A part of this factual analysis includes what was typical and ordinary for real estate transactions in Michigan in the mid-1950s, including how parties ordinarily structured them and what the structure of the transactions and their own statements say about their intent. Who better to address these questions than a prominent real estate attorney who actually practiced during this time?

IP sets up the ultimate straw man when it argues that Mr. Bromberg will offer a legal opinion on CERCLA and then says he does not have the qualifications to do so. Mr. Bromberg will not opine on the secured creditor exemption of CERCLA and whether its language applies here. Rather, from his experience as a real estate attorney who practiced during the period in question, he will testify how the circumstances of this transaction expound on the parties' purposes for the Lease.

Although Mr. Bromberg's opinions necessarily touch on a legal topic, real estate law, this does not amount to a legal opinion on how a CERCLA defense should apply. His testimony instead relates to the circumstances surrounding the transaction that must be examined. *See In re Qds Components, Inc.*, 292 B.R. 313, 328 (Bankr. SD. Ohio 2002) ("Parties make their agreement at the outset. Only there do they have the common intention to create a lease or security agreement, and it is at that time we should determine their true intention."). This testimony is admissible because it does not reach the "very legal conclusion" for which the Court is responsible for determining. *United States v. Safa,* 484 F.3d 818, 822 (6th Cir. 2007). And it

is useful because it addresses what was typical and ordinary in real estate transactions well more than 50 years ago.

Contrary to IP's arguments, courts routinely admit expert opinions that touch on legal topics to assist the fact-finder in determining the parties' intent or motives.  *See e.g., United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts");  *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (expert testimony on proximate causation in insurance law was properly admitted because experts "could reasonably be expected to shed some light in a shadowy domain").

For example, an expert may properly opine that a defendant's actions are consistent with behavior at issue in a case.  In *United States v. Winkle*, 477 F.3d 407, 416-17 (6th Cir. 2007), in a conspiracy and bank fraud case, the Sixth Circuit permitted an expert to testify that the defendant's activities were consistent with "check kiting."  As the court noted, "[g]iven the complexity of the check kiting scheme and the fact that the general public may not be aware of the mechanics of such a scheme" the expert's testimony on the defendant's behavior was permitted, especially considering that the expert did not then state that the defendant was guilty of the underlying crime of fraud.  *Id*. at 416.

Furthermore, in *United States v. Vogel*, 1994 U.S. App. LEXIS 28293, at *21-23 (4th Cir. Oct. 12, 1994), a defendant was charged with committing arson to collect insurance proceeds. At trial, the government proffered an expert on bankruptcy law to support their theory that the defendant had committed arson to pay off his creditors with the insurance proceeds he collected. The bankruptcy law expert was proffered to show why it would benefit the defendant to pay off his creditors under a Chapter 11 reorganization plan.  In finding the expert testimony admissible,

the court noted that the government had to provide testimony that would describe the bankruptcy process because an average juror would not have filed for bankruptcy and therefore would not know the difference between Chapter 11 and Chapter 7 or how the defendant would benefit by paying his creditors. The expert's testimony on bankruptcy law did not constitute an improper legal conclusion because understanding the bankruptcy process was critical to an assessment of the defendant's motives.

IP seizes on the fact that Mr. Bromberg opened a client-matter number for his work, recorded his time, billed his time at his typical hourly rate, and obtained assistance from another attorney. Of course he did. He is a lawyer, after all. He conducts himself as a lawyer. Beyond confirming the obvious fact that Mr. Bromberg is an attorney, these facts do nothing to support IP's motion.

In sum, expert testimony that does no more than elucidate an area that a fact-finder must understand to evaluate the intent of parties is not a legal conclusion subject to exclusion. Here, Mr. Bromberg's testimony on how leasing and financing transactions were structured in the 1950s in Michigan will be particularly helpful in evaluating the parties motives for entering the Lease. And should the Court conclude that any part of his testimony unintentionally crosses the boundary into conclusions of law, it will be perfectly capable of parsing that distinction. His testimony, in short, is admissible.

C.     **Bromberg Does Not Have to Be An Expert on CERCLA to Offer Expert Testimony**

IP also contends that Mr. Bromberg's testimony will be unhelpful because this Court has a "rich substantive background in CERCLA . . . and Bromberg does not." IP's Mem. at 7. This argument presupposes that Mr. Bromberg is offering a legal opinion on CERCLA. For all the reasons described above, he is not.

As Georgia-Pacific described in its summary judgment papers (Doc. # 297 at 25-26), the applicability of the secured creditor exemption turns on state law, and Michigan law turns on the intent of the parties.[1]  The fact that that Mr. Bromberg has limited experience with CERCLA is simply irrelevant.  What is relevant is the fact that he has practiced law in the field of commercial real estate since the 1950s and has achieved great knowledge and prominence in the process.  The latter includes professional recognition as former president of the American College of Mortgage Attorneys, a charter member of the American College of Real Estate Attorneys, and past chairman of the Real Property Law Section of the Michigan Bar.

There is simply no basis to IP's argument that Mr. Bromberg must have direct experience with CERCLA's secured creditor exemption and that his experience with transactions conducted under state law is meaningless.  Under this artificial standard, IP's own expert is unqualified to testify at trial.  Mr. Bromberg's knowledge of how parties structured leasing and financing transaction in the 1950s, for purposes of Michigan law, is relevant and an area on which he is highly qualified to speak.  *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness' testimony").

### III.  CONCLUSION

IP's motion *in limine* to exclude Mr. Bromberg's testimony has no merit.  All of IP's complaints about his testimony are more properly dealt with by "[v]igorous cross-examination"

---

[1] IP agrees that state law applies.  *See* IP's Memorandum. in Support of Summary Judgment at 11 (Doc. # 259 at 12-13) ("Courts also look to state law to determine whether a transaction has created a security interest for purposes of CERCLA"); *see also United Airlines, Inc. v. HSBC Bank USA, N.A.*, 416 F.3d 609, 616-18 (7th Cir. 2005) (applying California real property law on equitable mortgages to determine whether a lease involving real estate created a security interest).

and the "presentation of contrary evidence." *Daubert,* 509 U.S. at 596. As the fact-finder, the

Court can properly hear this testimony at trial and afford it the weight that it deems proper.


Dated: February 5, 2013

<div style="margin-left:40%">

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By: _____/s/ Joseph C. Kearfott_____

Peter A. Smit, Bar No. P 27886
Varnum LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6000

Joseph C. Kearfott
Douglas M. Garrou
George P. Sibley, III
Paul T. Nyffeler
Hunton & Williams LLP
951 East Byrd St.
Richmond, VA 23219
(804) 788-8200

Jeffrey N. Martin
Hunton & Williams LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 955-1500

Kathy Robb
Hunton & Williams LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0005
(212) 309-1000

</div>

Jan M. Conlin
Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
(612) 349-8500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2013, I electronically filed the foregoing using the

ECF system, which will send notification of such filing by operation of the Court's electronic

systems. Parties may access this filing via the Court's electronic system.

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By:_____/s/ Joseph C. Kearfott_____

11