UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC,<br><br>     Plaintiffs,<br><br> vs.<br><br>NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO.,<br><br>     Defendants. | Case No.  1:11-cv-00483<br><br>Hon. Robert J. Jonker |

### AMENDED STIPULATION OF FACTS BETWEEN PLAINTIFFS AND DEFENDANT INTERNATIONAL PAPER COMPANY

  Plaintiffs, Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific LLC, and defendant International Paper Company hereby stipulate and agree to the facts set forth below.  This Amended Stipulation takes the place of the statement of stipulated facts between Plaintiffs and International Paper as set forth in the [Proposed] Final Pretrial Order (Dkt. #360), which was approved by the Order entered February 7, 2013 (Dkt. #368).  The amended stipulated facts are:

  1. Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific LLC are successors to companies that owned and operated paper mills that discharged polychlorinated biphenyls ("PCBs") into the Site. The plaintiffs are referred to collectively as "Georgia-Pacific."

  2. International Paper Company ("International Paper") is the successor by merger to St. Regis Paper Company ("St. Regis").  Events giving rise to Georgia-Pacific's claims against International Paper in this case involved St. Regis.

  3. In 1946, in a transaction with Time Incorporated and affiliated parties, St. Regis acquired, among other things, assets and real property associated with the operation of a paper mill located on Portage Creek in Kalamazoo, Michigan that was known as and is referred to below as the "Bryant Mill."

  4. St. Regis also held title by August 20, 1949 to additional real property in Kalamazoo, Michigan that is referred to below as the "Panelyte Property."

5.      There is no evidence that St. Regis' activities on the Panelyte Property involved the processing or use of NCR carbonless copy paper ("CCP").

6.      Trial Exhibits 2172, 2173 and 2174, which are described generally in paragraphs 8, 25 and 31, depict the approximate boundaries of various parcels of real estate that are at issue in this case.  As to all three exhibits, the approximate boundaries and the length of specific segments of such property boundaries are not based on surveying or plotting of metes and bounds descriptions.  Neither Georgia-Pacific nor International Paper presently intends to put on evidence at trial as to these boundaries that differs from the exhibits, but if contrary evidence should be identified, neither party waives the right to present it.  The legends contained at the bottom of Trial Exhibits 2172, 2173 and 2174 are for general guidance.  To the extent they conflict in any way with the matters set forth in this Amended Stipulation, the Amended Stipulation governs.

7.      Boundaries for some deeds for some properties shown on Trial Exhibits 2172, 2173 and 2174 make reference to the centerline of Portage Creek and/or the eastern bank of Portage Creek.  The centerline of Portage Creek, as shown on these exhibits, was based on the Michigan Geographic Framework (version 10) as updated April 2, 2010.  The centerline, as depicted on these exhibits, does not necessarily depict and cannot be used to identify the centerline and/or eastern bank of Portage Creek, as such locations either are (a) identified in deeds for the properties or (b) existed at the time of the transactions or conveyances referenced in paragraphs 8, 25 and 31.  For properties south of the East-West 1/4 line of Section 27, Town 2 South, Range 11 West, the approximate eastern boundary is depicted in a location that may be to the east of the centerline and/or eastern bank of Portage Creek (as identified in the deeds for such properties), particularly with respect to the area immediately south of the East-West 1/4 line of Section 27, Town 2 South, Range 11 West.  The parties reserve their arguments as to the exact location of the Eastern boundary of these properties (as well as to the exact location of other property lines depicted on the exhibits).

8.      Trial Exhibit 2172 is a 1956 aerial photograph of the area around the Bryant Mill.  The approximate boundaries of the real property to which St. Regis took title in 1946 and 1949 are depicted on Trial Exhibit 2172, with the qualification that structures and other physical conditions depicted on the 1956 photograph may not have existed as of 1946 or 1949.  The approximate boundaries to which St. Regis took title by 1946 are depicted in brown and the boundaries of the property to which St. Regis took title by 1949 (the Panelyte Property) are depicted in brown (with cross-hatching).

9.      St. Regis engaged in the production of paper at the Bryant Mill until June 30, 1956.

10.     During the time St. Regis produced paper at the Bryant Mill, waste paper was de-inked in a de-inking system housed in Mill A of the Bryant Mill.  Nothing contained in this paragraph or elsewhere is an admission as to the type or source of the wastepaper that was purchased or processed at the Bryant Mill prior to July 1, 1956.

