1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE WESTERN DISTRICT OF MICHIGAN

3        SOUTHERN DIVISION

4    GEORGIA-PACIFIC CONSUMER PRODUCTS LP, et al,

5        Plaintiff,              No.  1:11cv483

6     vs.

7    NCR, INTERNATIONAL PAPER COMPANY,
     WEYERHAEUSER,

8        Defendants.

9

10   Before:

11              THE HONORABLE HUGH BRENNEMAN, JR.,
                     U.S. Magistrate Judge
12                   Grand Rapids, Michigan
                     January 20, 2015
13              Motion for Discovery Proceedings

14   APPEARANCES:

15              MR. PETER A. SMIT
                Varnum Riddering Schmidt & Howlett
16              333 Bridge Street, NW
                PO Box 352
17              Grand Rapids, MI 49501-0352
                616-336-6000
18
                MR. PAUL THOMAS NYFFELER
19              Hunton & Williams LLP
                Riverfront Plaza, East Tower
20              951 E. Byrd Street
                Richmond, VA  23219
21              804-788-8262
                          On behalf of the Plaintiff;
22              MR. YONATAN EVEN
                MR. GREG CHEYNE
23              Cravath Swaine & Moore LLP
                Worldwide Plaza
24              825 Eighth Avenue
                New York, NY  10019
25              212-474-1000
                          On behalf of the Defendant NCR,

```
 1                    MR. DAVID W. CENTNER
                      Clark Hill PLC
 2                    200 Ottawa Avenue, NW
                      Suite 500
 3                    Grand Rapids, MI 49503
                      616-608-1100
 4

 5                         On behalf of the Defendant IP.

 6                    MR. SCOTT MICHAEL WATSON
                      Warner Norcross & Judd
 7                    111 Lyon Street, NW
                      Suite 900
 8                    Grand Rapids, MI  49503
                      616-752-2465
 9

10                         On behalf of the Defendant Weyerhaeuser.

11

12

13
               TRANSCRIBED BY:  MS. KATHY J. ANDERSON, RPR, FCRR
14

15

16

17

18

19

20

21

22

23

24

25
```

1        January 20, 2015

2        PROCEEDINGS, 10:11 a.m.

3        THE COURT:  We have a newly devised signup sheet, I

4  see.  Certainly makes sense.

5        I was just handed a stipulation as I walked in

6  resolving the motion I heard it was a week ago Friday, I

7  believe.  So I think that one is off the books now.  So that's

8  good.

9        I think I may have mentioned last Friday, for those of

10 who that were here, and we have a slightly changing group of

11 attorneys, that I had the opportunity to fly to London last

12 week.  So I wasn't going to work on that one anyway.  And I

13 usually don't name drop, but I don't get to fly to London very

14 often, so I thought I would take the opportunity to do that.

15       So last Sunday, today is, what, Tuesday.  Sunday I was

16 at St. Paul's for a church service, and then we left for the

17 airport and on the flight back I was thinking that what an

18 institution that was, and it's been there, along with West

19 Minster Abbey and the tower, places we visited at length, for

20 well over a millennium, almost two millennium.  I think of

21 things, what things there are in this country that will ever

22 approach the length of those institutions.  And then I checked

23 today's calendar.  So as I said, it's good to see you again.

24       Georgia-Pacific versus NCR, Plaintiff's Motion in

25 Support Or to Determine the Sufficiency of NCR Corporation's

1   Answers and Objections to Plaintiff's First Phase II Requests

2   for Admissions.  I have had a chance to look over the briefs as

3   well as the disputed requests to admit.  As you know, I like to

4   go through those individually because I think that really gets

5   to the heart of the issue.

6         But I'll also give the parties a brief opportunity,

7   and I think it needs to be brief because I do need to leave

8   before noon today, to summarize their respective positions and

9   then we will go through those individually.  So maybe a quick

10  five-minute preview of your respective positions would be a

11  good idea.  Counsel.

12        MR. NYFFELER:  Thank you, Your Honor.  I have a

13  handout here with some slides that goes through some of these

14  things.  May I approach?

15        THE COURT:  Certainly.

16        MR. NYFFELER:  Judge, do you want one or two copies?

17        THE COURT:  One is fine.

18        MR. NYFFELER:  We are waiting for the slide to come

19  up.  All right.  It is just teasing me.  Sorry, Your Honor.

20        All right.  So, Your Honor, very briefly, the law says

21  that discovery responses must be made in good faith.  The law

22  is also clear that if a responding party plays games, gives

23  evasive responses, or responses made without bad faith, the

24  remedy is that these responses should be deemed admitted.

25        After taking NCR's deposition it was clear that NCR

1    had no good faith basis for several of the responses to its

2    request for admission.  If an attorney can refuse to provide

3    good faith answers to an RFA, then the rule itself has no

4    meaning.  NCR's supplementation after --  sorry, it just keeps

5    flickering --  let's just forget that for now.

6        NCR has actually submitted a third try after we filed

7    our motion to try to resolve the issues, but unfortunately it

8    does not.  And, again, NCR lacked a good faith basis for the

9    responses they gave and the remedy is that they should be

10   deemed as admitted.

11       So one thing NCR raised in its brief is the issue of

12   the timing of our motion, and I wanted to briefly go over the

13   timeline for that.

14       We served these requests on June 26th.  On August 14th

15   NCR responded, then on November 14th we had a 30(b)(6)

16   deposition of NCR.  During a break in the morning of the

17   deposition, NCR served its first supplemental responses to the

18   requests.  So we had not seen these before the deposition.  So

19   that was --  we asked the witness if he was given sufficient

20   time to prepare, and he said he was.  He said he was ready to

21   testify on the notice topics, which included the factual basis

22   for NCR's responses to the RFAs.  On November 24th we had a

23   meet-and-confer and we asked several requests to be admitted.

24   These are the subject of the motion.

25       NCR said that it would admit responses 2, sorry, 8 and

1    20 without qualification, but it said that it would not admit

2    without qualification any others.

3              They also wanted --

4              THE COURT:  8 and 20 now moot?

5              MR. NYFFELER:  8 and 20 are moot, Your Honor, yes,

6    that's correct.

7              NCR then asked to have the opportunity to have a third

8    attempt to try to respond to these requests because they wanted

9    to be able to further explain the reasons why, reasons for

10   their answers.  And our response at the time was that the time

11   for NCR to explain its responses was the 30(b)(6) deposition

12   when we noticed the topic.  However, we made it clear that if

13   NCR would be willing to serve us a supplement by the following

14   day at noon, we would be more than happy to consider it and

15   take it into account before we filed the motion.

16             So that the following day, November 25th, the noon

17   deadline came and went.  We did not receive any documents from

18   NCR.  We gave NCR another hour and a half just to make sure

19   that they weren't late in sending this, so at 1:30 we actually

20   sent our response, or filed the motion.  At around 7:00 p.m.

21   that night then NCR served its third attempt to answer these

22   requests, and no doubt in between they read our brief and made

23   sure that it matched up to what they needed.

24             And so most of this case law that we have is listed in

25   the case, or listed in the brief.

1          THE COURT:  Why didn't you give them 24 hours instead
2     of this half day?
3          MR. NYFFELER:  Because they wouldn't give us a
4     specific time as to when they were going to give us another
5     response.  They also had served one supplement already and had
6     a deposition, and we weren't really sure why we needed to wait
7     sort of indefinitely to have yet another chance to respond to
8     these.  The time for them to explain their responses was at the
9     deposition.  That was very clear, and we got answers --
10         THE COURT:  Isn't the whole purpose of a
11    meet-and-confer to try to work these things out, and if they
12    said in fact they were going to give you a new supplement in an
13    effort to work that out, and try to achieve some kind of
14    resolution, wouldn't that be something you would want to
15    achieve?
16         MR. NYFFELER:  Yes.
17         THE COURT:  I understand if they were vague and said,
18    sometime in the future, then you wouldn't have achieved
19    anything.  But if they were more specific than that, and said
20    we're within 24 or 48 hours, seems like it would have been
21    worth waiting.
22         MR. NYFFELER:  Well, it would, Your Honor, except the
23    problem is that they were very clear in the meet-and-confer
24    that they were not going to admit without qualification any of
25    the other responses.  We were going to see --  we expected to

1    see some of the same responses where they would admit but, or

2    deny but, and then they would have qualifications like they

3    were in the previous answers that really made it difficult to

4    really understand what it is they were trying to get to.

5    Moreover, what we expected they were going to try to do is try

6    to sweep under the rug what their witness had said under oath

7    when we asked exactly the basis for their responses.

8              So I understand that giving them more time --

9              THE COURT:  They couldn't do that, could they?

10             MR. NYFFELER:  That's what they are trying to do in

11   their responses now, in some of them, yes, Your Honor.  When

12   their witness said, when asked like, are you, "What portion of

13   this are you denying?"  The witness said, "I'm not sure."  So,

14   and I have examples we can run through, and that's why I have

15   the presentation so we can run through and go through these.

16   But there's a lot of instances where the testimony and their

17   third try really don't match up.

18             Now, the case law about having to respond to RFAs

19   being required to be in good faith, a lot of this stuff was

20   already included in the, was already included in the brief.

