STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGIA-PACIFIC CONSUMER PRODUCTS, LP,
FORT JAMES CORPORATION, and
GEORGIA-PACIFIC, LLC,

     Plaintiffs,

  v.

NCR CORPORATION,
INTERNATIONAL PAPER COMPANY, and
WEYERHAEUSER COMPANY,

     Defendants.

Civil Action No. 1:11-cv-483

Judge Robert J. Jonker

**ORAL ARGUMENT
REQUESTED**

---

**DEFENDANT AND CROSSDEFENDANT WEYERHAEUSER COMPANY'S
BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON
STATUTE OF LIMITATIONS**

   Over twenty years after Georgia-Pacific and others first began investigating PCBs in the

Kalamazoo River, Georgia-Pacific sued Weyerhaeuser, NCR, and International Paper to recover

its investigation and cleanup costs. Georgia-Pacific waited too long to pursue its claims. Under

CERCLA and controlling Sixth Circuit precedent, the statute of limitations has run on Georgia-

Pacific's claims for any work that it has or will perform under two administrative settlement

agreements it signed for the Kalamazoo River site.

## I.  FACTS

   Georgia-Pacific's involvement in the investigation and cleanup of PCBs in the

Kalamazoo River began as early as 1990. *See* Ex. A, Final Order No. DFO-ERD-91-001.[1] In

the more than twenty years that followed, Georgia-Pacific incurred costs under multiple cleanup

agreements with the U.S. Environmental Protection Agency ("EPA") and with the Michigan

---

[1] Citations to exhibits are to documents attached to the declaration of Margaret C. Hupp that accompanies this brief.

Department of Environmental Quality ("MDEQ") or its predecessor agencies. This section provides a brief overview of Georgia-Pacific's cleanup actions in Operable Unit 5 ("OU5") of the Kalamazoo River. OU5 is a portion of the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site ("Site").

## A.     The 1990 State Agreement on Consent

Since its addition to the National Priorities List in 1990, the Site has been the subject of numerous regulatory orders, investigations and sampling events, cleanup actions, and disputes. In 1990, Georgia-Pacific, along with other members of the Kalamazoo River Study Group ("KRSG"),[2] entered into an administrative order on consent with the Michigan Department of Natural Resources ("1990 AOC"). Ex. A, Final Order No. DFO-ERD-91-001. Under the 1990 AOC, Georgia-Pacific and its KRSG partners agreed to prepare a remedial investigation and feasibility study ("RI/FS") to determine the nature and extent of contamination in the Kalamazoo River and to evaluate remedial action alternatives. *Id.* at 2. Georgia-Pacific and its KRSG partners took ten years to complete the RI/FS, submitting draft reports in 2000 for approval by MDEQ. *See* Ex. B, 7/11/2002 Letter from B. von Gunten to S. Kolack.

When MDEQ reviewed the draft RI/FS reports, it concluded that Georgia-Pacific and its KRSG partners failed to comply with the 1990 AOC and that the documents were inconsistent with the National Contingency Plan. *Id.* MDEQ rejected the draft RI/FS in 2002 and requested that EPA assume the lead oversight agency role for most portions of the Site. *Id.* Until 2007, the

---

[2] The KRSG included Georgia-Pacific, HM Holdings, Inc., and Simpson Plainwell Paper Company (which, like Weyerhaeuser, was a former owner of the Plainwell Mill).

1990 AOC was the only regulatory order governing Georgia-Pacific and the KRSG's actions in

OU5.[3] Ex. C, MDEQ Order Reference No. AOC-RRD-2007-002.

**B.** **The 2007 EPA Administrative Settlement Agreements and Orders on Consent**

In February 2007, Georgia-Pacific and Millennium Holdings, a successor to HM

Holdings, Inc., entered into two administrative settlements with EPA related to work in OU5.

They signed an Administrative Settlement Agreement and Order on Consent ("ASAOC") with

EPA to perform a time-critical removal action at Plainwell Impoundment (the "Plainwell

Impoundment TCRA ASAOC"). Ex. D, Plainwell Impoundment TCRA ASAOC (No. V-W-07-

C-863). They also signed an ASAOC with EPA to prepare supplemental RI/FS ("SRI/FS")

reports for each work area of the Kalamazoo River operable unit (the "SRI/FS ASAOC"). Ex. E,

SRI/FS ASAOC (No. V-W-07-C-864).

