# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No: 1:11-cv-00483 |
| v. | ) ) | Judge Robert J. Jonker |
| NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO., | ) ) ) ) | |
| Defendants. | ) | |

## NCR CORPORATION'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO GEORGIA-PACIFIC'S FIRST PHASE II INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant NCR Corporation ("NCR"), by and through its undersigned counsel, hereby responds and objects to Plaintiffs Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific LLC's (collectively, "Georgia-Pacific") First Phase II Interrogatories ("Interrogatories").

## GENERAL OBJECTIONS

The following General Objections apply to each of Georgia-Pacific's Interrogatories and shall have the same force and effect as if set forth in full in response to each. Any failure to repeat all or part of these General Objections in any specific response shall not constitute a waiver or relinquishment of such objection.

1.      NCR has not completed its investigation or discovery in this litigation. NCR's Responses and Objections to Georgia-Pacific's Interrogatories are based upon the information presently known to NCR and are given without prejudice to NCR's right to adduce or analyze evidence subsequent to the date of these responses. NCR expressly reserves the right to revise,

supplement or otherwise amend these Responses and Objections to the extent permitted by the Federal Rules of Civil Procedure, the Local Rules of Practice and Procedure for the United States District Court for the Western District of Michigan ("Civil Local Rules"), and/or other applicable law.

2.      NCR objects to these interrogatories to the extent that they are premature and to the extent that they seek information and analysis that will be the subject of expert testimony. NCR will timely comply with the Court's operative scheduling order and other orders entered in this case as they relate to expert disclosures and will supplement its response to these Interrogatories as required.

3.      NCR objects to each of Georgia-Pacific's Interrogatories to the extent that it is overly broad, unduly burdensome and/or seeks irrelevant information or information that is not reasonably calculated to lead to the discovery of admissible evidence.

4.      NCR objects to the definition of the term "CCP" to the extent that it is inaccurate and subject to multiple interpretations; renders the Interrogatories vague, ambiguous, overly broad and unduly burdensome; calls for information or the production of documents not within NCR's possession, custody or control; calls for the production of privileged information; is not reasonably calculated to lead to the discovery of admissible evidence; and seeks, or may be construed to seek, to impose obligations inconsistent with the Federal Rules of Civil Procedure, the Civil Local Rules and/or other applicable law.  For purposes of these Responses and Objections, NCR will construe the term "CCP" to refer to NCR Paper brand carbonless copy paper manufactured between 1954 and April 1971.

5.      NCR objects to the definition of the term "CCP Coating Broke" to the extent that it is inaccurate and subject to multiple interpretations; renders the Interrogatories vague,

ambiguous, overly broad and unduly burdensome; calls for information or the production of documents not within NCR's possession, custody or control; calls for the production of privileged information; is not reasonably calculated to lead to the discovery of admissible evidence; and seeks, or may be construed to seek, to impose obligations inconsistent with the Federal Rules of Civil Procedure, the Civil Local Rules and/or other applicable law.  For purposes of these Responses and Objections, NCR will construe the term "CCP Coating Broke" to refer to paper scrap or trim generated during the manufacture of CCP between 1954 and April 1971.

6.     NCR objects to the definition of the term "CCP Trim" to the extent that it is inaccurate and subject to multiple interpretations; renders the Interrogatories vague, ambiguous, overly broad and unduly burdensome; calls for information or the production of documents not within NCR's possession, custody, or control; calls for the production of privileged information; is not reasonably calculated to lead to the discovery of admissible evidence relevant to this litigation; and seeks, or may be construed to seek, to impose obligations inconsistent with the Federal Rules of Civil Procedure, the Civil Local Rules and/or other applicable law.  For purposes of these Responses and Objections, NCR will construe the term "CCP Trim" to refer to paper scrap or trim generated during the conversion of CCP between 1954 and April 1971.

7.     NCR objects to the definition of the term "NCR PCBs" to the extent that it is inaccurate and subject to multiple interpretations; renders the Requests vague, ambiguous, overly broad and unduly burdensome; calls for information not within NCR's possession, custody or control; and seeks, or may be construed to seek, to impose obligations inconsistent with the Federal Rules of Civil Procedure, the Civil Local Rules and/or other applicable law.

