## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC** )<br>)<br>)<br>)<br>) | |
| **Plaintiffs,** )<br>) | **No: 1:11-cv-00483** |
| **v.** )<br>) | **Judge Robert J. Jonker** |
| **NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO.,** )<br>)<br>)<br>) | |
| **Defendants.** ) | |

## JOINT STATUS REPORT

Pursuant to the Court's March 29, 2018 Phase II Bench Trial Opinion & Order, the parties conferred regarding the form of judgment. They reached agreement on much of the form to be used. That form is attached hereto as Exhibit A. As noted in that form, however, there are three paragraphs for which the parties propose competing language. The competing language is reflected in the attached form, along with the identification of the parties proposing the language. Set forth below are the parties' respective rationales for the competing language for those three paragraphs.

### 1. Paragraph 1.

**Georgia-Pacific Position**: Georgia-Pacific objects to the two sentences that NCR seeks to add to paragraph 1 because they do not accurately reflect the Court's Phase II rulings, and they are unnecessary. NCR wants the judgment to read that all of Georgia-Pacific's past response costs that the Court did not award have been disallowed as either "time-barred and/or not necessary and consistent with the National Contingency Plan (NCP)." The Court did not make

that ruling.  With respect to Georgia-Pacific's costs that are time-barred, the Court made no finding that they are unnecessary and inconsistent with the NCP.  The Court did not award them to Georgia-Pacific solely because they are barred by the statute of limitations.  With respect to Georgia-Pacific's non-time-barred costs that the Court did not award, the Court held that a portion constituted natural resource damages that are "outside the scope of this case," March 29, 2018 Opinion at 27, and the remainder "are more accurately described "as advocacy than response costs."  Id.  NCR's proposed language recasts the basis for the Court's decision not to award these costs and ascribes incorrect alternative bases for the Court's decision not to award them.

Further, it is inappropriate to enter judgment for the Defendants with respect to the disallowed costs.  When a plaintiff brings a claim seeking a certain quantum of damages and the Court finds the plaintiff is entitled to a lesser amount than the plaintiff seeks, judgment is entered in the plaintiff's favor albeit for the lower amount of damages.  There is not a second judgment entered in the defendant's favor for the portion of the plaintiff's claimed damages the Court did not award.  The Court did not allocate the time-barred and other disallowed costs and thus there is no judgment to be awarded NCR, International Paper and Weyerhaeuser under §113 with respect to those costs.

**NCR Position:**  NCR seeks inclusion of the final two sentences of proposed Paragraph 1 to make clear that all asserted response costs borne by Georgia-Pacific other than the $49,566,881.67 in allowed costs were expressly disallowed by this Court.  This addition is necessary to create a comprehensive final judgment and to avoid any uncertainty with respect to the continued viability of those disallowed costs.

**International Paper Position:**  International Paper does not object to Georgia-Pacific's proposed language in Paragraph 1.  International Paper takes no position regarding NCR's proposed additional language.

**Weyerhaeuser Position:**  Weyerhaeuser takes no position on the language proposed by NCR.

## 2. Paragraph 3.

**Georgia-Pacific Position:**   Georgia-Pacific contends that as of May 31, 2018, $683,913.17 in prejudgment interest is owed to Georgia-Pacific by NCR.  Georgia-Pacific has provided the backup documentation for this figure to NCR, and does not understand there to be any dispute regarding the date or amount of any portion of the principal, the interest rates to be used,[1] or the mathematics involved.  Instead, NCR has two disagreements: (1) the starting date for the interest; and (2) whether there should be annual compounding.

