UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGIA-PACIFIC CONSUMER
PRODUCTS LP,
FORT JAMES CORPORATION, and
GEORGIA-PACIFIC LLC,

    Plaintiffs,

v.

NCR CORPORATION,
INTERNATIONAL PAPER CO., and
WEYERHAEUSER CO.,

    Defendants.

_____/

CASE No. 1:11-CV-483

HON. ROBERT J. JONKER

## ORDER

On March 29, 2018, the Court issued its Phase II Bench Trial Opinion and Order in this case. (ECF No. 921). The Opinion and Order resolved the second of two phases in this trial, and addressed the allocation of responsibility for response costs amongst the parties. The Court asked the parties to submit either a stipulated form of judgment, or their proposed competing forms of judgment with briefing on the disputed issues. (ECF No. 921, PageID.34698).

The parties have responded by filing a Joint Status Report and Proposed Final Judgment. (ECF No. 923). The parties largely agree on the form of judgment, and dispute only a few points. The parities have summarized their differences in a proposed five-paragraph Form of Judgment. The Court now resolves the disputed issues, and will issue a final judgment consistent both with this Order and the Court's earlier rulings.

1. **Paragraph 1**

Paragraph 1 states that Georgia-Pacific has incurred $49,566,881.67 in recoverable Past Response Costs. NCR requests additional language that would state that all asserted response costs borne by Georgia-Pacific, other than the listed amounts, were expressly disallowed by the Court. NCR avers the additional language is necessary to craft a comprehensive final judgment and avoid uncertainty with respect to those other costs. Georgia-Pacific opposes the inclusion of NCR's proposed language. International Paper and Weyerhaeuser take no position.

The Court's previous rulings found certain expenditures were time-barred or not consistent with NCP. These were disallowed. The Court's Phase II Opinion and Order allocated all other costs at issue in the percentages and for the reasons expressed in the Phase II ruling. NCR's proposed additional language is unnecessary.

2. **Paragraph 2**

Paragraph 2 allocates the Past Response Costs consistent with the Court's equitable allocation. No party has proposed any additions or deletions, and the Court's Final Judgment will adopt this paragraph in its entirety.

3. **Paragraph 3**

Paragraph 3 relates to the amount of prejudgment interest that is owed to Georgia-Pacific by NCR. "An award of prejudgment interest—whether in a joint and several liability action under § 107 or a contribution action under § 113 of CERCLA—is mandatory[.]" *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 450 (6th Cir. 2004).

Section 107(a) of CERCLA provides, in pertinent part:

> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii)

> the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26.

42 U.S.C.§ 9607(a).  The referenced portion of Title 26, in turn, provides:

> Interest on advances made to the Superfund shall be at a rate determined by the Secretary of the Treasury (as of the close of the calendar month preceding the month in which the advance is made) to be equal to the current average market yield on outstanding marketable obligations of the United States with remaining periods to maturity comparable to the anticipated period during which the advance will be outstanding and shall be compounded annually.

26 U.S.C. § 9507(d)(3)(C).

Georgia-Pacific proposes an amount of $683,913.17 in prejudgment interest that it is due from NCR.  It contends it is entitled to interest compounded annually beginning on October 2, 2013, the date NCR received an individualized written demand for payment from Georgia-Pacific.  Thus, for all amounts allocated to NCR that Georgia-Pacific incurred prior to October 2, 2013, Georgia-Pacific proposes that interest should start beginning that date.  For allocated amounts that Georgia-Pacific incurred afterwards, Georgia-Pacific proposes that interest should start on the date that the expenditure was made.

NCR proposes prejudgment interest in the amount of $425,000 based on simple interest beginning July 30, 2015.  NCR does not dispute that the October 2, 2013, demand letter qualifies as a demand in writing under § 9607(a), but it points out that the letter is the first in a series of written demands, the latest of which was July 30, 2015.  NCR contends that the statute requires the latest-in-time letter.  NCR also opposes compounding of interest.

The Court will award Georgia-Pacific's requested amount of $683,913.17 in prejudgment interest.  Interest compounded annually not only appears to be permissible, but is the clear direction

3

of a plain reading of the statute.  *See Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 177 (2d Cir. 2002) (noting that "[a] straightforward reading of [42 U.S.C.§ 9607(a) and 26 U.S.C. § 9507(d)(3)(C)] reveals that the district court was without discretion to grant anything other than compounded interest at the applicable rates set forth by the Secretary of the Treasury.").

The Court is not persuaded by NCR's argument that when a series of written demands are made, the date of the latest must control.  *Ireland*, the case NCR depends upon, involved prejudgment interest based on Kansas law for contract damages.  Furthermore, the defendants did not address the issue of when prejudgment interest should commence, thus the plaintiffs' position went unopposed.  *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1147 (D. Kan. 2010).  Here, NCR does not dispute that the October 2, 2013 letter is otherwise sufficient.  And the Court discerns no reason why a subsequent letter should restart the clock. This approach is consistent with the policy of prejudgment interest under CERCLA, as succinctly laid out by the Tenth Circuit Court of Appeals:

> Failure to grant prejudgment interest on contribution awards may instead result in *inequitable* apportionment, because parties awarded contribution will still have lost the time value of the money they spent on behalf of other liable persons, and those persons will have gained an equal amount. Further, refusal to grant prejudgment interest is a disincentive for private parties to voluntarily undertake cleanup actions because they will lose the time value of the money they spend on behalf of other persons. Indeed, it would create a perverse incentive for responsible parties to delay involvement in cleanups, because as they delay, they gain the time value of the funds they should be investing in the cleanup.

*Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 100 F.3d 792, 801 (10th Cir. 1996).  For these reasons, the Court adopts Georgia-Pacific's proposal.

### 4. Paragraphs 4 and 5: Scope of Relief

Paragraphs 4 and 5 address three different aspects of a dispute over what the Court has, or has not, adjudicated; and what the Court's role in future adjudication will be. The first issue is whether the Court has adjudicated responsibility for past costs of any party other than Georgia-Pacific. The second is how to frame the scope of declaratory relief for future response costs incurred by one or more parties. The third issue is whether the Court should expressly retain jurisdiction over any aspects of future cost recovery disputes involving the Site.

As to the first issue, Georgia-Pacific asks for language in the fifth paragraph that states the Court has not adjudicated any party's liability with respect to costs incurred at the Site other than those costs incurred by Georgia-Pacific. The Court finds the proposed language conflates liability itself under CERCLA § 107 with responsibility for particular costs. The Court has affirmatively found all four parties liable, as owners, operators, or arrangers under CERCLA § 107. The liability is tied to the "facility," which in this case includes the entire Site at issue. *See* 42 U.S.C. § 9601(9); *United States v. Township of Brighton*, 153 F.3d 307, 313 (6th Cir. 1998); *see also PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 178-79 (4th Cir. 2013). Liability itself is not determined on an operable unit by operable unit basis. In contrast, ultimate responsibility for bearing any particular costs depends on a host of factors, as the Phase II opinion documents. Here, one of the many factors the Court weighed in allocating responsibility for the past costs were things the other parties did on their own at various portions of the Site. To this extent, the work other parties performed at their own expense was adjudicated as part of the equitable allocation. No party other than Georgia-Pacific affirmatively sought recovery for any associated costs, however, and so the Court had no occasion to make any more specific determinations about any such costs.

Principles of issue and claim preclusion will govern what, if any, past cost issues involving any of these parties are still open for future litigation.

The second issue raises similar concerns regarding the scope of the Court's forward looking declaratory judgment.  Georgia-Pacific wants to limit the declaratory judgment to every other party's liability to Georgia-Pacific for future response costs, and say nothing about Georgia-Pacific's liability to the others.  Once again, in the Court's view, the Georgia-Pacific proposal conflates liability itself under CERCLA § 107, with responsibility to pay or reimburse particular costs regardless of the liable party that initially incurs them.  The Court has found all the parties liable under CERCLA § 107, which means each is liable for all response costs at the "facility."  In this case the entire Site at issue constitutes the "facility" so the Georgia-Pacific proposal is too limiting.  *Township of Brighton*, 153 F.3d at 313.  Future costs will certainly be incurred by one or more of the liable parties.  But who incurs the costs; where the costs are incurred at the Site; what the costs are for; when the costs are incurred; and a host of other factors—many still unknown—will determine what liable party or parties is ultimately responsible to bear the costs.  The Court can declare no more at this point than that all four parties are liable for all future response costs at the Site, consistent with CERCLA § 107, subject to ultimate allocation among the parties based on divisibility and equitable allocation principles.

Accordingly, the Court will not include the proposed language from Georgia-Pacific for Paragraphs 4 or 5.  Nor will the Court use the alternate language of International Paper or Weyerhaeuser for Paragraph 4.  The International Paper / Weyerhaeuser alternative is closer to the Court's understanding of the proper scope of declaratory relief because it recognizes that the Court has found all parties liable under CERCLA § 107 for all recoverable response costs at the Site.  But the language still potentially conflates the fundamental liability decision and the ultimate

responsibility to pay particular costs to the extent it relies on Section 113(g)(2), which is expressly tied to pure cost recovery lawsuits—whether by the government, or by some other party that is not itself a liable party.  Here, all parties are liable in the Court's view, and even though the liability is established and defined by CERCLA § 107, the ultimate responsibility is handled in contribution under CERCLA § 113(g)(3), not cost recovery under Sections 107 and 113(g)(2).

The Court will use the following slightly modified language proposed by NCR for Paragrph 4, which is based on the language of the Court's Phase II determination:

> A declaratory judgment finding all four parties liable under 42 USC § 9607 for future response costs incurred by any party at the Site is hereby entered.  The Court is not entering any advance allocation of future response costs because there is too much uncertainty about the costs themselves, the remediation options, and other severability and equitable allocation factors that may unfold over a period of many years.

Finally, as to the third issue, the Court sees no reason to include in the Final Judgment any language of retained jurisdiction.  The Court will happily cede jurisdiction to the Court of Appeals for the next step in the overall litigation.  To the extent anything needs to be done to provide "necessary or proper relief based on [the] declaratory judgment" along the way, 28 U.S.C. § 2202 provides the appropriate jurisdictional basis.

## CONCLUSION

A Final Judgment consistent with this Order shall enter.

Dated:      June 19, 2018            /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE