## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GEORGIA-PACIFIC CONSUMER PRODUCTS LP,** **FORT JAMES CORPORATION, and** **GEORGIA-PACIFIC LLC,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **No: 1:11-cv-00483** |
| **NCR CORPORATION** **INTERNATIONAL PAPER CO., and** **WEYERHAEUSER CO.,** | ) ) ) ) | **Chief Judge Robert J. Jonker** |
| **Defendants.** | ) ) ) | |

## PETITION FOR FURTHER RELIEF CONSISTENT WITH THE COURT'S JUNE 19, 2018 DECLARATORY JUDGMENT

Plaintiffs Georgia-Pacific, LLC, Georgia-Pacific Consumer Products, LP, and Fort James Corp. (collectively, "Georgia-Pacific") hereby petition the Court pursuant to 28 U.S.C. § 2202 for further relief consistent with the Court's June 19, 2018 judgment.  Specifically, Georgia-Pacific seeks (1) a declaration of Defendants' liability for costs incurred at the Kalamazoo River CERCLA Site since September 1, 2014 pursuant to Unilateral Administrative Order directing Georgia-Pacific, International Paper, and Weyerhaeuser to perform the time-critical removal action in Area 3 of Operable Unit 5 (the "2016 Area 3 TCRA UAO"); and (2) an allocation of responsibility for those costs pursuant to CERCLA § 113(f) among Georgia-Pacific and Defendants NCR Corporation, International Paper Co., and Weyerhaeuser Co.

## I.     Georgia-Pacific's Costs Since September 1, 2014

The Court's Phase II Opinion allocated responsibility for Georgia-Pacific's past costs, which by agreement of the parties was limited to costs incurred before September 1, 2014

("Allocated Costs"). Georgia-Pacific has continued to incur response costs at the Site since September 1, 2014. Among those costs are $9,190,654.00 in costs associated with the 2016 Unilateral Administrative Order directing Georgia-Pacific, International Paper, and Weyerhaeuser to perform the time-critical removal action in Area 3 of Operable Unit 5 (the "2016 Area 3 TCRA UAO"). Georgia-Pacific, International Paper, and Weyerhaeuser each have funded the cost of the Area 3 TCRA. By agreement, these three parties have paid those costs evenly on an interim basis subject to allocation by this Court. NCR refused to participate in this work.

## II.     A Different Allocation For The New Costs Is Necessary.

An allocation proceeding for the post-September 1, 2014 costs is necessary because the Court's Phase II decision regarding the Allocated Costs does not provide a formula the parties can use to allocate these new costs on their own. Specifically, the Court did not "parse the equities" on an individual Operating Unit basis, or otherwise assign percentages to each OU, that the parties can apply to future work in those Operating Units. Rather, the Court assigned each party a single percentage for the aggregate of the Allocated Costs—40% to NCR; 40% to Georgia-Pacific; 15% to International Paper; and 5% to Weyerhaeuser. Those costs flowed from work in multiple OUs: approximately $21.4 million in RI/FS costs in OU5; $6.8 million in costs associated with the time-critical removal action in the Plainwell Dam No. 2 area of OU5 upriver from Weyerhaeuser's mill; $1.7 million in costs to clean up Georgia-Pacific's mill site; and $20.7 million in RI/FS and remedial costs in OU2.

That allocation considered and weighed the geographic distribution of the work represented by those costs, and in particular the fact that the costs were dominated by some $22 million flowing from work in upland areas used by Georgia-Pacific rather than by the other mill parties. The Court's aggregate weighting took into account that International Paper and

Weyerhaeuser "benefit[ted] less than" Georgia-Pacific from that work, thus lowering their respective allocation.  Phase 2 Opinion at 55 n.11.

The post-September 1, 2014 costs that Georgia-Pacific now requests be allocated have an entirely different geographic distribution.  Those costs are for the Area 3 TCRA work.  That work was performed in an area of the Kalamazoo River downstream from all of the mill parties. The Court's weighing of geographical factors thus necessarily must differ for these new costs compared to the Allocated Costs.  As the Court knows from the Phase II evidence, the PCBs in sediment and floodplain soils in areas downstream of Weyerhaeuser's mill are a combination of the discharges from all of the mill parties.  Each mill party thus benefits equally from work in areas of the river downstream from Plainwell, unlike the situation the Court faced with the Allocated Costs.  A different allocation consequently is appropriate for Georgia-Pacific's post-September 1, 2014 costs.

### III.   There Is No Just Reason For Delaying An Allocation.

In addition to the need for new allocation percentages for this new group of costs, there is no prudential reason to defer allocating them.  The uncertainties about the scope and costs of future remediation work that the Court identified in its Phase II Opinion as disfavoring an allocation for future costs do not pertain to these expenses.  They are neither future nor speculative.  They have instead been incurred and paid.  Further, the Area 3 TCRA work is basically complete.  The scope of work is thus known, and any conditions that might bear on allocation of costs for that work are known as well.  Nothing further must occur to eliminate uncertainties.

An allocation proceeding also should be expeditious.  There is no meaningful uncertainty regarding the work performed or its associated cost.  A modest discovery period would resolve any possible questions about the necessity and NCP-consistency of those costs.  Indeed,

International Paper and Weyerhaeuser presumably would have no such concerns about the Area 3 TCRA work since they shared in those costs. Moreover, the Court already has received the evidence and made the factual findings that would inform any allocation of those costs. The parties would need only to submit evidence on marginal issues, such as their relative degrees of cooperation for the new work. That likely can be done by stipulation.

The pending appeals of the Court's Phase I and II rulings also do not counsel in favor of waiting. Regardless of the outcome of the appeals, the Court will need to allocate the new costs.

This fact is apparent from the parties' docketing statements. The Court of Appeals will be asked to address four issues: (1) whether this Court correctly found NCR liable under CERCLA; (2) whether this Court correctly found IP liable under CERCLA; (3) whether the Court correctly applied CERCLA's statutes of limitations; and (4) whether the Court's conclusion that the harm at the Site was not divisible based on geography was correct. Even in the unlikely event the Sixth Circuit reverses the Court on each of these issues, the Court will still need to allocate responsibility between Georgia-Pacific and Weyerhaeuser. At a minimum, therefore, allocating responsibility among all four parties for the 2016 Area 3 TCRA now would yield the relative shares of responsibility between Georgia-Pacific and Weyerhaeuser.

And finally, and very significantly, allocation of the new costs will likely provide guidance the parties can use to avoid the need for the Court to make further allocations of future costs. The future remedial actions in the river (OU5) will likely take place exclusively downstream of Weyerhaeuser's and International Paper's mills, just like the Area 3 TCRA. The PCBs in sediment and floodplain soils in these areas are a combination of the discharges from all of the mills, again just like in the Area 3 TCRA. Allocation of the costs for the Area 3 TCRA

thus will provide a reliable baseline for the allocations of all remaining remedial work in OU5,

enabling the parties to self-allocate the future costs for work in the river.

## IV.    Petition for Further Relief and Proposed Procedure Going Forward

For the foregoing reasons, Georgia-Pacific respectfully requests that the Court enter an

order that allows for a period of discovery and, if necessary, an evidentiary hearing, with respect

to Georgia-Pacific's costs incurred since September 1, 2014 under the 2016 Area 3 TCRA UAO,

and then issue an order establishing defendants' liability for, and allocating, these costs.

Dated:  August 10, 2018

GEORGIA-PACIFIC CONSUMER PRODUCTS,
LP., FORT JAMES CORPORATION, and
GEORGIA-PACIFIC LLC

BY:

/s/ George P. Sibley, III

Peter A. Smit
Adam J. Brody
Varnum LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6000

Michael R. Shebelskie
Douglas M. Garrou
George P. Sibley, III
Hunton Andrew Kurth LLP
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200

Jan M. Conlin
Ciresi Conlin LLP
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
(612) 361-8202

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2018, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing by operation of the Court's electronic systems. Parties may access this filing via that Court's electronic system.

By:    /s/ George P. Sibley, III

29073.000396 EMF_US 70283729v5