IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | No: 1:11-cv-00483 |
| v. | ) ) | Judge Robert J. Jonker |
| NCR CORPORATION, INTERNATIONAL PAPER CO., and WEYERHAEUSER CO., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

GEORGIA-PACIFIC'S BRIEF
REGARDING FINAL JUDGMENT ON REMAND

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.     SUMMARY ................................................................................................................1

II.    PROCEDURAL HISTORY..........................................................................................3

       A.     The Claims in this Lawsuit ................................................................................3

       B.     The Phase I Order and the "Secured Creditor Argument"......................................4

       C.     The Phase II Summary Judgment Opinion and the "KRSG Limitations
              Argument"..........................................................................................................4

       D.     The Phase II Trial...............................................................................................5

       E.     The Declaratory Judgment ..................................................................................5

              1.     Defendants Demand, and Receive, a Declaratory Judgment
                     Making Each Party Liable to Every Other Party Under CERCLA. ............5

              2.     International Paper Deploys the Declaratory Judgment in its Own
                     Lawsuit........................................................................................................7

       F.     Sixth Circuit Proceedings ..................................................................................8

              1.     Weyerhaeuser's Appeal ..............................................................................8

              2.     International Paper's Appeal........................................................................8

       G.     The Sixth Circuit's Decision..............................................................................10

       H.     The Petition for Rehearing.................................................................................11

       I.     The Sixth Circuit's Second Ruling .....................................................................13

III.   ARGUMENT................................................................................................................14

       A.     The Mandate Rule Allows the Court to Maintain the Declarations of
              Liability.............................................................................................................14

              1.     The Role and Powers of the Court on Remand.........................................14

              2.     The Sixth Circuit Mandate Does Not Implicate the Declarations of
                     Liability.....................................................................................................15

       B.     The Court Must Maintain the Broad Declarations of Liability Sought by
              International Paper and Weyerhaeuser, Because Future Costs Are Certain
              to Occur.............................................................................................................16

C.   International Paper's Argument That The Sixth Circuit's Decision Nullifies The Declaratory Judgment Is Wrong. ...................................................19

1.   International Paper's DJ Nullification Argument Ignores the Text of Section 113(g)(2). ...................................................................................19

2.   The Sixth Circuit's Decision Anticipates That Georgia-Pacific Retains the Ability to Recover Costs From Other Liable Parties, Confirming The Need to Retain the Declarations of Liability. .................20

3.   Even If All of Georgia-Pacific's Cost Claims Were Time-Barred, Declarations of Liability as to Weyerhaeuser and International Paper Would Be Appropriate. ...................................................................23

IV.   CONCLUSION ...............................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boeing Co. v. Cascade Corp.*,
207 F.3d 1177 (9th Cir. 2000) .......................................................................18, 25

*Burlington N. & Santa Fe Ry. Co. v. United States*,
556 U.S. 599 (2009).....................................................................................19, 24

*City of Colton v. Am. Promotional Events, Inc.-West*,
614 F.3d 998 (9th Cir. 2010) ...................................................................19, 23, 24

*Clink v. New York Cmty. Bank*,
No. 13-11060, 2013 WL 1812203 (E.D. Mich. Apr. 30, 2013) ............................19

*Cnty. Line Inv. Co. v. Tinney*,
933 F.2d 1508 (10th Cir. 1991) (per curiam)..................................................23, 25

*FIP Realty Co. v. Ingersoll-Rand PLC*,
522 F. Supp. 3d 335 (S.D. Ohio 2021) ...............................................19, 20, 23, 24

*GenCorp, Inc. v. Olin Corp.*,
390 F.3d 433 (6th Cir. 2004) ..........................................................................5, 17

*Georgia-Pacific Consumer Products LP v. NCR Corporation*,
32 F.4th 534 (2022)..................................................................................... *passim*

*Georgia-Pacific Consumer Products LP v. NCR Corporation*,
40 F.4th 481 (2022).....................................................................................13, 14

*Gussack Realty Co. v. Xerox Corp.*,
224 F.3d 85 (2d Cir. 2000) (per curiam)...............................................................23

*Hinck v. United States*,
550 U.S. 501 (2007)............................................................................................20

*Hobart Corp. v. Waste Management of Ohio, Inc.*,
923 F. Supp. 2d 1086 (S.D. Ohio 2013) ...............................................................20

*Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*,
108 F.3d 658 (6th Cir. 1997) ...............................................................................19

*Jones v. Lewis*,
957 F.2d 260 (6th Cir.), *cert. denied,* 506 U.S. 841 (1992)..............................14, 15

*Kelley v. E.I. DuPont de Nemours & Co.*,
    17 F.3d 836 (6th Cir. 1994) ............................................................................17, 18

*Monroe v. FTS USA, LLC*,
    17 F.4th 664 (6th Cir. 2021) ...............................................................................14

*MRP Properties Co., LLC v. United States*,
    607 F. Supp. 3d 747 (E.D. Mich. 2022)...............................................................20

*RSR Corp. v. Com. Metals Co.*,
    496 F.3d 552 (6th Cir. 2007) ...............................................................................22

*RSR Corp. v. Commercial Metals, Inc.*,
    494 F. Supp. 2d 690 (S.D. Ohio 2006) ...............................................................20

*Southland Corp. v. Ashland Oil Co.*,
    696 F. Supp. 994 (D.N.J. 1988) ..........................................................................23

*T&E Indus. v. Safety Light Corp.*,
    680 F. Supp. 696 (D.N.J. 1988) ..........................................................................23

*Trimble v. Asarco, Inc.*,
    232 F.3d 946 (8th Cir. 2000), *overruled on other grounds by Exxon Mobil*
    *Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ...........................................23

*United States v. Campbell*,
    168 F.3d 263 (6th Cir. 1999) ..........................................................................14, 15

*United States v. Davis*,
    261 F.3d 1 (1st Cir. 2001) ....................................................................................23

*United States v. Moore*,
    131 F.3d 595 (6th Cir. 1997) ...............................................................................15

*United States v. Occidental Chem. Corp.*,
    200 F.3d 143 (3d Cir. 1999)................................................................................23

*Westside Mothers v. Olszewski*,
    454 F.3d 532 (6th Cir. 2006) ...............................................................................14

## Statutes

42 U.S.C. § 9607, CERCLA Section 107 ............................................................... *passim*

42 U.S.C. § 9607(a), CERCLA Section 107(a) ....................................................3, 21

42 U.S.C. § 9607(a)(1), CERCLA section 107(a)(1) ...................................................4

42 U.S.C. § 9607(a)(2), CERCLA section 107(a)(2) ...................................................4

42 U.S.C. § 9607(a)(3), CERCLA section 107(a)(3) ........................4

42 U.S.C. § 9613, CERCLA section 113.................................................3

42 U.S.C. § 9613(g)(2), CERCLA section 113(g)(2)........................... *passim*

42 U.S.C. § 9613(g)(3), CERCLA section 113(g)(3) .................................11

**Other Authorities**

Oct. 3, 2022, Unilateral Administrative Order for Remedial Action, U.S. EPA
   Region 5, CERCLA Docket No. V-W-23-C-001 .....................................17

## I.    SUMMARY

The Sixth Circuit issued a general remand in this case, for further proceedings consistent with its opinion.  The parties agree that no evidentiary hearings are needed on remand and that the only matter for this Court's decision is the form of a new final judgment.  The parties disagree on what that judgment should say.

