UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGIA-PACIFIC CONSUMER
PRODUCTS LP,
FORT JAMES CORPORATION, and
GEORGIA-PACIFIC LLC,

    Plaintiffs,

v.

NCR CORPORATION,
INTERNATIONAL PAPER CO., and
WEYERHAEUSER CO.,

    Defendants.

_____/

CASE No. 1:11-CV-483

HON. ROBERT J. JONKER

## **OPINION**

### **INTRODUCTION**

This matter is before the Court on remand from the Court of Appeals. The parties disagree on what proper implementation of the Mandate requires. International Paper and Weyerhaeuser maintain that the Mandate requires this Court to enter judgment in their favor dismissing not only the award of contribution against them but also the declaratory judgment holding them liable for future costs at the superfund site. Georgia Pacific argues that only the contribution award is subject to vacatur and dismissal and that the Court should leave other aspects of the Judgment, including the declaration of liability, in effect.[1] The parties have briefed their positions, and the matter is ready for decision.

---

[1] This Court's Judgment also found NCR liable and awarded contribution against it in favor of Georgia Pacific. NCR appealed but then entered a Consent Decree with the United States and the State of Michigan. This Court approved and entered the Consent Decree over the objection of Georgia Pacific, International Paper and Weyerhaeuser while the appeal in this case was pending. *United States v. NCR*, 1:19-cv-1041. As required by the Consent Decree, NCR

**BACKGROUND**

*A. The Site*

This case involves PCB contamination of the Kalamazoo River. The Superfund Site at issue includes about eighty miles of the Kalamazoo River, about three miles of Portage Creek, as well as various waste disposal areas near the water, adjacent riverbanks and contiguous flood plains. The EPA has divided the overall Superfund Site into multiple Operable Units. The River itself is Operable Unit 5, which the EPA has further divided into seven separate Work Areas. At the time of the Phase II trial (addressing the amount of recoverable costs and equitable allocation), the EPA had not yet finalized a remedy for any portion of the River except Area 1 of Operable Unit 5. Estimates for the total amount yet to be spent on cleanup of the River vary from about $600 million to $850 million.[2]

*B. The Litigation in this Court*

Georgia Pacific filed this action to establish the liability of NCR, International Paper and Weyerhaeuser under CERCLA, and to recover a portion of the approximately $100 million it claimed to have spent on investigation and remediating the Site. Phase I of the proceedings

---

dismissed its appeal in this case and paid Georgia Pacific the contribution amount awarded by this Court's Judgment. The Court of Appeals' decision does not disturb any provision of the original Judgment regarding NCR.

[2] This is a rough approximation of current estimates. In Georgia Pacific's Petition for a Writ of Certiorari, it noted that "site-wide cleanup is projected to continue for at least another decade and cost at least hundreds of millions of additional dollars." (Petition for a Writ of Certiorari 12 n.6, Case No. 22-465 (Nov. 14, 2022). In separate proceedings related to NCR's eventual Consent Decree settlement with the United States and the State of Michigan, the EPA estimated future costs at OU5 (the Kalamazoo River and Portage Creek) were $609 Million (Saric Decl. ¶ 3, Case No. 1:19-cv-1041, ECF No. 8, PageID.257). Total costs at the Superfund Site are projected to be $851 million. (*Id.*). Georgia Pacific maintains that the EPA's estimate is incomplete by at least $106 million. (GP's Br. in Opposition at 11, Case No. 1:19-cv-1041, ECF No. 32, PageID.485). It notes the EPA has not withdrawn a 2009 projection that pegged total costs to clean up OU5 at 2.4 billion. (*Id.* at PageID.484). While Georgia Pacific states it does "not believe that number is realistic" it observes that the EPA has not stipulated that future costs will not exceed 150% of its current estimate (or roughly $914 million) either. (*Id.* at PageID.492).

focused on liability.  Like Georgia Pacific, Weyerhaeuser admitted liability under CERCLA.  The Court found NCR and International Paper liable after a bench trial.  (ECF No. 432).  Phase II of the proceedings focused on establishing the total recoverable past costs at issue, and on equitably allocating responsibility for those costs among the liable parties.  The Court issued its decision on those issues after the Phase II trial.  (ECF No. 921).