11.     The de-inking system used a combination of chemical washing, heat and mechanical agitation.

      12.      Prior to May 1954, waste water from the Bryant Mill, including Mill A, was discharged to Portage Creek and the Bryant Mill Pond.

      13.      St. Regis constructed a clarifier at the Bryant Mill. The clarifier became operational in May 1954.

      14.      Wastewater from the clarifier was discharged to a waterway. The parties do not agree on whether the point of discharge should be characterized as Portage Creek or the Bryant Mill Pond or both. Remaining material was sent to another location.

      15.      Wastewater from the Bryant Mill was conveyed to the clarifier via a buried pipeline extending through the Panelyte Property and other parcels.

      16.      In the 1950s and 1960s, a mill operated by the Kalamazoo Paper Company and located within the city limits of Kalamazoo, Michigan deinked wastepaper.

      17.      St. Regis and Thor Corporation ("Thor") entered into an Agreement dated June 22, 1956 ("June 22, 1956 Agreement"). A copy of the June 22, 1956 Agreement, together with exhibits and schedules, has been marked as Trial Exhibit 5149.

      18.      St. Regis and Thor executed and delivered a number of agreements and other documents as part of the transaction described in the June 22, 1956 Agreement.

      19.      One such agreement, which is Trial Exhibit 5151, is titled "Lease" and is dated June 29, 1956. A Memorandum of Lease dated as of June 29, 1956, which is Trial Exhibit 5158, was signed and subsequently recorded. Nothing contained in this paragraph or in these stipulated facts as a whole is an admission by either Georgia-Pacific or International Paper as to whether the "Lease," which St. Regis and Thor entered into pursuant to the June 22, 1956 Agreement, represented a security interest pursuant to section 101(20) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. section 9601 *et seq.* ("CERCLA").

      20.      Other agreements and documents executed as part of the transaction described in the June 22, 1956 Agreement and are identified as follows:

     a.     Bill of Sale (Trial Exhibit 5163);

     b.     Assignment of Contracts, Etc. dated as of June 29, 1956 (Trial Exhibit 2120);

     c.     Agreement dated as of June 29, 1956 (Trial Exhibit 5159);

     d.     Facilities Agreement dated as of June 29, 1956 (Trial Exhibit 2122);

     e.     Sub-Lease dated as of June 29, 1956 (Trial Exhibit 2125);

     f.     Railroad Spurs and Siding Agreement dated as of June 29, 1956 (Trial Exhibit 2126);

  g.  Trade Mark License dated effective as of July 1, 1956 (Trial Exhibit 2123); and

  h.  Deed dated as of June 29, 1956 (Trial Exhibit 5161).

21. As of June 1956, Thor owned and was operating two other paper mills in the Kalamazoo area known as the Monarch and King Mills.

22. Both St. Regis and Thor were public companies.

23. Thor changed its corporate name to "Allied Paper Corporation" in October 1956.

24. The deed dated June 29, 1956 (Trial Exhibit 5161) was recorded on July 3, 1956.

25. Trial Exhibit 2173 is a copy of a 1956 aerial photograph marked to depict title (as reflected in real property records) and the approximate boundaries of certain real property as of July 3, 1956, with the qualification that structures and other physical conditions depicted on the 1956 photograph may not have existed as of July 3, 1956.  The shadings correspond to the following:

  Green:  Real property conveyed by St. Regis to Thor in connection with the June 22, 1956 Agreement (see Paragraphs 20.h and 24);

  Blue:  The Panelyte Property (see Paragraph 4); and

  Gold:  The "Real Property" described in the "Lease" (see Paragraph 19).

26. St. Regis continued to own and engage in the business of producing injection molded plastics at the Panelyte Property after July 1, 1956 and through the effective date in 1965 of a transaction between St. Regis and Reliance Universal, Inc.

27. A deed from St. Regis to Reliance Universal, Inc. dated March 3, 1965 and recorded on March 5, 1965 was for a portion of the Panelyte Property.

28. A deed from St. Regis to Reliance Panelyte, Inc. dated August 31, 1965 and recorded on September 8, 1965, was for the balance of the Panelyte Property, consisting of a small, triangular shaped parcel to the west of the railroad right-of-way.