21   But there's one extra case cite that I wanted to add.  This

22   came from the Thalheim case which is a case that we actually

23   cited, and by the time we filed this we weren't sure if they

24   were ever going to actually supplement.  They hadn't done it by

25   noon like we asked.  And so now that they did, the quote from

1    the Thalheim case I think is indicative.  In that case it says,

2    "Though qualification may be required where a request contains

3    assertions which are partially true, a reviewing Court should

4    not permit a responding party to undermine the efficacy of the

5    rule by crediting disingenuous, hair-splitting distinctions

6    whose unarticulated goal is unfairly to burden an opposing

7    party."  And the quote then continues.  "Nor should a reviewing

8    Court permit a responding party to frustrate the rule by

9    initially providing inadequate responses, forcing the

10   requesting party to file a motion and costly memoranda, and

11   only then coming forward with amended answers that easily could

12   have been supplied in the first instance."

13       So, Your Honor, that I think adequately sums up our

14   position that there's no reason NCR couldn't have given these

15   answers in the first place.  But they did not do so in their

16   first answer, they didn't do it in their second answer.  Their

17   witness couldn't actually respond or couldn't provide the basis

18   for a lot of their responses, and for that reason we think they

19   lacked a good faith basis for the answers that they gave us.

20       THE COURT:  All right.  Thank you.

21       MR. NYFFELER:  Yes, sir.

22       MR. EVEN:  Your Honor, Yonatan Even for NCR, and I may

23   be the only lawyer here who you've never met before.  So --

24       THE COURT:  Glad to have you here.

25       MR. EVEN:  So I would like to be brief as you had

1   asked us to.  I think the main issue here is that our initial

2   responses we believe were sufficient.  The rule provides that

3   all we need to do with a denial is actually deny.  No

4   explanation is needed.  The reason we have supplemented for the

5   30(b)(6) is specifically because the 30(b)(6) witness, while

6   intimately familiar with some other topics that Georgia-Pacific

7   wanted to ask about, was not familiar with the topics they have

8   asked about in the RFAs, and in fact no NCR employee is

9   familiar with these topics, and so we had to educate the

10  witness.  And in order to minimize the effort with the witness,

11  we supplemented the reasons for denials, very explicitly and

12  pretty detailed reasons.  And, therefore, we had a witness who

13  essentially said, this is the supplemental, and this is what I

14  read, this is what I prepared, and there's nothing more or much

15  more than I can add beyond that.

16          In terms of the timeline that has gone on, so they

17  served us in June.  We have served our initial responses in

18  August.  We have not heard any complaint about those until five

19  days after the deposition in November, at which point one of my

20  associates spoke briefly with Mr. Nyffeler and was told that

21  essentially they are expecting unqualified admissions to all of

22  these RFAs.  And that Georgia-Pacific is not interested in

23  anything else.  We nonetheless had the formal meet-and-confer

24  two days later, in which we said --

25          THE COURT:  Pardon me just a moment.  Is that the

1    basis of the request for unqualified admissions, that the

2    original responses were untimely?

3              MR. EVEN:  Untimely, Your Honor?

4              THE COURT:  Yes.  More than 30 days.

5              MR. EVEN:  Oh, no, no.  No.  That was not the basis.

6              THE COURT:  Okay.  Thank you.

7              MR. EVEN:  No, Your Honor.  Everything was timely, and

8    I don't think anybody raised a timeliness issue.

9              We had said that at the meet-and-confer that we will

10   do our best as an accommodation to supplement even more our

11   responses and said so that it will be done within 24 to

12   48 hours.  Mr. Nyffeler said that they did not receive anything

13   from us the next day by noon; actually that's not correct.

14   They have received a letter recapping and summarizing what

15   happened in the meet-and-confer, and, again, stating that we

16   will supplement within 12 to 24.

17             Sorry, 24 to 48 hours.  We did supplement that very

18   day.

19             THE COURT:  When did they receive your letter?

20             MR. EVEN:  I'm guessing a couple of hours before they

21   filed.  It was sent to them by e-mail around 10:00 a.m. in the

22   morning, I believe, 10 or 11.

23             We then sent them another letter later that day

24   saying, we have now supplemented, please withdraw your motion

25   or reconsider, or talk to us if you still have any complaints.

1    They have never even responded to that letter.

2           Now, in terms of the law, Mr. Nyffeler cites a few

3    snippets from some case law.  The simple fact is, as I said,

4    under Rule 36 in a denial no reasons are needed to be given at

5    all.  They are essentially disagreeing with us with our view of

6    the evidence, and that's not really surprising, we think.  We

7    think some facts are disputed.  They think that their view of

8    these facts are correct.  We disagree.  The law is pretty clear

9    about that, that that's not a proper issue for RFAs.  They have

10   not cited, and I'm not aware of any case, where a denial has

11   been, has been deemed admitted because one of the parties did

12   not like the reasons for the denial or thought that the

13   evidence does not support the denial.  I haven't seen one, and

14   I don't think that's the correct ruling under the law.

15          I think that the case they cite most, I'm going to

16   fumble this, but I think it's A-S-E-A from the Ninth Circuit

17   from '81, they quote from it, but the case dealt with a

18   position where the Court says deeming something admitted is the

19   most severe sanction that can be.  We're very careful with it.

20   And if somebody said they lacked sufficient knowledge, and

21   after a fact hearing on that the Court will make an affirmative

22   finding that they essentially lied about that, they did not go

23   to that length of, of having a reasonable search, then we will

24   deem it admitted.  I don't think those are the circumstances

25   here.  The circumstances here is that we disagree with our view

1     of the facts, and we'll go through each and every one.

2          The last thing I do want to add before, and my five

3     minutes are probably up, but there is one, one response that I

4     have looked at the underlying document last night and we have

5     said that the document lacks a couple of quotes which in fact

6     are found in another portion of the document.  We will clearly

7     admit anything that's in the document.  We don't think the

8     document stands for what Georgia-Pacific proposes that it

9     stands.  But our, our objection is going to be slightly

10    different.

11         And the really last thing is just to know that we have

12    in our supplemental also admitted, albeit with some

13    qualification, requests 34, 35, 36.  It's not clear to me

14    whether Georgia-Pacific's position is that those are still at

15    issue.  We would think the motion is moot as to those as well.

16         THE COURT:  Why?

17         MR. EVEN:  Because they have been admitted.  We then

18    added some context, but they have been admitted.

19         THE COURT:  All right.  Counsel, is there a quick

20    answer to that one?

21         MR. NYFFELER:  Your Honor, we would be happy to go

22    through them to get to those numbers to show that it's not

23    really clear if it's admitted or not.

24         THE COURT:  We'll worry about that when we get to it

25    then.

1    MR. NYFFELER:  Yes, sir.

2    THE COURT:  Thank you, gentlemen.  Let's go to the

3    first one that apparently is at issue, and I believe that's

4    number 9.  Now, I don't know if there is a particular exhibit

5    that contains the requests.  I know in NCR's brief there is a

6    number 3.  It seems their supplemental responses, that seemed

7    to be the most recent compendium of answers.

8    MR. NYFFELER:  Your Honor, the handout that I just

9    gave you, page 25.

10   THE COURT:  The handout you gave me, which isn't,

11   that's not before the Court, though, as far as a document in

12   the court, is it?  Court record.

13   MR. NYFFELER:  No, Your Honor.  It was just to

14   summarize how I was going to walk through it.  But we can take

15   it however you want.

16   THE COURT:  I don't see page numbers on here.  Let's

17   look at something --  it's helpful to have this, but let's look

18   at something that's been filed with the court for purposes of

19   the record.

20   MR. NYFFELER:  Okay.  Your Honor, the last tab, tab B

21   is Exhibit 6 from our brief, and that is a table which

22   summarizes the requests, and it includes also some of the

23   language --

24   MR. EVEN:  Your Honor, if I just may, looking at their

25   brief is not the right document simply because the brief was

1      filed before we filed our supplementals.  And so I think

2      properly before the Court are the last supplementals we have,

3      we have filed.

4                  THE COURT:  Is that your Exhibit 3?

5                  MR. EVEN:  It is I believe our Exhibit 3.  And I have

6      a copy here.

7                  THE COURT:  I've got your Exhibit 3.  As far as

8      Exhibit 6 to the Georgia-Pacific brief, I have that table but

9      that does not, as far as I could tell, accurately reflect the

10     answers given to the request to admit by NCR.

11                 MR. NYFFELER:  Well, Your Honor, it contains the

12     language as they existed when we took NCR's deposition.

13                 THE COURT:  Well, I'm looking at the request to admit,

14     which is what is at issue here.

15                 MR. NYFFELER:  That's correct, Your Honor.

16                 THE COURT:  And it doesn't reflect the answers that I

17     can see in two instances, and so I gave up with it.  I'll give

18     you an example.  If you can help me out.  The request to, for

19     admission number 63, which is one of those at issue, your

20     Exhibit 6 provides a response and says the supplemental

21     response provided no change.  There hasn't even been a first

22     supplemental response.

23                 MR. NYFFELER:  Your Honor, so this response, we filed

24     this motion and filed this exhibit, NCR had not supplied us

25     with their third attempt to try to answer.  So we couldn't have

1    included it in the exhibit.

2            THE COURT:  I see.

3            MR. EVEN:  But Your Honor is correct that Exhibit 3 to

4    our response is the one that includes our most current

5    responses.  Those are the responses that were served the date

6    of the motion a couple of hours late.  To say a few out of the

7    discovery --

8            MR. SMIT:  Your Honor, a housekeeping detail if I can

9    chime in.