Both ASAOCs contain a section entitled "Contribution," which reads in relevant part:

> The Parties agree that this Settlement Agreement constitutes an
> administrative settlement agreement for purposes of Section 113(f)(2) of
> CERCLA, 42 U.S.C. § 9613(f)(2), and that Respondents are entitled, as
> of the Effective Date, to protection from contribution actions or claims as
> provided by Sections 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§
> 9613(f)(2) and 9622(h)(4), for "matters addressed" in this Settlement
> Agreement….
>
> The Parties agree that this Settlement Agreement constitutes an
> administrative settlement agreement for purposes of Section 113(f)(3)(B)
> of CERCLA, 42 U.S.C § 9613(f)(3)(B), pursuant to which Respondents
> have, as of the Effective Date, resolved their liability to the United States
> and to the MDEQ….

Ex. D, Plainwell Impoundment TCRA ASAOC, ¶¶ 70(a) and (b); Ex. E, SRI/FS ASAOC, ¶¶

88(a) and (b). In each ASAOC, EPA provided a covenant not to sue for the covered work. *See*

---

[3] Weyerhaeuser will argue at trial that some of Georgia-Pacific's actions under the 1990 AOC were not consistent
with the National Contingency Plan or necessary under CERCLA and, therefore, that Georgia-Pacific may not
recover the associated costs. But, those costs are not the subject of this motion.

Ex. D, Plainwell Impoundment TCRA ASAOC, ¶ 60; Ex. E, SRI/FS ASAOC, ¶ 78.  The

ASAOCs became effective on February 21, 2007.  *See* Ex. D, Plainwell Impoundment TCRA

ASAOC, ¶ 85; Ex. E, SRI/FS ASAOC, ¶ 102.

Georgia-Pacific claims it spent $18,050,747 to perform the Plainwell Impoundment

TCRA.  Georgia-Pacific claims it has spent $21,576,711 to date for work under the SRI/FS

ASOAC. [4]

**C.     Georgia-Pacific's Lawsuit**

Georgia-Pacific filed the complaint in this case against NCR and International Paper on

December 3, 2010, asserting cost recovery claims under CERCLA Section 107(a), 42 U.S.C. §

9607, and contribution claims under CERCLA Section 113, 42 U.S.C. § 9613.  (Dkt. No. 1).

Georgia-Pacific added Weyerhaeuser as a defendant in an amended complaint filed on June 24,

2011.  (Dkt. No. 80).

## II.     ARGUMENT

**A.     Summary judgment standard**

Summary judgment is appropriate if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The party moving

for summary judgment must show an absence of evidence to support the non-moving party's

case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  *See also Cox v. Kentucky Dep't of

Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)  ("To meet [its summary judgment burden], the

moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely

upon the failure of the nonmoving party to produce any evidence which would create a genuine

---

[4] These amounts were provided by Georgia-Pacific's expert on cost issues and, for purposes of this motion, are not disputed by Weyerhaeuser.

dispute for the jury."). Because the statute of limitations is an affirmative defense, defendants have the burden to show that the plaintiff's claims are time-barred. *Campbell v. Grand Trunk W.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). In cases where a party seeks summary judgment on statute of limitations grounds, the court must determine "(1) [whether] the statute of limitations has run and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued." *Id.*

**B.  Georgia-Pacific's Section 113 claims for costs incurred pursuant to the 2007 ASAOCs are time-barred.**

Georgia-Pacific may not recover the costs it incurred pursuant to the 2007 ASAOCs. As this section will explain, the ASAOCs are administrative settlements under Section 113(f)(3)(B) that resolved part of Georgia-Pacific's CERCLA liability to EPA. Furthermore, Georgia-Pacific's Section 113(f)(3)(B) contribution claims are subject to Section 113(g)(3)'s limitations period, which has run. Section C explains that Georgia-Pacific may not simultaneously bring a claim under Section 107 for the costs it incurred pursuant to the 2007 ASAOCs.

**1.  Under *Hobart*, Georgia-Pacific's ASAOCs with EPA are administrative settlements under Section 113(f)(3)(B).**

Under controlling Sixth Circuit law, the statute of limitations has run on Georgia-Pacific's claims stemming from the 2007 ASAOCs. The Sixth Circuit recently considered whether costs under an administrative settlement agreement with language identical to Georgia-Pacific's ASAOCs were barred and determined that they were. *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 768-69 (6th Cir. 2014), *cert. denied*, 2015 WL 231991 (Jan. 20, 2015). Like Georgia-Pacific, several parties in *Hobart* entered into an ASAOC with EPA to pay for an RI/FS and to reimburse EPA's oversight costs. *Id.* at 763. And, like Georgia-Pacific's ASAOCs, the *Hobart* ASAOC included a paragraph titled "Contribution," which stated that the

ASAOC "'constitutes an administrative settlement agreement for purposes of Section 113(f)(2) of CERCLA … and that the [respondents] are entitled, as of [the effective date], to protection from contribution as provided by Sections 113(f)(2) and 122(h)(4) of CERLCA … for 'matters addressed'" in the agreement. *Id.* at 763-64. The ASAOC became effective on August 15, 2006. *Id.* at 763.