8. NCR objects to each of the Interrogatories to the extent that it seeks, or may be construed to seek, information or documents protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege and/or any other applicable privilege or applicable discovery protection. Any disclosure of information or documents protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, protection, immunity, law or rule is inadvertent and does not constitute a waiver of any claim of privilege or other protection, all of which are expressly reserved. NCR reserves the right to demand the return of such information or documents, prohibit its use in any manner and/or demand the destruction of any such documents or information inadvertently produced in response to the Interrogatories.

9. NCR objects to each of the Interrogatories to the extent that it seeks, or may be construed to seek, information from NCR that is in the possession, custody or control of other parties or entities. NCR's Responses and Objections to the Interrogatories are tendered on behalf of NCR only, and not on behalf of any other party or entity.

10. NCR objects to each of the Interrogatories to the extent that it seeks, or may be construed to seek, information that is publicly available; that has previously been produced in this litigation; that is already in the possession, custody or control of Georgia-Pacific; or that is available to Georgia-Pacific from another source, to the extent that such information is equally available to Georgia-Pacific and the burden and expense of obtaining such information is no greater for Georgia-Pacific than it is for NCR.

11. NCR objects to each of the Interrogatories to the extent that it seeks, or may be construed to seek, to impose burdens or obligations on NCR that are inconsistent with the Federal Rules of Civil Procedure, the Civil Local Rules and/or other applicable law.

12.     NCR objects to each of the Interrogatories to the extent that it is not reasonably limited in scope, rendering the Interrogatory overly broad or unduly burdensome.

13.     NCR reserves all objections as to the competence, relevance, materiality, authenticity, admissibility and privilege of documents and responses to the Interrogatories or the subject matter thereof; all rights to object on any ground to any other discovery request concerning the subject matter of the Interrogatories; and all rights to object on any ground to the use of any document, or the subject matter therein, in any subsequent proceeding, including without limitation the trial of this or any other action.

14.     Each of the foregoing General Objections is incorporated into the Specific Responses and Objections given to each individual Interrogatory, and those Specific Responses and Objections are made subject to and without waiving any of the General Objections.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

1.     For the period 1954 to 1975, please identify each document or communication (including the date, manner, content, and recipient(s)) in which NCR disclosed to any person (other than an NCR employee) that any CCP, CCP Coating Broke, and/or CCP Trim contained PCBs.

**OBJECTION:**  NCR objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, and/or seeks information or documents that are not reasonably calculated to lead to the discovery of admissible evidence relevant to this litigation.  In particular, it would be unduly burdensome to require NCR to list "each document or communication" specified in this Interrogatory over a 21-year time period, given, among other things, that no employees from that time period involved in the subject matter of this Interrogatory are still employed at NCR, and written communications that are still in NCR's possession, custody and control have already been produced to Georgia-Pacific in this litigation.

NCR further objects to this Interrogatory to the extent that it seeks information or documents protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest doctrine, or any other applicable privilege or applicable discovery protection.

**RESPONSE:**  Subject to and without waiving these objections, or any of its General Objections, NCR believes that communications responsive to this Interrogatory were made both orally and in writing.  Following a reasonable search, NCR states that, pursuant to Fed. R. Civ. P. 33(d), information responsive to this Interrogatory may be identified in documents produced in this litigation, including but not limited to:

- KZ00089904

- KZ00172811

- APIFOX00007236

- NCR-FOX-0330722

- NCR-FOX-0331432

- GPFOX00144075

NCR's investigation is ongoing.  NCR will supplement this response if and when additional responsive information not previously produced is identified, to the extent required by Fed. R. Civ. P. 26(e).

2.     Please identify (by year, location, source, and amount) all Aroclor 1242 released into or onto the Site as a result of conduct <u>other than</u> the recycling of CCP.

**OBJECTION:**  NCR objects to this Interrogatory to the extent that it seeks information or documents protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest doctrine, or any other applicable privilege or applicable discovery protection.