Georgia-Pacific is entitled to prejudgment interest compounded annually, as was ordered in *Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 177 (2d Cir. 2002).  As for the starting date, Georgia-Pacific is entitled to interest starting on October 2, 2013, because NCR received an individualized written demand for payment from Georgia-Pacific on that date.  *See* Exhibit B. For all amounts allocated to NCR that Georgia-Pacific incurred prior to October 2, 2013, interest should start on October 2, 2013.  For allocated amounts that Georgia-Pacific incurred afterwards, interest should start from the date that expenditure was made.  *See* 42 U.S.C. § 9607(a)(4)(D). NCR proposes that interest should run only from July 30, 2015, a date on which NCR (and the other defendants) received a settlement demand from Georgia-Pacific.  There is no basis to "reset" the interest clock based on any subsequent correspondence to NCR, as NCR suggests.

---

[1] *See* 42 U.S.C. § 9607(a)(4)(D));  https://www.epa.gov/superfund/superfund-interest-rates.

The October 2, 2013 letter provided notice in the form that CERCLA directs is sufficient to trigger liability for prejudgment interest.  Nothing in CERCLA provides that prejudgment interest is wiped clean and the original notice given no effect if a subsequent communication also would be independently sufficient to trigger liability for interest.

**NCR Position:**  NCR disagrees with Georgia-Pacific's asserted prejudgment interest total set forth in Paragraph 3.  Georgia-Pacific makes at least two errors in calculating its asserted prejudgment interest total that have the effect of inflating Georgia-Pacific's stated total.

First, Georgia-Pacific tabulates prejudgment interest from the wrong starting date.  For all response costs incurred before October 2, 2013, Georgia-Pacific calculates prejudgment interest from October 2, 2013, the date of the first notice letter Georgia-Pacific sent to NCR.  For all response costs incurred between October 2, 2013 and August 31, 2014, Georgia-Pacific calculates prejudgment interest from the date those costs were incurred.  Both approaches are flawed because they ignore the fact that Georgia-Pacific sent NCR additional notice letters on June 3, 2015 and July 30, 2015.  The operative statute provides that "interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned."  42 U.S.C. Section 9607(a).  Thus, the statute commands the calculation of prejudgment interest from the latest in time expenditure of costs or notice letter. Here, that date is July 30, 2015.  Using the latest-in-time notice letter as the triggering date is consistent with the policy underlying prejudgment interest and the parties' expectations.  As of July 30, 2015, Georgia-Pacific made an offer to the parties to resolve its claims in exchange for a payment to reimburse Georgia-Pacific for past costs only.  Thus, from July 30, 2015, NCR and the other parties were on notice that failure to make such a payment for past costs could result in a judgment against them that may include prejudgment interest.  Georgia-Pacific cannot now ignore the notice letter it sent on July 30, 2015 and cherry-pick a date two years prior to increase

its recovery.  Indeed, other courts addressing prejudgment interest in the context of serial notice letters have held that prejudgment interest should commence as of the final notice letter date. *See Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1147 (D. Kan. 2010) (holding that "prejudgment interest should accrue starting from the date of Ireland's final letter of demand").

Second, Georgia-Pacific calculates its prejudgment interest total using compound, rather than simple interest (*i.e.*, it adds the interest calculated for prior periods to the principal base in determining interest for future periods), thereby inflating its asserted total.  Neither the statute governing prejudgment interest in this context nor Sixth Circuit case law support Georgia-Pacific's calculation.

NCR respectfully submits that a more appropriate prejudgment interest total, accounting for correction of the two issues specified above, is $425,000.

### 3.  Paragraph 4.

**Georgia-Pacific Position**:  Georgia-Pacific asks the Court to include in the judgment what Georgia-Pacific considers to be an accurate description of the scope of the Court's liability findings and its declaration regarding future liability.  Specifically, Georgia-Pacific asks the Court to make clear in the judgment that (a) the liability finding in this case relates solely to costs that Georgia-Pacific sought to recover, and (b) the Court made no liability finding with respect to costs that might be incurred by other parties (such as EPA) or in geographic areas that are upstream of Georgia-Pacific's facilities, because no such costs were at issue in the case.