Plaintiffs Georgia-Pacific Consumer Products L.P., Fort James Corporation[1] and Georgia-Pacific LLC (collectively, "Georgia-Pacific") contend that judgment should include the Court's declaration that each party is jointly and severally liable under CERCLA for future response costs at the full Kalamazoo River site (the "Site").  International Paper and Weyerhaeuser (collectively, "Defendants") disagree.  They want a final judgment that dismisses Georgia-Pacific's claims and effectively voids this Court's earlier declaration of each party's liability.

Georgia-Pacific's position is correct.  In its 2018 judgment, this Court's most significant act was to declare that each party was jointly and severally liable for costs of response incurred at the full Site.  Future costs are certain to be incurred, and they will dwarf the past costs Georgia-Pacific sought to recover in this case.  By issuing that declaration, the Court relieved any party that may incur those costs—be it one of the parties in this case, the U.S. Environmental Protection Agency (USEPA), Michigan regulators, or as-yet unidentified private parties—of the burden of proving the liability of the parties here.  And perhaps more significantly, the Court relieved a future court of the substantial burden of adjudicating that liability.

---

[1] After the filing of this action, Fort James Corporation converted to Fort James LLC. Georgia-Pacific will submit an appropriate motion to amend the caption.

The Sixth Circuit's decision did not disturb that declaratory judgment of liability for *future* costs; it addressed only the timeliness of Georgia-Pacific's claim to recover certain *past* costs at the Site.  Specifically, the Sixth Circuit concluded that a bare declaratory judgment of Georgia-Pacific's liability—issued in 1998 in litigation brought by Georgia-Pacific through the Kalamazoo River Study Group (KRSG) as to a portion of the Site—triggered the statute of limitations.  But in reaching that conclusion, the Sixth Circuit did not rule that the Defendants are not liable under CERCLA.  The Sixth Circuit's time-bar ruling says nothing about Weyerhaeuser's liability to International Paper for future costs or vice-versa.  Nor does it speak to Georgia-Pacific's future-cost liability to International Paper and Weyerhaeuser.  Indeed, the Sixth Circuit expressly recognized that Georgia-Pacific could still "bring [CERCLA] claims for costs that fall outside of the [KRSG] judgment."[2]  Those claims could include, as explained below, claims to recover costs that Georgia-Pacific has incurred or will incur in areas of the Site the KRSG judgment did not address.

In short, the Court's liability declaration remains relevant.  As the Court found, the parties will incur future costs at the Site.  Those costs will have to be allocated.  And International Paper filed suit to do precisely that—to allocate costs it incurred at the Site after the period covered by this proceeding.  Jettisoning the Court's liability declaration—which the Sixth Circuit's ruling in no way undermines—would nullify more than a decade of judicial work and require the Court and the parties to relitigate the question of liability anew in International Paper's lawsuit.  Avoiding exactly that sort of waste is precisely why Defendants originally asked the Court to enter a liability declaration that was not limited to Georgia-Pacific's claim for

---

[2] *Georgia-Pacific Consumer Products LP v. NCR Corporation*, 32 F.4th 534, 548 (2022).

past costs, but that would govern all claims by each party for future costs.  The Court agreed that made sense, and nothing in the Sixth Circuit's opinion justifies a different decision now.

## II.     PROCEDURAL HISTORY

### A.     The Claims in this Lawsuit

Georgia-Pacific sought two distinct forms of relief in this lawsuit.  First, Georgia-Pacific sought to recover past costs against the Defendants and NCR Corporation under CERCLA sections 107 and 113.[3]  Second, Georgia-Pacific asked for a declaratory judgment of liability for future costs under CERCLA section 113(g)(2) and the Declaratory Judgment Act.[4]

International Paper counterclaimed against Georgia-Pacific and cross-claimed against the other parties.  It made no claim for past costs, because it had incurred none.  But like Georgia-Pacific, it asserted causes of action against all the other parties under CERCLA sections 107 and 113, and also asked for declaratory relief.[5]  Weyerhaeuser likewise made no claim for past costs but nevertheless counterclaimed and cross-claimed against the other parties.[6]  Weyerhaeuser did not expressly seek "declaratory relief" under section 107 or the Declaratory Judgment Act.  But it asked for the equivalent by alleging that Georgia-Pacific was "a responsible party under CERCLA Section 107(a)," and seeking contribution "or other recovery under CERCLA" against

---

[3] ECF No. 1 (Georgia-Pacific Complaint) at 26-31 (no PageID designated) (107 and 113 claims against International Paper); ECF No. 80 (Georgia-Pacific Amended Complaint) at PageID.1234-39 (same claims against Weyerhaeuser).

[4] ECF No. 80 at, *e.g.*, PageID.1203, 1231, 1238 (claims); PageID 1239 (request for declaratory relief).

[5] ECF No. 91 ("IP Answer") at PageID.1451-52 (claims); PageID.1453 (requesting "a declaratory judgment and other appropriate prospective relief").

[6] Brief of Appellee Weyerhaeuser Company ("Weyerhaeuser Opp. Brief"), Case No. 18-1806 ("Appeal"), Doc. No. 83 at 18.

Georgia-Pacific and International Paper in the event it was ever found liable for more than its fair share of costs.[7]

## B.   The Phase I Order and the "Secured Creditor Argument"

In 2013, after lengthy discovery and motions practice, the Court conducted an eight-day "Phase I" trial on liability issues.  In the wake of that trial, the Court held in the "Phase I Order" that Georgia-Pacific and Defendants are "liable as owners or operators of mills" at the Site under CERCLA section 107(a)(1)-(2), and that NCR is liable as an arranger under CERCLA section 107(a)(3).[8]  In that Phase I Order, the Court rejected International Paper's "secured creditor" defense (the "Secured Creditor Argument"), under which International Paper sought to avoid CERCLA section 107 owner liability entirely.[9]

## C.   The Phase II Summary Judgment Opinion and the "KRSG Limitations Argument"

The parties and the Court then embarked on Phase II to address remaining issues in the case.  In 2015, Defendants "moved for summary judgment barring recovery of some or all of [Georgia-Pacific's] claimed past costs based on the statute of limitations."[10]  In relevant part, NCR and International Paper argued that Georgia-Pacific's claim for past costs was time-barred because a 1998 declaratory judgment of the CERCLA liability of the KRSG, which included Georgia-Pacific, at a portion of the current Site had triggered the three-year statute of

---

[7] ECF No. 105 (Weyerhaeuser Answer, Counterclaim, and Cross-Claims) at PageID.1562.