Before proceeding to the Phase II trial, the parties addressed whether and how CERCLA's statute of limitations applied to Georgia Pacific's contribution claims.  In an earlier case, this Court entered a declaratory judgment declaring Georgia Pacific liable for PCB contamination in the River.  That case was filed in 1985 by the Kalamazoo River Study Group, of which Georgia Pacific was a member, and ended with the declaratory judgment in 1988.  Neither NCR, International Paper or Weyerhaeuser were parties to that case, and Georgia Pacific had not yet incurred the costs for which it sought contribution in this case.

Even so, the defendants in this case argued that CERCLA's 3-year statute of limitations on contribution claims should run from the 1988 declaratory judgment—or at a minimum from later re-affirmations of that liability determination in the same case in 2000 and 2003—and bar Georgia Pacific's contribution claims here.  This Court noted the position of the defense "would effectively bar some contribution claims even before they would normally accrue," and rejected such an "expansive interpretation."  (ECF No. 787, PageID.24189-24190).  The Court did find some of the contribution claims Georgia Pacific was advancing barred by the statute of limitations applicable to various administrative agreements under which Georgia Pacific had incurred actual costs.  (*Id.* at PageID.24910-24196).  The Court incorporated these determinations into its assessment of the total recoverable past costs and equitable allocation shares after the Phase II trial.  (ECF No. 921, PageID.34653-34660).

On June 19, 2018, this Court entered Final Judgment implementing its decisions. The Final Judgment included the Phase I liability determinations and the declaratory judgment language mandated by Section 113(g)(2) of CERCLA. (ECF No. 925, PageID.34746). The Judgment also included the recoverable past costs and equitable allocation decisions this Court made, including those on the limitations issues. All parties appealed. (ECF Nos. 930 (NCR), 931(International Paper), 935 (Georgia Pacific) and 939 (Weyerhaeuser)).

### C.  *The Appeals*

Ultimately, NCR, Georgia Pacific and Weyerhaeuser dismissed their appeals. (ECF Nos. 969 (NCR), 971 (Weyerhaeuser) and 972 (Georgia Pacific)). In NCR's case, the decision to dismiss was tied to NCR's entry of a Consent Decree with the United States and the State of Michigan, as previously noted. International Paper continued with its appeal, raising not only the 3-year statute of limitations issue but also a claim that this Court erroneously found it liable despite the "secured creditor" exception to CERCLA owner liability. This Court had rejected International Paper's position on that issue after the Phase I trial based on this Court's fact findings and conclusions of law. (ECF No. 432, PageID.12749-12756).[3]

The Court of Appeals reversed this Court's decision on the 3-year statute of limitations and held that the clock started for Georgia Pacific with the 1988 declaratory judgment of liability: "Because the 1998 KRSG judgment caused the statute of limitations to begin to run, the three-year statute-of-limitations period concluded before GP filed its 2010 action, and we must dismiss GP's action on limitations grounds." (ECF No. 973, PageID.35355). The Court of Appeals further concluded that Weyerhaeuser was also entitled to the benefit of this limitations

---

[3] This Court had denied cross motions for summary judgment on the issue filed by Georgia Pacific and International Paper and concluded there were genuine issues of material fact for trial. (ECF No. 345).

4

defense even though it had earlier dismissed its own appeal: "We conclude that § 113(g)(3) also bars the contribution claim against Weyerhaeuser." *Id.* In concluding, the Court of Appeals stated: "Because the district court here did not enforce [the] statute of limitations, we **REVERSE** its judgment and **REMAND** for further proceedings consistent with this opinion." (*Id.* at PageID.35358).

The Court of Appeals observed that its decision "does not affect GP's § 107(a) claims that fall outside of the 1988 KRSG judgment's broad scope." (*Id*. at PageID.35356). However, the panel believed that "identifying such costs will prove difficult in practice" because of the breadth of the 1988 declaratory judgment. (*Id.*). The Court of Appeals did not reach the merits of the secured creditor exception: "Because we conclude that the statute of limitations on GP's contribution claim has run, we need not address IP's arguments concerning whether CERCLA's secured-creditor exception applies. (*Id.* at PageID.35358).