29. On or about May 25, 1965, Allied gave notice to St. Regis of its exercise of the option contained in the "Lease."

30. By deed dated July 1, 1966 and recorded on August 9, 1966, St. Regis conveyed title to real property described in the "Lease" to Allied.

31. Trial Exhibit 2174 is a copy of the 1956 aerial photograph that depicts approximate boundaries of the real property conveyed in the deeds described in Paragraphs 27, 28, and 30, with the qualification that structures and other physical conditions depicted on the 1956 photograph may not have existed as of 1965 or 1966.  The area shaded in light pink is the Panelyte Property that was conveyed to Reliance Universal, Inc. by the deed dated March 3,

4

1965 and recorded March 5, 1965. The area shaded in dark pink is the area conveyed to Reliance Panelyte, Inc. by deed dated August 31, 1965 and recorded September 8, 1965. The area shaded in brown is real property conveyed to Allied by the deed dated July 1, 1966 and recorded August 9, 1966. The area shaded in green is real property conveyed by St. Regis to Thor in connection with the June 22, 1956 Agreement (see paragraphs 20.h and 24).

32. At some time between July 1, 1956, and the date when St. Regis relinquished title to the Bryant Mill in connection with the transaction described in paragraphs 28 and 29, there were one or more "releases," as that term is defined in CERCLA section 101(22), of Aroclor 1242 PCBs in wastewater from Allied's operation of the Bryant Mill.

33. At some point between July 1, 1956 and the date when St. Regis relinquished title to the Panelyte Property in connection with the transaction described in paragraphs 27 and 28, Aroclor 1242 PCBs in wastewater from Allied's operation of the Bryant Mill came to rest in sediments beneath among other places, the portion of the Bryant Mill Pond within the boundaries of the Panelyte Property (the Pond bottom).

34. One or more of the Plaintiffs has incurred response costs with respect to the Site.

35. The stipulations in Paragraphs 32 to 34 are not and should not be construed as admissions on the part of International Paper as to the nature, scope or extent of any "release," as that term is defined in CERCLA section 101(22), that may have occurred during the referenced time periods, or as to the amount or recoverability under CERCLA for any response costs which any of the Plaintiffs may have incurred (including without limitation, defenses to such costs based on (1) applicable statutes of limitation, (2) whether the costs were incurred by the Plaintiff seeking to recover them or as a result of any release for which International Paper is determined to be liable, and (3) whether the costs were reasonable, necessary and/or were incurred in compliance with the National Contingency Plan).

Dated: February 18, 2013

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By: /s/ Joseph C. Kearfott

 Peter A. Smit, Bar No. P 27886
 Varnum LLP
 Bridgewater Place, P.O. Box 352
 Grand Rapids, MI 49501
 (616) 336-6000

        Joseph C. Kearfott
        Douglas M. Garrou
        George P. Sibley, III
        Hunton & Williams LLP
        951 East Byrd Street
        Richmond, VA 23219
        (804) 788-8200

        Jeffrey N. Martin
        Hunton & Williams LLP
        2200 Pennsylvania Avenue, N.W.
        Washington, D.C.  20037
        (202) 955-1500

        Kathy Robb
        Hunton & Williams LLP
        200 Park Avenue, 52nd Floor
        New York, NY  10166-0005
        (212) 309-1000

        Jan M. Conlin
        Robins, Kaplan, Miller & Ciresi L.L.P.
        800 LaSalle Avenue
        2800 LaSalle Plaza
        Minneapolis, MN  55402
        (612) 349-8500

**INTERNATIONAL PAPER COMPANY**

By:    /s/ Sonja A. Inglin

   John F. Cermak, Jr.
   Sonja A. Inglin
   Charles E. Shelton
   Baker & Hostetler, LLP
   12100 Wilshire Boulevard, 15th Floor
   Los Angeles, CA  90025
   (310) 820-8800

        John D. Parker
        Lora M. Reece
        Michael D. Meuti
        Baker & Hostetler LLP
        1900 East 9th Street, Suite 3200
        Cleveland, OH 44114-3482
        (216) 861-7610

        David W. Centner
        Clark Hill PLC
        200 Ottawa NW, Suite 500
        Grand Rapids, MI 49503

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2013, I electronically filed the foregoing using the ECF system, which will send notification of such filing by operation of the Court's electronic systems.  Parties may access this filing via the Court's electronic system.



/s/Sonja A. Inglin