10           THE COURT:  I have the highest regard for you,

11   counsel, but I don't really adopt the procedure of having two

12   people from one side speak to the same motion because then we

13   end up having a moving target as far as the other side is

14   concerned.

15           MR. SMIT:  I was just going to tell you the exhibit

16   number.

17           THE COURT:  That much I'll allow, Mr. Smit.

18           MR. SMIT:  Exhibit 1 to the plaintiff's brief are the

19   original responses.  Then subsequent to that are the second and

20   the third, not the third, the second.  But Exhibit 1 are the

21   original responses.

22           THE COURT:  I was expecting a lengthier argument.

23           MR. SMIT:  No.  That's why I said a housekeeping

24   detail, and it truly was.

25           THE COURT:  I'm sorry, I didn't hear the housekeeping

1     detail part.

2            MR. SMIT:  It's the thickest document.

3            THE COURT:  All right.  We have requests to admit and

4     several supplemental responses.  We have two sets of

5     supplemental responses.  And a party is under a duty to provide

6     supplemental responses when they are called for.  In this

7     instance, the parties had a meet-and-confer as is envisioned by

8     the rule.  That was held on November 24th.  There was a letter

9     on November 25th which is Exhibit Number 2, I believe, to NCR's

10    brief, that summarizes NCR's understanding of what happened at

11    that meet-and-confer where they state on several occasions, a

12    the least three, probably more, that they intend to further

13    supplement their response as a result of the meet-and-confer.

14    And they state they are going to do so either that day or the

15    following day.  So it's not some abstract time off in the

16    future, but it's a concrete period of time.  And from the

17    timeline, apparently they did so that same day.  Now,

18    Georgia-Pacific did not wait to receive those supplemental

19    responses, it chose instead to immediately file this motion.

20    They could have waited for one more day to file the motion to

21    achieve the benefits of the meet-and-confer.  But it chose not

22    to do that.

23            It seems to me that if the meet-and-confer is to have

24    any benefit, it is that the parties try to work these things

25    out, and if the other side promises within a reasonable period

1    of time, and particularly expedited period of time, as we have

2    here, to file additional material, the other side ought to

3    accommodate them to that extent, particularly when these

4    requests to admit have been responded to back in August, three

5    months earlier.  These answers have been sitting around for

6    three months.  So the additional day or two seems to hardly,

7    would hardly have made any difference.

8         Now, the answer given for, by Georgia-Pacific is,

9    well, they weren't prepared to give unqualified answers, and we

10   would still be chasing them.  But the answers might narrow

11   things down further, eliminate more of the disputes.  Which

12   after all is the purpose of requests to admit, which is to

13   narrow the issues.  And to the extent that the second

14   supplemental responses would have done that, they would have

15   benefited everybody it seems to me for Georgia-Pacific to have

16   waited a little bit longer based on the representation of NCR

17   to allow the supplemental answers to be filed.  They didn't

18   file them within that 24-hour period, fine, go ahead, file the

19   motion.

20        For whatever reason Georgia-Pacific did not want to

21   give that additional time.  It would have been a seven-hour

22   period here, it seems.

23        But based on all of that, I think that we ought to be

24   addressing what's now before the Court, and that's the second

25   supplemental answers.

1    It doesn't seem to me to make a lot of sense to argue

2    over the sufficiency of answers that have been supplemented,

3    answers that have since been supplemented.  We ought to be

4    talking about the answers as they stand today.  That is the

5    second supplemental answers.

6    I find those in Exhibit 3 to NCR's brief.  And so

7    those are the ones that we are going to look at.  They do not

8    match up with table 6, or Exhibit 6 of Georgia-Pacific's brief.

9    And I understand why they don't, although, this brief was

10   written long after, I guess.  I strike that.  Strike that.

11   The exhibit handed to me today was written long after

12   these briefs were written and could have included the

13   supplemental answers.

14   So what it does do is adopt Exhibit 6 of the original

15   brief that plaintiffs have submitted.  I find that confusing at

16   this point since it tracks only the original answers and not

17   any of the supplemental answers.  So I'm going to look at

18   Exhibit 3 which are the requests and the most current answers.

19   Now, with that in mind let's look at number 9, unless

20   that has now resolved the issue.

21   MR. NYFFELER:  No, Your Honor, we don't believe so.

22   THE COURT:  All right.  Then let's proceed.

23   MR. NYFFELER:  Your Honor, since I have a couple of

24   papers to look at would you mind if I stay here?

25   THE COURT:  That's fine.

1    MR. NYFFELER:  Okay.  Thank you.  So number 9, Your

2  Honor, the original question asked, "Admit that you told a

3  federal agency, in April 1971, that NCR was no longer using

4  PCBs in its carbonless copy paper."

5    In its initial response, talking about the original

6  response, their response was, "NCR admits that the document

7  admitted in evidence during the Phase I trial as Trial

8  Exhibit 1692 states that "NCR has indicated it is no longer

9  using PCBs in its carbonless copy paper," and refers to the

10  entire document for additional context.

11    Now, the part we found difficulty with this original

12  response is the fact that it admits that there is a document

13  that contains the cited language, but NCR did not deny that it

14  told a federal agency in 1971 that NCR was no longer using PCBs

15  in its CCP.  So there was not a denial.  They did not say that

16  they conducted a reasonable inquiry and could not admit or

17  deny.  And they did not object to this request.  As best we

18  could see from their original response as we were preparing for

19  their 30(b)(6) deposition, NCR simply didn't respond to this

20  request.  Now, under the rules, it says if a matter, "matter is

21  deemed admitted unless 30 days after being served the party

22  serves a written answer."  And since NCR didn't respond, we

23  believed at that point then that NCR has essentially admitted

24  the response.

25    Now, when we asked NCR's designee at the 30(b)(6)

witness to explain or clarify NCR's response, NCR's counsel instructed him not to answer as going beyond the scope of the deposition notice.  Now, the original topic for the deposition, the 30(b)(6) deposition, was, "The reasons for any denial by NCR of any of Georgia-Pacific's Phase II requests for admission and the facts that NCR possesses that support NCR's position that any denied request is not true."

Now, at that point NCR's counsel explained that any request that did not include an express denial was beyond the scope of the 30(b)(6) notice.  In fact, on the record his statement was, and the request for admission, "was responded by a response that it's not a denial.  Therefore, it's beyond the scope and I'm instructing the witness not to answer."

The problem is is that even if --  so NCR's position is if it didn't include the word denial, you are not allowed to ask this witness any questions about it.  Even though requests or responses that say they couldn't admit it or deny or that they objected would not narrow the issues to be tried.  In fact, Rule 30 requires that Georgia-Pacific must describe with reasonable particularity the matters for examination.  And Georgia-Pacific believes that NCR's reading of this topic is unreasonably narrow.  But that really doesn't matter, Your Honor.

The case law and the notes to Rule 30 clearly say that a party may not instruct the witness not to respond except for

1    reasons of privilege, to protect trade secrets, and other

2    specific, specific areas.  Otherwise if they are instructed to

3    respond it is, it violates Rule 30 and it is potentially

4    sanctionable.  In fact, during the deposition Georgia-Pacific

5    warned NCR's counsel that he was violating Rule 30, but NCR's

6    counsel continued to instruct the witness not to answer for a

7    total of 17 times during the deposition.

8         Now, we raise this issue of improper instructions not

9    to responds in our brief, and NCR did not deny that its

10   instructions were improper or even sanctionable.  At this

11   point, at least for this particular request for admission,

12   since NCR did not respond to the actual language of the

13   response, we believe it should be just deemed admitted.  But at

14   the deposition if NCR took the position it didn't want to

15   explain it, then NCR's lost its opportunity to do so.

16        So, Your Honor, I understand that there is a, there

17   was a supplemental response given.  But what this really turns

18   on is what are the bases for the responses that NCR as an

19   entity gave to us and what did their witness say those bases

20   were.  And what we have is a problem because the witness when

21   we questioned him on those bases could not explain the vast

22   majority of the responses that we have as the subject of this

23   motion.

24        So if NCR wished to supplement --

25        THE COURT:  Aren't you conflating a motion to

1    determine the sufficiency of an answer to a request to admit

2    with some sort of a motion to determine the sufficiency of a

3    Rule 30(b)(6) deposition?  And that's not before the Court, I

4    don't believe.

5            MR. NYFFELER:  No, Your Honor.  In fact, we actually

6    think, according to the witness, he said he was prepared, he

7    said he was ready to testify on the topics.  So we're accepting

8    him at his word that that's the case.  But the fundamental

9    problem is that when a party responds to a request for

10   admission they have to do it in good faith and they have to

11   have a reason for their denials or admit that they cannot admit

12   or deny.  And when we actually asked NCR what those points

13   were, NCR was unable to say any basis for the denials or the

14   positions that they gave.

15           THE COURT:  But that doesn't address my question.  Or

16   perhaps I should ask my question differently.  What is the

17   purpose of a motion to determine the sufficiency of a response

18   to a request to admit?  Is it to determine the veracity or the

19   truth of the answer?

20           MR. NYFFELER:  No.  It's not to determine the truth of

21   the matter.

22           THE COURT:  Well, isn't that exactly what you're

23   trying to do by pointing out that their witness isn't able to

24   support the denial --  or the admission and, therefore,

25   obviously they gave the wrong answer?