The parties to the *Hobart* ASAOC asserted Section 113 contribution and Section 107 cost recovery claims against other parties on May 24, 2010. After the defendants moved to dismiss, the district court held that the ASAOC triggered a contribution claim because it was an administrative settlement under Section 113(f)(3)(B) and that the applicable three-year limitations period in Section 113(g)(3) had run on a contribution claim for the costs incurred pursuant to the ASAOC. *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 923 F. Supp. 2d 1086, 1091-96 (S.D. Ohio 2013). On appeal, in an attempt to avoid the three-year limitations period, the *Hobart* ASAOC parties argued that it was not an "administrative settlement" under Section 113(f)(3)(B) and, therefore, they did not have a contribution claim.

The Sixth Circuit affirmed that the ASAOC was an "administrative settlement" under Section 113(f)(3)(B). *Hobart*, 758 F.3d at 771. The court noted that the "defining feature" of a Section 113(f)(3)(B) administrative settlement is that it resolves a PRP's liability to the United States or to a State. *Id.* at 768. The court noted that features of the *Hobart* ASAOC indicated the parties intended the agreement to be an administrative settlement under Section 113(f)(3)(B). First, the parties to the ASAOC expressly stated that they intended the agreement to be an administrative settlement under Section 113(f)(3)(B) that resolved the parties' liability for the RI/FS and for EPA's costs. *Id.* at 768-69. Second, the ASAOC provided contribution protection pursuant to Section 113(f)(2), a protection that is available only if the ASAOC is an

- 6 -

administrative settlement under Section 113(f)(3)(B).  *Id.* at 769.  Third, the parties explicitly

titled their agreement an "*Administrative Settlement* Agreement and Order on Consent,"

matching the language in Section 113(f)(3)(B).[5]  *Id.*  Fourth, EPA covenanted not to sue for the

RI/FS or EPA's costs, an indication that the ASAOC resolved the parties' liability to the United

States.  *See id.*

       Georgia-Pacific's ASAOCs contain the same four elements as the *Hobart* ASAOC.  First,

the ASAOCs explicitly state that the "Settlement Agreement constitutes an administrative

settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B)."  Ex. D,

Plainwell Impoundment TCRA ASAOC, ¶ 70(a); Ex. E, SRI/FS ASAOC, ¶ 88(a).  Georgia-

Pacific's ASAOCs could not be clearer—the parties intended the ASAOCs to be administrative

settlements under Section 113(f)(3)(B).  *Compare Hobart*, 758 F.3d at 768-69, *with* Ex. D,

Plainwell Impoundment TCRA ASAOC, ¶ 70(a); Ex. E, SRI/FS ASAOC, ¶ 88(a).

       Second, like the *Hobart* ASAOC, Georgia-Pacific's ASAOCs provided contribution

protection, stating, "The Parties agree that this Settlement Agreement constitutes an

administrative settlement for purposes of Section 113(f)(2) of CERCLA … and that [Georgia-

Pacific and Millennium] are entitled, as of the Effective Date, to protection from contribution

actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA…."  Ex. D,

Plainwell Impoundment TCRA ASAOC, ¶ 70(a); Ex. E, SRI/FS ASAOC, ¶ 88(a).  Contribution

protection from EPA is only available if an ASAOC is an administrative settlement under

Section 113(f)(3)(B).  *See Hobart*, 758 F.3d at 769.

---

[5] Indeed, EPA changed the title of its model agreements to make clear that it intended the documents to be
administrative settlements under Section 113(f)(3)(B).  *Hobart*, 758 F.3d at 770 n.11.

Third, the parties' intent is evidenced from the title of each document; each document is entitled "Administrative Settlement Agreement and Order on Consent," matching the language in Section 113(f)(3)(B).  *See Hobart*, 758 F.3d 769.

Fourth, and finally, EPA covenanted not to sue Georgia-Pacific for the work and payments required by each of the ASAOCs.  Ex. D, Plainwell Impoundment TCRA ASAOC, ¶ 59; Ex. E, SRI/FS ASAOC, ¶ 78.  Just as EPA's covenant not to sue in the *Hobart* ASAOC indicated that the *Hobart* parties had resolved at least some of their CERCLA liability to the United States, the language in Georgia-Pacific's ASAOCs indicates Georgia-Pacific resolved its liability to the United States when it signed the Plainwell Impoundment TCRA ASAOC and the SRI/FS ASAOC.  *See Hobart*, 758 F.3d at 769.