NCR further objects to this Interrogatory to the extent that the phrase "recycling" is vague, ambiguous, and subject to multiple interpretations. For the purposes of its Response, NCR has interpreted "recycling" to refer to the process(es) used to repulp, deink, bleach, clean, and/or wash Recovered Fiber (as that term is defined in NCR's Interrogatories to the Other Parties, dated May 27, 2014) and the process(es) of using that Recovered Fiber to make new paper products, and the process(es) used to treat and dispose of Wastewater and Residuals (as those terms are defined in NCR's Interrogatories to the Other Parties, dated May 27, 2014) that result from the process(es) used to repulp, deink, bleach, clean, and/or wash Recovered Fiber.

NCR further objects to this Interrogatory to the extent that it calls for expert testimony. NCR will serve expert disclosures pursuant to the schedule set forth in the Court's operative scheduling order.

**RESPONSE:** Subject to and without waiving these objections, or any of its General Objections, NCR states that Dr. Mark Brown, the former project manager for the Allied Paper Inc./Portage Creek/Kalamazoo River Superfund Site (the "Site"), testified on August 19, 2014 that the Kalamazoo River Study Group ("KRSG"), of which Georgia Pacific Corporation was a member, identified entities not involved in the recycling of CCP such as North American Aluminum Corporation, Benteler Industries, Eaton Corporation, Rockwell International, Auto-Ion, Kalamazoo Metal Recyclers and the Upjohn Company as potentially responsible parties that discharged PCBs to the Site. (8/19/14 Brown Dep. Tr. at 235:8-242:16.) Dr. Brown further testified that Aroclor 1242 was used for purposes other than manufacturing CCP, such as use in hydraulic fluids, cutting fluids, electrical equipment, and electrical uses. (Id. at 353:1-354-15.) During his testimony, Dr. Brown identified automobile manufacturers as among the entities that would have used Aroclor 1242 for these purposes. (Id.) Dr. Brown further testified that he

believes that PCBs were discharged to the Site as a result of electrical equipment manufacturing, industrial heat transfer systems, automotive manufacturing and industrial accidents. (Id. at 359:6-16.)

Among other information provided by Dr. Brown, on April 7, 1997, Dr. Brown submitted an expert report on behalf of the KRSG concerning the sources of PCBs to the Site in Kalamazoo River Study Group v. Rockwell International, No. 1:95CV838 (W.D. Mich.). (Report Regarding the Environmental Response at the Allied Paper Inc./Portage Creek/Kalamazoo River Superfund Site, NCRKZOO0052361.) Dr. Brown's report states that "the evidence of sources of PCB to Kalamazoo River fish other than the paper industry is unmistakable". (Id. at NCRKZOO0052411.)

In particular, Dr. Brown's report states that Eaton Corporation, which manufactured power-steering pumps, viscous fan drives and converter clutches, and differentials at two facilities in the Kalamazoo River watershed; The Pharmacia and Upjohn Company, which manufactured health-care products and agricultural product at three facilities in the Kalamazoo River watershed; Rock-Tenn Company, which had PCB-containing electrical components at its Otsego mill (formerly operated by Mead); and Rockwell International Superfund Site, which was used to manufacture glass, universal joints and drive-line equipment in Allegan, Michigan, were responsible for discharging PCBs to the Site. (Id. at NCRKZOO0052411-443.)

Among other things, Dr. Brown's report states that there is evidence that these facilities contributed Aroclor 1242 to the Site from activities other than recycling CCP.

- "The MDNR collected a 24-hour composite water sample from [Eaton] Outfall 001 during a wastewater survey in August 1980. When analyzed, the sample was found to contain 0.82 µg/L of total PCB, with 0.56 µg/L quantified as Aroclor 1242, 0.12 µg/L as Aroclor 1254, and 0.14 µg/L as Aroclor 1260 (MDNR, 1980b) [EA0002044]. Outfall 001 discharged to the Kalamazoo River via a municipal storm sewer." (Id. at NCRKZOO0052414.)