Weyerhaeuser and International Paper contend that Georgia-Pacific has somehow been found to be liable for *any* party's future response costs, incurred *anywhere* at "the Site."[2]  For

---

[2] Specifically, Weyerhaeuser and International Paper's proposed language provides that "the Court declares that Georgia-Pacific, International Paper, NCR and Weyerhaeuser are liable for *any* additional necessary and NCP-consistent costs incurred *at the Site*…."  Proposed Judgment at 4 (emphasis added).  NCR proposes language for Paragraph 4 that, although more

example, in the view of Weyerhaeuser and International Paper, Georgia-Pacific would be liable for future response costs incurred by International Paper in Portage Creek or OU1, *i.e.* costs incurred in geographic areas of the Site that are effectively upstream of Georgia-Pacific's mill.[3] In fact, under Weyerhaeuser and International Paper's formulation, the geographic scope of the parties' liability appears to be a matter entirely within the discretion of EPA: if EPA were to add to the "Site" an OU8 consisting only of Morrow Lake, all parties would then be liable for contamination of that water body, even though it lies entirely upstream of Weyerhaeuser, International Paper, and Georgia-Pacific's former recycling operations.

Georgia-Pacific contends that (1) the Court has determined only the parties' liability for *Georgia-Pacific's* past and future costs, and (2) that the Court should retain jurisdiction to determine future questions of liability for, *as well as* allocation of, any other party's future costs. Georgia-Pacific's proposed Paragraph 4 makes this regime clear, and its Proposed Paragraph 5 therefore expressly excludes, from the Court's liability finding, OU1 and Portage Creek—the geographic areas most likely to generate future costs to International Paper.[4]

There are three reasons the Court should enter judgment using Georgia-Pacific's proposed language:

**First**, it is certainly true, as the Court has noted, that Georgia-Pacific has admitted liability under CERCLA for purposes of bringing this action—and, more specifically, that Georgia-Pacific and Weyerhaeuser have "acknowledged their responsibility as owners and

---

vague, would apparently permit this same result: NCR would have the Court enter a "declaratory judgment of future liability…against the parties…." *Id.*

[3] Phase II Bench Trial Opinion and Order ("Order") at 11.

[4] *See* Order at 11 (OU1 "associated mostly with International Paper," as it "includes the Bryant mill pond and former operational areas for the Bryant mill and the Monarch mill.")

operators of de-inking mills during the production period…."[5]   Consistent with the Court's description, however, Georgia-Pacific's admitted liability has always been coextensive with its operations: Georgia-Pacific has never admitted that it is liable for all response costs incurred anywhere at the Site, including areas entirely unaffected by Georgia-Pacific's recycling operations.

On the contrary, Georgia-Pacific—joined, until now, by the other mill parties[6]—has always maintained that the Phase II allocation of past and future costs must be guided in the first instance by the dictates of liability under Section 107: *i.e.*, that a party's share *cannot* encompass costs incurred solely in portions of the Site upstream of that party, since in that case the predicate of 107 liability would be absent.

**Second**, Georgia-Pacific submits that the Court did not make, and indeed *cannot* have made, a finding that Georgia-Pacific is liable for future response costs Site-wide.   As a preliminary matter, no such finding is announced in either the Court's Phase I or Phase II opinions.   And with good reason: whether in Phase I or Phase II, no other party pursued any claim against Georgia-Pacific seeking liability for *any* response costs—much less a declaration that Georgia-Pacific would be liable for future costs incurred to clean up contamination in OU1, or otherwise "upstream" of Georgia-Pacific's mill.

---

[5] *Id.* at 16.

[6] Dkt. 876 at 12 (Weyerhaeuser Company's Phase II Written Closing Statement) ("Georgia-Pacific and Weyerhaeuser agree that Weyerhaeuser should bear no legal responsibility for PCB's upstream of the Plainwell Mill."); Dkt. 881 at 14 n.7 (International Paper Company's Phase II Post-Trial Brief ("the Bryant and Monarch Mills cannot be responsible for PCB deposits upstream … because PCBs do not travel upstream.") (citations omitted); Dkt. 894 at 42 (International Paper Company's Phase II Post-Trial Response Brief) (PCB hotspots "upstream of the Portage Creek confluence" are "not International Paper's responsibility.")