[8] ECF No. 921 at PageID.34637.

[9] ECF No. 432 at PageID.12751-56.

[10] ECF No. 787 at PageID.24183.

limitations.[11]  In its August 2015 Phase II Summary Judgment Opinion, the Court rejected this argument (the "KRSG Limitations Argument").[12]

**D.      The Phase II Trial**

The Court then conducted a Phase II allocation trial, which was "not a short task."[13] After a 20-day trial involving "thousands of exhibits," the Court entered an order allocating specific past costs among Georgia-Pacific, NCR, and Defendants.[14]

**E.      The Declaratory Judgment**

In its order deciding the Phase II issues, the Court also addressed liability for *future* costs at the Site, as CERCLA commands.  Although the Court concluded that there remained "too much uncertainty about the allocation of appropriate future costs at this time," it determined that "a declaratory judgment regarding liability for these costs will enter as required by statute."[15] That CERCLA-required declaration, the Court explained, was appropriate under Sixth Circuit authority and under the Article III "case and controversy requirement," since there was "no doubt that future costs will be incurred."[16]

**1.      Defendants Demand, and Receive, a Declaratory Judgment Making Each Party Liable to Every Other Party Under CERCLA.**

After reviewing the Court's order resolving Phase II, the parties differed regarding the scope of the declaratory relief the Court should enter.

---

[11] *Id.* at PageID.24186.

[12] *Id.* at PageID.24190.

[13] ECF No. 921 at PageID.34637.

[14] *Id*. at PageID.34637.

[15] *Id.* at PageID.34637.

[16] *Id.* at PageID.34684 (citing *GenCorp, Inc. v. Olin Corp.,* 390 F.3d 433, 451 (6th Cir. 2004)).

Georgia-Pacific contended that the declaration of liability should be limited to *Georgia-Pacific's* claims for future costs.[17]  In support, Georgia-Pacific explained that Defendants were not entitled to any declaratory relief because they had never pursued claims of their own and, as a result, ultimately had only counter- or cross-claims for contribution to the extent they were held liable for more than their fair share of Georgia-Pacific's costs.[18]

Weyerhaeuser and International Paper disagreed.  *Both Weyerhaeuser and International Paper demanded a declaratory judgment of liability governing future costs that was not limited to Georgia-Pacific's claims.*  According to International Paper, the Phase II decision compelled a declaratory judgment that:

> the four parties bound by the Final Judgment *are all liable parties, and thus are all responsible for NCP-compliant response costs incurred by any of the other parties*.  Limiting the Final Judgment to an allocation of only Georgia-Pacific-incurred costs will result in needless duplication of effort and unnecessary future proceedings to establish liability.[19]

Weyerhaeuser similarly argued that the declaratory judgment should "apply to all Future Costs, not just Georgia-Pacific's."[20]  In Weyerhaeuser's view:

> limiting the judgment as Georgia-Pacific suggests, would be *inconsistent with CERCLA*, which requires entry of "a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."  42 U.S.C. § 9613(g)(2).[21]

---

[17] ECF No. 923 at PageID.34713 (emphasis in original).

[18] *Id.* at PageID.34715-16.  Georgia-Pacific noted, in addition, that Weyerhaeuser had never specifically asked for declaratory relief.  *Id.*

[19] *Id.* at PageID.34717 (emphasis added).

[20] *Id.* at PageID.34718.

[21] *Id.* at PageID.34718 (emphasis added).

Weyerhaeuser noted that because "future costs are a certainty," there was "no reason to believe that Georgia-Pacific will be the only entity to incur future costs," and that in fact Weyerhaeuser and others had *already* incurred additional costs.[22]  Weyerhaeuser argued:

> it makes no sense to limit the declaratory judgment only to Georgia-Pacific's future costs. Doing so would require any party that incurs costs in the future, other than Georgia-Pacific, to file a new action to recover those costs and re-litigate liability.  The Court has already held that all of the parties are liable under CERCLA for releases to the Site.  It should not now limit that ruling to only Georgia-Pacific's costs.[23]

The Court agreed with Defendants, and entered a declaratory judgment declining to allocate future costs, but "finding **all four** parties liable under 42 U.S.C. § 9607 for **future** response costs **incurred by any party** at the Site…."[24]

### 2.      International Paper Deploys the Declaratory Judgment in its Own Lawsuit.

International Paper promptly capitalized on its victory regarding the scope of the declaratory judgment.  A few months after the Court entered that declaratory judgment, International Paper filed its own lawsuit for certain response costs it had incurred in Areas 1 and 3 of Operable Unit 5 (OU5)[25] (*i.e.*, costs that would have been considered "future costs" under the declaratory judgment).[26]  In stating its CERCLA liability case against Weyerhaeuser, NCR, and Georgia-Pacific, International Paper expressly relied on this Court's declaratory judgment, noting that "this Court concluded" that Georgia-Pacific, Weyerhaeuser, and NCR are responsible

---

[22] *Id.* at PageID.34718-19.

[23] *Id.* at PageID.34719.

[24] ECF No. 925 at PageID.34746 (emphasis added).

[25] As the Court is aware, Operable Unit 5 at the Site consists of portions of Portage Creek and Kalamazoo River from Morrow Dam to Lake Michigan.  ECF No. 921 at PageID.34650. OU5 is divided into seven Areas, based on the presence of retired hydroelectric dams.  *Id.*

[26] Complaint, Case No. 1:18-cv-01229, ECF No. 1 (the "IP Complaint").

parties for Site-related contamination and are "thus liable for response costs incurred at the Site."[27]

## F.     Sixth Circuit Proceedings

The Defendants and NCR timely appealed from the final judgment.  Before merits briefing commenced, NCR settled with the United States.  Pursuant to that settlement, NCR (a) paid Georgia-Pacific NCR's share of Georgia-Pacific's past costs, as called for by the judgment, and (b) voluntarily dismissed its appeal.[28]

### 1.     Weyerhaeuser's Appeal

Weyerhaeuser initially sought a ruling on whether it was liable "for the costs of responding to contamination upstream of the Plainwell Mill."[29]  Weyerhaeuser subsequently dismissed that appeal, paid the judgment, and proceeded only as an appellee with respect to International Paper's appeal.[30]

### 2.     International Paper's Appeal

International Paper raised two issues on appeal.  First, International Paper raised the KRSG Limitations Argument, asking the Sixth Circuit to decide whether the bare declaratory judgment in the KRSG litigation triggered the three-year statute of limitations for Georgia-Pacific's past-costs claim.  International Paper also appealed its loss on the Secured Creditor Argument, contending it was entitled to the benefit of that defense because it allegedly held title

---

[27] IP Complaint at PageID.4 (¶ 16, ¶ 18), PageID.5 (¶ 20).