Georgia Pacific moved for rehearing *en banc* on the question of whether Weyerhaeuser was able to benefit from the limitations ruling in the absence of a cross appeal. The Court of Appeals denied rehearing *en banc* but the panel issued an Appendix to its original decision that further addressed this question, explaining that Weyerhaeuser should have filed a cross appeal, but that Georgia Pacific forfeited the issue. (ECF No. 974, PageID.35364-35369). Georgia Pacific also moved for panel rehearing on whether the Court of Appeals should have reached the merits of the secured creditor exception. The panel adhered to its decision because International Paper had presented the secured creditor issue simply as an alternative basis for reversal, and Georgia Pacific never disputed that. (*Id.* at PageID.35369-35370). A Mandate issued eight days later. (ECF No. 976).

Georgia Pacific, Weyerhaeuser and International Paper jointly moved for a stay pending a possible petition for certiorari, and this Court granted the stay. (ECF Nos. 977, 978). Georgia

5

Pacific filed a petition for certiorari on the statute of limitations issue.  Case No. 22-465 (Nov. 14, 2022).  After receiving briefs from Georgia Pacific, International Paper and Weyerhaeuser on whether to grant certiorari, the Supreme Court invited the views of the Solicitor General, who filed a brief opining that "[c]ontrary to the court of appeals' holding, the 1988 declaratory judgment . . . in the KRSG litigation did not trigger the limitations period set out in Section 113(g)(3)(A)" but that even so certiorari should be denied because the case presented only a "shallow conflict" between two circuits, and because this case was, in any event, a "poor vehicle for clarifying" the issue.  Brief of the United States as Amicus Curiae, No. 22-465 (August 2023).  The Supreme Court denied certiorari on October 2, 2023.

### D. The Issue

The parties disagree on how this Court should proceed on remand.  International Paper and Weyerhaeuser argue that the decision and Mandate of the Court of Appeals requires entry of Judgment in their favor both on the contribution claims and on the liability determinations embodied in the declaratory portion of the Court's Judgment.  Their vision of the appropriate Final Judgment is included at ECF No. 994-1.  Georgia Pacific contends that only the specific contribution awards are the subject of reversal and that the other aspects of the Judgment are unaffected, including the determination of total costs incurred consistent with the NCP, the specific equitable allocation decisions the Court made about them and the declaratory judgment of CERCLA liability for all parties to the case for future response costs at the Site.  Georgia Pacific proposes an Amended Final Judgment at ECF No. 993-2.

The remaining parties[4] have briefed their positions and the matter is ready for decision.  In sum, the Court rules as follows:

---

[4] As the Court noted earlier, NCR entered into a Consent Decree with the United States and the State of Michigan, dismissed its appeal in this case and paid Georgia Pacific the contribution award

(1)   Like all of the remaining parties the Court agrees that the decision and Mandate of the Court of Appeals requires reversal of the contribution awards against International Paper and Weyerhaeuser and in favor of Georgia Pacific.

(2)   With respect to the declaratory judgment holding all the parties liable under CERCLA for future response costs at the site, the Court agrees with Georgia Pacific that nothing in the Court of Appeals' decision undermines the validity of that provision. To the contrary, the statutory text of CERCLA requires it and there is significant ongoing practical value to having the liability issues resolved.

(3)   With respect to the terms of the Judgment finding a specific amount of Georgia Pacific's past costs necessary and consistent with the NCP, and specifying particular equitable allocation percentages among the liable parties, the Court does not believe it is appropriate to carry these provisions forward in an Amended Judgment. The Court of Appeals does not expressly address these issues. And it is certainly possible to imagine practical value for both findings even in the absence of any enforceable contribution award.[5] However, both the determination of past costs consistent with the NCP and the particular equitable allocations were inextricably intertwined with the way this Court resolved the limitations questions. And there is no doubt the Court of Appeals reversed this Court's decisions on the limitations questions.