MR. NYFFELER:  Well, Your Honor, it comes back to the Asea case that counsel mentioned.  In that case the defendants responded to RFAs by stating that it could not admit or deny because it made a reasonable inquiry and the information known or readily available at this date is not complete.  Following the depositions in the case, it became clear that the defendants could have actually admitted or denied the request, actually had the information they needed but their response said that they could not.  And at the motion hearing the defendants argued that their responses could not be deemed insufficient because as written their responses complied with Rule 36.  And the Ninth Circuit ruled that a response that contained the necessary and proper language from Rule 36 could still be deemed admitted if the response was not made in good faith.

And as Mr. Even pointed out, for example, if a response could state that a reasonable inquiry was made and information known or readily obtainable was insufficient to enable the party to admit or deny, that on its face, that statement, would be sufficient to satisfy Rule 36.

However, if it was later discovered that a reasonable inquiry was not made, or if information known or readily obtainable was sufficient to enable the party to admit or deny, then the Court has the discretion to deem those responses admitted.

1          It's a case where you can deny something but you have

2     to be able to explain, you have to be able to a good faith

3     basis for the denial.

4          What NCR, as far as I can tell from their responses,

5     NCR takes the position these requests are painful, they will

6     hurt our case so I'm going to deny them.  Even though in many

7     cases there is no --  it's beyond dispute as to whether the

8     particular facts or the admission is correct.  They just don't

9     want to admit it.

10          And so the issue --  like they want to ignore the fact

11     that they don't have to respond in good faith, they want to

12     ignore the fact that their own 30(b)(6) designee could not

13     explain any basis for the responses that they gave.  This would

14     ignore all that.  And put it fast forward and say we have

15     written this answer signed by our lawyers, not under oath, that

16     will replace all the explanations given by the witness.

17          All right.  So if we turn back to NCR's --

18          THE COURT:  Well, the witness is basically parroting

19     what is prepared for him in the binder that the attorneys have

20     prepared.

21          MR. NYFFELER:  Well, he is testifying on behalf of NCR

22     and what its positions are, right.

23          THE COURT:  Right.  Well, nobody knows the answers to

24     what took place 40 years ago, so the attorneys researched all

25     this, put together a binder, and had a witness review the

1    binder as they are obligated to do so they would have somebody

2    who could testify on behalf of NCR.  Isn't that what happened?

3              MR. NYFFELER:  That's my understanding, yes.

4              THE COURT:  All right.  So he is basically parroting

5    back what this binder of information has in it, and that's the

6    extent of what he can testify to.  Isn't that right?  Isn't

7    that what he testified to?

8              MR. NYFFELER:  I believe that's what --  yes.  But,

9    but the notice of the topic was what NCR's bases were for the

10   responses.

11             THE COURT:  He can't testify to anything more than

12   what is in the binder, isn't that what he testified to?

13             MR. NYFFELER:  He may have testified to that, but

14   that's not what --  we didn't ask for a binder.  We asked for

15   someone that could explain this.  Explain the basis for the

16   responses.

17             THE COURT:  All right.  But he testified that as far

18   as what he could testify to, it was limited to the parameters

19   of the binder.

20             MR. NYFFELER:  That's correct.

21             THE COURT:  All right.  And NCR is taking the position

22   that what they know is in that binder.

23             MR. NYFFELER:  Yes.

24             THE COURT:  So basically he's verbalizing what they

25   know in that binder.

1     MR. NYFFELER:  Yes.

2          THE COURT:  And they say in their answer, "NCR has

3     conducted a reasonable inquiry, and based on that inquiry, NCR

4     is aware of additional evidence concerning such purported call

5     or the contents thereof and therefore lacks knowledge or

6     information sufficient to admit or deny this Request."

7          MR. EVEN:  Just, Your Honor, to correct the record.  I

8     believe it says unaware.  I believe you said aware.  We stated

9     that we're unaware of anything in addition.

10         THE COURT:  I would be flippant and say it's close

11    enough for government work, but I think that would turn the

12    case upside down if I said that.  You are correct.  I stand

13    corrected.

14            "NCR is unaware of additional evidence concerning such

15    a purported call or the contents thereof and therefore lacks

16    knowledge or information sufficient to admit or deny this

17    Request."

18            So whether there's a list that says what is compared

19    to is in the book or you look at the book itself, that's the

20    extent of their knowledge, that's what they're saying the

21    extent of their knowledge is.

22         MR. NYFFELER:  Correct.

23         THE COURT:  And they have looked further, and they

24    don't have any further knowledge.

25         MR. NYFFELER:  Well, hang on just one second, though,

1  Judge.  Because this, this statement about NCR's conducted a

2  reasonable inquiry.  That was only added in the, in the second

3  supplemental response.

4      THE COURT:  That's the one we are dealing with.

5      MR. NYFFELER:  I understand.  But in their first

6  response, they had not conducted an inquiry.  Their second

7  response they had not conducted an inquiry.  And in the

8  deposition as their responses stood, they still hadn't

9  conducted a reasonable inquiry.

10     THE COURT:  We are dealing with this response which

11  says they have.

12     MR. NYFFELER:  Right.  Bear with me one moment.  But

13  additionally, Your Honor, their original response did not say

14  they couldn't admit or deny.  And by the way, this actual

15  response is about three months after they filed their first

16  one.  And so they have 30 days to file a response, and we tried

17  to get them to clarify this answer and they refused.

18     THE COURT:  Well now they have so that's what we are

19  dealing with.

20     MR. NYFFELER:  All right.

21     THE COURT:  All right.  What's the response from the

22  other side as to number 9?

23     MR. EVEN:  I think the response speaks for itself,

24  Your Honor.  I think what we have is sort of, I feel like

25  Georgia-Pacific is trying to have a gotcha moment that maybe

1    our witness wasn't eloquent enough in explaining, was not

2    eloquent enough in explaining what then found its way into the

3    admission.  And what he said basically is, as Your Honor

4    stated, I can't really add much beyond what's in the written

5    responses because it did not have any personal knowledge.

6            THE COURT:  I couldn't hear the very last thing you

7    said.  Say the last thing again, please.

8            MR. EVEN:  What I said was that he did not have any

9    personal knowledge of these things, and so what he stated when,

10   when he was asked about an actual denial, and by the way I

11   think 9 was not an actual denial, but when asked about an

12   actual denial, he stated I can't add much or I can't add

13   anything beyond what's in the responses.  And in this response

14   we tried to capture it even more clearly.  What they say is we

15   have a document that's not an NCR document.  Even if it were,

16   I'm not sure that would convince us, but it's not an NCR

17   document.  It refers to some call with an NCR person who we

18   have never managed to locate or interview, or depose.  I

19   suspect he is no longer with us.  And based on that, we are, we

20   are not aware of any other evidence, as we say, and therefore,

21   we are neither, we are not in a position to admit or deny that

22   that statement was made to the government back in April 1971.

23           I think the response fully complies with Rule 36 and

24   probably goes a little beyond what one typically sees in an RFA

25   response.

1          And just one last point.  To try and somehow compare

2    that to Asea where it was found that people have lied when they

3    said that, I really don't see the comparison.

4          THE COURT:  All right.  Well, Rule 36 provides that,

5    "The answering party may assert lack of knowledge or

6    information as a rule," as, I'm sorry, "as a reason for failing

7    to admit or deny, only if the party states that it has made

8    reasonable inquiry and that the information it knows or can

9    readily obtain is insufficient to enable it to admit or deny."

10         Here NCR states it is unaware or --  well, what

11   happens here happens with virtually all of the answers that are

12   at issue here.  And that is that their response, admission,

13   denial, or claim of lack of knowledge sufficient to make an

14   admission or denial, is put in the last phrase of the answer

15   rather than at the outset where it might be clearer.  That's

16   the way the answer is drafted.  So what this answer could, is

17   really saying is, the respondent lacks knowledge or information

18   sufficient to admit or deny this request except insofar as NCR

19   admits that the, that a document admitted into evidence during

20   the Phase I trial as Trial Exhibit 1692 states that, and then

21   there is the quote, "cites to a purported call of Mr. Overlay

22   of NCR.  NCR has conducted a reasonable inquiry, and based on

23   that inquiry, it is unaware of additional evidence concerning

24   such purported call or the contents thereof."  Overlay, in

25   other words, it says we don't have the knowledge or information

1    sufficient but we have made an inquiry based on what evidence

2    was available to us, and that has not enabled us to go any

3    further.  Thus showing we have made an inquiry from evidence

4    that was made known to us, or was readily obtainable to them.

5           We'll come back to 9, but I think we're going to see

6    that same pattern throughout the rest of the questions,

7    particularly where there are denials.

8           MR. NYFFELER:  Your Honor, may I add one point to

9    this?

10          THE COURT:  Yes.

11          MR. NYFFELER:  The problem with the response as

12   written, it says we have a document which states the

13   information that's the basis of GP's request.  They did an

14   additional search, and they found nothing to support or refute

15   it.  So if they had done the search and they have a document in

16   hand that says what we asked, then they have no way to refute

17   it, how can they say they can neither admit or deny?  But what

18   would they require to admit it?  They said they couldn't find

19   Mr. Overlay, they said they couldn't talk to him.  We have a

20   document in front of us that says what it says.  And, Your

21   Honor, this is the kind of stuff that we hope to get a

22   clarification out of them at the deposition, and they refused

23   to let us talk to him.

24          THE COURT:  But I take it it is not their document.

25          MR. NYFFELER:  No, it is not their document.

1      THE COURT:  But you want them to take the position

2  that somebody else's document, which appears to be the only

3  item that addresses this issue, is one they should either admit

4  to or deny without any other information.