In summary, there are no substantive differences between the relevant provisions in Georgia-Pacific's ASAOCs and the *Hobart* ASAOC that the Sixth Circuit concluded triggered the availability of a contribution action.  The Georgia-Pacific ASAOCs are administrative settlements under Section 113(f)(3)(B) that triggered a contribution claim for the costs associated with each agreement.

### 2.     The statute of limitations has run on Georgia-Pacific's claims under Section 113(f)(3)(B) for costs associated with the 2007 ASAOCs.

Because Georgia-Pacific's ASAOCs are administrative settlements that trigger a Section 113(f)(3)(B) contribution action, Georgia-Pacific's claim for the costs associated with those administrative settlements is subject to the statute of limitations provided in Section 113(g)(3):

> No action for contribution for any response costs or damages may be commenced more than 3 years after—
>
> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or

> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3).  Section 113(g)(3) provides the exclusive statute of limitations for contribution actions.  *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004); *Hobart*, 758 F.3d at 773; *RSR Corp. v. Comm'l Metals Co.*, 496 F.3d 552, 558 (6th Cir. 2007).

*Hobart* confirms this.  The court noted that the administrative settlement at issue did not explicitly trigger one of the four events that start the Section 113(g)(3) limitations clock: 1) the date of judgment on a cost recovery action; 2) the date of a Section 122(g) de minimis settlement order; 3) the date of a Section 122(h) cost recovery settlement order; or 4) the date of a judicially approved settlement.  *See Hobart*, 758 F.3d at 774 ("Given the language of the ASAOC, we cannot conclude definitively that the ASAOC is a § 122(h) administrative order, nor that the ASAOC fits into one of the other triggering events explicitly listed in § 113(g)(3)."); 42 U.S.C. § 9613(g)(3).

Even when Section 113(g)(3) does not provide an explicit triggering event for a contribution action, the Sixth Circuit determined that, nonetheless, "there must be one." *Hobart*, 758 F.3d at 774.  It noted, "After all, CERCLA's 'principal purpose' in having 'limitations periods … is to ensure that the responsible parties get to the bargaining—and clean-up-table sooner rather than later.'" *Id.* at 775 (quoting *RSR Corp.*, 496 F.3d at 559).  The Sixth Circuit noted that the *effective date* of an administrative settlement and agreement on consent, even if signed with EPA under the general authority of Section 122 without reference to subsections (g) or (h), starts the limitations period on a contribution claim for costs incurred pursuant to that administrative settlement.  *Id.*

In *Hobart,* the parties signed an ASAOC effective August 15, 2006, and filed a contribution action more than three years later, on May 24, 2010.  *Id.* at 776.  Holding that the three-year statute of limitations provided by Section 113(g)(3) began running as of the effective date of the ASAOC, the Sixth Circuit affirmed that the contribution action was time-barred.  *Id.*

Applying the holding of *Hobart* here—that is, comparing the effective date of Georgia-Pacific's ASAOCs (February 21, 2007) to the date they filed the complaint (December 3, 2010) and amended complaint (June 24, 2011) in this action—leads to the irrefutable conclusion that Georgia-Pacific's contribution claims are time-barred by Section 113(g)(3)'s limitations period. *See* Ex. D, Plainwell Impoundment TCRA ASAOC, ¶ 85; Ex. E, SRI/FS ASAOC, ¶ 102.

Georgia Pacific had until February 20, 2010, to file a contribution action for costs it incurred under each of the 2007 ASAOCs; it did not do so.  Instead, it waited until December 3, 2010, well after the three-year limitations period ran, to file the original complaint in this matter. Even more time passed before Georgia-Pacific amended the complaint to name Weyerhaeuser as a defendant.  Georgia-Pacific waited too long.  Its $18,050,747 Section 113 contribution claim against Weyerhaeuser for costs it allegedly incurred pursuant to the Plainwell Impoundment TCRA ASAOC and the $21,576,711 in costs it allegedly incurred to date pursuant to the SRI/FS ASAOC are time-barred.