- Monsanto sales records reflect purchases of PCB mixtures by the Engine Components Division of Eaton in Battle Creek including Pydraul A-200, which "is reported to contain one-third Aroclor 1242 and two-thirds Aroclor 1248". Additionally, there was one transformer in use at Battle Creek facility that contained Aroclor 1242. (Id. at NCRKZOO0052415.)

- "In their May 17, 1976 internal questionnaire on PCB, Mead reported that PCB-containing equipment had been replaced or repaired in the past 3 years due to leaks, and that a transformer located at the laminator contained 425 gallons of PCB fluid (Deposition Exhibit [DE]: Brown 3/19/97 #27) [RTMY 017769 and RTMY 017770]. In an April 6, 1984 transformer insulating oil test, a sample analyzed for PCB from the transformer was reported to contain 449,800 mg/kg PCB (10,800 mg/kg of Aroclor 1242, and 439,000 mg/kg of Aroclor 1260) (DE: Brown 3/19/97 #34) [RTMY 001530] . . . The memo also stated that some of Mead's capacitors contained PCB, but they were not sure which ones (DE: Brown 3/19/97 #28) [RTMY 016303]." (Id. at NCRKZOO0052432.)

- "PCB have also been detected in an "oily water" sample collected from behind an oil boom in the Kalamazoo River. The boom was placed to contain the oil that was seeping from Rockwell's bank of the river. The sample contained O.55 µg/L of total PCB, 0.034 µg/L quantified as Aroclor 1242 and 0.021 quantified as Aroclor 1254." (Id. at NCRKZOO0052440.)

- "In March 1994, Blasland, Bouck & Lee, Inc. collected two sediment cores in the Kalamazoo River near the Rockwell facility and analyzed them for PCB . . . The sample from the 0- to 0.5-foot interval contained 3.2 mg/kg total PCB (2.6 mg/kg quantified as Aroclor 1242 and 0.55 mg/kg quantified as Aroclor 1254) . . . The sample from the 2- to 2.5-foot interval contained 25 mg/kg total PCB (quantified as Aroclor 1242) (Aquatec, 1994b) [KB20009457-KB20009467]." (Id. at NCRKZOO0052442.)

Dr. Brown also submitted addenda to his expert report further supporting his opinion that conduct other than the recycling of CCP contributed PCBs to the Site. (See, e.g., Report Regarding the Environmental Response at the Allied Paper Inc./Portage Creek/Kalamazoo River Superfund Site – Addendum to April 7, 1997 Report, dated September 15, 1997 ("First Addendum"), KZOO468747.) Dr. Brown's reports state that "it is very clear that sources of PCB which cannot be reasonably attributed to waste-paper recycling contribute substantially to the levels of PCB seen in fish" at the Kalamazoo River. (Report Regarding the Environmental Response at the Allied Paper Inc./Portage Creek/Kalamazoo River Superfund Site – Fourth Addendum to April 7, 1997 Report, dated April 27, 1998, KZOO468805 at 07.)

Among other things, Dr. Brown's reports state that there is evidence that the Upjohn facilities, which were used for activities other than recycling CCP, contributed Aroclor 1242 to the Site.

- "In February 1996, [discharge from Upjohn's Henrietta Street complex] was sampled twice and analyzed for PCB.  A 24-hour composite sample collected February 1-2, 1996 contained 0.4 µg/L of PCB quantified as Aroclor 1242 and 1254 (KAR Laboratories, l 996)[KWRP00001523]."  (First Addendum at KZOO468760.)

- "In January 1991, PCB were detected in two samples of municipal influent to the primary treatment process at the [Kalamazoo Water Reclamation Plant] at concentrations of 4.7 µg/L quantified as Aroclor 1016 and 0.93 µg/L quantified as Aroclor 1242 (Amundson, 1991) [KWRP00000707] (City of Kalamazoo, 1991) [KWRP00001098] (KWRP, l991) [KWRP00003733]."  (Id. at KZOO468762.)

Both NCR's investigation and discovery in this litigation are ongoing.  NCR will supplement this response if and when additional responsive information is identified or analyzed, to the extent required by Fed. R. Civ. P. 26(e).

3.      Please describe in detail each and every defense "available under CERCLA" that you intend to assert (see NCR's 13th Affirmative Defense), if any, and state the facts supporting each such defense under CERCLA.