Weyerhaeuser and NCR did not assert claims seeking to recover any past costs, and neither party sought declaratory relief of any kind.[7]  International Paper, for its part, did assert a counterclaim against Georgia-Pacific for response costs incurred "either as a result of a judgment against it on the Amended Complaint *or otherwise*," and sought declaratory relief.[8]  Yet International Paper identified no triable issue related to Georgia-Pacific's liability in the Phase I pretrial order, and International Paper neither demanded nor obtained a declaration of Georgia-Pacific's liability for, *e.g.*, costs incurred "upstream" of Georgia-Pacific in OU1.[9]  That was hardly surprising, since International Paper incurred no such costs.  Indeed, as Weyerhaeuser itself pointed out in briefing after Phase II, International Paper's claim under Section 107 *should have been dismissed*, for that very reason:

> International Paper asserted section 113 claims against all the parties, presumably for the same reason that Weyerhaeuser did. In addition, International Paper asserted section 107 claims against all the parties. A prerequisite to a successful section 107(a) claim is the incurrence of response costs. Because International Paper has not incurred any response costs at the Site, its section 107 claims should be dismissed.[10]

Given the Court's finding that all parties are liable for Georgia-Pacific's response costs, the Court's decision to grant each party a counter- or crossclaim *for contribution* is entirely appropriate.[11]  But in their version of Paragraph 4 of the judgment, Weyerhaeuser and

---

[7] In its Answer, Weyerhaeuser made only a cross- and counterclaim for amounts in excess of its fair share, Dkt. 105, and in Phase II asked, in relevant part, only "[w]hether *Georgia-Pacific* is entitled to declaratory relief and, if so, what form that relief should take." Dkt. 806 (Proposed Pretrial Order) at 21 (emphasis added).  NCR, for its part, made no claims against Georgia-Pacific, and sought no declaratory relief.  Dkt. 90.

[8] Dkt. 91 at 88 at ¶ 13 (emphasis added).

[9] Dkt. 360 at 14-19.

[10] Dkt. 876 at 14 (citations omitted).

[11] Order at 32 n.7.

International Paper ask for something quite different: they demand victory on a claim for declaratory relief under Section 107 against Georgia-Pacific, a claim that only International Paper (at best) ever pleaded, that was never litigated, and that even Weyerhaeuser admits should have been dismissed.[12]

**Finally,** the judgment sought by Weyerhaeuser and International Paper would be both unfair and illogical. With respect to fairness, the Court will recall that in Phase I, International Paper engaged in a lengthy, though ultimately unavailing, effort to prove a technical defense to 107 liability. To the extent Georgia-Pacific is alleged to be liable for future costs incurred in (for example) OU1 or Portage Creek, it too is entitled to its day in Court, where its defenses will be vastly less arcane: after all, Georgia-Pacific is neither a current nor past owner or operator of a facility that discharged PCBs in that area. Put another way, if "the Site" consisted only of OU1 and Portage Creek, there is no doubt that Georgia-Pacific would avoid liability entirely. Georgia-Pacific's viable defenses against claims for *future* costs in OU1 and Portage Creek should not be thrown to the side simply because Georgia-Pacific sought its own past costs in this litigation.