[28] Consent Decree, NCR Corp., No. 1:19-cv-01041, ECF No. 2-1, at PageID.4-5; 54-55 (December 11, 2019); Order Adopting Consent Decree, NCR Corp., No. 19-cv-01041, ECF No. 37; Cert. of Satisfied J., ECF No. 970, PageID.35329.

[29] Civil Appeal Statement of Parties and Issues, Case No.18-1858, Doc. 15 (August 14, 2018).

[30] Order, Case No. 18-1858 Doc. No. 61-2 (March 2, 2021).

to the Bryant Mill primarily to protect a security interest, without actively participating in its management.[31]

Thus, as International Paper correctly explained to the Sixth Circuit, it assigned error to two orders: (1) the Phase I Order, which had ruled against International Paper on the Secured Creditor Argument, and (2) the Phase II Summary Judgment Opinion, which had denied the KRSG Limitations Defense.[32]  As a result, International Paper concluded its opening brief by telling the Sixth Circuit that it:

> should reverse *the district court's denial of summary judgment on International Paper's statute of limitations defense* to GP's claims.  *Alternatively*, this Court should either *reverse the district court's Phase I Order* finding International Paper "liable" under CERCLA, or remand for proper application of the security-interest exemption.[33]

In their opposition briefing, both Georgia-Pacific and Weyerhaeuser countered that the Court's Phase I Order's rejection of the Secured Creditor Argument should be upheld.[34] Georgia-Pacific also asked the Court to affirm the Phase II Summary Judgment Opinion on the KRSG Limitations Argument.[35]  On that point, Weyerhaeuser argued only that, in the event the Court found for International Paper on that defense, Weyerhaeuser should receive the benefit of that ruling.[36]

---

[31] Principal Brief of Defendant-Appellee International Paper Company, Appeal Doc. No. 75 at 12-13 (March 15, 2021) ("IP Opening Brief").

[32] IP Opening Brief at 19, 25, 27-29.

[33] IP Opening Brief at 64 (emphasis added).

[34] Opposition Brief of Plaintiffs-Appellees Georgia-Pacific Consumer Products LP; Fort James Corporation; Georgia-Pacific LLC, Appeal Doc. No. 90 ("Georgia-Pacific Opp. Brief") at 26-27; Weyerhaeuser Opp. Brief at 10-11.

[35] Georgia-Pacific Opp. Brief at 26-27.

[36] Weyerhaeuser Opp. Brief at 11.

In reply, after addressing the two issues it had appealed, International Paper once again asked the Sixth Circuit to

> *reverse the district court's denial of summary judgment* on International Paper's statute of limitations defense.  *Alternatively*, this Court should either *reverse the district court's Phase I Order* finding International Paper "liable" under CERCLA, or remand for proper application of the security-interest exemption.[37]

Significantly, International Paper made no effort to explain how or why a ruling in its favor on the KRSG Limitations Argument would relieve it of that portion of this Court's judgment finding International Paper liable for future costs at the Site.  Indeed, *International Paper never mentioned the declaratory judgment at all.*[38]

For its part, Weyerhaeuser asked the Court to affirm the declaratory judgment of liability for future costs.  It noted, without complaint, that this Court had "held all four parties liable for future cleanup costs."[39]  And like Georgia-Pacific, Weyerhaeuser asked the Sixth Circuit to affirm this Court's decision on the Secured Creditor Argument.[40]

## G.    The Sixth Circuit's Decision

The Sixth Circuit issued its initial opinion on April 25, 2022.  *See Georgia-Pacific,* 32 F.4th 534.  It held in favor of International Paper on the KRSG Limitations Argument, finding that the 1998 judgment in the KRSG litigation triggered the three-year statute of limitations on Georgia-Pacific's claim for past costs, making Georgia-Pacific's claims for past costs asserted in 2010 and 2011 time-barred.  *Id.* at 546.  The Court also held that "CERCLA's statute of

---

[37] Reply Brief of Defendant-Appellant International Paper Company, Appeal Doc. 94 ("IP Reply Brief") at 36 (emphasis added).

[38] In its description of the procedural history of the case, International Paper devoted only one paragraph to the Phase II trial and this Court's final order, and did not even mention that the Court had entered a declaratory judgment.  IP Opening Brief at 26.

[39] Weyerhaeuser Opp. Brief at 22.

[40] Weyerhaeuser Opp. Brief at 52.

limitations applies to GP's claim against Weyerhaeuser," and concluded that CERCLA section 113(g)(3) thus "bars the contribution claim against Weyerhaeuser." *Id.* at 547.

The Sixth Circuit's decision was limited in important ways. First, having announced its statute-of-limitations decision, the Sixth Circuit stated that it "need not address" the Secured Creditor Argument. *Id.* at 548. Second, and most significantly, the Sixth Circuit did *not* hold that every claim by Georgia-Pacific to recover costs at the Site would be time barred because of the KRSG judgment. To the contrary, the Sixth Circuit expressly held that Georgia-Pacific could still "bring 107(a) claims for costs that fall outside of the judgment." *Id.* The Sixth Circuit held *only* that Georgia-Pacific "cannot pursue its § 107 claims for any costs that fall within the scope of the 1998 KRSG judgment."[41]

## H.    The Petition for Rehearing

Georgia-Pacific petitioned for rehearing with respect to the Sixth Circuit's "failure to decide International Paper's 'secured creditor'" argument.[42] Georgia-Pacific also sought rehearing on the Court's decision to give Weyerhaeuser the benefit of the KRSG Limitations Argument. *Id.*

With respect to the Secured Creditor Argument, Georgia-Pacific noted that the Sixth Circuit had reversed the judgment in the case even though its statute of limitations ruling did not moot this Court's declaratory judgment with respect to International Paper.[43] Georgia-Pacific

---

[41] *Id.* In fact, Georgia-Pacific does have cost claims—dating after September 2014, and thus among the "future" costs sought in this case—that fall outside the scope of the 1998 KRSG judgment. *See* discussion *infra* at III.C.2.