Accordingly, and for the reasons more fully described in what follows, the Court intends to enter an Amended Final Judgment after Remand.

## DISCUSSION

The mandate rule requires this Court to "adhere to the commands of a superior court." *Brunet v. City of Columbus*, 58 F.3d 251, 254 (6th Cir. 1995). The Court must "'implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the

---

embodied in the Court's original Judgment. The Court does not believe it is necessary or proper to include any relief related to NCR in an Amended Judgment. NCR is no longer part of this case.

[5] For example, International Paper has already filed its own cost recovery, contribution and declaratory judgment action against NCR, Georgia Pacific and Weyerhaeuser regarding the Kalamazoo River Site. Case No. 1:18-cv-1229. As referenced in International Paper's new Complaint, the filing was triggered in part by a unilateral administrative order issued by the EPA against International Paper under Section 106 of CERCLA requiring International Paper to conduct certain clean up activities, or face monetary penalties and enhanced damages if the EPA is forced to do the work itself; and in part by International Paper's determination to ensure that it complied with any applicable CERCLA statute of limitations. It is not hard to imagine that in the course of determining any necessary equitable allocation in the new case, Georgia Pacific may want to rely on what it has already spent on the Site.

circumstances it embraces.'" *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir. 1994) (quoting *United States v. Kikumura,* 947 F.2d 72, 76 (3d Cir. 1991) (citations omitted)); *see also Jones v. Lewis,* 957 F.2d 260, 262 (6th Cir.), *cert. denied,* 506 U.S. 841 (1992); *Petition of United States Steel Corp.,* 479 F.2d 489, 493 (6th Cir.), *cert. denied,* 414 U.S. 859 (1973); *United States v. Township of Brighton*, 282 F.3d 915, 919 (6th Cir. 2002).  An order of remand is presumed to be general, rather than limited, unless the mandate "is so narrow in scope as to preclude the district court from considering a particular issue." *United States v. McFalls*, 675 F.3d 599, 604 (6th Cir. 2012).

In this case, the Court of Appeals issued a Mandate that simply referenced its Opinion reversing this Court's decision on the statute of limitations and remanding for "proceedings consistent with [the Court of Appeals'] opinion."  Mandate, ECF No. 976 (referencing the April 25, 2022, Opinion, ECF No. 973).  When the Mandate issued on July 22, 2022, the record included both the original Opinion of the Court of Appeals and its Appendix to the Opinion filed July 14, 2022.  (ECF No. 974).  In the Appendix, the panel adhered to its original decision not to consider the secured-creditor issue because neither International Paper nor Georgia Pacific presented the issue as anything other than one of two alternative reasons for reversal.  In the Court's view, the Mandate here permits further proceedings that are consistent with enforcing the 3-year contribution statute of limitations as interpreted and applied by the Court of Appeals.

### A.  *Money Judgment for Contribution*

This Court's Judgment included money judgments for contribution in favor of Georgia Pacific and against International Paper and Weyerhaeuser.  The Court of Appeals' decision plainly reverses this aspect of the original Judgment.  All parties agree on that.

### B.  *Declaratory Judgment*

This Court's Judgment also included a declaratory judgment "finding all four parties liable

8

under 42 USC § 9607 for future response costs incurred by any party at the Site." (ECF No. 925, PageID.34746).  In the Court's view, this declaratory judgment is entirely consistent with the decision and Mandate of the Court of Appeals.  Indeed, CERCLA appears to mandate entry of such declaratory relief in cost recovery litigation: "[T]he court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2).  Moreover, in this case, Weyerhaeuser admitted liability in any event.