5      MR. NYFFELER:  Well, this document is in evidence,

6  Your Honor, and --

7      THE COURT:  I know it's in evidence.

8      MR. NYFFELER:  Right.  But there is nothing to refute

9  it.

10      THE COURT:  Are they obligated to then admit that it's

11  true because nothing refutes it?  Is that your position?

12      MR. NYFFELER:  No.  Actually in this case, Your Honor,

13  we would, we would have asked them at the deposition what their

14  basis for saying they couldn't admit or deny, or what it is

15  that they required in order to admit or deny.  And that was the

16  information that they refused to let us have.

17      THE COURT:  Counsel, I'll let you respond to that.

18  Apparently there is one document in evidence that addresses

19  this.  Nothing else is in evidence that addresses it, so

20  therefore it hasn't been refuted.

21      MR. EVEN:  There are many, and this is something that

22  goes throughout our phase, Your Honor, and we respectfully

23  disagree with their view of things where if there isn't

24  anything that refutes it that we can find from 40 to 60 years

25  ago, that means that, ergo, that thing is true.  Which is we

don't think that's the case.  There have been depositions in
this case, there have been depositions with many of the people
who wrote many of the documents in this case, and certainly
there are things where, you know, it's not like we haven't
admitted anything in these RFAs.  If there is a document that
is more recent such that we know who wrote it, or we have
spoken to the person who wrote it, or this is clearly an NCR
admission because it's a document from an NCR high up or
anything like that, that is very clear that it's an undisputed
fact, we will admit it.  And we have admitted it.  We are not
going to, we don't feel obligated to admit something because
there is one piece of evidence that may support it, and any
other evidence on it does not exist in this record of 40 to
60 years ago.

          I don't think there is a rule that obligates us to
admit such a thing.  I'm not aware of one.

          THE COURT:  I think the, I think NCR has the better of
the argument.  He asked to admit the existence of the document,
but to the extent the document supports the entire argument,
I'm not, I'm not aware that he has to admit the, the entire
argument is true merely because the document hasn't been
refuted.

          I'm going to hold that the answer to number 9 is
sufficient.

          What's the next one?  Number 20.

1     MR. NYFFELER:  I believe 20 has already been admitted,

2   Your Honor.

3     THE COURT:  I apologize.  Number 21 --  I'm sorry,

4   number 31.

5     MR. NYFFELER:  Yes, Your Honor, so number 31 if --

6     MR. EVEN:  31 just to, if I may, just to remind Your

7   Honor.  31 is the one that I mentioned in my opening remarks

8   that there are some statements that we said we thought that are

9   not in the document.  I have read the document again last

10   night.  There are a couple of statements that are in the

11   documents, and obviously we'll admit anything that's in the

12   documents.

13     MR. NYFFELER:  All right.  I'm going to have to come

14   back to what Mr. Even said to make sure I understand it.

15     THE COURT:  I'm not sure what --  are you changing

16   your response to number 31?

17     MR. EVEN:  Well, I have seen that the document does

18   state something to the effect of the inventory of both jobbers

19   and printers throughout the country, and so that statement is

20   supported by the documents.  I still don't think that the

21   document shows that NCR was aware of such facts, and that's

22   about it.  So we'll admit the document says what it says.

23     THE COURT:  Were you not prepared to admit that

24   before?

25     MR. EVEN:  No, I wasn't prepared that there were a

1    couple of cites here that we fumbled in the scramble to produce

2    these supplementals, I guess.  And we thought the document

3    doesn't say something, and it turns out it does say it on

4    another page that we somehow missed.

5         THE COURT:  Looking at your response in Exhibit

6    Number 3 to your brief, what words would you change, if any?

7         MR. EVEN:  I think --

8         THE COURT:  Do you need to break to figure that out?

9    We will take a five-minute break.

10        THE CLERK:  All rise, please.  Court is in recess.

11        (Recess taken, 11:09 a.m.; Resume Proceedings, 11:16

12    a.m.)

13        THE COURT:  Referring to the answer to number, is it,

14    31?

15        MR. EVEN:  Yes.  It is 31, Your Honor.  I've looked at

16    it again.  I think the document speaks to residual amount.

17    They speak to some amount.  I'm not sure that's entirely the

18    same thing.  But I don't think this is worth the fight, and so

19    I think I'll admit that at this point.

20        THE COURT:  So it's a simple admission.

21        MR. EVEN:  I think we'll --  we'll add the usual

22    language that refer to the entire document for additional

23    context, because there is additional context there.

24        THE COURT:  I don't know what that means.

25        MR. NYFFELER:  Neither do we, Your Honor.

1          THE COURT:  Are there other ones you're going to have

2     this difficulty with?

3          MR. EVEN:  No, Your Honor.

4          THE COURT:  We'll hold 31.  As we run over, we're

5     going to have to do this later this afternoon sometime, and

6     perhaps the two of you can work this out.

7          What's the next one, 32?

8          MR. NYFFELER:  Yes, Your Honor.

9          THE COURT:  All right.  Let's go to 32.

10         MR. NYFFELER:  Your Honor, this involves the same

11    document.  It's an excerpt from the same document.  And I don't

12    know if Mr. Even said this was in the same category of ones

13    that he was considering changing.  I don't really remember.

14         MR. EVEN:  I said there aren't any others that we are

15    considering changing.

16         MR. NYFFELER:  All right.  Okay.  Your Honor, the

17    issue here with this one is the language from this particular

18    request came out of Trial Exhibit 1621.  NCR asked us for the

19    factual basis for this before they responded.  We told them

20    that the basis for this was Trial Exhibit 1621.  NCR now says

21    that the document admitted in evidence contains the quoted

22    language, but then it says it doesn't support the other

23    allegations.

24         But the issue here is, and again, they say now they

25    have conducted a reasonable inquiry, not aware of any other

evidence supporting the allegations.  So deny all other
allegations.

The problem we have here is that, again, this
particular document is an NCR document, and we have a document
stating what is the basis for the request, and we don't
understand how this is contested because we're not, because NCR
says they have looked and they find no other evidence.

So that's the basis for that.  One second.  And
during, during the deposition, we tried to actually figure out
what it was these "denies all other allegations" meant.  They
essentially admitted the document says what it says but we are
not going to admit to what you have asked.  And we asked in the
deposition, "Now turning to request for admission number 32.
Can you tell me whether NCR denies any allegations in request
number 32?  Answer, Can I ask my counsel something?"  I said
no.  Mr. Even, said no.  The answer then or the designee says,
"Can you repeat the question, please?"  The record was read.
And then the witness for NCR said, "I don't know."

So we have a situation here where the witness comes
forward --  the answer originally said there's a document, but
we are going to deny the remainder, but NCR as an entity
doesn't understand what it's denying.  And if it doesn't
understand what it's denying, how is that a good faith response
to our request?

THE COURT:  NCR.

1     MR. EVEN: So two things: First, you know,

2  Mr. Nyffeler tries to equate the witness with NCR, and I

3  understand it's a 30(b)(6) witness, but as I've said, the

4  witness knew what he knew, and referred to the documents for

5  anything else.

6     As to the specifically to the request for admission,

7  the problem with their request for admission as we see it is

8  that it tries to do more than the document does. And we're not

9  walking away from the document. But the document, the request

10  says, "you were unable to determine the quantity," which

11  suggests that we made an effort to determine, did something to

12  try and do that. The document doesn't say that. The document,

13  it says, gives some, one person's estimation that, "it is

14  almost impossible to determine the quantity and location of

15  such stock." And we admitted that statement. We don't know of

16  any evidence supporting the allegation that we tried and

17  failed, or tried at all. And so we lack sufficient knowledge

18  essentially to admit or deny this. And --

19     MR. NYFFELER: Wait, I'm sorry.

20     MR. EVEN: That's where we are, I think. And so we

21  deny everything else in there and we admit that portion that

22  really is written in the document, which is there was a guy at

23  NCR who wrote that it's nearly impossible. But that's very

24  different I think from you're unable to determine. You as an

25  entity, as opposed to one guy's internal writings about his

thoughts.

MR. NYFFELER:  If I may, Your Honor.  I just --

THE COURT:  Quick response.

MR. NYFFELER:  I want to make sure I understand this.

Mr. Even just said that they lack sufficient information to

admit or deny it so we denied it.  But like that's not what the

response says.  Response says they deny all other allegations.

MR. EVEN:  If that's what I said, I apologize, Your

Honor.  What I meant it lacks any information supporting that.

THE COURT:  Again, I see what's happening here, and

again it's the way the answer is drafted.  I think technically

it's correct, but I think it's drafted in such a way that it

sends you off in the wrong direction.  Because at the very

beginning it says, "NCR admits."  So it sounds like an

admission, but this is not an admission.  You really need to go

to the last sentence of this response, and it says, NCR denies

all allegations in request number 32.  But it qualifies it.  It

qualifies the denial.  And, in fact, if you look at Rule

36(a)(4), a denial --  a party may deny an answer, or a

request, but a denial must fairly respond to the substance of

the matter, and when good faith requires that a party qualify a

denial, or only part, not only part of a matter you have to

give a reason why.

And that's what they are doing here.  In fact, an

answering party may assert a lack of knowledge or information

1    as a reason for failing to admit or deny if they make a

2    reasonable inquiry.

3         So you go to the very last part, and it says, they

4    deny the allegations except insofar as there is a document

5    here.  And they are not going to deny the existence of that

6    document.  That's the document in evidence in Phase I which is

7    identified as 1621.  So they acknowledge the existence of the

8    document and they deal with the document.  But aside from

9    dealing with the document, they say they have conducted a

10   reasonable inquiry and based on that inquiry, they are not

11   aware of any other evidence supporting the allegations in the

12   request for admission number 32.

13        So they have answered number 32 by denying it, but

14   with a good faith qualification.  But you have to read it from

15   back to front but then it makes sense.  At least that's the way

16   I'm reading it.  And I think it's an adequate answer.

17        Number 33.

18        MR. NYFFELER:  Okay, Your Honor.  Request to admit 33

19   requests NCR to "Admit that it never notified any recycling

20   mill, prior to 1976, that some carbonless copy paper or CCP

21   produced before April 1971 was produced using an emulsion

22   containing PCBs."

23        Now, NCR's first response was that it was denied.  The

24   second response added some documents, and their third response

25   added some more documents and also makes the following

1    statement:  It says that, "At the very latest, the mills knew

2    of the presence of PCBs in carbonless copy paper as of summer

3    or fall of 1970, when NCR discussed the presence of PCBs with

4    paper mill trade organizations, including at least the Boxboard

5    Research and Development Association, which is the BRDA, and

6    the American Paper Institute, API."

7          So during the deposition -- well, let me back up.  If

8    NCR has denied that it didn't tell any paper mills, that it

9    should be a fairly simple exercise for NCR to name one mill

10   that it told.  And during the deposition, we asked that

11   specific question, and NCR could not name a paper mill that it

12   told.  In fact, when we pressed, NCR's designee pointed to

13   Trial Exhibit 4418, which is the press release from the BRDA.

14   But NCR's witness then acknowledged that NCR did not release

15   this press release, the BRDA did.  And in fact, the only

16   evidence that NCR could point to was this alleged disclosure to

17   trade organizations.

18         The problem is, Judge, we asked them about paper

19   mills, not about recycling, not about trade organizations.  And

20   their latest response still talks about these trade

21   organizations.  But to date, they have never been able to point

22   to any paper mill that they actually told.

23         And if they can't --

24         THE COURT:  Thank you.

25         MR. EVEN:  So I think, Your Honor, this is maybe the,

1    another example of what we have discussed before.  Our initial

2    response was just denied, which is sufficient under the rules.

3    We have then supplemented it because, as we said, we put

4    somebody who doesn't know anything about this before them for a

5    deposition with a binder.  We wanted to give the explanation,

6    and we have now supplemented it more.  The point is even if we

7    had no evidence of ever telling a mill, still I don't think we

8    are under any obligation to admit that.  That has something to

9    do with the burden of proof in this case.  But be that as it

10   may, we think there's a host of evidence in this case that

11   suggests that we did, including one of the documents that's

12   cited in the response, now actually is a statement or a

13   discussion with Kimberly Clark, which is a recycling, had a

14   recycling mill at that time in the Fox River that discusses

15   specifically that.  We have patents that disclose PCBs, we have

16   the correspondence with the Boxboard Research and the API,

17   which Mr. Nyffeler may say that's not a mill, but that's a

18   trade organization that's made up of mills.  So if I write to a

19   trade organization that is made up of mills, then I would

20   consider that a communication with mills.

21          And putting all that to the side, the fact that I 40

22   to 60 years later cannot find a document where I wrote to

23   Mr. Nyffeler's clients specific mill, doesn't mean that I have

24   to admit that I did not.  I don't think there is any rule that

25   compels me to do that.  There may be a --  an evidentiary

1    problem but that doesn't mean that that did not happen or that

2    I have to admit that that did not happen.  And I think what

3    Georgia-Pacific is trying to do here is contrary to what RFAs

4    are for.  RFAs are for narrowing the issues on something that

5    is either undisputed or that plaintiff can very easily prove.

6    I could just as easily file an RFA on them, you know, prove

7    that, or admit that I haven't told the Kalamazoo mill.  I don't

8    think they have any evidence of that either.  It's just a way

9    of, the nature of the beast of trying something that has

10   happened 40 to 60 years ago.

11            MR. NYFFELER:  Your Honor, very briefly.

12            THE COURT:  Very.

13            MR. NYFFELER:  Like Mr. Even said, you know, he said I

14   don't want to admit this.  I may have an evidentiary problem to

15   actually establish the contrary.  But I don't want to admit

16   this.  I'm not aware of a rule that says I have to.  The

17   purpose of RFAs is to narrow the issues that are contested.

18   And right now, we have evidence on one side, we asked NCR what

19   their basis was to refute it, and they didn't have any.

20            MR. EVEN:  I'm sorry, Your Honor, they don't have any

21   evidence that I have never told anyone.  What they have is

22   maybe a lack of evidence.  I think that the evidence we cited

23   is more than sufficient, and I would be happy to give Your

24   Honor the one document that is actually correspondence with a

25   mill about that.  And that's back from 1959.  That's

1    NCRKZ000224297 that's cited in the response.

2            MR. NYFFELER:  Was that --

3            MR. EVEN:  That's before Your Honor.

4            MR. NYFFELER:  Was that in the witness binder for the

5    30(b)(6) witness?

6            MR. EVEN:  I presume it was.  Though, I don't recall.

7    It is in the response, though.

8            THE COURT:  That is one of the documents listed in

9    your answer, I believe.

10           MR. EVEN:  Yes, it is.

11           THE COURT:  Again, the purpose of the motion to test

12   the sufficiency of an answer is not to determine the

13   truthfulness of the answer or to challenge the veracity of the

14   answer.  It's to determine the sufficiency of the answer as to

15   whether or not it's been properly answered in the sense of

16   being admitted or denied.  This has been clearly denied.  And a

17   denial in good faith requires you can qualify the answer.  And

18   they have qualified this at length.  But they have denied it.

19   And if this is going to be contested at trial, and you show

20   this denial is unfounded, you collect attorney's fees for that.

21           So that becomes an issue at trial.  They will have to

22   pay the costs of proving that at trial since they have taken

23   the position it's denied.

24           All right.  33 is okay.

25           MR. NYFFELER:  34 I think is the next one.

1        THE COURT:  It is.

2        MR. NYFFELER:  All right.

3        THE COURT:  We'll be going until about no later than

4   --  I want to say ten to but I always end up not adhering to my

5   own rules.  So it will be five to before we leave.  Then I have

6   a meeting on the other side of town.  I'll be back by 2:00

7   o'clock.  I have two more matters until 3:00 o'clock, a plea

8   until 4:00 o'clock.  So if we don't resolve this matter by noon

9   today, or five to 2:00 o'clock, I'll see you all back at 4:00

10  o'clock this afternoon, or tomorrow morning sometime.

11        MR. NYFFELER:  Okay.  All right.  So 34, "Admit that

12  NCR never notified any recycling mill that some carbonless copy

13  paper produced before April 1971 should not be recycled."

14        Their latest response, "NCR admits this Request as to

15  the mills on the Kalamazoo River, but notes that the mills on

16  the Kalamazoo River were themselves aware of the presence of

17  PCBs in carbonless copy paper produced before April 1971, and

18  such information was in the public domain."

19        The problem we have with this, Your Honor, is we don't

20  understand what the note is for.  There is no provision in Rule

21  36 that allows them to add like descriptive notes.

22        THE COURT:  Thank you.  What's your answer?

23        MR. EVEN:  I believe the rules allows me to add

24  context where context is due.

25        THE COURT:  What part of the rule are you pointing to?

1    MR. EVEN:  I believe the rule says that it speaks to a
2    denial must surely respond.  And then it says, "good faith
3    requires that a party qualify an answer or deny only a part of
4    a matter, the answer must specify the part admitted and then
5    qualify or deny the rest."  And this is a qualification that
6    adds context to our admission.  But we are after all admitting
7    it at least to the Kalamazoo mills, which I think is all that's
8    necessary here.
9    MR. NYFFELER:  Let me know when you're ready for me to
10   respond, Judge.
11   MR. EVEN:  And this is (a)(4), of course, if I did not
12   say that of the rule.
13   THE COURT:  Briefly.
14   MR. NYFFELER:  Just simply, Your Honor.  It says that
15   when good faith requires a party qualify an answer.  The points
16   that they raise about that a party.
17   The mills's knowledge or information in the public
18   domain, that is not required as part of their response.  There
19   is no need to have this quote, unquote, "note."  The question
20   is if I were to tell the Court that they admitted 34, can I say
21   that they admitted 34 or do I have to include their note?
22   THE COURT:  All right.  The rule, the rule read in a
23   more complete fashion states that, "If a matter is not
24   admitted, the answer must specifically deny it or state in
25   detail why the answering party cannot truthfully admit or deny

1    it."  It then goes on, "A denial must fairly respond to the

2    substance of the matter; and when good faith requires that a

3    party qualify an answer or deny only a part of a matter, the

4    answer must specifically specify the part admitted and qualify

5    or deny the rest."  That part about qualification in part does

6    not apply to the admission.  That only provides if a matter is

7    not admitted.  When it's admitted, it's admitted.  And it

8    doesn't allow the other side to then go ahead and present

9    counter veiling arguments.  Too often people don't like the

10   fact that a naked fact may seem incriminating, kind of like a

11   person who is being accused of someone causing an accident on a

12   weekend because they are drunk, and the other side says, well,

13   admit that you were sober on Wednesday, to imply that you

14   weren't sober on the weekend.  And they want to say, well, yes,

15   I was sober all seven days.  But you don't get to that say.

16   Admit, yeah, I was sober on Wednesday.  The answer is I admit.

17   And if you don't, if you think the inference is going to be

18   read to the jury and they are going to draw an inference from

19   that, then you present other proofs to say that you were sober

20   the other six days as well.  But you don't get to say that in

21   your answer to a request to admit.  That's what people try to

22   do.

23         So as far as number 34 is concerned, the appropriate

24   answer is admit and then strike anything after the admission as

25   surplusage.

1      MR. NYFFELER:  Your Honor, number 35.

2      THE COURT:  35 is the same.

3      MR. NYFFELER:  Same.

4      THE COURT:  If anybody wants to argue a different

5  point, the same.

6      MR. NYFFELER:  No, Your Honor.

7      THE COURT:  NCR.

8      MR. EVEN:  The only thing I would add to this, Your

9  Honor, is I do believe the qualification for the Kalamazoo

10  mills is both appropriate here and happens to be true because

11  we have not even attempted, let alone found, that nothing like

12  this was done outside the Kalamazoo mills.  I think that's the

13  only issue that's under Rule 26 here anyway in this case.

14      THE COURT:  This lawsuit is about the Kalamazoo --

15      MR. EVEN:  I agree.  That's why I think that

16  qualification is important.  I don't want to seem like NCR has

17  done a complete search for anywhere else in the country.

18      THE COURT:  These requests to admit are only good in

19  this case.

20      MR. EVEN:  I understand that, Your Honor.

21      THE COURT:  All right.  34 and 35 are surplusage, will

22  be stricken, and they are simply admitted.  That leaves us at

23  number 36.

24      MR. NYFFELER:  36.  Your Honor, 36 is very similar.

25  The only, one of the main reasons we raise this is because

1    originally their answer said that they object to this request

2    because it is based on a false premise.  Now they say they

3    admit the request as to the Kalamazoo mills but notes that it

4    is based on a false premise.  And we tried to find out what

5    this objection was based on, but during the deposition we were

6    told we are not allowed to ask any questions about it because

7    it wasn't a denial.

8            THE COURT:  Again, this is one of those instances

9    where NCR may not have had a reason to notify somebody so they

10   didn't do it.  And they would like to explain why.  Fine.  They

11   have their opportunity to do that at trial.

12           MR. EVEN:  That is fine, Your Honor.  I think this

13   goes in line with 34 and 35.

14           THE COURT:  36 is admitted and the surplusage is

15   stricken.  37.

16           MR. NYFFELER:  Right.  So 37 the issue we have with

17   this, they have added an answer where NCR admits --  let me

18   back up.  "Admit that, prior to 1972, NCR encouraged and

19   facilitated the recycling of carbonless copy paper."  They now

20   talk about, they admit that they sold carbonless copy paper

21   Broke or trim.  "NCR has conducted a reasonable inquiry, and

22   based on that inquiry, NCR is unaware of any facts supporting

23   all other allegations in Request Number 37, including that NCR

24   "encouraged" or "facilitated" the recycling of carbonless copy

25   paper.  All other allegations in Request Number 37 are

therefore denied."

The problem we have with this one, Your Honor, comes back to the deposition.  We tried to get to an understanding of exactly what it was about this they were denying when they said that we deny the remainder.  And their witness said, so we asked, "Does NCR deny that it was, that it encouraged the recycling of carbonless copy paper?"  The deponent said, "I'm not sure.  Does NCR deny that it facilitated the recycling of carbonless copy paper at any time?  I'm not sure.  Does NCR deny that prior to 1972 it encouraged the recycling of carbonless copy paper?"

THE COURT:  Don't they answer that here with their most recent answer that we are dealing with today?

MR. NYFFELER:  Well, the only point is, Your Honor, that their witness under oath said he didn't know.

THE COURT:  Response.

MR. EVEN:  As I said before, to the extent the witness didn't know, I think that is clarified in the supplementals, and, you know, if there was any, anything insufficient in the preparation of the witness, I do apologize.  But I think Georgia-Pacific knows what our position is based on the current responses that we filed.  That was exactly why we told them because of responses like that that they should wait for the additional responses.  The response is now deny, explain what it is that we think we did do, and that's qualification that,

1     Your Honor, agreed that is allowed in a denial.  But

2     essentially these are denied, then, you know, we see the facts

3     differently from them.  We think we did not encourage or

4     facilitate.  They may think differently, and they can try and

5     prove that.

6          THE COURT:  I think there is a general rule that a

7     party, that a particular deponent cannot file an affidavit

8     after he has been deposed under oath contradicting his sworn

9     deposition.  This really isn't the same thing.  First of all,

10    they have talked about the fact that this 30(b)(6) deposition

11    witness only knows what NCR has prepared for him in this binder

12    because of the age of this case, and so there's an answer he

13    didn't know the answer to.  He didn't say yes or no.  He said I

14    don't know the answer to it.  And subsequently NCR prepares an

15    answer to a request to admit, which is what we have in front of

16    us, and they have specifically taken a position, and they have

17    denied that they encouraged or facilitated the recycling of

18    CCP.

19         The response to 37 is otherwise proper.  You can admit

20    a request to admit in part and deny it in part.  And they have

21    done that.  So I find 37 is okay.

22         MR. EVEN:  And, Your Honor, unless Mr. Nyffeler

23    objects, I think the exact same thing goes for 38 and 39, which

24    are essentially the same request with a change in the year.

25         MR. NYFFELER:  Your Honor, I will concede that

1    Mr. Even is right.  I still question Mr. Even's position that

2    it's okay that his witness wasn't prepared for the deposition

3    when he told us that he was.

4              THE COURT:  And that motion is not before me.

5              37, 38, and 39 are okay.  Which is the conclusion I

6    came to subject to hearing your arguments before we came into

7    court this morning.

8              52.

9              MR. NYFFELER:  Okay, Your Honor.  In 52 we ask, "Admit

10   that, prior to 1971, NCR conducted experiments on carbonless

11   copy paper that included the simulation of paper recycling."

12   "NCR admits that the documents admitted in evidence at the

13   Phase 1 trial as Trial Exhibits 1253, 1290, and 1295 describe

14   certain research performed by NCR Paper Research.  These

15   documents, however, do not support the other allegations in

16   Request for Admission Number 52, including that NCR conducted

17   experiments on carbonless copy paper that included the

18   "simulation" of paper recycling."  And the response continues.

19   I won't go on.

20             This comes back again, Your Honor, that the witness

21   same forward --  sorry, first of all.  NCR in its responses

22   identified these three documents:  1253, 1290 and 1295.  GP did

23   not identify these ahead of time for them.  They came up with

24   these on their own.  And when we tried to figure out, tried to

25   figure out why NCR included these documents in their response,

1    we asked the witness, we put Exhibit 1253 before him, and he

2    said --  sorry.

3           THE COURT:  Again, we're getting off into examining

4    whether the witness was adequate at a 30(b)(6) deposition.

5           MR. NYFFELER:  No.  Go ahead.

6           THE COURT:  I'm having a hard time addressing that

7    issue because that's really --  first of all, there isn't a

8    motion to compel the deposition of a 30(b)(6) witness or to

9    test the sufficiency of the answers of a 30(b)(6) witness, or

10   anything like that.  We have a single motion, it's limited to

11   testing the sufficiency of the answers to requests to admit.

12   And while it can be helpful to get the context of these

13   requests to admit, I'm not going to rule on the sufficiency of

14   these answers based on what a 30(b)(6) witness said or didn't

15   say.  The requests and their answers stand on their own.

16          MR. NYFFELER:  Yes.  But, Your Honor, they still have

17   to respond in good faith, and how better can we determine their

18   good faith in the response than to ask NCR itself.

19          THE COURT:  To the extent that you're testing

20   truthfulness and good faith and so forth, isn't that an issue

21   that is reserved for trial normally?

22          MR. NYFFELER:  The cases, the Asea case determined

23   that it wasn't.  They determined that the thing was admitted

24   because their response was not made in good faith.  They did

25   not have a good faith basis to give the answer that he did.  I

1    mean this is the problem, Your Honor.

2         THE COURT:  Well, I think there's some authority that

3    suggests that this is not the time to test the good faith and

4    the truthfulness of the answers and to test veracity.  So those

5    are issues for trial.  Foretich versus Chung at 151 Federal

6    Rule Decision, District of Columbia, 1993 is a case on point.

7         But what we are being required to do here, all of us,

8    is to try to determine good faith by looking into evidentiary

9    matters that are best reserved for trial.  The same as if we

10   tried to test the veracity of the witness's statements.  I

11   think that's why these things are best left to trial.  In fact,

12   these motions can be left under the rule for a later date and

13   for trial.  And that carve out in the normal scheme of things,

14   whether this type of motion, is because of that.  I don't think

15   we're going to do that in this instance, but that's the problem

16   that arises when you try to look behind the answers that they

17   give and test the sufficiency of whether or not they're telling

18   the truth and whether they can support their answers.

19        MR. NYFFELER:  Well, Your Honor, it's not a test, it's

20   not a question of truth.  The question is whether it's

21   contested or not.  And it is true that after the trial is over,

22   we can then determine whether it was proper for them to deny or

23   questions that they should have admitted.  However, that's, I

24   would argue that is not what we're talking about here today.

25   They gave, they gave an answer that their witness said --  they

did not have a good faith basis to give that answer.  It's simply a matter of, I don't want to admit this so I'm not going to, even though the evidence is staring me in my face and I have nothing against it.  So I mean -- so I guess the question then is if they don't have to respond in good faith, then why do we have requests for admission?  They will just deny everything, everything that's damaging to them.

THE COURT:  Well, it's not that they don't have to deny or, pardon me, that they don't have to respond in good faith.  It's a matter of when the issue of good faith is resolved.

MR. NYFFELER:  Right.  And the Ninth Circuit in the Asea case did it before trial because it was determined based on the evidence in the case that in fact they could have responded but didn't.  Their response was not in good faith. They simply didn't want to.

THE COURT:  Counsel.

MR. EVEN:  I don't think that Asea case or Asea case stands for what counsel proposes it stands for.  That case pertained to somebody who said, we conducted a search, a reasonable search, and the court said, well, the Court of Appeals said, if after an evidentiary hearing on that issue there is proof that you lied about that, then that may be a grounds to deem something admitted.  That is very different from having an evidentiary issue now about the issues that are

in this case, which is what they're trying to do.  They are
trying to say, we have the better of the evidence on issue X or
issue Y.  We have a different view of the evidence, and we, you
know, obviously we can have an evidentiary, can hold an
evidentiary hearing about this.  I just don't think this is the
proper venue or the proper time for this.  These are RFAs, they
are supposed to be something that narrows issues that are
essentially undisputed or cannot reasonably be disputed, and
these issues are disputed.  They call it a simulation, we don't
think it's a simulation.  There is some evidence, and a court
one day, if this is a question that actually matters, we will
have to decide that.  I'm not sure it is.  But we'll get to
that one day next September.

        But we're not there yet.  For now, I think for, that
goes.  And just for clarity, I think the same goes for 52, 53,
54, 55, and 63, at least.  We've clearly denied all of these.
And instead of just saying denied as the rule requires, we have
qualified the denial and say yeah, we acknowledge that there
are certain documents that pertain to things that are somewhat
relevant to this, and instead of, instead of essentially
accepting the fact that we gave more than is required, they're
coming to this court and saying, well, because they said that,
that's somehow improper.  No, we are allowed to qualify our
denials if we are aware of a piece of evidence that goes one
way or another, and we have acknowledged that.  We are still

1    denying these.  And that's a proper denial.

2            THE COURT:  You mention --  and I'll let you speak in

3    a little.  You mentioned a number of other requests besides 52.

4    What were they?

5            MR. EVEN:  It's at least 53, 54, 5.

6            THE COURT:  That's not at issue, I don't think.

7            MR. EVEN:  53, 55, 56, 57, and I believe 63.

8            MR. NYFFELER:  If I may, Your Honor.  I think you have

9    the complete set in this little group, 52, 53, 55 through 60,

10   and 63.

11           THE COURT:  Counsel, you may respond.  If these are

12   all --  my notes indicated a similarity with all of these.

13           MR. NYFFELER:  Your Honor, they are all similar, the

14   ones that I just read off.

15           THE COURT:  All right.  Any other arguments as to

16   these then?

17           MR. NYFFELER:  Well, two things.  First of all, when,

18   when the case law that NCR cites, the Taylor case, stands for

19   the proposition that if NCR simply wants to deny only, they are

20   able to do that.  And then at the end of trial we would have a

21   hearing to determine whether they should have denied or not.

22   But what they have just said now is that we went beyond denial

23   and we actually qualified our answers.  Rule 36 says, if you're

24   going to qualify your answer you have to have a good faith

25   basis for doing it.  And we conducted an evidentiary

investigation by deposing their 30(b)(6) witness to figure out
what that good faith was based on, why it needed to be
qualified, and the witnesses don't have an answer.  The
witness, he could not identify any basis that would suggest a
good faith basis.

Also, with respect to 52 specifically, the issue there
is they identify these three documents.  Now, we asked them why
they identified these documents and the witness didn't know.
We tried, we put one of the documents in front of the witness
and asked him, does this, what does this show?  And he was
unable to even understand what the document said.  He said,
it's -- okay:  Question:  Would you agree with me that the
research described in 1253 includes experiments on carbonless
copy paper that included the simulation of paper recycling?
Answer:  I'm not sure.  I see where it says -- it's hard to
read this handwriting, but -- question or -- It's an acquired
skill.  Answer:  I see the word CB broke in here.  I don't know
if it's in the context of recycling or not.  I don't know.
Question:  You don't know one way or the other?  Answer:  No."

So look, Your Honor, they cite three documents but
they can't tell us why it's there.  If the documents support
the requests that we ask, then they should admit.  If the
documents illustrate the fact that they, that the request is
incorrect, then they should just deny.  But what we have now is
that they admit the documents exist, they won't tell us why

1    they cite them, they can't explain them, and then they say we

2    deny the remainder, the remaining allegations.

3         So I, I don't understand how they can say good faith

4    that they can deny it when they don't even understand the

5    documents in front of them.  I mean, look, I should be clearer.

6    If they had simply just denied everything here, we wouldn't be

7    here today.  Because what we're talking about is whether they

8    had a good faith basis to qualify their responses.  And that's

9    what we searched it and that's where we are at.

10        MR. EVEN:  I think --

11        THE COURT:  Go ahead.

12        MR. EVEN:  I think --

13        THE COURT:  No good deed goes undone.

14        MR. EVEN:  Exactly.  Not to count the multiple notions

15   that NCR somewhat acted without good faith here.  NCR

16   absolutely acted with good faith.  The only reason we did not

17   supply a simple denial is because they did ask for a 30(b)(6)

18   and we did want to provide them with some context and some

19   understanding of the reasons of why we deny, and that which we

20   are denying.  That does not mean that we now should be deemed

21   admitting those things that we are denying.  The witness

22   certainly did not say, actually, yeah, you're right.  This is

23   admitted.  I would admit it.  That's not what the witness said.

24        And so if they have an issue with what the witness

25   said, that may be an issue, as Your Honor suggested, for a

1  different motion.  I don't think they should have.  The

2  witness, what they failed to mention is that the witness first

3  and foremost directed them to the piece of paper before him

4  with supplemental responses that said, these, this is our

5  position.  And I just can't add to that because everything that

6  I know is in here and that's just as I said, a result of the

7  posture of this case.  And counsel for Georgia-Pacific

8  continued to ask, and so he answered what he answered.  But at

9  the end of the day, they now have even additional reasons that

10  clearly show the good faith reasons for why we included any

11  specific thing, because we think it somehow pertained to the

12  question, and that's what we provided.

13          But that doesn't change a denial to an admission.

14          THE COURT:  The witness directed them to the

15  supplemental responses that were filed at the same day as the

16  deposition?

17          MR. EVEN:  Yes.  Just before the deposition began.

18          THE COURT:  And --

19          MR. NYFFELER:  Read that, Your Honor, if you want

20  that.

21          MR. EVEN:  And to the extent they were unhappy with

22  those, we have filed a supplemental response that provides

23  further --

24          THE COURT:  Did that first supplemental group of

25  answers state that, that NCR was aware of any additional facts

1    supporting or refuting the witness's testimony.  And that was

2    why he couldn't provide any other answers?

3         MR. NYFFELER:  Your Honor, it didn't mention anything

4    about a search.  It didn't mention anything about any other

5    information.  It just pointed to the documents and said NCR

6    denies the remaining allegations and request number 52 with no

7    further explanation.

8         THE COURT:  Well, I probably would have been well

9    advised to use the magic words, but it seems to me that

10   everybody was aware at that time that what he was providing was

11   based on evidence assembled by a team of attorneys from NCR

12   that had gathered this evidence over, from a period of some

13   40 years ago, put it in a binder and had him look at the binder

14   and then familiarize himself with that information and told him

15   to be prepared to vocalize that as the 30(b)(6) witness's

16   responses on behalf of NCR.  It doesn't seem to me anybody at

17   that deposition probably thought of him as having any more

18   personal knowledge than what had been assembled.  And that's

19   what he was limited to.  Which as a practical matter was what

20   NCR was limited to.  I doubt anybody was misled.

21        Certainly NCR has more articulately answered these in

22   its second supplemental answers.  I'm going to hold that 52, 3,

23   5, 6, 7, and 60 --  58, I'm sorry, 59 and 60 and 63 which are

24   all designed the same, are adequately answered.  You have your

25   record.

1        Motion is denied.

2        I think that saves us coming back this afternoon or

3   tomorrow morning.  The other motion we talked about Friday

4   disappeared by way of stipulation.  I commend the parties on

5   being able to reach an agreement.

6        There are two other 30(b)(6) motions outstanding which

7   I'm working on.  I thought I was catching up to you fellows but

8   I was told when I was outside yet another motion had just been

9   filed which has just been referred to me as well.

10       So you're staying ahead of me.  All right.  Thank you

11  very much.

12              MR. EVEN:  Thank you, Your Honor.

13              MR. NYFFELER:  Thank you, Your Honor.

14              THE CLERK:  All rise, please.  Court is adjourned.

15              (Proceedings concluded, 12:04 p.m.)

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3          I certify that the foregoing is a transcript from the

4    Liberty Court Recording System digital recording of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9

10                           /s/ Kathy J. Anderson

11                           Kathy J. Anderson, RPR, FCRR

12                           U.S. District Court Reporter

13                           402 Federal Building

14                           Grand Rapids, MI  49503

15

16

17

18

19

20

21

22

23

24

25