## C.   Georgia-Pacific may not bring a Section 107 claim for costs associated with the 2007 ASAOCs.

Georgia-Pacific has asserted both cost recovery and contribution claims, but it has not said which costs it believes are recoverable under which claims.  Although CERCLA provides two types of claims for a private party to recoup response costs—contribution claims under Section 113 and cost recovery claims under Section 107—these two "'clearly distinct' remedies" are available to parties "in different procedural circumstances."  *United States v. Atl. Research*

*Corp.*, 551 U.S. 128, 138 (2007) (quoting *Cooper Indus.*, 543 U.S. at 163 n.3).  *See also Hobart*, 758 F.3d at 762 ("The statute … creates a complicated network of cost-shifting provisions, which apply depending on who pays what and why.").  Georgia-Pacific may argue, like the ASAOC parties in *Hobart*, that Section 113(g)(3) does not bar its claim for costs associated with its ASAOCs because it may recover those costs under Section 107.  That argument also fails. *Hobart* and decisions by every other court examining the interplay between Sections 107 and 113 after *Atlantic Research* reach the same conclusion—if and when a Section 113 contribution claim is triggered, a Section 107 cost recovery claim is not available for the same costs.

The Sixth Circuit held in *Hobart* that if a party can bring a Section 113 contribution action, it may not simultaneously pursue a Section 107 cost recovery action for the same costs: "[I]t is sensible and consistent with the text [of CERCLA] to read § 113(f)'s enabling language to mean that if a party is able to bring a contribution action, it must do so under § 113(f), rather than § 107(a)."  *Hobart*, 758 F.3d at 767.

Every United States Court of Appeals to consider this issue after *Atlantic Research* has reached the same conclusion—a party that is eligible to bring a contribution action for costs incurred pursuant to an administrative settlement agreement or consent decree may recover those costs *only* under Section 113(f), and not under Section 107.  *See Bernstein v. Bankert*, 733 F.3d 190, 202 (7th Cir. 2013); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1237 (11th Cir. 2012); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011); *Agere Sys., Inc. v. Advanced Envt'l Tech. Corp.*, 602 F.2d 204, 225 (3d Cir. 2010); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 127-28 (2d Cir. 2010).  Thus, a party that meets one of Section 113(f)'s statutory triggers may recover only under Section 113 and may not simultaneously seek the same costs under Section 107(a).  *See Hobart*, 758 F.3d at 767.  *See also*

*Morrison Enters.,* 638 F.3d at 603 ("[Section] 113(f) provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under §§ 106 or 107.").

Georgia-Pacific's ASAOCs with EPA are administrative settlements under Section 113(f)(3)(B) that triggered a contribution claim for the costs associated with each agreement. *See Hobart*, 758 F.3d at 768-69.  Thus, Georgia-Pacific may seek recovery of those costs only under Section 113, as limited by Section 113(g)(3), and may not recover under Section 107.  *See id.* at 767.

### III.        CONCLUSION

The Plainwell Impoundment TCRA ASAOC and the SRI/FS ASAOC entered into by Georgia-Pacific in February 2007 are identical to the ASAOC examined by the Sixth Circuit in *Hobart*.  Therefore, the result reached in *Hobart* is compelled here: Georgia-Pacific's contribution claims that resulted from the ASAOCs are time-barred.  Georgia-Pacific failed to assert a claim for its alleged costs within the applicable limitations period, so $39,627,458 of the costs sought by Georgia-Pacific are time-barred.

DATED:  March 13, 2015                    **WEYERHAEUSER COMPANY**


                                          By: /s/ Michael L. Dunning
                                          _____

                                          **PERKINS COIE** LLP
                                          Mark W. Schneider, WA Bar No. 14105
                                          MWSchneider@perkinscoie.com
                                          J. Christopher Baird, WA Bar No. 38944
                                          JCBaird@perkinscoie.com
                                          Michael L. Dunning, WA Bar No. 29452
                                          MDunning@perkinscoie.com
                                          Margaret C. Hupp, WA Bar No. 43295
                                          MHupp@perkinscoie.com
                                          1201 Third Avenue, Suite 4900
                                          Seattle, WA  98101-3099
                                          Telephone:  206.359.8000
                                          Facsimile:  206.359.9000

                                          **Warner Norcross & Judd, LLP**
                                          Douglas A. Dozeman, MI Bar No. P35781
                                          ddozeman@wnj.com
                                          Scott M. Watson, MI Bar No. P70185
                                          swatson@wnj.com
                                          900 Fifth Third Center
                                          111 Lyon St. N.W.
                                          Grand Rapids, MI 49503-2487
                                          Telephone:  616.752.2000
                                          Facsimile:  616.752.2500

                                          Attorneys for Defendant and Crossdefendant
                                          Weyerhaeuser Company

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2015 I served the foregoing using the CM/ECF system which will cause an electronic copy to be served on counsel of record authorized to receive such CM/ECF system filings.

   /s/ Margaret C. Hupp