**OBJECTION:**  NCR objects to this Interrogatory as vague and ambiguous and responds only regarding NCR's 13th Affirmative Defense.  NCR further objects to this Interrogatory to the extent that it is a premature contention interrogatory.  Discovery for Phase II, including discovery into certain of the defenses asserted in NCR's July 25, 2011, Answer (the "Affirmative Defenses"), is ongoing.  Accordingly, NCR cannot at this time identify each of the

defenses available under CERCLA that it intends to assert and/or rely on at any point during this matter.

NCR further objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege or any other applicable privilege or applicable discovery protection.

**RESPONSE:**  Subject to and without waiving these objections, or any of its General Objections, NCR states that it is not currently aware of any additional defenses that it intends to assert other than those specifically enumerated in its Answer dated July 25, 2011. Because discovery in this litigation and NCR's investigation is ongoing, NCR reserves the right to supplement this response and its Answer dated July 25, 2011, upon the completion of discovery for Phase II and/or its investigation into potential Affirmative Defenses, as contemplated by the Federal Rules of Civil Procedure, the Civil Local Rules, and other applicable law.  See Fed. R. Civ. P. 26(e), 33(a)(2).

Since NCR's original response to this interrogatory, Georgia-Pacific has asserted that NCR's Answer (Dkt. No. 90) failed to plead properly divisibility/apportionment as an affirmative defense.  This is incorrect.  NCR's Answer in this action expressly asserts defenses that include the divisibility/apportionment defense, including defense Nos. 3, 4, 5, 13, and 14. Consistent with that pleading, NCR has repeatedly stated that it asserts in this case a defense of divisibility/apportionment, such that Georgia-Pacific has long been on notice of NCR's divisibility/apportionment defense.  The defense is reflected in numerous documents, including jointly submitted documents.  See, e.g., Joint Status Report, dated November 12, 2013, at 4 (Dkt. No. 435); Transcript of Status Conference Hearing, dated November 18, 2013, at 9-10 (Dkt.

No. 438); Defendant NCR Corporation's Rule 26(a)(1) Initial Phase II Disclosures, dated December 20, 2013, at 6-7; Joint Status Report, dated August 8, 2014, Exhibit D, at ¶¶ 2, 9 (Dkt. No. 530-4); Transcript of Motion Hearing, dated September 22, 2014, at 70 (Dkt. No. 577).

In an effort to demonstrate that NCR somehow has not asserted a defense of divisibility/apportionment, Georgia-Pacific points to NCR's initial response to this interrogatory. See Plaintiffs' Opp'n to Defendant NCR Corporation's Motion to Compel, dated October 6, 2014, at 6-8 (Dkt. No. 586). This interrogatory called for the identification of defenses not already included in other defenses and thus NCR did not separately list divisibility/apportionment as there was no need to do so. NCR's divisibility/apportionment defense is encompassed within defense Nos. 3, 4, 5, 13 and 14. NCR asserts a defense of divisibility/apportionment under its defense No. 13 as well as defense Nos. 3, 4, 5 and 14.

NCR has previously set forth the basis of its divisibility/apportionment defense. For example, NCR's Rule 26(a)(1) Initial Phase II Disclosures dated December 20, 2013, expressly state that "to support its claims or defenses, NCR may use . . . , documents, ESI, and tangible things concerning the following topics/categories: . . . (2) apportionment of the harm at the Allied Paper Inc./Portage Creek/Kalamazoo River Site (the "Site"), including theoretical capability of apportionment in light of the PCBs attributable to NCR and the correlation to any need for remediation, as well as the bases for apportionment, such as the paper and non-paper sources of PCBs at the Site, the sources of non-PCB wastes and contaminants at the Site, the limited number of sources of Aroclor 1242 from paper recycling mills and the estimates of each mill's contribution, the percentage of CCP broke recycled at the Site attributable to NCR versus other sources, the percentage of Aroclor 1242 at the Site attributable to CCP broke for which NCR is liable, the likely mass and concentration of Aroclor 1242 at the Site for which NCR is

liable, and the likely remediation requirement that would be necessary (if any)." (Defendant NCR Corporation's Rule 26(a)(1) Initial Phase II Disclosures, dated December 20, 2013, at 6-7.)

As stated in the Joint Status Report, filed with the Court on November 12, 2013, NCR contends that "[w]hile the Court has found NCR liable as an arranger, NCR cannot have liability prior to 1969, because any sales of CCP broke before 1969 constituted sales of a useful product. In addition, NCR cannot have liability as an arranger as of the time recyclers themselves were aware that CCP broke created a hazardous waste stream. Further, NCR cannot be liable, as an arranger or otherwise, for more than a very small portion of the CCP broke that was recycled at the Site because, among other things, very little NCR-arranged CCP broke could have made its way to the Site during any time that NCR could be said to be an arranger. Whatever the period for which NCR can be held liable as an arranger, NCR's liability should be apportioned. The alleged harm is theoretically capable of apportionment, and there is a reasonable basis for apportioning the harm, such as the fact that NCR-arranged CCP broke could constitute no more than a very small amount of the CCP broke recycled at the Site." (Joint Status Report, dated Nov. 12, 2013, at 4.) NCR's divisibility/apportionment defense is further based on, among other things, the principles set forth in United States v. P.H. Glatfelter Co., No. 13-2436 (7th Cir. Sept. 25, 2014).

4.     For the period 1954 to 1972, please describe each document or communication (including the date, manner, content, and recipient(s)) between NCR and any third party (including Monsanto) relating to discussing PCBs with other people or entities, including governmental agencies.

**OBJECTION:** NCR objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, and/or seeks information or documents that are not reasonably calculated to lead to the discovery of admissible evidence. In particular, it would be unduly burdensome to require NCR to list "all communications" between NCR and any third party

13

relating to "discussing PCBs" over an 18-year time period, given, among other things, that no employees from that time period involved in the subject matter of this Interrogatory are still employed at NCR, and written communications that are still in NCR's possession, custody and control have been produced to Georgia-Pacific in this litigation.

NCR further objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege or any other applicable privilege or applicable discovery protection.

NCR further objects to this Interrogatory to the extent that the phrase "relating to discussing PCBs" is vague, ambiguous, and subject to multiple interpretations.

**RESPONSE:**  Subject to and without waiving these objections, or any of its General Objections, NCR believes that communications responsive to this Interrogatory were made both orally and in writing.  Following a reasonable search, NCR states that, pursuant to Fed. R. Civ. P. 33(d), information responsive to this Interrogatory may be identified in documents produced in this litigation, including but not limited to:

- JDGFOX00000064

- MONSFOX00080385

- KZ00088867

- PHGNCR-2007937

- GPFOX00030900

- KZ00089543

- KZ00088681

- KZ00088688

- PHGNCR-2007877

- JDGFOX00000133

- NCR-FOX-0563889

- KZ00078495

- KZ00155425

- PHGNCR-2007742

NCR's investigation is ongoing.  NCR will supplement this response if and when additional responsive information not previously produced is identified, to the extent required by Fed. R. Civ. P. 26(e).

5.      Please describe the nature and extent of Monsanto's confidentiality obligations, if any, to NCR for the period 1954 to 1971.

**OBJECTION:**  NCR specifically objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, and seeks irrelevant information or information that is not reasonably calculated to lead to the discovery of admissible evidence.  NCR limits its response to any obligation of confidentiality concerning the PCB content of its emulsion.

**RESPONSE:**  Subject to and without waiving these objections, or any of its General Objections, NCR states that after a reasonable inquiry, it is not aware of the existence of any confidentiality obligations owed by Monsanto to NCR for the period 1954 to 1971.  NCR's investigation is ongoing.  NCR will supplement this response if and when additional responsive information not previously produced is identified, to the extent required by Fed. R. Civ. P. 26(e).

6.      Please describe each document or communication (including the date, manner, content, and recipient(s)) in which Monsanto informed anyone that Aroclor 1242 was not found in, or otherwise posed no harm or threat to, the environment.

**OBJECTION:**  NCR objects to this Interrogatory to the extent it seeks documents or information that NCR has not received or has not maintained in its posession, custody, or control.

NCR further objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, and/or seeks information or documents that are not reasonably calculated to lead to the discovery of admissible evidence.  In particular, it would be unduly burdensome to require NCR to list "each document or communication", given, among other things, that this Interrogatory does not specify a time limitation.

NCR further objects to this Interrogatory to the extent that the phrases "was not found in", "posed no harm or threat" and "environment" are vague, ambiguous, and subject to multiple interpretations.

NCR further objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege or any other applicable privilege or applicable discovery protection.

**RESPONSE:**  Subject to and without waiving these objections, or any of its General Objections, NCR believes that communications responsive to this Interrogatory were made both orally and in writing.  Following a reasonable search, NCR states that, pursuant to Fed. R. Civ. P. 33(d), information responsive to this Interrogatory may be identified in documents produced in this litigation, including but not limited to:

- KZ00077085

16

- KZ00412919

- KZ00077088

- KZ00088711

- MONSFOX00099648

- GPFOX00039264

- MONSFOX00000329

- MONSFOX00000324

- KZ00412151

- PHGNCR-2007927

NCR's investigation is ongoing.  NCR will supplement this response if and when

additional responsive information not previously produced is identified, to the extent required by

Fed. R. Civ. P. 26(e).

    7.     For each document or communication identified in your response to Interrogatory
No. 6 (if any), please identify all evidence relating to the date NCR received or was otherwise
made aware of such document or communication.

        **OBJECTION:**  NCR incorporates its objections to Interrogatory No. 6 and futher

objects to this Interrogatory to the extent that the phrase "relating to the date" is vague,

ambiguous, and subject to multiple interpretations.

        NCR further objects to this Interrogatory to the extent that it seeks information

protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint

defense or common interest privilege or any other applicable privilege or applicable discovery

protection.  NCR's investigation is ongoing.  NCR will supplement this response if and when

additional responsive information not previously produced is identified, to the extent required by

Fed. R. Civ. P. 26(e).

**RESPONSE:**  Subject to and without waiving any of its objections, or any of its General Objections, NCR states that information responsive to this Interrogatory may be identified in the documents listed in NCR's response to Interrogatory No. 6.

8.     Please describe in detail all wastewater treatment technology, available during the period 1954 to 1971, that was capable of reducing, limiting, or eliminating PCBs released into rivers in connection with the recycling of CCP.

**OBJECTION:**  NCR objects to this Interrogatory to the extent that it calls for expert testimony.  NCR will serve expert disclosures pursuant to the schedule set forth in the Court's operative scheduling order.

NCR further objects to this Interrogatory to the extent that the phrase "wastewater treatment technology" is vague, ambiguous, and subject to multiple interpretations.

NCR further objects to this Interrogatory to the extent that it seeks documents or information protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest doctrine, or any other applicable privilege or applicable discovery protection.

NCR further objects to this Interrogatory to the extent that it seeks documents or information that are publicly available or that have already been produced by NCR in this litigation.  It is no more burdensome for Georgia-Pacific to obtain any such documents from any third parties or to locate them in the production than it would be for NCR.

**RESPONSE:**  Subject to and without waiving these objections, or any of its General Objections, NCR believes that communications responsive to this Interrogatory were made both orally and in writing.  Following a reasonable search, NCR states that, pursuant to Fed. R. Civ. P. 33(d), information responsive to this Interrogatory may be identified in documents produced in this litigation, including but not limited to:

- KZ-KRSG-00019196

- NCRKZOO0025415

9.      Please identify every method or technology, during the period 1971 to 1976, that would have permitted a recycler to distinguish between (1) CCP produced using (or coated with) an emulsion containing PCBs and (2) CCP that was not produced using (or coated with) an emulsion containing PCBs.

**OBJECTION:**  NCR specifically objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, and seeks irrelevant information or information that is not reasonably calculated to lead to the discovery of admissible evidence.

NCR further objects to this Interrogatory to the extent that it seeks documents or information protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest doctrine, or any other applicable privilege or applicable discovery protection.

NCR further objects to this Interrogatory to the extent that it seeks documents or information that are publicly available or that have already been produced by NCR in this litigation.  It is no more burdensome for Georgia-Pacific to obtain any such documents from any third parties or to locate them in the production than it would be for NCR.

NCR further objects to this Interrogatory to the extent that it calls for expert testimony.  NCR will serve expert disclosures pursuant to the schedule set forth in the Court's operative scheduling order.

**RESPONSE:**  Subject to and without waiving these objections, or any of its General Objections, NCR believes that communications responsive to this Interrogatory were made both orally and in writing.  Following a reasonable search, NCR states that, pursuant to Fed. R. Civ. P. 33(d), information responsive to this Interrogatory may be identified in documents produced in this litigation, including but not limited to:

- WTMFOX00008110

- WTMFOX00009882

- MENFOX00000152

10.    Please identify, and describe the terms of, any agreements or other documents, including any insurance policies, contracts, judicial decisions, arbitration awards, settlement agreements, and/or other indemnification agreements, under which any person is, would be, or allegedly is or would be, obliged to pay, in whole or in part, NCR's court-determined share of any past or future costs associated with the Site.

**OBJECTION:**  NCR objects to this Interrogatory to the extent that it is overly

broad, unduly burdensome, and/or seeks documents that are not reasonably calculated to lead to

the discovery of admissible evidence.  Because NCR has not incurred any costs at the Site and is

not claiming any costs or damages in this litigation at this time, information responsive to this

Interrogatory is irrelevant to Georgia-Pacific's claims and NCR's defenses.

NCR further objects to this Interrogatory to the extent that it seeks documents or

information protected from disclosure by the attorney-client privilege, the work-product doctrine,

the joint defense privilege, the common interest doctrine, or any other applicable privilege or

applicable discovery protection.

**RESPONSE:**  Subject to and without waiving these objections, or any of its

General Objections, NCR states that extensive information concerning its insurance policies,

proceeds, and indemnification arrangements related to its environmental matters is discussed in

its public filings made with the Securities and Exchange Commission.

Dated:  October 7, 2014

NCR CORPORATION


 /s/ David R. Marriott
David R. Marriott
*Counsel for NCR Corporation*

DICKINSON WRIGHT PLLC
Geoffrey A. Fields
200 Ottawa Avenue, N.W., Suite 1000
Grand Rapids, Michigan 49503
Phone: (616) 336-1017
Fax: (616) 458-6753
gfields@dickinsonwright.com

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott
Darin P. McAtee
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmarriott@cravath.com

SIDLEY AUSTIN LLP
John M. Heyde
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036
jheyde@sidley.com

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601
llarson@martenlaw.com

## VERIFICATION

I, Edward R. Gallagher, verify that I have read Defendant

NCR Corporation's Second Supplemental Responses and Objections to Plaintiffs

Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific

LLC's First Phase II Interrogatories, dated June 26, 2014; that these responses and

objections were prepared with the assistance and advice of counsel and persons affiliated

with NCR Corporation upon whose advice I have relied; that the responses and

objections set forth in the document, subject to inadvertent or undiscovered errors, are

based on and necessarily limited by the records and information still in existence,

presently recollected and thus far discovered in the course of the preparation of these

responses and objections and as of the date the responses and objections were served; that

I and NCR Corporation consequently reserve the right to make any changes in the

responses and objections if it appears at any time that omissions or errors have been

made; that subject to the limitations set forth in this document, the responses and

objections are true to the best of my knowledge, information and belief.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on October 7, 2014

Edward R. Gallagher
Law Vice President, NCR Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2014, I caused a copy of NCR Corporation's Second

Supplemental Responses and Objections to Georgia-Pacific's First Phase II Interrogatories to be

sent to counsel for each party via e-mail.

By:  /s/ David Lisner

| | |
|---|---|
| Baker Hostetler | IPGPTeamMembers@bakerlaw.com |
| Michael Dunning | mdunning@perkinscoie.com |
| J. Christopher Baird | jcbaird@perkinscoie.com |
| Hunton & Williams LLP | GPvNCR@hunton.com |