The judgment sought by Weyerhaeuser and International Paper would also be counterproductive for purposes of the administration of CERCLA. Weyerhaeuser and International Paper effectively ask for a regime in which any CERCLA plaintiff, pondering an action to recover its past costs, must consider whether it could someday be exposed to significant

---

[12] To the extent the Court has not effectively dismissed International Paper's 107 claim without prejudice due to International Paper's lack of response costs, Georgia-Pacific reserves the right to argue that the Court's judgment in this matter is *res judicata* with respect to any future claim by International Paper against Georgia-Pacific for response costs. *See Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 777 (6th Cir. 2009) ("The doctrine of res judicata prohibits not only re-litigation of all claims or issues which were actually litigated, but also those which could have been litigated in a prior action.")

future liability, *regardless* of the dictates of Section 107, for *whatever* geography the EPA ultimately determines constitutes "the Site."   There is simply no basis in the statute for that result, and no reason to burden cost-recovery actions in that manner.

**NCR Position:**   The Court's opinion properly recognizes that judgment as to liability for specific costs that may be incurred in the future is problematic.   Very little of the proof at the Phase II trial was dedicated to the issue of future costs.   For that reason, the Court used particular words in its opinion, which were chosen carefully and with purpose.   NCR's proposal for Paragraph 4 simply adopts the Court's own language from the concluding paragraph of its Phase II Bench Trial Opinion and Order of March 29, 2018 (Dkt. No. 921).   NCR respectfully submits that no further interpretation is necessary for purposes of the Final Judgment.

**International Paper Position:**   Georgia-Pacific's proposed language in Paragraph 4 wrongly limits the scope of the Court's declaratory judgment ruling.   Georgia-Pacific suggests that the declaratory judgment allocating costs applies only to costs incurred by Georgia-Pacific, both past and future.   International Paper views the proper reading of the Court's Opinion and Order of September 26, 2013 (Dkt. 432) and Phase II Opinion and Order (Dkt. 921) (together, the "Opinion") to be a declaratory judgment allocating costs incurred by any party.   International Paper understands that Weyerhaeuser shares this view.

As a result, International Paper believes the Final Judgment should be consistent with the Opinion and provide that the four parties bound by the Final Judgment are all liable parties, and thus are all responsible for NCP-compliant response costs incurred by any of the other parties. Limiting the Final Judgment to an allocation of only Georgia-Pacific-incurred costs will result in needless duplication of effort and unnecessary future proceedings to establish liability.

International Paper objects to NCR's proposed language because the proposed language is a backhanded attempt to interpret and limit the scope of the Court's opinion.

**Weyerhaeuser Position:**  The parties have proposed three competing drafts of Paragraph 4.  The only difference between Georgia-Pacific's version and the combined International Paper/Weyerhaeuser version is that in Georgia-Pacific's version, the declaratory judgment would apply only to Georgia-Pacific's post-August 31, 2014 costs ("Future Costs").   In the International Paper/Weyerhaeuser version, the declaratory judgment would apply to all Future Costs, not just Georgia-Pacific's.

Nothing about the Court's Phase II Bench Trial Opinion and Order suggests that declaratory judgment should be limited only to Georgia-Pacific's post-August 31, 2014 Future Costs. Moreover, limiting the judgment as Georgia-Pacific suggests, would be inconsistent with CERCLA, which requires entry of "a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."   42 U.S.C. § 9613(g)(2) (emphasis added). Of course, "[e]ntry of a declaratory judgment, however, cannot be fully mandatory." *GenCorp., Inc. .v. Olin Corp*., 390 F.3d 433, 451 (6th Cir. 2004).  There must be "sufficient evidence of future response costs to satisfy the 'case or controversy' requirement." *Id.*

Here, future costs are a certainty.  The Court has already noted that "[t]he only thing certain right now about the future costs at the Superfund Site is that it will take decades to complete the work—and it may take that long even to select a remedy."  Phase II Opinion and Order of March 29, 2018 (ECF No. 921, PageID.34699).  There is no reason to believe that Georgia-Pacific will be the only entity to incur future costs. For example, since August 31, 2014, the cutoff between past and future costs for purposes of the judgment, EPA issued the Record of Decision for Area 1 of OU5.  Tx. 9881.  Although not a part of the trial record, EPA has also issued two unilateral orders to Georgia-Pacific, International Paper, and Weyerhaeuser, one

requiring the recipients to implement the Area 1 Record of Decision,[13] and the other requiring them to implement a Time Critical Removal Action in Area 3 of OU5.[14] Weyerhaeuser requests that the Court take judicial notice of the issuance of these orders under F.R.E. 201. If requested by the Court, Weyerhaeuser would submit documentation that it has incurred additional response costs in OU5 since trial, and that it will continue to incur costs going forward.

Because Weyerhaeuser, EPA, and others in addition to Georgia-Pacific have incurred response costs in OU5 since August 31, 2014, and will continue to do so into the future, it makes no sense to limit the declaratory judgment to only Georgia-Pacific's future costs. Doing so would require any party that incurs costs in the future, other than Georgia-Pacific, to file a new action to recover those costs and re-litigate liability. The Court has already held that all of the parties are liable under CERCLA for releases to the Site. It should not now limit that ruling to only Georgia-Pacific's costs.

Although Weyerhaeuser and International Paper disagree with Georgia-Pacific on the scope of declaratory judgment, they agree that this Court should retain jurisdiction to enforce its judgment regarding future costs. *See Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 440 (6th Cir. 1985) (noting that the pendency of an appeal does not deprive the district court of jurisdiction to enforce its judgment). NCR apparently disagrees; its proposed version of Paragraph 4 does not include language regarding the retention of jurisdiction. The parties need clarity on how to handle the millions of dollars in response costs that have been incurred since August 31, 2014. The most efficient method would be for this Court to retain jurisdiction to

---

[13] Unilateral Administrative Order for Remedial Design and Remedial Action, CERCLA Dkt. No. V-W-17-C-002 (Dec. 16, 2016), *available at* https://semspub.epa.gov/work/05/931138.pdf.

[14] Unilateral Administrative Order for Removal Actions, Dkt. No. V-W-16-C-009 (May 12, 2016), *available at* https://semspub.epa.gov/work/05/926887.pdf.

enforce its judgment and determine, among other issues, whether the claimed costs are CERCLA response costs, whether they are subject to the Court's rulings on liability, whether there is a basis for deviating from the Court's equitable allocation, and whether the response actions were necessary and consistent with the National Contingency Plan.  All of these matters are ancillary to the Court's underlying rulings on liability and equitable allocation.  Requiring the parties to file new lawsuits to address these costs would be a waste of judicial resources.  Weyerhaeuser respectfully requests that the judgment make clear that this Court will retain jurisdiction to resolve disputes over future costs incurred by any of the parties.

### 4. Paragraph 5.

**Georgia-Pacific Position:** Georgia-Pacific asks the Court to expressly retain jurisdiction pursuant to 28 U.S.C. § 2202 to adjudicate future disputes regarding further relief allowed by the Court's declaration of future liability.  Clarity in the judgment on this point is critical, because Georgia-Pacific has incurred significant costs since the agreed cut-off for past costs of September 1, 2014.  In addition to non-time-barred costs incurred pursuant to orders and decrees entered in 2009 or earlier, Georgia-Pacific has incurred costs associated with the Time Critical Removal Action in Area 3 of OU5 and the Remedy in Area 1.

In Georgia-Pacific's view, the Court would retain jurisdiction to enter necessary and proper relief after reasonable notice and hearing with respect to Georgia-Pacific, IP, and NCR pursuant to its declaration of future liability.  *See, e.g., New York v. Solvent Chem.Co.*, 664 F.3d 22, 26-27 (2d Cir. 2011); *Responsible Environ. Solutions Alliance v. Waste Mgmt, Inc.*, 2011 WL 382617, at *12 n.38 (S.D. Ohio Feb. 3, 2011) ("Although the Court directs that final judgment be entered herein, it will retain jurisdiction over this matter, in order to resolve disputes between the parties concerning consistency with the NCP.").  Retention of jurisdiction in that respect would allow the Court to efficiently resolve issues regarding future costs.  *See Kelley v. E.I. DuPont de*

*Nemours and Co.*, 17 F.3d 836, 845 (6th Cir. 1994).   And retaining jurisdiction would not deprive the Court's judgment of finality sufficient to trigger appellate jurisdiction. *Futernick v. Sumpter Twp.*, 207 F.3d 305, 310 (6th Cir. 2000) ("Although the May 6 judgment reserved jurisdiction so that the district court could monitor the Township's financial position and respond to any changes, the judgment resolved all issues on the merits and effectively ended the litigation.").

NCR's proposed language does not include this express retention of jurisdiction.   While arguably unnecessary—28 U.S.C. § 2202 is applicable regardless of whether the Court references it in the judgment—including express language is desirable given the certainty of future proceedings to recover costs.   Indeed, Georgia-Pacific would welcome even greater clarity on this point, whether as part of the judgment or otherwise.

**NCR Position:**   NCR believes that Georgia-Pacific's proposed Paragraph 5 is extraneous and unsupported by any language in the Court's Phase II Bench Trial Opinion and Order of March 29, 2018 (Dkt. No. 921).

**International Paper Position:**   Georgia-Pacific's proposed language in Paragraph 5 wrongly denies the other parties a vehicle necessary to pursue reimbursement of their costs.[15] Georgia-Pacific's proposed judgment would allow it—and only it—to pursue recovery of costs as part of this case under 28 U.S.C. § 2202.   International Paper submits that, consistent with its view of the scope of the Opinion, any party that has incurred costs that were not adjudicated during the Phase II trial (referred to here as "Post Phase II Costs") can seek those costs in this action.   If the Court concludes that International Paper needs to file a new, albeit related, case to

---

[15] Since the Phase II trial, International Paper has performed work relating to a removal action in OU5, Area 3, as well as work related to implementing the remedy selected for OU5, Area 1.

recover Post Phase II Costs, International Paper will do so.  Alternatively, International Paper proposes to amend its counter-claim and cross-claim in this case specifically to include Post Phase II Costs.  International Paper seeks the Court's guidance on the point to ensure that it can timely make a claim for Post Phase II Costs from the other parties irrespective of the outcome of any appeal from the Final Judgment.

Clarity about the proper case in which to pursue costs incurred since September 2014 is paramount.  All parties except NCR have incurred costs since September 2014 (the date Georgia-Pacific chose as the cut-off for costs in the Phase II trial).  While the inevitable appeal of the Court's Opinion is pending, the statute of limitations may threaten claims for some of those costs.  Thus, the parties need to know how the Court wants the parties to proceed so each party can protect its rights, either through amended counter-claims and cross-claims filed in this case or through a separate, related action.

Georgia-Pacific appears to take the position that 28 U.S.C. § 2202 grants the Court continuing jurisdiction to resolve issues related to Georgia-Pacific's post-trial costs, even while an appeal from the Court's Opinion and Final Judgment is pending.  International Paper agrees but regards Georgia-Pacific's position as not going far enough.  Consistent with its view that the Court's Opinion is a declaratory judgment allocating liability to all parties to the action, 28 U.S.C. § 2202 grants the Court continuing jurisdiction to resolve any contested issues related to any party's Post Phase II Costs.

International Paper acknowledges that this issue may be answered by additional insight from the Court on its view of the scope of the allocation in its declaratory judgment. Consequently, International Paper requests the Court set a status conference so these issues may be addressed before the Final Judgment is entered.

**Weyerhaeuser Position:**   Georgia-Pacific proposes to include Paragraph 5 in the judgment. To the extent that Georgia-Pacific's proposed language would limit the declaratory judgment on liability to only Georgia-Pacific's costs, Weyerhaeuser opposes that language for the reasons above. Additionally, Weyerhaeuser opposes the addition of Paragraph 5 as unnecessary. The Site is large and has a complicated remediation and litigation history. Accordingly, there are many issues that this Court did not decide in this action, like whether Allied Paper, Inc., is an orphan within the meaning of CERCLA, the extent to which EPA's costs are consistent with the National Contingency Plan, or whether other entities should bear some responsibility for the PCBs at the Site. It is no more necessary for the judgment to say that the Court has not adjudicated any of these issues than it is for the judgment to say that the Court did not address response costs associated with Portage Creek or Operable Unit 1.

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By:    /s/ Michael R. Shebelskie

Peter A. Smit, Bar No. P 27886
Varnum LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI  49501
(616) 336-6000

Michael R. Shebelskie
Douglas M. Garrou
George P. Sibley, III
Hunton Andrews Kurth LLP
951 East Byrd Street, East Tower
Richmond, VA  23219
(804) 788-8200


Jan M. Conlin
Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
(612) 349-8500

Counsel for Georgia-Pacific Consumer Products, LP, Fort James Corporation, and Georgia-Pacific LLC

**NCR CORPORATION**

By:    /s/ Darin P. McAtee

DICKINSON WRIGHT PLLC
Geoffrey A. Fields
200 Ottawa Avenue, N.W., Suite 1000
Grand Rapids, Michigan 49503
Phone: (616) 336-1017
Fax: (616) 458-6753
gfields@dickinsonwright.com

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott
Darin P. McAtee
Yonatan Even
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
dmarriott@cravath.com
dmcatee@cravath.com
yeven@cravath.com

SIDLEY AUSTIN LLP
John M. Heyde
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036
jheyde@sidley.com

MARTEN LAW PLLC
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601
bmarten@martenlaw.com

Counsel for NCR Corporation

**INTERNATIONAL PAPER COMPANY**

By:    /s/ John D. Parker

John D. Parker
Michael Dominic Meuti
BAKER & HOSTETLER LLP
Key Tower, Suite 2000
127 Public Square
Cleveland, OH 44114
(216) 621-0200
jparker@bakerlaw.com
mmeuti@bakerlaw.com

Sonja A. Inglin
Ryan D. Fischbach
BAKER & HOSTETLER  LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
(310) 820-8800
singlin@bakerlaw.com
rfischbach@bakerlaw.com

And by:

John F. Cermak, Jr.
THE CERMAK LAW FIRM
11755 Wilshire Blvd., Suite 1250
Los Angeles, CA  90025
(310) 575-2572
jcermak@cermaklegal.com

David W. Centner
CLARK HILL PLC
200 Ottawa Ave. NW, Ste. 500
Grand Rapids, MI 49503
(616) 608-1106
dcentner@clarkhill.com

Counsel for International Paper Company

**WEYERHAEUSER COMPANY**

By:    /s/ Mark W. Schneider

**PERKINS COIE LLP**
Mark W. Schneider, WA Bar No. 14105
MWSchneider@perkinscoie.com
J. Christopher Baird, WA Bar No. 38944
JCBaird@perkinscoie.com
Michael L. Dunning, WA Bar No 29452
MDunning@perkinscoie.com
Margaret C. Hupp, WA Bar No. 43295
MHupp@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000

**Warner Norcross & Judd LLP**
Douglas A. Dozeman, MI Bar No. P35781
ddozeman@wnj.com
Scott M. Watson, MI Bar No. P70185
swatson@wnj.com
900 Fifth Third Center
111 Lyon Street N.W.
Grand Rapids, MI 49503-2487
Telephone:  (616) 752-2000
Facsimile:  (616) 752-2500

Counsel for Weyerhaeuser Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2018, I electronically filed a true and correct copy of the foregoing using the Court's ECF System, which will send notification of such filing by operation of the Court's electronic systems to all parties.  I further certify that I caused a courtesy copy of the foregoing to be sent to defense counsel via e-mail.


_____/s/ Michael R. Shebelskie_____