[42] Georgia-Pacific's Petition for Rehearing and Rehearing in Banc, Appeal Doc. No. 108("Georgia-Pacific Rehearing Petition") at 6.

[43] It did not occur to Georgia-Pacific that Weyerhaeuser, having stipulated to CERCLA liability, having sought a broad declaratory judgment, and having defended that declaratory

explained, as argued here, that the declaratory judgment was broader than that.  For example, Georgia-Pacific noted that Weyerhaeuser had obtained relief against International Paper that was not resolved by the Sixth Circuit's statute-of-limitations ruling.[44]  It also pointed out, as noted above, that the Sixth Circuit had acknowledged that Georgia-Pacific could still bring claims for costs at the Site.[45]  Georgia-Pacific warned that, given International Paper's own pending lawsuit, the Sixth Circuit's failure to take up the Secured Creditor Argument, which had been fully briefed, could result in needless and wasteful re-litigation.[46]

In response, Weyerhaeuser—having opposed International Paper's Secured Creditor Argument on appeal—argued only the first point, *i.e.*, its right to benefit from the KRSG Limitations Defense.[47]  For its part, International Paper—*rather than attempting to remedy the defect in its presentation of the issues to the Sixth Circuit*—counseled the Sixth Circuit *against* making any ruling on the Secured Creditor Argument.  Instead, International Paper argued, *for the first time*, that the Sixth Circuit's ruling in its favor on the statute of limitations nullified this Court's declaratory judgment as to International Paper's liability for future costs (the "DJ Nullification Argument").[48]  Relying largely on inapposite authority outside the CERCLA

judgment with respect to International Paper on appeal, might someday join International Paper in asking that the declaratory judgment be dismissed.

[44] Georgia-Pacific Rehearing Petition at 17.

[45] *Id.* at 19.

[46] *Id.* at 20-21.

[47] Weyerhaeuser's Response to Georgia-Pacific's Petition for Rehearing and Rehearing En Banc, Appeal Doc. No. 111 at 3.

[48] Defendant-Appellant International Paper Company's Opposition to Georgia-Pacific's Petition for Rehearing and Rehearing En Banc, Appeal Doc. No. 112 ("IP Rehearing Brief") at 11-13.

context,[49] International Paper claimed that the failure of Georgia-Pacific's past cost claim deprived this Court of the "power" to issue a declaratory judgment of future liability in favor of either Georgia-Pacific *or* Weyerhaeuser.[50]  And International Paper argued—again for the first time—that Weyerhaeuser was not entitled to declaratory relief, because Weyerhaeuser "did not assert any claim" for past costs.[51]

Further, International Paper boldly claimed that Georgia-Pacific—not International Paper—had somehow waived its argument regarding the continued viability of the declaratory judgment.  International Paper asserted that its opening brief had argued "that the *entirety* of GP's contribution action was time-barred, including its request for declaratory judgment."[52]  For this proposition, International Paper cited no fewer than 14 pages of its opening brief that made *no reference whatsoever* to this Court's declaratory judgment.[53]

## I.   The Sixth Circuit's Second Ruling

The Sixth Circuit declined to rehear the case, but it did add an appendix to its initial opinion.  *Georgia-Pacific Consumer Products LP v. NCR Corporation*, 40 F.4th 481 (2022).  In that appendix, the Sixth Circuit reaffirmed its decision regarding the application of the KRSG Limitations Defense to Georgia-Pacific's claims against Weyerhaeuser.  It then announced that it would simply "adhere to [its] decision not to rule" on the Secured Creditor Argument—noting that if Georgia-Pacific had wanted to obtain a substantive decision on that issue as part of the

---

[49] *See* discussion *infra* at III.C.1.

[50] IP Rehearing Brief at 20.

[51] IP Rehearing Brief at 19-20.  This was exactly the argument that Georgia-Pacific had made, and that International Paper had *successfully opposed*, when International Paper sought the broad declaratory judgment in this case.  *See* discussion *supra* at II.E.1.

[52] IP Rehearing Brief at 10 (emphasis in original).

[53] *Id.*

appeal, it had to dispute International Paper's initial "presentation of the issue as an alternative one." *Id.* at 487.

Thus, the Sixth Circuit has never issued a decision on the Secured Creditor Argument, and also has never addressed the extent to which that defense—or anything else, including the DJ Nullification Argument that International Paper raised in its opposition to rehearing—might affect the declaratory judgment.

### III.    ARGUMENT

**A.    The Mandate Rule Allows the Court to Maintain the Declarations of Liability.**

### 1.    The Role and Powers of the Court on Remand

Under the mandate rule, this Court is "bound to proceed in accordance with the mandate and law of the case as established by the appellate court." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citations and internal quotation marks omitted).  That means it must "implement both the letter and the spirit of the appellate court's mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.*  "In essence the mandate rule is a specific application of the law-of-the-case doctrine." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).

The trial court in a remanded case, however, remains free to consider "those issues not decided expressly or impliedly by the appellate court or a previous trial court." *Jones v. Lewis,* 957 F.2d 260, 262 (6th Cir.), *cert. denied,* 506 U.S. 841 (1992).  That is especially true where, as here, the court of appeals issues a "general" remand.[54]  In the wake of a general remand, the

---

[54] *Monroe v. FTS USA, LLC*, 17 F.4th 664, 669-71 (6th Cir. 2021) (citation omitted).  For example, an appellate ruling that "simply vacates a sentence and remands to the district court for 'resentencing' is considered a general remand allowing the district court to resentence the defendant de novo." *Id.* (citation omitted).

District Court is free to address all remaining issues so long as it remains consistent with the appellate court's opinion.  *Id.*  A limited remand, by contrast, articulates the "chain of intended events … with particularity,"[55] and thus constrains the trial court's authority to the issue or issues specifically articulated in the appellate court's order.[56]

### 2.        The Sixth Circuit Mandate Does Not Implicate the Declarations of Liability.

International Paper placed two aspects of the Court's original judgment before the Court of Appeals: (1) whether the 1998 declaratory judgment in the KRSG litigation triggered section 113(g)'s statute of limitations as to Georgia-Pacific's claim for past costs (the KRSG Limitations Argument); and (2) whether this Court committed clear error in finding, as a factual matter, that International Paper's lease of the Bryant Mill to Allied Paper was a true lease, and not a security interest for a seller-financed transaction (the Secured Creditor Argument).

International Paper told the Sixth Circuit that the two arguments were alternative grounds for reversal.  That was true enough, as either ruling would have required reversal of the judgment *for past costs*.  But International Paper never argued to the Sixth Circuit that a ruling in its favor on the KRSG Limitations Argument would negate the declaratory judgment of International Paper's liability at the Site.  So, as a result of International Paper's appellate litigation strategy, the Sixth Circuit never addressed the DJ Nullification Argument.  Consistent with the Sixth Circuit's general mandate, that means this Court is free to address it now.

Because the Sixth Circuit issued a general remand in this case, and because its opinion did not discuss (much less resolve any disputes regarding) the continued viability of the declaratory judgment, it is entirely consistent with the Sixth Circuit's opinion, and appropriate as

---

[55] *United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999).

[56] *United States v. Moore*, 131 F.3d 595, 597-98 (6th Cir. 1997).

a matter of CERCLA, to retain the declaration of liability in the final judgment in this case.  As

outlined above:

- The *only* substantive ruling of the Sixth Circuit—and thus its sole addition to the "law of the case"—was that International Paper (and, ultimately, Weyerhaeuser) had a statute-of-limitations defense to *Georgia-Pacific's* claim for certain *past* costs.

- In contrast, the declaratory judgment, by its terms and under CERCLA, assigns liability to *every* party for *future* costs incurred by *any* party.

- Before this Court, Defendants affirmatively argued for a declaratory judgment of liability governing future costs that was not limited to Georgia-Pacific's claims.  As a result, they, not Georgia-Pacific, are responsible for the fact that the declaratory judgment's scope is broader than Georgia-Pacific's claims, and thus broader than the Sixth Circuit's ruling.

- The Sixth Circuit's decision, consistent with the declaratory judgment, expressly contemplates the *continued* liability of Defendants for future costs, *even for those incurred by Georgia-Pacific*, assuming Georgia-Pacific can assert costs that are not time-barred (which it can).

- To this day, International Paper relies on the declaratory judgment's broad scope in its own lawsuit.

The declaratory judgment speaks to all parties' liability on all claims.  It is unaffected by

the Sixth Circuit's statute of limitations decision.  And by entering it, the Court supplied a

critical ingredient that will secure private-party funding of the cleanup at the Site.  The Court

need not revisit its decision.

**B.     The Court Must Maintain the Broad Declarations of Liability Sought by International Paper and Weyerhaeuser, Because Future Costs Are Certain to Occur.**

As the Court concluded in 2018, and no party has disputed since, the parties are certain to

incur response costs at the Site in the future.  Events have validated that finding.  The parties

already have incurred such costs in Areas 1 and 3 of OU 5, and International Paper has brought

suit to recover its portion of those costs.[57]  And the parties are certain to incur costs in areas of

OU5 downstream from where NCR has committed to perform work, including in Areas 6 and 7.

In these circumstances, where the parties have presented valid claims for costs that are certain to

be incurred, declaratory relief under CERCLA is not optional.[58]

   CERCLA section 113(g)(2) mandates declaratory relief in all initial cost-recovery actions

and instructs that "the court *shall* enter a declaratory judgment on liability for response costs or

damages that will be binding on any subsequent action or actions to recover further response

costs or damages."  42 U.S.C. § 9613(g)(2) (emphasis added); *see also Kelley v. E.I. DuPont de

Nemours & Co.*, 17 F.3d 836, 844-45 (6th Cir. 1994) ("The entry of declaratory judgment as to

liability is mandatory.").  It contains no provision conditioning declaratory relief on the recovery

of past costs.  Instead, section 113(g)(2) mandates entry of a declaratory judgment "that will be

binding on any subsequent action or actions to recover further response costs or damages" in

every initial cost-recovery action, without qualification.  42 U.S.C. § 9613(g)(2).  So even had

Georgia-Pacific asserted no claim to recover any of its past costs, CERCLA would still require

the Court to adjudicate liability and enter a declaratory judgment.

   The Sixth Circuit's decision in this case removes any doubt on that score.  The counter-

plaintiffs in the KRSG lawsuit obtained a declaratory judgment on Georgia-Pacific's liability for

future costs at the "NPL Site" even though they made no claims for past costs.  That naked

declaration of future liability, the Sixth Circuit concluded (at International Paper's urging), put

---

[57] *See supra* at II.E.2.  EPA also has ordered International Paper to perform the remedy in
Operable Unit 1 (OU1) of the Site.  Oct. 3, 2022, Unilateral Administrative Order for Remedial
Action, U.S. EPA Region 5, CERCLA Docket No. V-W-23-C-001.  To date, International Paper
has made no demand of Georgia-Pacific with respect to the cost of that work.

[58] *See* ECF No. 921 at PageID.34684 (citing *GenCorp,* 390 F.3d at 451).

Georgia-Pacific on the clock to assert its claim as to any costs it might incur in the future within the scope of that judgment, even if those costs may not be incurred until decades in the future. Under the logic International Paper convinced the Sixth Circuit to adopt, declarations of liability as to future costs are not only permissible, they are essential to the proper functioning of CERCLA's scheme for fairly allocating liability.

Common sense confirms the wisdom of section 113(g)(2)'s clear statutory command. Congress included section 113(g)(2) "to ensure that a responsible party's liability, once established, would not have to be relitigated." *Kelley*, 17 F.3d at 844. Especially when future costs appear certain, "it would waste State, corporate and judicial resources, and add immensely to the already 'elephantine carcass of . . . CERCLA litigation' to require relitigation of liability" just because a plaintiff's claim for some specific past costs fails. *Id.* at 845 (citation omitted); *see also Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1191 (9th Cir. 2000) ("The costs and time involved in relitigating [CERCLA] issues as complex as these where new costs are incurred would be massive and wasteful.").

This case drives the point home. The parties have spent years developing evidence and crafting arguments on the issue of liability at the Site. And the Court, after conducting two lengthy trials, has found all parties liable "for future response costs incurred by any party at the Site."[59] Discarding the declaratory judgment that the Court has already made at this late juncture would render all of the time and effort that the parties and the Court have already plowed into the question of future liability a massive waste of time and effectively guarantee relitigation of the issue down the road. And letting International Paper and Weyerhaeuser off the hook for future costs on the basis of a procedural ruling limited to specific claims for past costs would fly in the

---

[59] ECF No. 925 at PageID.34746.

face of CERCLA's goal of ensuring that the costs of cleanup efforts are "borne by those responsible for the contamination."  *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009); *see also FIP Realty Co. v. Ingersoll-Rand PLC*, 522 F. Supp. 3d 335, 344 (S.D. Ohio 2021).

C.     **International Paper's Argument That The Sixth Circuit's Decision Nullifies The Declaratory Judgment Is Wrong.**

International Paper has argued, relying on non-CERCLA authorities, that the Sixth Circuit's statute of limitations ruling also bars declaratory relief.[60]  That argument rests on the faulty premise that Georgia-Pacific's claim for past costs is the only claim in the case.  But as explained above, that is wrong—both International Paper and Weyerhaeuser sought declarations of liability as to all parties to facilitate the allocation of certain-to-be-incurred future costs.  But even were Georgia-Pacific the only party to assert CERCLA claims, International Paper's argument still would fail, because (1) it ignores CERCLA's text, (2) it wrongly assumes Georgia-Pacific retains no cost claims, and (3) under the better-reasoned approach, declaratory relief remains available *even if* Georgia-Pacific has no remaining cost claims.

1.     **International Paper's DJ Nullification Argument Ignores the Text of Section 113(g)(2).**

The argument International Paper pressed in its response to Georgia-Pacific's petition for rehearing in the Sixth Circuit largely ignored CERCLA's unique statutory scheme.  International Paper relied on cases like *International Association of Machinists* and *Clink* that say nothing about the applicability of section 113(g)(2), let alone CERCLA's statutory scheme and remedial goals.  *Cf. City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1007 (9th Cir.

---

[60] IP Rehearing Brief at 11-13 (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 667 (6th Cir. 1997), and *Clink v. New York Cmty. Bank*, No. 13-11060, 2013 WL 1812203, at *4 (E.D. Mich. Apr. 30, 2013)).

2010) (refusing to consider relief under the Declaratory Judgment Act because CERCLA

provided a "more detailed declaratory relief provision") (citing *Hinck v. United States*, 550 U.S.

501, 506 (2007)).

The CERCLA cases International Paper did cite, such as *RSR Corp. v. Commercial

Metals, Inc.*, 494 F. Supp. 2d 690 (S.D. Ohio 2006), and *Hobart Corp. v. Waste Management of

Ohio, Inc.*, 923 F. Supp. 2d 1086 (S.D. Ohio 2013) were not challenged on appeal as they

pertained to declaratory relief, and were never blessed by the Sixth Circuit on that topic.  They

also did not engage with the mandatory nature of declaratory relief under section 113(g)(2).

More recent cases from within the Sixth Circuit that *have engaged* with that question, have

consistently found declaratory relief appropriate even in the absence of a successful claim for

past costs.  *FIP Realty Co.*, 522 F. Supp. 3d at 344 (holding that "a declaratory judgment on

future liability" does not require "a valid predicate cost recovery claim"); *MRP Properties Co.,

LLC v. United States*, 607 F. Supp. 3d 747, 750 n.2 (E.D. Mich. 2022) ("Although Plaintiffs have

not yet proven recovery costs, they need not do so when seeking declaratory relief under

§ 113(g)(2).").  For good reason: as explained above, CERCLA's text compels the conclusion

that a declaratory judgment remains mandatory.

> **2.   The Sixth Circuit's Decision Anticipates That Georgia-Pacific Retains the
> Ability to Recover Costs From Other Liable Parties, Confirming The Need to
> Retain the Declarations of Liability.**

Another flawed premise in International Paper's position is that the Sixth Circuit

eliminated any claim Georgia-Pacific might have for costs.  Although the Circuit Court held that

Georgia-Pacific's section 113 contribution claims for certain past costs were time-barred, it made

clear that its decision did not "affect GP's [CERCLA] claims that fall outside of the 1998 KRSG

judgment's . . . scope." *Georgia-Pacific*, 32 F.4th at 548.  As a result, for example, Georgia-Pacific may still "bring § 107(a) claims for costs that fall outside of" the 1998 KRSG judgment.

As the Sixth Circuit anticipated, Georgia-Pacific and other parties will incur costs that fall outside of the KRSG judgment's geographic scope.  This is because the 1998 judgment held only that "Allied, James River, Georgia-Pacific and Simpson are each liable and responsible parties under Section 107 of CERCLA, 42 U.S.C. § 9607, for the PCB contamination of *the NPL Site*."[61]  "NPL Site" was a defined term in the KRSG litigation, and referred only to "a 35-mile length of the Kalamazoo River from the confluence of Portage Creek with the River (in the City of Kalamazoo) downstream to the Allegan City Dam, and a three-mile portion of Portage Creek upstream of its confluence with the Kalamazoo River."[62]  So the declaratory judgment excludes Areas 6 and 7, which are downstream of the Allegan City Dam.

Judge Bell's analysis in the opinion supporting the KRSG judgment confirms its limited scope.  Because the Eaton and Rockwell facilities at issue in the case fell outside of the "NPL Site," Judge Bell consistently distinguished between the "NPL Site" and a broader "95 mile" "Site" extending beyond it.  While references to "NPL Site" in the opinion addressed the 35-mile segment, references to "the Site" encompassed a much larger area "extend[ing] from upstream of the Eaton Battle Creek facility to downstream of the Rockwell facility."[63]  Judge Bell referenced the broader "Site" at multiple points in the opinion.[64]  But when it came to declaring the KRSG's liability, he used the narrower "NPL Site."[65]

---

[61] ECF 741-17, 1998 KRSG Judgment at PageID.22293 (emphasis added).

[62] *Id.* at PageID.22284.

[63] *Id.* at PageID.22285.

[64] *Id.* at PageID.22285, PageID.22305, PageID.22323.

[65] *Id.* at PageID.22293.

This specific use of "NPL Site" to confine the liability declaration to only a portion of the River reflects the parties' understanding of that term.  For example, Eaton and Rockwell's proposed findings of fact, like Judge Bell's opinion, defined "NPL Site" as "a 35-mile length of the Kalamazoo River from the confluence of Portage Creek with the River (in the City of Kalamazoo) downstream to the Allegan City Dam, and a three-mile portion of Portage Creek" upstream of its confluence with the Kalamazoo River.[66]  Similarly, the KRSG plaintiffs defined the "Allied Paper, Inc. / Portage Creek / Kalamazoo River Superfund Site" to include "Portage Creek, from Cork Street . . . to its confluence with the Kalamazoo River, and the Kalamazoo River from this confluence downstream to the Allegan City Dam."[67]  "In total," the plaintiffs explained, "the Site includes about 3 miles of Portage Creek and 35 miles of the Kalamazoo River."[68]

In light of this shared contemporaneous understanding of the scope of "NPL Site," Judge Bell's declaration of Georgia-Pacific's liability extended no further than the segments of the Kalamazoo River flowing between the River's confluence with Portage Creek and the Allegan City Dam.  And Georgia-Pacific's resulting obligation to seek out additional responsible parties and get them to "the bargaining—and clean up—table" within three years was similarly constrained.  *See Georgia-Pac.*, 32 F.4th at 542, 543, 544 (quoting *RSR Corp. v. Com. Metals Co.*, 496 F.3d 552, 559 (6th Cir. 2007)).  Costs incurred outside of the geographical scope of the NPL Site as defined in the KRSG judgment, on the other hand, were not addressed by Judge Bell and not subject to that judgment.

---

[66] Ex. A, Eaton and Rockwell Proposed Findings of Fact ¶¶ F-1, F-7.

[67] ECF No. 741-12, KRSG Complaint ¶¶ 1, 16, PageID.22142-43, PageID.22148-49.

[68] *Id.* at PageID.22148-49

Should Georgia-Pacific bear the expense of cleaning up areas outside the "NPL Site," as defined in the KRSG judgment, it would have viable CERCLA claims to recover those costs under the Sixth Circuit's opinion.[69]  And areas beyond the scope of the KRSG judgment— especially Areas 6 (Lake Allegan) and 7 (the River from Lake Allegan to Lake Michigan) of OU5—will remain a critical focus of clean-up efforts at the Site for years to come.  The KRSG judgment does not bar claims by Georgia-Pacific against International Paper and Weyerhaeuser to share responsibility for costs associated with those efforts.

### 3.  Even If All of Georgia-Pacific's Cost Claims Were Time-Barred, Declarations of Liability as to Weyerhaeuser and International Paper Would Be Appropriate.

Significantly, even if the statute of limitations barred any and all cost claims Georgia-Pacific might assert, International Paper's argument still would fail.  Courts of Appeals have split over whether district courts can enter declaratory relief under section 113(g)(2) where the plaintiff has no valid claim for costs.  Some circuits require a valid predicate claim for costs before granting declaratory relief.[70]  Others do not.[71]  The Sixth Circuit has not weighed in on this issue directly,[72] and this Court need not do so here because, as discussed above, the Court's

---

[69] *Georgia-Pacific*, 32 F.4th at 548.

[70] *See Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 92 (2d Cir. 2000) (per curiam); *United States v. Occidental Chem. Corp.*, 200 F.3d 143, 153-54 (3d Cir. 1999); *Trimble v. Asarco, Inc.*, 232 F.3d 946, 958 (8th Cir. 2000), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *City of Colton*, 614 F.3d at 1006-07.

[71] *See United States v. Davis*, 261 F.3d 1, 46 (1st Cir. 2001); *Cnty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1513 (10th Cir. 1991) (per curiam); *see also T&E Indus. v. Safety Light Corp.*, 680 F. Supp. 696, 709 (D.N.J. 1988); *Southland Corp. v. Ashland Oil Co.*, 696 F. Supp. 994, 1003 (D.N.J. 1988).

[72] *See FIP Realty Co.*, 522 F. Supp. 3d at 341 ("The Sixth Circuit does not offer any precedent on the availability of declaratory judgment on future cost liability when a CERCLA plaintiff fails to establish liability for its past costs.").

declaratory judgment was entered as to each party on claims made by all parties (at the insistence of International Paper and Weyerhaeuser), and Georgia-Pacific retains non-time-barred claims for costs under the Sixth Circuit's ruling.  In any event, the better-reasoned approach would support maintaining the declaratory judgment.

First, and most importantly, providing declaratory relief even where a specific cost claim fails is more consistent with the statute's text.  As explained above, section 113(g)(2) contains no provision conditioning declaratory relief on the recovery of past costs, but instead mandates entry of a declaratory judgment "that will be binding on any subsequent action or actions to recover further response costs or damages" in every initial cost-recovery action, without qualification.  42 U.S.C. § 9613(g)(2).[73]

CERCLA's goals reinforce that clear text.  First, by assigning liability for future costs at the first available opportunity, awarding a declaratory judgment even in the absence of a viable claim for past costs best ensures that "the costs of . . . cleanup efforts [are] borne by those responsible for the contamination." *Burlington*, 556 U.S. at 602.  "Permitting some tortfeasors to escape cleanup responsibility on a procedural basis (e.g., when the current landholder does not bring a timely action to recover its own past costs)," on the other hand, "does not comport with this goal." *FIP Realty Co.*, 522 F. Supp. 3d at 344.  Second, providing declaratory relief in this circumstance "promote[s] the 'timely cleanup of hazardous waste sites.'" *Burlington*, 556 U.S. 599 at 602 (citation omitted).  Liberally awarding declaratory relief puts the parties on notice

---

[73] The Ninth Circuit in *City of Colton* reached the opposite result by reasoning that the phrase "liability for response costs" in section 113(g)(2) "must refer to the response costs sought in the initial cost-recovery action," because the provision later refers to "any subsequent action or actions to recover further response costs."  614 F.3d at 1007.  That analysis is flawed.  The phrase "liability for response costs" contains no explicit reference to past costs and simply introduces the subsequent clause, "that will be binding on subsequent action or actions to recover further response costs or damages." *See* 42 U.S.C. § 9613(g)(2).

-24-

about liability for future costs and allows them to plan ahead.  *See Boeing Co.*, 207 F.3d at 1191.

This, in turn, incentivizes further cleanup activities and increases the likelihood of settlement.

*Tinney*, 933 F.2d 1508 at 1513 n.9 ("Early determination of a defendant's liability for as yet

unproven CERCLA-cognizable costs . . . can speed the settlement process and thus promote

Congress' goal of encouraging private parties to undertake and fund expedited CERCLA

cleanups.").

## IV.    CONCLUSION

At the request of International Paper and Weyerhaeuser, this Court issued a sweeping

declaratory judgment that made all parties to this lawsuit liable under CERCLA for response

costs at the Site.  That declaration will benefit not only the parties here, but also USEPA, the

State of Michigan, and any other private party required to spend money to clean up the Site.  The

Sixth Circuit concluded that Georgia-Pacific waited too long to bring a claim for certain past

costs.  But Georgia-Pacific's procedural default with respect to one category of claims should not

relieve International Paper and Weyerhaeuser of their liability to Georgia-Pacific or, more

importantly, to the broader public with respect to other claims.  For these reasons, and as

explained more fully above, the Court should enter a revised final judgment, like the exemplar

attached as Exhibit B, that preserves the declarations of liability against all parties.

Respectfully submitted this 1st day of December, 2023.

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By:     /s/ Michael R. Shebelskie

Peter A. Smit, Bar No. P 27886
VARNUM LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI  49501
(616) 336-6000

Michael R. Shebelskie
Douglas M. Garrou
George P. Sibley, III
J. Pierce Lamberson
HUNTON ANDREWS KURTH LLP
951 East Byrd St.
Richmond, VA  23219
(804) 788-8200

-26-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2023, I electronically filed the foregoing using the ECF system, which will send notification of such filing by operation of the Court's electronic systems.  Parties may access this filing via the Court's electronic system.

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP., FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By: /s/ Michael R. Shebelskie