Retaining the declaratory judgment on liability is also a practical way to avoid re-litigating liability determinations that the Court of Appeals did not address or disturb.  The panel Opinion expressly recognized that Georgia Pacific itself could still have claims for recovery under Section 107(a).  (ECF No. 973, PageID.35356).  The other parties to the case also potentially have viable cost recovery or contribution claims.  International Paper has already initiated an action against the other parties seeking exactly that relief.  Case No. 1:18-cv-1229 (W.D. Mich.).  NCR chose to dismiss its appeal and satisfy the contribution Judgment in this case as part of an overall Consent Decree settlement with the United States and the State of Michigan, Case No. 1:19-cv-1041 (W.D. Mich.), which creates a possibility of future cost recovery or contribution litigation.  And the United States retains the ability to issue unilateral administrative orders under Section 106 of CERCLA directing a liable party to undertake clean up at the site or face the risk of enhanced damages and penalties if the United States is forced to do the work itself and sue to recover costs later.  With somewhere between $600 million and $850 million yet to spend on cleaning up the River, more cost recovery and contribution litigation is a practical certainty.

International Paper protests that it should not remain subject to a declaratory judgment for liability because the Court of Appeals did not address that issue on appeal.  But the reason the Court of Appeals did not review the issue is because International Paper presented it as simply one

9

of two alternative bases for reversing the district court decision.  In retrospect, International Paper may wish it had not taken that position.  But having done so, and having the panel address the point in both its original Opinion and its later Appendix, this Court concludes that it is entirely consistent with the Mandate to retain the Declaratory Judgment on liability for future costs.  If this Court has misconstrued the intent of the Court of Appeals, then the Court of Appeals, and not this Court, is in the best position to say so on a fresh appeal.

### C.  *Past Cost and Equitable Allocation Determinations*

The remaining aspects of this Court's original Judgment found that Georgia Pacific had incurred a specific dollar amount of past costs "necessary and consistent with the National Contingency Plan," and "equitably allocate[d] responsibility for [those past costs]" between Georgia Pacific (40%), NCR (40%), International Paper (15%) and Weyerhaeuser (5%).  (ECF No. 925).  Are retaining these determinations in a Judgment consistent with the Mandate of the Court of Appeals?   The Court does not believe it would be.

Because future cost recovery or contribution litigation regarding the Site is a near certainty, for reasons already recited, the Court can easily posit situations in which it would be useful to the parties and to a future Court to have binding determinations of past response costs and equitable allocations even though actual awards of money judgments for contribution are time barred.  In the currently pending International Paper cost recovery and contribution case (1:18-cv-1229 (W.D. Mich.), for example, one factor in allocating responsibility for new costs may well be what the parties spent on investigation and clean up along the way, and whether whatever they spent was "necessary and consistent with the National Contingency Plan," a statutory requirement for recovery.  Similarly, an equitable allocation of past costs might be at least a data point in informing equitable allocation of future costs.  And as Georgia Pacific argues, getting to the determinations of recoverable past costs and equitable allocations demanded a lot of work from the parties and

the Court and would be onerous to repeat, if necessary.

But despite the potential practical value, the Court does not believe it can retain these determinations and remain true to "the letter and the spirit" of the Mandate of the Court of Appeals. This Court's determination of past response costs in the Judgment was inextricably bound up with its rulings on the statute of limitations issues. That was the main reason the Court reduced the Georgia Pacific claim of recoverable past costs from the roughly $100 million claim to the approximately $50 million in the Judgment. (ECF No. 921, PageID.34653-34660).[6] The Court of Appeals clearly disagreed with this and determined that the actual recoverable number for past costs should have been zero based on a proper enforcement of the 3-year limitations period on contribution actions. Similarly, the equitable allocations the Court included for these past response costs incorporated an overall assessment of relative culpability among the parties for the particular past costs at issue on the contribution claims. Because the actual amount of past costs recoverable in contribution is zero after the Court of Appeals' application of the 3-year statute of limitations, the Court does not believe the equitable allocations can stand.

### D. NCR Dismissal

NCR dismissed its appeal of this Court's original Judgment and paid the contribution award to Georgia Pacific. Georgia Pacific entered a Satisfaction of Judgment. In the Court's view, nothing in the Opinion, Appendix, or Mandate of the Court of Appeals affects the terms of the original Judgment as to NCR.

---

[6] Only a small amount of the reduction involved the Court's finding that some expenses were duplicative or otherwise not consistent with the NCP. (ECF No. 921, PageID.34660-34663).

## CONCLUSION

The Court will enter Final Judgment after Remand incorporating these decisions.

Dated:     April 9, 2024            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE